1    John W. Lucas (CA Bar No. 271038)          Randy Nussbaum (AZ Bar No. 6417)
2    Jason H. Rosell (CA Bar No. 269126)        Dean M. Dinner (AZ Bar No. 10216)
     PACHULSKI STANG ZIEHL & JONES LLP          John Parzych (AZ Bar No. 26079)
3    150 California Street, 15th Floor          Nussbaum Gillis & Dinner, P.C.
     San Francisco, CA 94111                    14850 N. Scottsdale Road, Suite 450
4    Telephone: (415) 263-7000                  Scottsdale, AZ 85254
     Facsimile: (415) 263-7010                  Telephone: (480) 609-0011
5    E-mail:  jlucas@pszjlaw.com                Facsimile: (480) 609-0016
              jrosell@pszjlaw.com               Email:  rnussbaum@ngdlaw.com
6                                                       ddinner@ngdlaw.com
     Proposed Counsel for                               jparzych@ngdlaw.com
7    Debtors and Debtors in Possession

8                      UNITED STATES BANKRUPTCY COURT
9                        FOR THE DISTRICT OF ARIZONA

10   In re:

11   Z'Tejas Scottsdale, LLC, et al.,          Case No.: 2:15-bk-09178-PS

12                          Debtors.            Chapter 11

13   Joint Administration Pending With:        Joint Administration Pending With Case Nos.:

14   Z'Tejas 6th Street, LLC                   2:15-bk-09180-EPB
     Z'Tejas Avery Ranch, LLC                  2:15-bk-09184-BKM
15   Z'Tejas Bellevue, LLC                     2:15-bk-09188-DPC
     Z'Tejas Bethany Home LLC                  2:15-bk-09193-DPC
16   Z'Tejas Chandler, LLC                     2:15-bk-09194-BMW
     Z'Tejas Costa Mesa, LLC                   2:15-bk-09195-MCW
17   Z'Tejas GP, LLC                           2:15-bk-09198-MCW
     Z'Tejas Grill Gateway, L.L.C.             2:15-bk-09200-EPB
18   Z'Tejas Holdings, Inc.                    2:15-bk-09201-EPB
     Z'Tejas, Inc.                             2:15-bk-09203-PS
19   Z'Tejas La Cantera, LLC                   2:15-bk-09205-BKM
     Z'Tejas LP, LLC                           2:15-bk-09207-MCW
20   Z'Tejas of Aroretum, LLC                  2:15-bk-09208-PS
     Z'Tejas Restaurant Holdings, LP          2:15-bk-09210-DPC
21   Z'Tejas Salt Lake City, LLC               2:15-bk-09212-GBN
     Z'Tejas Summerlin, LLC                    2:15-bk-09213-PS
22   Z'Tejas Tempe, LLC                        2:15-bk-09214-BKM
     Taco Guild Osborn LLC                     2:15-bk-09215-MCW
23
     This Pleading applies to:
24
        ☒   All Debtors                        **MOTION OF DEBTORS REQUESTING (A)**
25      ☐   Specified Debtors                  **THE SCHEDULING OF**
                                               **AN AUCTION AND SALE HEARING IN**
26                                             **CONNECTION WITH THE SALE OF**
                                               **SUBSTANTIALLY ALL THE DEBTORS'**
27                                             **ASSETS, (B) APPROVAL OF BIDDING**
                                               **PROCEDURES AND PROTECTIONS FOR**
28                                             **SUCH ASSETS, (C) APPROVAL OF**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**PURCHASE AGREEMENT WITH STALKING HORSE BIDDER, (D) APPROVAL OF THE FORM AND SCOPE OF NOTICE OF AUCTION AND SALE HEARING, (E) APPROVAL OF PROCEDURES FOR THE ASSUMPTION, ASSIGNMENT AND SALE OF CONTRACTS AND LEASES TO THE PURCHASER, AND (F) APPROVAL OF SALE OF THE DEBTORS' ASSETS TO THE PURCHASER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTORS' LENDERS, THE CREDITORS APPEARING ON THE LIST FILED IN ACCORDANCE WITH BANKRUPTCY RULE 1007(D), AND PARTIES REQUESTING SPECIAL NOTICE:

Z'Tejas Scottsdale, LLC, et al., the above-referenced debtors and debtors in possession (the "**Debtors**"), move this Court (the "**Motion**") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Local Bankruptcy Rule 6004-1, for approval of certain procedures to conduct a sale of substantially all of the Debtors' assets and for approval, at a subsequent hearing, of the sale of such assets (referred to herein as the "**Purchased Assets**") to Cornbread Ventures, LP ("**Purchaser**" or "**Stalking Horse Bidder**"), or the highest bidder that complies with the applicable procedures. The Stalking Horse Bidder has submitted a bid consisting of a credit bid, cash, and the assumption of certain liabilities for the purchase of substantially all of Debtors' assets. Specifically, the Debtors seek an order:

(a) approving the proposed sale procedures, including the overbid provisions (the "**Bid Procedures**"), set forth in the proposed order attached hereto as **Exhibit A** (the "**Bid Procedures Order**"), in connection with the proposed sale at auction (the "**Auction**") of the Purchased Assets, pursuant to the terms of the *Asset Purchase Agreement* (the "**APA**" or "**Asset Purchase Agreement**"),[1] substantially in the form attached hereto as **Exhibit B**, free and clear of all liens, claims, interests and encumbrances, to the Stalking Horse Bidder, or such other party making a higher and better bid at the Auction, pursuant to sections 105 and 363(b), (f), and (m) of the Bankruptcy Code;

(b) authorizing the sale of the Purchased Assets to Purchaser pursuant to the APA, as set forth in the proposed order attached hereto as **Exhibit C** (the "**Sale Order**"), or alternatively, to the other successful bidder(s) or back-up bidder(s)

---

[1] Capitalized terms not defined herein shall have the meanings set forth in the Bid Procedures or APA, as applicable.

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

pursuant to the applicable agreement(s) with such other successful bidder(s) or back-up bidder(s) entered into in accordance with the Bid Procedures, free and clear of all liens, claims, encumbrances or other interests pursuant to sections 363(b), (f), (k) and (m) and 365 of the Bankruptcy Code;

(c)     approving the assumption, assignment and sale of the Purchased Contracts (as defined herein) under section 365 of the Bankruptcy Code, subject to the terms of the APA;

(d)     scheduling the Auction and hearing for the sale of the Purchased Assets (the "**Sale**");

(e)     approving the proposed form of the notices of (i) the Auction, the hearing to consider approval of the Sale (the "**Sale Hearing**"), and related matters, and (ii) assumption, assignment, and sale of the Purchased Contracts, substantially in the forms attached as **Exhibit D** and **Exhibit E** hereto, and the manner of service of same, and setting applicable deadlines; and

(f)     granting such other related relief as provided in the Bid Procedures Order.

This Motion is supported by the following *Memorandum of Points and Authorities*, and the Declaration of Robert S. Hersch filed concurrently herewith (the "**Declarations**"), the arguments of counsel and other admissible evidence properly brought before the Court at or before the hearing(s) on this Motion.

*[Remainder of page intentionally left blank]*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**WHEREFORE,** the Debtors respectfully request that this Court enter an order: (i) granting this Motion; (ii) approving the Bid Procedures as set forth in the proposed Bid Procedures Order; (iii) approving the APA and the Sale of the Purchased Assets to Purchaser (or other Successful Bidder or Back-Up Bidder), free and clear of all liens, claims, encumbrances and other interests, subject to the bidding/auction process proposed by the Debtors; (iv) authorizing the assumption, assignment and sale of the Purchased Contracts; and (v) granting such other and further relief as is just and proper under the circumstances.

Dated:   July 22, 2015                NUSSBAUM GILLIS & DINNER, P.C.


By:/s/ Randy Nussbaum
  Randy Nussbaum
  Dean Dinner
  John Parzych
  Nussbaum Gillis & Dinner, P.C.
  14850 N. Scottsdale Road, Suite 450
  Scottsdale, AZ 85254
  Telephone: (480) 609-0011
  Facsimile:  (480) 609-0016
  Email:  rnussbaum@ngdlaw.com
     ddinner@ngdlaw.com
     jparzych@ngdlaw.com

  and

  John W. Lucas
  Jason H. Rosell
  PACHULSKI STANG ZIEHL & JONES LLP
  150 California Street, 15th Floor
  San Francisco, CA 94111
  Telephone: (415) 263-7000
  Facsimile:  (415) 263-7010
  E-mail:   jlucas@pszjlaw.com
     jrosell@pszjlaw.com

  Proposed Counsel for Debtors and Debtors in Possession

# Table of Contents

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND ................................................................................................................. 2

   A.   Jurisdiction and Venue .............................................................................................. 2

   B.   General Background ................................................................................................... 2

   C.   The Debtors' First Lien Obligations ......................................................................... 4

   D.   The Debtors' DIP Obligations .................................................................................. 4

   E.   The Debtors' Prepetition Marketing Effort ............................................................... 5

   F.   The Debtors' Continuing Postpetition Marketing Effort .......................................... 6

III. THE PROPOSED SALE .................................................................................................... 6

   A.   Material Terms of the APA ....................................................................................... 6

   B.   Proposed Bid Procedures .......................................................................................... 9

   C.   Proposed Bid Protections ........................................................................................ 13

IV. ARGUMENT .................................................................................................................... 14

   A.   The Proposed Sale of the Purchased Assets Should Be Approved Under Section 363(b) of the Bankruptcy Code ............................................................................................................... 14

   B.   The Proposed Bid Procedures and Protections Are Reasonable and  Appropriate and Will Facilitate Maximizing the Value of the Purchased Assets ....................................................... 15

   C.   The Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. §§ 363(f) and (k) Should Be Approved ............................... 18

   D.   The Debtors Should Be Authorized to Assume, Assign and Sell the Purchased Contracts to the Purchaser ............................................................................................................................. 20

   E.   The Purchaser Acted in Good Faith in Connection With the Proposed Sale and is Therefore Entitled to the Protections of 11 U.S.C. § 363(m) .................................................................. 22

   F.   The Sale Complies with the Consumer Privacy Requirements of Section 363(b)(1) of the Bankruptcy Code .................................................................................................................... 23

   G.   Notice of the Proposed Sale and Related Matters Is Reasonable Under the Circumstances .. 24

   H.   Request for Waivers of Stay Under Bankruptcy Rules 6004(h) and Rule 6006(d) ............... 25

V. CONCLUSION ................................................................................................................... 26

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

i

# Table of Authorities

## Cases

*Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) ........................................................................................................................................ 21

*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) ............ 19

*Doehring v. Crown Corp. (In re Crown Corp.),* 679 F.2d 774, 775 (9th Cir. 1982) ......................... 16

*Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th Cir. 1974) ........................................................................................................................................ 15

*Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992) ...................................................... 23

*Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S. 523, 550 (1953) ............................................................................................................................... 21

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) ................................ 22

*In re Barbecues Galore, Inc.*, Case No. 08-16036-MT (Bankr. C.D.Cal. Sept. 4, 2008) .................. 16

*In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983) ........................................................ 23

*In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ........................ 21

*In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985) ....................................................... 14

*In re Channel One Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) .................... 19

*In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) .............................................. 15

*In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) ........................................ 15

*In re Delaware & Hudson Ry.*, 124 B.R. 169, 180 (Bankr. D. Del. 1991) ......................................... 25

*In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986) ............................................................... 21

*In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) .................................................................... 15

*In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990) ......................................................................... 14

*In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) .................................................. 21

*In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) ........................................................ 23

*In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978) ....................................... 23

*In re Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977) .................................................................. 21

*In re Victor Valley Community Hospital*, Case No. 10-39537 (Bankr. C.D. Cal. Oct. 7, 2010) ........ 16

*Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*, 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) 23

*Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) .................................................... 15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_SF:878773.2

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570 (9th Cir. 1998) ............................................................................................................................ 23

*Sassoon Jeans, In*c., 90 B.R. 608, 610 (S.D.N.Y. 1988) ................................................ 23

*Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ...................... 14, 15

**Statutes**

11 U.S.C. § 363(b)(1) .......................................................................................... 14, 23, 24

11 U.S.C. § 363(f) ...................................................................................................... 19

11 U.S.C. § 363(f)(2) .................................................................................................. 19

11 U.S.C. § 363(m) .................................................................................................. 22, 23

11 U.S.C. § 365(a) ...................................................................................................... 21

11 U.S.C. § 365(b)(1) .................................................................................................. 21

11 U.S.C. § 365(f)(2) .................................................................................................. 21

**Rules**

Fed. R. Bankr. P. 2002 .................................................................................................. 25

Fed. R. Bankr. P. 6004(f)(1) .......................................................................................... 15

Fed. R. Bankr. P. 6004(h) ............................................................................................ 25

Fed. R. Bankr. P. 6006(d) ............................................................................................ 25

DOCS_SF:83773.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION OF DEBTORS REQUESTING (A) THE
SCHEDULING OF AN AUCTION AND SALE HEARING IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS,
(B) APPROVAL OF BIDDING PROCEDURES AND PROTECTIONS FOR SUCH
ASSETS, (C) APPROVAL OF PURCHASE AGREEMENT WITH STALKING HORSE
BIDDER, (D) APPROVAL OF THE FORM AND SCOPE OF NOTICE OF AUCTION
AND SALE HEARING, (E) APPROVAL OF PROCEDURES FOR THE ASSUMPTION,
ASSIGNMENT AND SALE OF CONTRACTS AND LEASES TO THE PURCHASER, AND
<u>(F) APPROVAL OF SALE OF THE DEBTORS' ASSETS TO THE PURCHASER</u>**

Z'Tejas Scottsdale, LLC, et al., the above-referenced debtors and debtors in possession (the "**Debtors**"), hereby file this Memorandum of Points and Authorities in support of their *Motion Requesting (A) the Scheduling of an Auction and Sale Hearing in Connection with the Sale of Substantially All the Debtors' Assets, (B) Approval of Bidding Procedures for Such Assets, (C) Approval of Purchase Agreement with Stalking Horse Bidder, (D) Approval of the Form and Scope of Notice of Auction and Sale Hearing, (E) Approval of Procedures for the Assumption, Assignment and Sale of Contracts and Leases to the Purchaser, and (F) Approval of Sale of the Debtors' Assets to the Purchaser* (the "**Motion**"),[1] and represent as follows:

## I.

## <u>INTRODUCTION</u>

Following an extensive prepetition effort to market their assets, the Debtors have an offer from Cornbread Ventures, LP (the "**Stalking Horse Bidder**," or "**Purchaser**") to purchase substantially all of the Debtors' assets for by way of a credit bid in the amount of $1,388,662, cash in the amount of $2,338,572, plus the assumption of certain liabilities as set forth in the APA.

The Debtors believe that the proposal of the Stalking Horse Bidder, as reflected in the APA, represents the highest and best bid for the Debtors' assets currently available to these estates. The APA is the result of extensive arm's length negotiations between the Debtors and the Purchaser and remains subject to higher and better bids. The Debtors have determined, in the exercise of their sound business judgment, that consummation of the Sale will maximize the value of these estates,

---

[1] Capitalized terms not defined herein shall have the meanings set forth in the Notice of Motion or the APA, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

preserve jobs, maintain vendor and trade relationships, among many other things. For those reasons and the reasons discussed herein and evidence adduced at the hearing, the sale is in the best interests of creditors and should be approved.

Pursuant to the Motion, the Debtors seek authorization, in accordance with the terms of the APA, to sell substantially all of their assets to the Stalking Horse Bidder. Through the proposed Sale, the Purchaser will credit bid its secured claim and postpetition financing claim, pay $2,338,572 and assume certain liabilities as set forth in the APA (the "**Purchase Price**"). The cash proceeds from Purchase Price (the "**Cash Payment**") will be used to fund the estates in an amount sufficient to satisfy the related cure costs relating to the assumption and assignment of contracts and leases, the Debtors' budgeted postpetition expenses and post-closing wind down costs.

Notwithstanding the extent of the Debtors' prepetition marketing efforts (approximately one year), the Debtors intend to continue to vigorously market their assets over the next 30-45 days in an effort to garner higher and better bids.

Based on the foregoing and for the reasons set forth below, the Debtors believe that the proposed Sale will maximize the value of the Debtors' assets, preserve going concern value, and maximize creditor returns.

## II.

## BACKGROUND

### A.    Jurisdiction and Venue

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334. This proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2). Venue of these cases and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408. The statutory predicates for the relief sought herein are sections 105, 363(b), (f), (k) and (m) and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9013, and Local Rules 6004-1, 6006-1, and 9013-1.

### B.    General Background

On the date hereof (the "**Petition Date**"), the Debtors operate nine (9) full-service restaurants known as "Z'Tejas" and "Z'Tejas Southwestern Grill" ("**Z'Tejas**") in Arizona, Texas, and California. The company was founded in 1989 and is currently based in Scottsdale, Arizona. Z'Tejas

2

was born in an old Victorian house on Austin's historic 6th Street. Taking flavors from Spanish and Mexican cuisines and combining them with inspirations from Arizona, Louisiana, California, New Mexico and Texas, Z'Tejas created a rich blend of flavors that it has come to celebrate as Southwestern cuisine. In 1991, Z'Tejas opened its second location in Scottsdale, Arizona and today has nine restaurants in the Southwest United States. The Z'Tejas restaurant was designed to provide a comfortable and unique place to escape from the stress of everyday life, to relax and enjoy a fun, casual dining experience. In addition, the Debtors also operate a separate dining concept known as "Taco Guild." Taco Guild is a gastropub that uses farm fresh ingredients mixed with old and new world flavors to create a taste and atmosphere that dates back to old Western Europe.

In the years and months leading up to the Petition Date, the Debtors' overleveraged balance sheet and competitive industry has had and continues to have an adverse impact on the Debtors' financial performance. In addition, consumers' discretionary spending has dropped significantly leading to reduced consumer traffic and sales. Within the restaurant industry, the mid-scale sector suffered sale declines, which sector encompasses the Debtors' restaurant business.

In late 2014, as the Debtors' liquidity position continued to deteriorate, the Debtors struggled to meet their debt service obligations under their prepetition credit agreements, which resulted in defaults under the Debtors' financing facilities. Over the last six months, the Debtors have explored available restructuring alternatives as part of their overall turnaround efforts. These efforts have included various operational initiatives designed to increase operating performance and attempts to locate a strategic partner to invest additional money into the Debtors or acquire the Debtors' business operations as a going concern. After months of careful review the Debtors have determined that the sale of their business through a bankruptcy court supervised auction process is the best way to preserve the jobs of their employees and maximize value for stakeholders. The Debtors have identified a stalking horse bidder and seek authorization to implement sale procedures as soon as practicable.

Additional factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*Declaration of Steven Micheletti in Support of Emergency First Day Motions (*the "**Micheletti Declaration**"*)* filed contemporaneously with this Motion and incorporated herein by reference.

The general background relevant to the Debtors and this Motion is stated in the *First Day Declaration*, which is incorporated herein by this reference.

**C.**     **The Debtors' First Lien Obligations**

       (i)       First Lien Financing Agreement

As of the Petition Date, the Debtors are parties to that certain Loan Agreement, dated as of November 16, 2011 (the "**First Lien Financing Agreement**"), by and among the Debtors and KarpReilly Investments, LLC (as successor to National Bank of Arizona) (the "**First Lien Lender**"). Under the First Lien Financing Agreement, the First Lien Lender made available to the Debtors a term loan in the original principal amount of $5,500,000 (the "**Term Loan**") and a revolving line of credit in the maximum principal amount of $2,000,000 (the "**RLOC**" and together with the Term Loan, the "**Loan**"). The Loan is secured by substantially all of the Debtors' assets. As of the Petition Date, approximately $4,019,330 (inclusive of accrued interest) is outstanding under the Term Loan and $1,922,222 (inclusive of accrued interest) under the RLOC, exclusive of accrued and unpaid interest and fees and costs.

       (ii)      February 2002 Loan Agreement

The Debtors and GE Capital Franchise Finance Corporation, as original lender, entered into a loan agreement (the "**February 2002 Loan Agreement**") with Z'Tejas Chandler, Inc. (the predecessor in interest to Debtor Z'Tejas, Inc.) in the original principal amount of $1,900,000. The February 2002 Loan Agreement is currently held by Cornbread Ventures, LLC ("**CBV**"). The Debtor's obligations are secured by certain personal property at the Debtor's restaurant location in Chandler, Arizona. The Debtor defaulted under its obligations under the February 2002 Loan Agreement and subsequently entered into a stipulated judgment with CEF in the approximate amount of $663,662 that is now held by CBV.

**D.**     **The Debtors' DIP Obligations**

On the Petition Date, the Debtors filed their *Motion for Interim and Final Orders (A) Authorizing Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1),*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*364(c)(2), 364(c)(3) and 364(d)(1); (2) Authorizing the Use of Cash Collateral; (3) Granting*
*Security Interests and Superpriority Claims; (4) Providing Adequate Protection; (5) Modifying*
*Automatic Stay; and (6) Granting Related Relief* (the "**DIP Motion**").  Pursuant to the DIP Motion,
the Debtors are seeking interim and final orders authorizing the Debtors to use cash collateral and
borrow up to $750,000 and of that amount $320,000 on an interim basis and the remaining amount
following a final hearing pursuant to the terms of the proposed financing order (the "**Interim DIP**
**Order**" and "**Final DIP Order**", as the case may be), with the Debtors, as borrowers, and
Cornbread Ventures, LP as lender (the "**DIP Lender**").

**E.**     **The Debtors' Prepetition Marketing Effort**

       As noted above, the Debtors began to evaluate strategic options in March 2014.  In April
2014, the Debtors retained Mastodon Ventures, Inc. ("**Mastodon**") as investment banker to review
and analyze the Debtors' business and financial condition, to recommend alternatives, and ultimately
to conduct a marketing effort for the Debtors' assets.

       Beginning in September 2014, Mastodon prepared and began to distribute a transaction
teaser, confidentiality agreement, and confidential information memorandum to potential transaction
partners.  Mastodon contacted approximately 108 potential targets, of which approximately 84
responded.  Of the approximately 84 parties that responded, approximately 67 parties executed a
confidentiality agreement and received the confidential information memorandum.  Upon request,
these parties were also granted access to a datasite created by Mastodon containing the Debtors' key
agreements and financial documents.

       After an initial round of marketing, Mastodon and the Debtors identified a potential
purchaser in January 2015. This party conducted due diligence, toured restaurant locations, and met
with the Debtors' management. In March 2015, after these meetings, discussions, and negotiations,
the party declined to put in a binding bid for the Debtors' assets.

       Mastodon continued the marketing process with a additional interested parties, all of which
conducted due diligence, toured restaurant locations, and met with management. The discussions
with these and other interested parties included in and out of court transaction structures.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

5

DOCS_SF:83773.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

As of April 2015, Mastodon had received eight indications of interest from potential acquirers. These parties continued their diligence, which included management meetings with the Debtors' management. As of the Petition Date, however, the Debtors were not able to reach definitive agreement with any third party bidders. Under these circumstances, the Debtors determined that the Stalking Horse Bidder represented the highest and best offer with the most certainty currently available and established a substantial floor for further bidding. The Debtors, along with Mastodon, intend to continue to market the Debtors' assets on a postpetition basis and remain optimistic that a sale through chapter 11 could yield additional bidders.

**F.      The Debtors' Continuing Postpetition Marketing Effort**

The Debtors, with the assistance of Mastodon, will conduct a further marketing effort for their assets on a postpetition basis over the next 30-45 days, with a deadline for competing bids and sale objections on or about September 15, 2015, an auction targeted for [September 17, 2015], and a sale hearing on or about September 25, 2015.

Mastodon's tasks as part of the additional postpetition marketing effort will include preparation of additional marketing materials, as necessary, and the appropriate updates to the datasite for diligence information about the Debtors, and re-establishing contacts with potential purchasers. The Debtors believe that the contemplated time period for the postpetition marketing effort is sufficient under the circumstances for prospective buyers to have a reasonable opportunity to evaluate and submit overbids on the Debtors' assets.

**III.**

**THE PROPOSED SALE**

**A.      Material Terms of the APA**

The Debtors are proposing to sell substantially all of their assets to the Purchaser free and clear of all liens, claims, rights, interests and encumbrances whatsoever, other than Liens specifically assumed by the Purchaser under the Asset Purchase Agreement, in accordance with sections 363(b), (f) and (k) of the Bankruptcy Code.

6

The following are the material terms of the proposed Sale to the Purchaser under the APA:[2]

  **(i)**  **Purchase Price:** The Purchase Price consists of (a) a credit bid of the claims arising under the February 2002 Loan Agreement in the amount of $663,662 and the postpetition financing claims in the amount of $725,000, (b) cash in the amount of $2,338,572, plus (c) the assumption of the Assumed Liabilities by Purchaser at Closing. *See* APA, at §§ 2.1 and 2.3. The Cash Payment will be used to satisfy (v) no less than $1,200,000 of the claims arising under the First Lien Financing Agreement and (w) the postpetition operational expenses of the Debtors to the extent not satisfied by ordinary course revenues, (x) Cure Costs of leases and contracts to be assumed and assigned to the Purchaser, (y) professional fees in accordance with the budget, and (z) other wind-down costs of the Debtors' operations.

  **(ii)**  **Purchased Assets:** Substantially all assets of the Debtors, including, but not limited to, and as more fully set forth in the APA, all accounts receivable, cash (other than the Cash Payment), inventory, deposits (including retainers after payment of professional fees), furniture and equipment, intellectual property, the Purchased Contracts, books and records, permits, supplies, insurance policies (excluding directors and officers or fiduciary insurance policies), goodwill, tax refunds, and causes of action relating to the Purchased Assets. *See* APA, at § 1.1.

  **(iii)**  **Excluded Assets:** All assets other than the Purchased Assets, including the Cash Payment, the Debtors' rights under the APA, equity interests in the Debtors, and any books and records that the Debtors are legally required to retain. *See* APA, at § 1.2.

  **(iv)**  **Purchased Contracts:** All Purchased Contracts will be assumed by the Debtors and assigned to Purchaser at the Closing, subject to the designation rights under the APA and this Motion. Any Contract of the Debtors that is as an Excluded Contract may be assumed or rejected by the Debtors in their sole discretion and shall be deemed an Excluded Asset.

---

[2] The description below only summarizes certain provisions of the APA, and the terms of the APA control in the event of any inconsistency. Capitalized terms used in this summary that are not otherwise defined shall have the meanings ascribed to them in the APA.

DOCS_SF:87723.2

Case 2:15-bk-09178-PS  Doc 13  Filed 07/22/15  Entered 07/22/15 21:32:12  Desc
Main Document  Page 14 of 79

**Assumed Liabilities:**  Primarily consist of (i) all Liabilities relating to the ownership or operation of the Purchased Assets after the Closing Date; (ii) certain specified pre-Closing Liabilities necessary for the operation of the business; (iii) all Liabilities for gift cards relating to the Purchased Assets; (iv) all Cure Costs; (v) any WARN Act Liabilities arising following the Closing Date; (vii) all costs relating to the operation of the business post-closing, inclusive of any real property lease and executory contract that is designated but ultimately not assumed and assigned; and (viii) all Transfer Taxes relating to the Sale.  *See* APA, at §§  2.3, 2.5, 2.6, and 2.7.

     **(v)**     **Excluded Liabilities:**  Any liability of the Debtors that is not an Assumed Liability.  *See* APA, at § 2.4.

     **(vi)**     **Designation Rights:**  Any Contract designated by the Purchaser in writing as either a Purchased Contract or an Excluded Contract, and any Permits and other assets designated in writing by Purchaser, in each case prior to Closing, will constitute a "**Designation Rights Asset**."  The Purchaser will have the right, during Designation Rights Period (which with respect to non-residential real property leases will not extend beyond 210 days after the Petition Date), to specify that (A) any Designation Rights Asset that is a Contract shall be held by the Debtors and not rejected pursuant to Section 365 of the Bankruptcy Code for the duration of the Designation Rights Period or earlier, and (B) any Designation Rights Asset that is not a Contract shall be held by the Debtors in abeyance during the Designation Rights Period pending designation for assignment or exclusion by the Purchaser.  *See* APA, at § 2.7(c).  The Purchaser will be obligated to advance to the Debtors, and thereby will be solely responsible for any costs incurred by the Debtors, with respect to the Designation Rights Assets during the Designation Rights Period.  *Id*.  The parties will execute an interim management agreement with respect to the Purchased Restaurants and the Designation Rights Restaurants (each as defined in the interim management agreement).  *See* Exhibit G to APA.

     **(vii)**     **Timing/Closing:**  The Bid Procedures Order must be obtained within 21 days of the Petition Date.  The Auction, if necessary, will occur two days after the deadline to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8

submit bids and objections to the sale.  The Sale Order must be obtained within 49 days of

entry of the Bid Procedures Order.  The Closing must occur prior to October 31, 2015.  *See*

APA, at § 14.4.

      **(viii)**   **Representations, Warranties and Covenants:**  Customary for a transaction

of this kind.  Except as specifically set forth in the APA, the Purchaser will accept the

Purchased Assets at the Closing "AS-IS," "WHERE-IS," and "WITH ALL FAULTS."  *See*

APA, at Articles V, VI, VIII.

**B.**    **Proposed Bid Procedures**

    The proposed Bid Procedures are summarized as follows:[3]

(1)    Any prospective bidder other than the Stalking Horse Bidder (each a "**Potential Bidder**") that wishes to participate in the bidding process for substantially all of the Debtors' assets must, no later than **September 15, 2015 (i.e., 2 days prior to the Auction) at 4:00 p.m. (prevailing Pacific time)** (the "**Bid Deadline**"):

        a.    Submit to the Debtors and any official committee of unsecured creditors appointed in these chapter 11 cases (the "**Committee**"), through their respective counsel, an offer in the form of an executed asset purchase agreement (including all exhibits and schedules thereto) (the "**Modified Agreement**") without financing or due diligence contingencies, at a price that conforms with the following Paragraph b, and on such other terms that are no less favorable to the Debtors than those contained in the Asset Purchase Agreement executed by the Stalking Horse Bidder.  Such bid must be irrevocable through the Sale Hearing, unless the bid is selected as the Winning Bid or the Back-Up Bid (as such terms are defined below) at the Sale Hearing, in which case such bid shall be irrevocable through the closing of the sale to the Winning Bidder or Back-Up Bidder (as such terms are defined below), as the case may be, in accordance with the terms of the Modified Agreement. The Potential Bidder must also submit a "blacklined" or otherwise marked copy of the Modified Agreement reflecting the differences between the Modified Agreement and the Asset Purchase Agreement executed by the Stalking Horse Bidder.

        b.    Agree in such Modified Agreement to a purchase price that provides for the following: (i) assumption of all the Assumed Liabilities (as defined in in section 2.3 of the Asset Purchase Agreement) and (ii) payment in cash at closing in an initial minimum amount equal to the sum of at least: (1) $3,727,324, plus (2) the "break-up fee" in the amount of $149,089, plus (3) an overbid amount of $150,000.

        c.    Make a good faith cash deposit in the form of a cashier's check or wire transfer, in an amount not less than ten percent (10%) of the purchase price) (the "**Bid Deposit**") into a segregated, interest-bearing escrow account (the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

---

[3]  The following is a brief summary only and is subject to the terms of the Bid Procedures Order, and in the event of any inconsistency between the summary above and the Bid Procedures Order, the latter shall control.  Capitalized terms used in this summary that are not otherwise defined shall have the meanings ascribed to them in the Bid Procedures Order.

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"**Segregated Account**") that shall be opened by the Debtors for this purpose. The Bid Deposit shall immediately become non-refundable (subject to the next sentence and the terms of the Modified Agreement) and shall be credited toward the purchase consideration if and when the transaction with the Potential Bidder making such deposit is approved by the Court as the winning bid (the "**Winning Bid**" and the "**Winning Bidder**") at the Sale Hearing and such transaction is closed in accordance with the terms of the Modified Agreement. If a Potential Bidder's bid is not designated as a Qualified Bid (as defined below), or such bid is not approved as the Winning Bid or the Back-Up Bid at the Sale Hearing, the Bid Deposit of such bidder, plus accrued interest, if any, shall be returned to such bidder within three (3) business days after the conclusion of the Sale Hearing.

d.     Provide written evidence reasonably satisfactory to the Debtors and the Committee of (A) its financial ability to (i) fully and timely perform all obligations under the Modified Agreement if it is declared to be the Winning Bidder, and (ii) provide adequate assurance of future performance under all contracts and leases to be assigned to it and (B) its qualification to own the assets and operate the businesses that are the subject of the Modified Agreement in compliance with all applicable federal, state and local laws.

e.     Disclose any connections or agreements with the Debtors, the Stalking Horse Bidder, any other known Potential Bidder or Qualified Bidder (as defined below), and/or any officer, director or direct or indirect equity security holder of the Debtors.

(2)     If a Potential Bidder complies with all the requirements described above (including the Bid Deposit) by the Bid Deadline, the Debtors, in reasonable consultation with the Committee, shall determine whether (i) the Potential Bidder has demonstrated the legal qualification and financial ability to consummate the proposed transaction, (ii) is reasonably likely to be able to and willing to consummate the contemplated transactions and (iii) has otherwise satisfied all of the requirements described in paragraph 1, above. If so, the Debtors shall designate the Potential Bidder as a "**Qualified Bidder**" and such bid as a "**Qualified Bid**." The Debtors shall promptly notify the Stalking Horse Bidder of the identity of any other Qualified Bidder. For the avoidance of doubt, the Stalking Horse Bidder is deemed to be a Qualified Bidder and the Stalking Horse Bid is deemed to be a Qualified Bid for all purposes.

(3)     If the Debtors receive at least one (1) Qualified Bid from a Qualified Bidder (other than the Stalking Horse Bidder) prior to the Bid Deadline, then the Debtors shall notify the Stalking Horse Bidder and each other Qualified Bidder that the Debtors intend to conduct an auction (the "**Auction**"), subject to reasonable rules and procedures as may be established by the Debtors, consistent with this Order and in reasonable consultation with the Committee. The Auction to determine the successful bidder for the Purchased Assets shall be held on **September 17, 2015 at 10:00 a.m. (prevailing Pacific time)** at the offices of local counsel for the Debtors, Nussbaum Gillis & Dinner, P.C., 14850 N. Scottsdale Road, Suite 450, Scottsdale, Arizona 85254, or such other place and time designated by the Debtors and prior notice to all Qualified Bidders. Each bidder participating at the Auction shall be required to confirm that (a) it has not engaged in any collusion with respect to the bidding or the sale and (b) its Qualified Bid does not contain any financing or due diligence contingencies (unless consented to by the Debtors). The Auction will be conducted openly, will be videotaped or transcribed, and the Committee, any Qualified Bidders, and each of their respective advisors, will be permitted to attend. The Debtors shall file a notice announcing the results of the Auction and the identity of the proposed

10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Winning Bidder and the Back-Up Bidder on the Court's docket and the Website (as defined below), as soon as practicable after conclusion of the Auction.

(4)     Only the Stalking Horse Bidder and other Qualified Bidders may bid at the Auction. Copies of all Qualified Bids shall be provided to the Committee, the Stalking Horse Bidder and each other Qualified Bidder by no later than one (1) business day prior to the Auction. At the commencement of the Auction, the Debtors shall identify the bid that they have determined (after consultation with the Committee) to be the highest and/or best offer and shall permit the Stalking Horse Bidder and other Qualified Bidders to submit higher and/or better bids. Each subsequent bid must exceed the amount of the preceding bid by not less than $150,000 and shall not be modified in a manner that causes it no longer to be a Qualified Bid.

(5)     The Debtors, subject to the terms of this Order and the oversight and approval of the Court, and in reasonable consultation with the Committee, shall supervise the bidding process and conduct the Auction in such a manner as to provide the Stalking Horse Bidder and other Qualified Bidders a full, fair and equal opportunity to participate in the Auction. The Debtors, in consultation with their investment banker, their counsel, and the Committee, shall determine which Qualified Bid is to be recommended to the Court for approval as the highest and/or best bid. The Debtors shall request at the Sale Hearing that the Court authorize the Debtors to consummate the Sale Transaction to such proposed Winning Bidder.

(6)     If the Debtors do not receive at least one (1) Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder, then no Auction shall be scheduled or conducted, and the Court at the Sale Hearing shall solely consider the approval of the Sale Transaction to the Stalking Horse Bidder as set forth in the Asset Purchase Agreement; the Court shall not consider any competing or alternative offers or proposals to purchase any of the Debtors' assets (unless consented to by the Debtors), nor shall the Court consider any objections to the Motion that are based on the existence or potential for other or different offers or proposals to purchase the Debtors' assets.

(7)     Upon approval by the Court of a Winning Bidder other than the Stalking Horse Bidder, the Bid Deposit of such Winning Bidder shall become non-refundable if the Modified Agreement of such Winning Bidder is thereafter terminated by the Debtors as a result of a breach by the Winning Bidder of its obligations thereunder. If the Back-Up Bidder is a Qualified Bidder other than the Stalking Horse Bidder, then the Bid Deposit of the Back-Up Bidder shall remain on deposit in the Segregated Account pending the Closing Date (as defined below), and such deposit shall become non-refundable if the Back-Up Bidder becomes the proposed Winning Bidder and its Modified Agreement is thereafter terminated by the Debtors as a result of a breach by such Back-Up Bidder. If a dispute arises over whether a Bid Deposit is refundable or non-refundable, the Bid Deposit shall remain in the Segregated Account pending a determination of the dispute by the Court or written agreement of the parties.

(8)     If the Stalking Horse Bidder becomes the Winning Bidder, but the Asset Purchase Agreement is terminated pursuant to its terms by the Debtors as a result of a breach by the Stalking Horse Bidder of its obligations thereunder, the Stalking Horse Bidder shall forfeit the Deposit (as defined in the Asset Purchase Agreement). If a Qualified Bidder other than the Stalking Horse Bidder becomes the proposed Winning Bidder, but the Modified Agreement of such bidder is terminated pursuant to its terms by the Debtors, as a result of a breach by the proposed Winning Bidder of any of its obligations thereunder, such bidder shall forfeit its Bid Deposit. In either case, the forfeiture of the Deposit or the Bid Deposit, as the case may be, shall constitute liquidated damages and the Debtors and their bankruptcy estates shall retain no other

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

rights, remedies, claims, counterclaims and defenses against the Stalking Horse Bidder or such other Qualified Bidder, as applicable.

(9)    If Qualified Bids have been submitted by more than one Qualified Bidder, the Qualified Bidder that makes the next-highest and/or best Qualified Bid to that of the proposed Winning Bidder shall become the back-up bidder (the "**Back-Up Bidder**") and such Back-Up Bidder's final and highest and/or best Qualified Bid (the "**Back-Up Bid**") shall remain open and irrevocable in accordance with the terms of the Asset Purchase Agreement or the Modified Agreement, as applicable, pending the closing of the Winning Bid (the "**Closing Date**"). (If a bid of the Stalking Horse Bidder is the next-highest and/or best bid to that of the proposed Winning Bidder, then the Stalking Horse Bidder shall have the option but not the obligation to have the Stalking Horse Bid treated as the Back-Up Bid.) If the transaction with the Winning Bidder does not close prior to the Closing Date (as such date may be extended pursuant to the Bid Procedures Order), then the Back-Up Bid shall upon notice to the Back-Up Bidder by the Debtors (after consultation with the Committee) be deemed the Winning Bid without further order of the Court, and the Back-Up Bidder shall be required to consummate the transaction in accordance with the Asset Purchase Agreement or Modified Agreement, as applicable. If the Stalking Horse Bidder is not the Winning Bidder or the Back-Up Bidder, the Stalking Horse Bidder shall nonetheless have the right, but not the obligation, to keep its bid open pending the Closing Date.

(10)   The Debtors, and in consultation with the Committee, may grant any proposed Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

(11)   The Debtors and their advisors shall reasonably consult regularly with the Committee and its advisors on all material aspects of the sale process described in this Order and all material decisions and documents contemplated herein, including, without limitation, all instances in which such parties have express consultation rights as set forth herein. The Debtors shall have the discretion, in consultation with the Committee and its advisors, to modify, supplement, amend, or waive the procedures set forth herein if necessary to maximize the value of the estates and otherwise comply with the Debtors' fiduciary obligations.

The Debtors request that the Court schedule a hearing on or about **September 25, 2015** (the "**Sale Hearing**") to consider the approval of the sale to the Winning Bidder and the Back-Up Bidder, if necessary, and to confirm the results of the Auction, if applicable. The Debtors propose that objections to the sale and the assumption and assignment of leases and contracts be filed and served by **September 15, 2015 at 5:00 p.m. (Prevailing Arizona Time)**, provided, however, that to the extent the proposed Winning Bidder at the Auction is a bidder other than the Stalking Horse Bidder, any supplemental or further objections to the sale to the proposed Winning Bidder based solely on such alternative Winning Bidder's adequate assurance of future performance shall be filed by no later than **September 21, 2015 at 12:00 p.m. (Prevailing Arizona Time)**. The Debtors' deadline to reply to objections will be **September 22, 2015 at 12:00 (Prevailing Arizona Time)**.

**C.**      **Proposed Bid Protections**

The payment of the Break-Up Fee (defined below) shall only occur under the following conditions: (a) if and solely to the extent that the Bankruptcy Court enters an order approving such terms and conditions, or such other order as shall be entered approving the allowance and payment of the Break-Up Fee (it being understood and agreed that the consummation of the transactions contemplated by the APA shall be conditioned upon the approval by the Bankruptcy Court), (b) if there is a closing of a transaction involving the sale (in a single transaction or a series of transactions) of all or substantially all of the Purchased Assets to any person other than Stalking Horse Bidder or a designee of such (an "*Alternative Transaction*"), and (c) the Stalking Horse Bidder is not otherwise in material breach of this APA. If the conditions set forth in Section 12 of the APA are satisfied, then the Debtors will pay the Stalking Horse Bidder, exclusively out of the proceeds of the Alternate Transaction, a break-up fee equal to four percent (4%) of the Purchase Price ($149,089), which shall be inclusive of any expenses incurred by in preserving the going concern value of the Purchased Assets used by the Debtors (the "**Break-Up Fee**").

Payment of the Break-Up Fee pursuant to the APA and Motion will be subject to the closing of the Alternative Transaction and paid from sale proceeds within five (5) business days of the closing of the Alternative Transaction.  The Debtors will use their reasonable commercial efforts to seek approval of the Break-Up Fee by the Court, and shall not object to, encourage or cooperate in any way with other parties in interest in objecting to, the approval, allowance or payment of the Break-Up Fee.  Except in the case of fraud or intentional misconduct by any Debtor, the Stalking Horse Bidder's right to receive payment of the Break-Up Fee from the Debtors as herein provided will be the sole and exclusive remedy available to the Stalking Horse Bidder against the Debtors or any of its former, current or future shareholders, directors, officers, affiliates or agents with respect to the APA and the transactions contemplated thereby in the event that the APA is terminated pursuant to the terms set forth therein, and upon payment of the Break-Up Fee in circumstances described herein, neither the Debtors nor any of their former, current or future shareholders, directors, officers, affiliates or agents shall have any further liability or obligation relating to or arising out of the APA or the transactions contemplated hereby.

13

The following chart summarizes the Debtors' proposed timetable for the sale, which is incorporated in the Bid Procedures Order:

| DESCRIPTION OF MILESTONE / DEADLINE | DATE |
|---|---|
| Bid Procedures Hearing | **August 10**, 2015 |
| Serve Sale, Cure Notices | Within three (3) business days after entry of Bid Procedures Order |
| • Deadline to Object to Sale / Cure / Adequate Assurance of Stalking Horse<br>• Deadline to Submit Competing Bids | **September 15**, 2015 |
| Auction, if necessary | **September 17**, 2015 at 10:00 a.m. |
| Deadline to Object to Adequate Assurance of Overbidder | **September 21**, 2015 at 12:00 p.m. |
| Deadline to Reply to Sale Objections | **September 22**, 2015 at 12:00 p.m. |
| Sale Hearing | **September 25**, 2015 at _____ |

## IV.

## ARGUMENT

**A.      The Proposed Sale of the Purchased Assets Should Be Approved Under Section 363(b) of the Bankruptcy Code**

A debtor, after notice and a hearing, may use, sell, or lease property, other than in the ordinary course of business.  11 U.S.C. § 363(b)(1).  A debtor's application of its sound business judgment in the use, sale, or lease of property is subject to great judicial deference.  *See, e.g., In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990); *In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985); *see also Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . whether the proffered business justification is sufficient depends on the facts of the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.").

In interpreting section 363(b)(1) of the Bankruptcy Code, courts have held that a transaction involving property of the estate generally should be approved where the debtor or trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside the ordinary course of business."  *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.

14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   1986); *accord In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Walter*, 83 B.R. at 19-20; *In*

2   *re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *Meyers v. Martin (In re*

3   *Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (approval where a sound business purpose exists).  Among

4   other factors, courts should consider the consideration to be paid, the financial condition and needs

5   of the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be

6   sold would decline in value if left in the debtor's possession.  *See Equity Funding Corp. of Am. v.*

7   *Fin. Assocs. (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's

8   finding that the proposed sale of the debtor's assets would be in the best interest of the estate in light

9   of impending deterioration of market value of debtor's assets).

10          It is the Debtors' business judgment that, after considering potential alternatives, the

11  proposed Sale of the Purchased Assets is in the best interest of the Debtors, their estates, and their

12  creditors and stakeholders.  The proposed Sale will preserve the going concern value of the Debtors'

13  restaurant business.  Additionally, the Debtors believe that the consideration to be paid by the

14  Purchaser represents a fair and reasonable offer in light of all the terms of the proposed Sale, and as

15  a result of the Debtors' continuing postpetition marketing efforts, such offer (or any higher and

16  better offer obtained through the proposed Bid Procedures and Auction) will provide maximum

17  value to the Debtors under the current circumstances.

18          Overall, the proposed Sale's benefits greatly exceed those of any piecemeal liquidation.  The

19  proposed Sale is supported by sound business reasons and is in the best interests of the Debtors and

20  their Estates.

21  **B.      The Proposed Bid Procedures and Protections Are Reasonable and**
        **Appropriate and Will Facilitate Maximizing the Value of the Purchased Assets**

22

23          In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course

24  of business may be by private sale or by auction.  The Debtors have obtained a stalking horse  bid

25  from the Purchaser for the Purchased Assets, and seek authority to conduct the Auction (if

26  applicable) at which the Purchaser's bid will be subjected to higher and/or better offers.  The Bid

27  Procedures described herein are reasonably calculated to encourage a buyer to submit a bid within

28  the range of reasonably anticipated values and to maximize the value of the Purchased Assets for the

DOCS_SF:83773.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

benefit of the Debtors' estates. There is no provision for expense reimbursement or break-up compensation payable to the Purchaser under the APA, making the agreement particularly favorable for overbidding.

The Stalking Horse Bidder will be the stalking horse for competitive bids, potentially leading to further competition and the establishment of a baseline against which higher and/or otherwise better offers can be measured. The Debtors, with the assistance of their professionals, will further solicit proposals for the purchase of the Purchased Assets prior to the proposed bid deadline, and based on the Debtors' efforts, the Debtors will have more than sufficiently marketed the Purchased Assets prior to the Sale Hearing. The Bid Procedures are designed to maximize the purchase price that should be realized from the sale of the Purchased Assets. Hence, the Debtors submit that good cause exists to approve such procedures and provisions because they are fair and reasonable under the circumstances and will encourage competitive bidding and the highest and best price for the Purchased Assets.

Courts frequently approve competitive bidding procedures like the proposed Bid Procedures as a means of ensuring that such sales will maximize value for the estate. *See, e.g., Doehring v. Crown Corp. (In re Crown Corp.),* 679 F.2d 774, 775 (9th Cir. 1982) (district court required specific minimum overbid amounts, deposits, and comparable deal terms to be used by all overbidders); *In re Victor Valley Community Hospital*, Case No. 10-39537 (Bankr. C.D. Cal. Oct. 7, 2010) (J. Bauer) (order approving qualified bidder, overbidding and other sale/auction procedures); *In re Barbecues Galore, Inc.*, Case No. 08-16036-MT (Bankr. C.D.Cal. Sept. 4, 2008) (J. Tighe) (similar).

The Debtors believe that the agreement to pay the Break-Up Fees on the terms of the APA is necessary to induce the Stalking Horse Bidder to enter into the transactions encompassed by the APA and thus to enable the Debtors to obtain the highest and best possible price for the Purchased Assets.

Bidding protections such as the Break-Up Fees proposed herein encourage a potential purchaser to invest the requisite time, money and effort to negotiate with the Debtors and perform the necessary due diligence attendant to the acquisition of the Debtors' assets, despite the inherent risks and uncertainties of the chapter 11 process. Historically, bankruptcy courts have approved

16

bidding protections similar to the Break-Up Fee, under the "business judgment rule," which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See, e.g., In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (internal quotation marks and citation omitted).

In *Calpine Corp. v. O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999), the court held that even though bidding incentives are measured against a business judgment standard in nonbankruptcy transactions, the administrative expense provisions of section 503(b) of the Bankruptcy Code govern in the bankruptcy context. Accordingly, to be approved, bidding incentives must provide some benefit to the Debtors' estates. *Id.* at 533.

In *O'Brien*, the court identified at least two instances in which bidding incentives may provide benefit to an estate. First, benefit may be found if "assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *Id.* at 537. Second, where the availability of bidding incentives induces a bidder to research the value a debtor's assets and submit a bid that serves as a minimum or floor bid on which other bidders can rely, "the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth." *Id.*

Whether evaluated under the "business judgment rule" or the Third Circuit's "administrative expense" standard, the Break-Up Fees pass muster. The APAs and the Debtors' agreement to pay the Break-Up Fees pursuant to the terms thereunder are the product of good faith, arm's-length negotiations between the Debtors and the Stalking Horse Bidder. The Break-Up Fees are fair and reasonable in amount, and are reasonably intended to compensate for the risk to the Stalking Horse Bidder of being used as a stalking horse bidder.

Further, the Break-Up Fees have already encouraged competitive bidding in that the Stalking Horse Bidder would not have entered into the respective APAs without these provisions. The Break-Up Fees thus have "induc[ed] a bid that otherwise would not have been made and without which

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

bidding would [be] limited." *O'Brien*, 181 F.3d at 537. Similarly, the Stalking Horse Bidder's offer provides a minimum bid on which other bidders can rely, thereby "increasing the likelihood that the price at which the [Property will be] sold will reflect [its] true worth." *Id*.

Finally, the Bidding Procedures are fair and reasonable procedures reasonably intended to encourage competitive bidding, and the Break-Up Fees will permit the Debtors to insist that competing bids for the Acquired Assets, made in accordance with the Bidding Procedures, be materially higher or otherwise better than the applicable APA (or competing agreement), which is a clear benefit to the Debtors' estates.

For the reasons set forth above, the Debtors respectfully request approval of: (a) the Bid Procedures for the conduct of overbidding, the Auction, and selection of the Successful Bidder(s); (b) the bid protections, (c) the procedures set forth herein for notice to counterparties under contracts and leases proposed to be assumed, assigned and sold in connection with the proposed Sale, and the determination and payment of applicable Cure Costs; (d) the scheduling of the Sale Hearing and other matters for which scheduling is requested; and (e) the related relief sought hereby.

## C. The Sale of the Purchased Assets Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. §§ 363(f) and (k) Should Be Approved

The Debtors request that the Court approve the sale of the Purchased Assets free and clear of all liens, claims, encumbrances and interests (collectively, "**Interests**"), except as set forth in the APA, with any such Interests to attach to the sale proceeds with the same validity, enforceability, and priority, if any, as existed with respect to the Purchased Assets as of the date of the commencement of these chapter 11 cases.

Section 363(f) of the Bankruptcy Code expressly authorizes a debtor to sell property outside the ordinary course of business "free and clear of any interest in such property of an entity" if any one of the five following conditions is met:

1. applicable non-bankruptcy law permits sale of such property free and clear of such interest;

2. such entity consents;

3. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4.       such interest is in bona fide dispute; or

5.       such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is written in the disjunctive, any one of these five conditions provides authority to sell the Purchased Assets free and clear of liens. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988).

Under section 363(f)(2) of the Bankruptcy Code, a debtor may sell estate property free and clear of liens, claims, interests, and encumbrances if the entity asserting the interest consents. Under section 363(f)(3) of the Bankruptcy Code, a debtor may sell estate property free and clear of liens, claims, interests, and encumbrances if the price is sufficient to satisfy the liens securing the claim.

Further, to the extent that any other party asserting an Interest receives notice of the Motion and does not file a written objection hereto, such party should be deemed to have consented to the proposed Sale of the Purchased Assets free and clear of its asserted Interest(s). *See In re Channel One Communications, Inc.,* 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).

In all events, the Debtors submit that every other Interest that is not a liability assumed by Purchaser will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being assumed or paid at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto. The Debtors have conducted a search of purported holders of liens against the Purchased Assets in conjunction with the proposed Sale. The Debtors have served or will serve such purported lienholders with notice of the Motion, and will serve notice of any Sale order approving the relief requested by the Motion.

The Debtors submit that both of the above referenced prongs of section 363(f) of Bankruptcy Code apply in this case. Because the Purchaser's stalking horse bid has the support of the First Lien Lenders and will be used to pay down such claims at a discount and pay the claims of CEF in full.

In sum, this Court should approve the Sale of the Purchased Assets to the Purchaser or the Successful Bidder free and clear of Interests under Bankruptcy Code sections 363(f) and (k), except as set forth in the APA.

19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## D. The Debtors Should Be Authorized to Assume, Assign and Sell the Purchased Contracts to the Purchaser

Pursuant to the APA, the Purchaser shall designate certain contracts and leases of the Debtors ("**Purchased Contracts**"), to be selected for assumption by the Debtors and assignment and sale to the Purchaser as part of the Sale. The Debtors will file and serve on the affected non-debtor counterparties ("**Counterparties**") a schedule of Purchased Contracts and proposed cure amounts, if any (the "**Notice of Assumption, Assignment and Sale**"), by no later than three (3) business days following entry of the Bid Procedures Order, and Counterparties will have an opportunity to object to such proposed assumption and/or cure amounts as provided in the Bid Procedures Order. The Notice of Assumption, Assignment and Sale will include a statement that certain of the Contracts listed therein may be designated as "Designation Right Assets" under the Asset Purchase Agreement (or Modified Agreement) and thereafter rejected or assumed, assigned and sold at a date subsequent to the Closing Date.

The Debtors request, pursuant to sections 363 and 365 of the Bankruptcy Code, authority to assume, assign and sell the estates' interests in the Purchased Contracts to the Purchaser (or successful bidder), subject to payment of the cure amount designated for each such Designated Contract on the Notice of Assumption, Assignment and Sale and any adequate assurance of future performance which the Court may order Purchaser to provide upon the request of a party in interest. The Debtors further request that the order approving the proposed Sale provides that the Purchased Contracts will be assigned and sold to, and remain in full force and effect for the benefit of, Purchaser, notwithstanding any provisions therein, including those described in sections 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assignment.

The Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

20

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

11 U.S.C. § 365(f)(2). A debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing in relevant part that:

> (b)(1)  If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
>  (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default ….;
>
>  (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
>  (C)  provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a decision to assume an executory contract, courts have consistently applied a "business judgment" test when reviewing such a decision. *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S. 523, 550 (1953); *In re Talco, Inc.*, 558 F.2d 1369, 1173 (10th Cir. 1977). A trustee satisfies the "business judgment" test when he or she determines, in good faith, that assumption of an executory contract will benefit the estate. *In re FCX, Inc.*, 60 B.R. 405, 411 (Bankr. E.D.N.Y. 1986). Here, the assumption and assignment of the Purchased Contracts as part of the Sale will yield substantial benefits by minimizing unsecured claims that would arise if such contracts were rejected.

Assignees must, under appropriate circumstances, "cure" defaults under contracts to be assigned and provide "adequate assurance of future performance," the meaning of which depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989*). See also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985). Here, the Purchaser will promptly pay any valid cure amounts for contracts it selects. Further, information regarding the

21

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    Purchaser's adequate assurance of future performance will be available upon request by parties to

2    potential Purchased Contracts.

3        In addition, one or more of the Contracts listed on the Notice of Assumption, Assignment

4    and Sale may be designated as a Designation Rights Asset at the Closing of the asset purchase

5    agreement submitted by the Winning Bidder (including the Stalking Horse Bidder) and in such case

6    may be assumed by the Debtors and assigned and sold to the designated Person, if it makes a written

7    election to accept an assignment of such Contract within the time frame provided in the Winning

8    Bidder's (including the Stalking Horse Bidder's) asset purchase agreement.  Notices of all

9    Designation Rights Assets sold (or to be sold) to the Winning Bidder will be filed with the Court no

10   later than five (5) business days following the expiration of the Designation Rights Period

11       With these safeguards in place, assumption, assignment and sale of the Purchased Contracts

12   is appropriate and should be approved.

13   **E.    The Purchaser Acted in Good Faith in Connection With the Proposed
         Sale and is Therefore Entitled to the Protections of 11 U.S.C. § 363(m)**

14

15       The reversal or modification on appeal of an authorization of a sale or lease of property under

16   section 363 of the Bankruptcy Code does not affect the validity of a sale or lease under such

17   authorization to an entity that purchased or leased such property in good faith, whether or not such

18   entity knew of the pendency of the appeal, unless such authorization and such sale or lease were

19   stayed pending appeal.  11 U.S.C. § 363(m).  While the Bankruptcy Code does not define "good

20   faith," one court has held:

21               [t]he requirement that a Buyer act in good faith . .  speaks to the
                 integrity of his conduct in the course of the sale proceedings.
22               Typically, the misconduct that would destroy a Buyer's good faith
                 status at a judicial sale involves fraud, collusion between the Buyer
23               and other bidders or the trustee, or an attempt to take grossly unfair
                 advantage of other bidders.
24

25   *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted).

26       The proposed Sale was negotiated in good faith, at arm's length and without collusion or

27   fraud of any kind.  Further, all of the material terms of the Sale have been fully disclosed.

28   Accordingly, this Court should find that Purchaser acted in good faith within the meaning of section

22

363(m) of the Bankruptcy Code.[4]  *See generally Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570 (9th Cir. 1998); *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992); *Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*, 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that to show lack of good faith, a party must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sassoon Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

Notwithstanding the foregoing, the Debtors shall present evidence, as necessary, prior to or at the Sale Hearing relating to the Purchaser's good faith.

**F.    The Sale Complies with the Consumer Privacy
        Requirements of Section 363(b)(1) of the Bankruptcy Code**

Pursuant to section 363(b)(1) of the Bankruptcy Code, the Debtors may not sell personally identifiable information if the Debtors, in connection with offering their products or services, have a policy prohibiting the transfer of such information and if such policy is in effect on the date of the commencement of the case, unless:

> a.  such sale is consistent with such policy, or
>
> b.  after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease —
>
> (i)  giving due consideration to the facts, circumstances and conditions of such sale or such lease; and
>
> (ii)  finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

11 U.S.C. § 363(b)(1).

As of the Petition Date, the Debtors' privacy policy provided, among other things, that:

---

[4]  If a party other than Purchaser is the Successful Bidder, the Debtors intend to make an appropriate showing at the Sale Hearing that the purchase agreement with the other Successful Bidder is a negotiated, arm's length transaction, in which the Successful Bidder at all times has acted in good faith under and otherwise in accordance with the standards set forth above.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

23

DOCS_SF:83773.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

> [E Bar] may acquire other businesses, and another company may acquire [E Bar] or substantially all of its assets such as through a merger, consolidation, acquisition, or asset purchase. If that occurs, the Data we collect may be one of the assets examined or transferred as part of the transaction. We will not permit another business to examine the Data we have collected without a confidentiality agreement. We will not transfer the Data we have collected unless the acquirer of all or substantially all of [E Bar's] assets agrees to provide the same or substantially similar privacy protections as those established by this privacy policy. So long as the acquirer of all or substantially all of [E Bar's] assets agrees to be bound by the same or substantially similar privacy protections as those established by this privacy policy, we may transfer such Data without any restrictions or conditions of any kind.

In addition, the APA specifically provides that the Purchaser shall honor and observe any and all policies of the Debtors in effect on the Petition Date prohibiting the transfer of personally identifiable information about individuals and otherwise comply with the requirements of section 363(b)(1)(A) of the Bankruptcy Code. *See* APA, at § 8.3.

As a result, the Debtors submit that pursuant to its privacy policy in existence on the Petition Date, they may transfer their personally identifiable information to a Purchaser that agrees to the foregoing provision in the APA without the need for a consumer privacy ombudsman to be appointed.

**G.     Notice of the Proposed Sale and Related
Matters Is Reasonable Under the Circumstances**

By no later than three (3) business days following entry of the Bid Procedures Order, the Debtors will serve notice by U.S. or international mail of the sale (the "**Sale Notice**"), substantially in the form attached as **Exhibit D** hereto, upon (a) the Office of the United States Trustee, (b) the creditors appearing on the list filed in accordance with Fed. R. Bankr. P. 1007(d) by the Debtors unless and until a Committee is appointed, then in that event, to counsel to the Committee; (c) the First Lien Lender; (d) counsel for the Purchaser; (e) the parties that file with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002; (f) all entities known to the Debtors to have asserted any liens or other interests in any Purchased Assets; (g) all federal, state, and local regulatory, taxing and other authorities which have a reasonably known interest in the relief requested by the Motion, including the United States Attorney's office, all state attorneys general in

24

states in which the Debtors, and the Internal Revenue Service; and (h) all of the Debtors' known creditors and all other known dealers, vendors, suppliers, lenders, contract/license/lease counterparties.

Further, as provided in the Bid Procedures Order and by no later than three (3) business days following entry of the Bid Procedures Order, the Debtors will serve by U.S. or international mail the Notice of Assumption, Assignment and Sale, substantially in the form attached as **Exhibit E** hereto, on the non-debtor counterparties to Purchased Contracts that may be assumed, assigned and sold as part of the Sale transaction.

Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify their creditors of the proposed Sale, disclosure of the time and place of the Auction, the terms and conditions of the Sale, and the deadline for filing any objections thereto. The notices prepared by the Debtors contain the type of information required under Bankruptcy Rule 2002, and other relevant information. This information will enable interested parties to participate in the Sale process, the Auction and the Sale Hearing if they so choose. Thus, the Debtors submit that adequate notice of the Motion and the Sale Hearing has been and will be provided. *See, e.g., In re Delaware & Hudson Ry.*, 124 B.R. 169, 180 (Bankr. D. Del. 1991) (the disclosures necessary in a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

**H.** **Request for Waivers of Stay Under Bankruptcy Rules 6004(h) and Rule 6006(d)**

To allow the immediate realization of value from the proposed Sale, the Debtors respectfully request that any orders on the Motion be effective immediately, notwithstanding the fourteen-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

As the Debtors expressed above, their goal is to efficiently and expeditiously administer the estates' financial and business affairs. An expedient conclusion to the Sale process will inure to the benefit of the estates and their creditors. Waiver of any stay will permit the proposed Sale to take place as early as possible under the circumstances.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**CONCLUSION**

For all the foregoing reasons, the Debtors respectfully request that this Court enter an order: (i) granting the Motion; (ii) approving the Bid Procedures as set forth in the Bid Procedures Order; (iii) approving the APA and the Sale of the Purchased Assets to Purchaser (or other Successful Bidder or Back-Up Bidder), free and clear of all liens, claims, encumbrances and interests, subject to the bidding/auction process proposed by the Debtors; (iv) authorizing the assumption, assignment and sale of the Purchased Contracts; and (v) granting such other and further relief as is just and proper under the circumstances.

Dated:    July 22, 2015         NUSSBAUM GILLIS & DINNER, P.C.


By:*/s/ Randy Nussbaum*
         Randy Nussbaum
         Dean Dinner
         John Parzych
         Nussbaum Gillis & Dinner, P.C.
         14850 N. Scottsdale Road, Suite 450
         Scottsdale, AZ 85254
         Telephone: (480) 609-0011
         Facsimile:  (480) 609-0016
         Email:   rnussbaum@ngdlaw.com
                    ddinner@ngdlaw.com
                    jparzych@ngdlaw.com

         and

         John W. Lucas
         Jason H. Rosell
         PACHULSKI STANG ZIEHL & JONES LLP
         150 California Street, 15th Floor
         San Francisco, CA 94111
         Telephone: (415) 263-7000
         Facsimile:  (415) 263-7010
         E-mail:     jlucas@pszjlaw.com
                       jrosell@pszjlaw.com

         Proposed Counsel for Debtors and Debtors in Possession

DOCS_SF:83773.2

Case 2:15-bk-09178-PS    Doc 13    Filed 07/22/15    Entered 07/22/15 21:32:12    Desc
Main Document    Page 33 of 79

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# EXHIBIT A

**(Bid Procedures Order)**

DOCS_SF:87773.2

| | |
|---|---|
| 1 | John W. Lucas (CA Bar No. 271038) |
| | Jason H. Rosell (CA Bar No. 269126) |
| 2 | PACHULSKI STANG ZIEHL & JONES LLP |
| | 150 California Street, 15th Floor |

1  John W. Lucas (CA Bar No. 271038)          Randy Nussbaum (AZ Bar No. 6417)
   Jason H. Rosell (CA Bar No. 269126)        Dean M. Dinner (AZ Bar No. 10216)
2  PACHULSKI STANG ZIEHL & JONES LLP          John Parzych (AZ Bar No. 26079)
   150 California Street, 15th Floor          Nussbaum Gillis & Dinner, P.C.
3  San Francisco, CA 94111                    14850 N. Scottsdale Road, Suite 450
   Telephone: (415) 263-7000                  Scottsdale, AZ 85254
4  Facsimile: (415) 263-7010                  Telephone: (480) 609-0011
   E-mail:  jlucas@pszjlaw.com                Facsimile: (480) 609-0016
5           jrosell@pszjlaw.com               Email: rnussbaum@ngdlaw.com
                                                     ddinner@ngdlaw.com
6  Proposed Counsel for Debtors and Debtors in       jparzych@ngdlaw.com
   Possession

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                     **FOR THE DISTRICT OF ARIZONA**

10

11  In re:

12  Z'Tejas Scottsdale, LLC, et al.,                  Case No.: 2:15-bk-_____

13                              Debtors.               Chapter 11

14  Joint Administration Pending With:                Joint Administration Pending With Case Nos.:

15  Z'Tejas 6th Street, LLC                           2:15-bk-_____
    Z'Tejas Avery Ranch, LLC                          2:15-bk-_____
16  Z'Tejas Bellevue, LLC                             2:15-bk-_____
    Z'Tejas Bethany Home LLC                          2:15-bk-_____
17  Z'Tejas Chandler, LLC                             2:15-bk-_____
    Z'Tejas Costa Mesa, LLC                           2:15-bk-_____
18  Z'Tejas GP, LLC                                   2:15-bk-_____
    Z'Tejas Grill Gateway, L.L.C.                     2:15-bk-_____
19  Z'Tejas Holdings, Inc.                            2:15-bk-_____
    Z'Tejas, Inc.                                     2:15-bk-_____
20  Z'Tejas La Cantera, LLC                           2:15-bk-_____
    Z'Tejas LP, LLC                                   2:15-bk-_____
21  Z'Tejas of Arboretum, LLC                         2:15-bk-_____
    Z'Tejas Restaurant Holdings, LP                   2:15-bk-_____
22  Z'Tejas Salt Lake City, LLC                       2:15-bk-_____
    Z'Tejas Summerlin, LLC                            2:15-bk-_____
23  Z'Tejas Tempe, LLC                                2:15-bk-_____
    Taco Guild Osborn LLC                             2:15-bk-_____

24  This Pleading applies to:

25       ☑   All Debtors              **ORDER: (1) APPROVING OVERBID AND**
         ☐   Specified Debtors        **SALE PROCEDURES, (2) APPROVING**
26                                    **ASSUMPTION, ASSIGNMENT AND SALE**
                                      **PROCEDURES AND RELATED NOTICES,**
27                                    **(3) SCHEDULING THE SALE HEARING,**
                                      **AND (4) GRANTING RELATED RELIEF**

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

The Court having considered the *Motion Requesting (A) the Scheduling of an Auction and Sale Hearing in Connection with the Sale of Substantially All the Debtors' Assets, (B) Approval of Bidding Procedures for Such Assets, (C) Approval of Purchase Agreement with Stalking Horse Bidder, (D) Approval of the Form and Scope of Notice of Auction and Sale Hearing, (E) Approval of Procedures for the Assumption, Assignment and Sale of Contracts and Leases to the Purchaser, and (F) Approval of Sale of the Debtors' Assets to the Purchaser* (the "**Motion**")[1] filed by Z'Tejas Scottsdale, LLC, the debtors and debtors in possession in the above-captioned cases (the "**Debtors**"), any responsive pleadings filed in connection with the Motion, the record in the above-captioned cases, and the representations of counsel at the hearing on the Motion held on August 10, 2015 (the "**Hearing**"); and the Court having determined that notice of the Motion was adequate and sufficient; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9008, 9014 and 9019.  Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The relief granted herein is in the best interests of the Debtors, their estates, their stakeholders, and all other parties in interest.

C.    The notice of the Motion and the Hearing given by the Debtors constitutes due and sufficient notice thereof.

D.    The Debtors have articulated good and sufficient reasons for the Court to (i) approve the dates, deadlines and procedures set forth herein in respect of the sale of substantially all of the Debtors' assets (the "**Bid Procedures**") pursuant to the terms of that certain Asset Purchase Agreement ("**Asset Purchase Agreement**") dated as of July 22, 2015, attached as Exhibit B to the

---

[1]  Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Asset Purchase Agreement (as defined below).

DOCS_SF:87723.3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Motion, between the Debtors and the Buyer identified therein (the "**Stalking Horse Bidder**"), (ii) approve the form and manner of notice of the Motion, the Auction, the Sale Hearing, and the assumption, assignment and sale of the Contracts designated pursuant to the Asset Purchase Agreement as Purchased Contracts, and (iii) set the date of the Auction and the Sale Hearing.

     E.     The Bid Procedures are reasonable and appropriate and represent a fair and appropriate method for maximizing the realizable value of the Debtors' assets.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

     1.     The Motion is GRANTED.

     2.     Any objections filed in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein or at the Hearing, are hereby overruled.

     3.     The Asset Purchase Agreement and the transactions contemplated thereby (collectively, the "**Sale Transaction**") is hereby designated as the "**Stalking Horse Bid**."

     4.     The Debtors, in consultation with their investment banker, shall contact parties the Debtors believe may potentially be willing, qualified, and financially able to consummate a purchase of substantially all of the Debtors' assets. The Debtors may distribute an information package to any such parties with such materials as the Debtors deem appropriate under the circumstances including, but not limited to, preliminary "teaser" information.

     5.     Upon execution of a non-disclosure agreement in favor of the Debtors by any person identified by the Debtors, with the assistance of their investment banker, as reasonably likely to be a Qualified Bidder (as defined below) that wishes to conduct due diligence regarding the Debtors or their assets with respect to a potential overbid may be granted access to due diligence information that has been or will be provided to the Stalking Horse Bidder. For any person or entity that is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold or limit any diligence materials that the Debtors, in their discretion after consultation with the official committee of unsecured creditors appointed in these chapter 11 cases (the "**Committee**"), determine are business-sensitive or otherwise not appropriate for disclosure to such person or entity.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2

6.     Any prospective bidder other than the Stalking Horse Bidder (each a "**Potential Bidder**") that wishes to participate in the bidding process for substantially all of the Debtors' assets must, no later than **September 15, 2015 (i.e., two (2) days prior to the Auction) at 4:00 p.m. (Prevailing Arizona Time)** (the "**Bid Deadline**"):

a.   Submit to the Debtors and the Committee, through their respective counsel, an offer in the form of an executed asset purchase agreement (including all exhibits and schedules thereto) (the "**Modified Agreement**") without financing or due diligence contingencies, at a price that conforms with the following Paragraph 6.b, and on such other terms that are no less favorable to the Debtors than those contained in the Asset Purchase Agreement executed by the Stalking Horse Bidder. Such bid must be irrevocable through the Sale Hearing, unless the bid is selected as the Winning Bid or the Back-Up Bid (as such terms are defined below) at the Sale Hearing, in which case such bid shall be irrevocable through the closing of the sale to the Winning Bidder or Back-Up Bidder (as such terms are defined below), as the case may be, in accordance with the terms of the Modified Agreement. The Potential Bidder must also submit a "blacklined" or otherwise marked copy of the Modified Agreement reflecting the differences between the Modified Agreement and the Asset Purchase Agreement executed by the Stalking Horse Bidder.

b.   Agree in such Modified Agreement to a purchase price that provides for the following: (i) assumption of all the Assumed Liabilities (as defined in in section 2.3 of the Asset Purchase Agreement); and (ii) payment in cash at closing in an initial minimum amount equal to the sum of at least: (1) $3,727,324, plus (2) amount of the break-up fee and expense reimbursement of $149,089, plus (3) an overbid amount of $150,000.

c.   Make a good faith cash deposit in the form of a cashier's check or wire transfer, in an amount not less than 10% of the Purchase Price ($392,640) (the "**Bid Deposit**") into a segregated, interest-bearing escrow account (the "**Segregated**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**Account**") that shall be opened by the Debtors for this purpose. The Bid Deposit shall immediately become non-refundable (subject to the next sentence and the terms of the Modified Agreement), and will be credited toward the purchase consideration if and when the transaction with the Potential Bidder making such deposit is approved by the Court as the winning bid (the "**Winning Bid**" and the "**Winning Bidder**") at the Sale Hearing and such transaction is closed in accordance with the terms of the Modified Agreement. If a Potential Bidder's bid is not designated as a Qualified Bid (as defined below), or such bid is not approved as the Winning Bid or the Back-Up Bid at the Sale Hearing, the Bid Deposit of such bidder, plus accrued interest, if any, will be returned to such bidder within three (3) business days after the conclusion of the Sale Hearing.

d.  Provide written evidence reasonably satisfactory to the Debtors and the Committee of (A) its financial ability to (i) fully and timely perform all obligations under the Modified Agreement if it is declared to be the Winning Bidder, and (ii) provide Adequate Assurance Information (defined below) for all contracts and leases to be assigned to it and (B) its qualification to own the assets and operate the businesses that are the subject of the Modified Agreement in compliance with all applicable federal, state and local laws, which information in the foregoing items (A) and (B) shall be provided by the Debtors, within one (1) business day after the Debtors' receipt of such information, to the contract counterparties, and to the extent that any such information is designated as confidential by the Potential Bidder, then any contract counterparty receiving such information shall maintain the confidentiality of such information.

e.  The Adequate Assurance Information shall include the information required under section 365 of the Bankruptcy Code and the following:

    i.  The exact legal name of the Potential Bidder, the entity that would take assignment of any non-residential real property leases, and any entities

4

that may provide guaranties or other security in connection with the
assignment of the any non-residential real property leases;

    ii.   A description of the Potential Bidder's experience in operating restaurants
generally or specifically the type of restaurants operated by the Debtors;

    iii.  The number of restaurants the Potential Bidder operates and all trade
names that the Potential Bidder uses; and

    iv.  A statement setting forth the Potential Bidder's intended use of the
premises leased pursuant to any assigned non-residential real property
leases (collectively, i-iv, the "**Adequate Assurance Information**").

    f.   Disclose any connections or agreements with the Debtors, the Stalking Horse
Bidder, any other known Potential Bidder or Qualified Bidder (as defined below),
and/or any officer, director or direct or indirect equity security holder of the
Debtors.

    7.     If a Potential Bidder complies with all the requirements described in paragraph 6
above (including the Bid Deposit) by the Bid Deadline, the Debtors, in reasonable consultation with
the Committee, will determine whether (i) the Potential Bidder has demonstrated the legal
qualification and financial ability to consummate the proposed transaction, (ii) is reasonably likely to
be able to and willing to consummate the contemplated transactions and (iii) has otherwise satisfied
all of the requirements described in paragraph 6, above.  If so, the Debtors shall designate the
Potential Bidder as a "**Qualified Bidder**" and such bid as a "**Qualified Bid**."  The Debtors shall (a)
promptly notify the Stalking Horse Bidder of the identity of any other Qualified Bidder and (b)
provide the applicable counterparties subject to the Assumption, Assignment, Sale and Cure Notice
with the Qualified Bidder(s)' Adequate Assurance Information with twenty-four hours after such
bidder's qualification to the extent such information was not already provided by the Debtors and
any counterparties receiving such information shall maintain its confidentiality in accordance with
Paragraph 6(d) herein.  For the avoidance of doubt, the Stalking Horse Bidder is deemed to be a
Qualified Bidder and the Stalking Horse Bid is deemed to be a Qualified Bid for all purposes.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

5

8.  If the Debtors receive at least one (1) Qualified Bid from a Qualified Bidder (other than the Stalking Horse Bidder) prior to the Bid Deadline, then the Debtors shall notify the Stalking Horse Bidder and each other Qualified Bidder that the Debtors intend to conduct an auction (the "Auction"), subject to reasonable rules and procedures as may be established by the Debtors, consistent with this Order and in reasonable consultation with the Committee. The Auction to determine the successful bidder for the Purchased Assets shall be held on **September 17, 2015 at 10:00 a.m. (Prevailing Arizona Time)** at the offices of local counsel for the Debtors, **14850 N. Scottsdale Road, Suite 450, Scottsdale, AZ 85254**, or such other place and time designated by the Debtors and prior notice to all Qualified Bidders. Each bidder participating at the Auction will be required to confirm that (a) it has not engaged in any collusion with respect to the bidding or the sale and (b) its Qualified Bid does not contain any financing or due diligence contingencies (unless consented to by the Debtors). The Auction will be conducted openly, will be videotaped or transcribed, and the Committee, any Qualified Bidders, and each of their respective advisors, will be permitted to attend. The Debtors shall file a notice announcing the results of the Auction and the identity of the proposed Winning Bidder and the Back-Up Bidder on the Court's docket and the Website (as defined below), as soon as practicable after conclusion of the Auction.

9.  Only the Stalking Horse Bidder and other Qualified Bidders may bid at the Auction. Copies of all Qualified Bids shall be provided to the Committee, the Stalking Horse Bidder and each other Qualified Bidder by no later than one (1) business day prior to the Auction. At the commencement of the Auction, the Debtors shall identify the bid that they have determined (after consultation with the Committee) to be the highest and/or best offer and shall permit the Stalking Horse Bidder and other Qualified Bidders to submit higher and/or better bids. Each subsequent bid must exceed the amount of the preceding bid by not less than $150,000 and shall not be modified in a manner that causes it no longer to be a Qualified Bid.

10. The Debtors, subject to the terms of this Order and the oversight and approval of the Court, and in reasonable consultation with the Committee, shall supervise the bidding process and conduct the Auction in such a manner as to provide the Stalking Horse Bidder and other Qualified Bidders a full, fair and equal opportunity to participate in the Auction. The Debtors, in consultation

6

DOCS_SF:87773.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

with their investment banker, their counsel, and the Committee, shall determine which Qualified Bid is to be recommended to the Court for approval as the highest and/or best bid. The Debtors shall request at the Sale Hearing that the Court authorize the Debtors to consummate the Sale Transaction to such proposed Winning Bidder.

11.     If the Debtors do not receive at least one (1) Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder, then no Auction shall be scheduled or conducted, and the Court at the Sale Hearing shall solely consider the approval of the Sale Transaction to the Stalking Horse Bidder as set forth in the Asset Purchase Agreement; the Court shall not consider any competing or alternative offers or proposals to purchase any of the Debtors' assets (unless consented to by the Debtors), nor shall the Court consider any objections to the Motion that are based on the existence or potential for other or different offers or proposals to purchase the Debtors' assets.

12.     The following bid protections under the APA are hereby approved:

a.     (i) If there is a closing of a transaction involving the sale (in a single transaction or a series of transactions) of all or substantially all of the Purchased Assets to any person other than Purchaser or a designee of Purchaser (an "**Alternative Transaction**"), (ii) the Stalking Horse Bidder is not otherwise in material breach of this APA, and (iii) the conditions set forth in Section 12 of the APA are satisfied, then the Debtors will pay the Purchaser, exclusively out of the proceeds of the Alternate Transaction, a break-up fee equal to four percent (4%) of the Purchase Price ($149,089) in exchange for preserving the going concern value of the Purchased Assets used by the Debtors (the "**Break-Up Fee**").

b.     Payment of the Break-Up Fee pursuant to the APA and Motion will be subject to the closing of the Alternative Transaction and paid from sale proceeds within five (5) business days of the closing of the Alternative Transaction.

c.     Except in the case of fraud or intentional misconduct by any Debtor, the Stalking Horse Bidder's right to receive payment of the Break-Up Fee from the Debtors as herein provided will be the sole and exclusive remedy available to the Stalking Horse Bidder against the Debtors or any of its former, current or future shareholders, directors, officers, affiliates or agents with respect to the APA and the transactions contemplated thereby in the event that the APA is terminated pursuant to the terms set forth therein, and upon payment of the Break-Up Fee in circumstances described herein, neither the Debtors nor any of their former, current or future shareholders, directors, officers, affiliates or agents shall have any further liability or obligation relating to or arising out of the APA or the transactions contemplated hereby.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

7

13.     The Court shall hold a hearing on **September 25, 2015 at _____ _a.m. (Prevailing Arizona Time)** (the "**Sale Hearing**") to consider the approval of the Sale Transaction as set forth in the Motion, approve the Winning Bidder, approve the Back-Up Bidder, if necessary, and confirm the results of the Auction, if applicable.

14.     Upon approval by the Court of a Winning Bidder other than the Stalking Horse Bidder, the Bid Deposit of such Winning Bidder shall become non-refundable if the Modified Agreement of such Winning Bidder is thereafter terminated by the Debtors as a result of a breach by the Winning Bidder of its obligations thereunder.  If the Back-Up Bidder is a Qualified Bidder other than the Stalking Horse Bidder, then the Bid Deposit of the Back-Up Bidder shall remain on deposit in the Segregated Account pending the Closing Date (as defined below), and such deposit shall become non-refundable if the Back-Up Bidder becomes the proposed Winning Bidder and its Modified Agreement is thereafter terminated by the Debtors as a result of a breach by such Back-Up Bidder.  If a dispute arises over whether a Bid Deposit is refundable or non-refundable, the Bid Deposit shall remain in the Segregated Account pending a determination of the dispute by the Court or written agreement of the parties.

15.     If the Stalking Horse Bidder becomes the Winning Bidder, but the Asset Purchase Agreement is terminated pursuant to its terms by the Debtors as a result of a breach by the Stalking Horse Bidder of its obligations thereunder, the Stalking Horse Bidder shall forfeit the Deposit (as defined in the Asset Purchase Agreement).  If a Qualified Bidder other than the Stalking Horse Bidder becomes the proposed Winning Bidder, but the Modified Agreement of such bidder is terminated pursuant to its terms by the Debtors as a result of a breach by the proposed Winning Bidder of any of its obligations thereunder, such bidder shall forfeit its Bid Deposit.  In either case, the forfeiture of the Deposit or the Bid Deposit, as the case may be, shall constitute liquidated damages and the Debtors and their bankruptcy estates shall retain no other rights, remedies, claims, counterclaims and defenses against the Stalking Horse Bidder or such other Qualified Bidder, as applicable.

16.     If Qualified Bids have been submitted by more than one Qualified Bidder, the Qualified Bidder that makes the next-highest and/or best Qualified Bid to that of the proposed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Winning Bidder shall become the back-up bidder (the "**Back-Up Bidder**") and such Back-Up Bidder's final and highest and/or best Qualified Bid (the "**Back-Up Bid**") shall remain open and irrevocable in accordance with the terms of the Asset Purchase Agreement or the Modified Agreement, as applicable, pending the closing of the Winning Bid (the "**Closing Date**"). (If a bid of the Stalking Horse Bidder is the next-highest and/or best bid to that of the proposed Winning Bidder, then the Stalking Horse Bidder shall have the option but not the obligation to have the Stalking Horse Bid treated as the Back-Up Bid.) If the transaction with the Winning Bidder does not close prior to the Closing Date (as such date may be extended pursuant to paragraph 16, below), then the Back-Up Bid shall upon notice to the Back-Up Bidder by the Debtors (after consultation with the Committee) be deemed the Winning Bid without further order of the Court, and the Back-Up Bidder shall be required to consummate the transaction in accordance with the Asset Purchase Agreement or Modified Agreement, as applicable. If the Stalking Horse Bidder is not the Winning Bidder or the Back-Up Bidder, the Stalking Horse Bidder shall nonetheless have the right, but not the obligation, to keep its bid open pending the Closing Date.

17. The Debtors, in consultation with the Committee, may grant any proposed Winning Bidder additional time to perform and, to the extent necessary, extend the Closing Date.

18. Objections to the Sale Transaction, if any, shall be in writing and shall be filed and served so as to be actually received by the Court and the following parties (the "**Objection Recipients**") on or before **September 15, 2015 at 5:00 p.m. (Prevailing Arizona Time)**, provided, however, that to the extent the proposed Winning Bidder at the Auction is a bidder other than the Stalking Horse Bidder, any supplemental or further objections to the sale to the proposed Winning Bidder based solely on such alternative Winning Bidder's adequate assurance of future performance shall be filed by no later than **September 21, 2015 at 12:00 p.m. (Prevailing Arizona Time)** (the "**Objection Deadlines**"): (a) counsel to the Debtors, Pachulski, Stang, Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111, Attn: John W. Lucas; (b) counsel to the Committee [TBD]; (c) Mastodon Ventures, Inc., 515 Congress Avenue, Suite 1400, Austin, TX 78701, Attn: Robert Hersch; and (d) the U.S. Trustee, 230 N. 1st Avenue, Suite 204, Phoenix, AZ 85003. The Debtors or any other party in interest may file a reply in support of the Sale Transaction

9

DOCS_SF:87773.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

by no later than **September 15, 2015 at 12:00 p.m. (Prevailing Arizona Time)**, provided that any reply to an objection with respect to an alternative Winning Bidder's adequate assurance of future performance may be presented orally to the Court at the Sale Hearing.

19.    Notice of (a) the Motion, (b) the Bid Procedures, (c) the Auction, (d) the Objection Deadlines, (e) the Sale Hearing, and (f) the proposed assumption, assignment and sale of the Debtors' Contracts to the Stalking Horse Bidder or to any other Winning Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

  a.    Notice of Sale, Auction and Sale Hearing: Within three (3) business days after entry of this Order, the Debtors (or their agents) shall:

  i.    provide notice, in substantially the form attached as Exhibit D to the Motion (the "**Sale Notice**"), of this Order, the Motion, the Auction, the Objection Deadlines, and the Sale Hearing by first-class mail upon (a) all persons and entities known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Debtors' assets or any portion thereof during the past six (6) months; (b) all Persons known by the Debtors to have asserted any Lien or interest in any of the Debtors' material assets; (c) all Persons known by the Debtors to be counterparties to Contracts; (d) the U.S. Trustee; (e) the Committee and its counsel; (f) any Governmental Body known to have a claim in the Bankruptcy Cases; (g) all other known creditors and equity security holders of the Debtors; (h) all Persons that have requested special notice in the Bankruptcy Cases; and (i) all other Persons as directed by the Court; and

  b.    Assumption, Assignment, Sale and Cure Notice.

  i.    Within three (3) business days after entry of this Order, the Debtors shall file with the Court and serve via first class mail on all Persons known by the Debtors to be a counterparty to a Contract, a notice of assumption, assignment, sale and cure substantially in the form attached as Exhibit E to the Motion (the "**Notice of Assumption, Assignment and Sale**").  The

10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Notice of Assumption, Assignment and Sale shall include (a) a statement that the Contracts listed therein may be treated as "Purchased Contracts" under the Asset Purchase Agreement (or Modified Agreement), (b) a statement that certain of the Contracts listed therein may be designated as "Designation Right Assets" under the Asset Purchase Agreement (or Modified Agreement) and thereafter rejected or assumed, assigned and sold at a date subsequent to the Closing Date; provided that, absent consent of an applicable contract or lease party, the Designation Rights Period shall be subject to the time limits for assumption or rejection set forth in 11 U.S.C. § 365(d)(4), (c) the Debtors' calculation of the amount necessary, if any, to cure any and all defaults under the Contracts and compensate the counterparties thereto for pecuniary loss in respect of any such default(s) (the "**Cure Amount**") as a condition to the assumption, assignment and sale of such Contract under Bankruptcy Code sections 363 and 365, and (d) evidence of the Stalking Horse Bidder's ability to provide adequate assurance of future performance of such executory contracts or unexpired leases.

ii. Any subsequent Notice of Assumption, Assignment and Sale that identifies a Contract that was not previously identified as being subject to assumption, assignment and sale under the Asset Purchase Agreement (or Modified Agreement) or that reduces the Debtors' calculation of the Cure Amount (an "**Amended Notice of Assumption, Assignment and Sale**") shall provide a deadline of not less than seven (7) calendar days from the date of service of such Amended Notice of Assumption, Assignment and Sale by which the counterparty to any modification may object to (a) the assumption, assignment and sale of such Contract pursuant to the Asset Purchase Agreement (or Modified Agreement); (b) the Debtors' calculation of the Cure Amount for such Contract; and (c) Adequate

11

Assurance Information, if such Contract was not previously identified as being subject to assumption, assignment and sale.

   iii.  The Notice of Assumption, Assignment and Sale and any Amended Notice of Assumption, Assignment and Sale will be filed with the Court and posted on the Website.

   iv.  The Debtors reserve the right to (i) provide Amended Notices of Assumption, Assignment and Sale up to the Closing of the Asset Purchase Agreement (or Modified Agreement); (ii) remove a Contract from the list of Purchased Contracts at any time prior to the Closing of the Asset Purchase Agreement (or Modified Agreement), for any reason; and (iii) remove a Contract from the list of Purchased Contracts after the closing of the Asset Purchase Agreement (or Modified Agreement), if the Court determines after such Closing that the Cure Amount for such Contract is in excess of the amount set forth on Exhibit 1 to the Notice of Assumption, Assignment and Sale. The removal of any such Contract shall not reduce the purchase price to be paid by the Winning Bidder, unless consented to by the Debtors. In addition, one or more of the Contracts listed on Exhibit 1 to the Notice of Assumption, Assignment and Sale may be designated as a Designation Right Asset at the Closing of the asset purchase agreement submitted by the Winning Bidder (including the Stalking Horse Bidder) and in such case may be assumed by the Debtors and assigned and sold to the designated Person, if it makes a written election to accept an assignment of such Contract within the time frame provided in the Winning Bidder's (including the Stalking Horse Bidder's) asset purchase agreement.

   v.  Any counterparty to a Contract must file and serve on the Objection Recipients any objections to (a) the proposed assumption, assignment and sale of its Contract to the Winning Bidder (and must state in its objection,

12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

with specificity, the legal and factual basis of its objection) and (b) if applicable, the proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is required with appropriate documentation in support thereof), no later than **September 15, 2015 at 5:00 p.m. (Prevailing Arizona Time)** and the Debtors or any other party in interest may file a reply to any such objection by no later than **September 22, 2015 at 12:00 p.m. (Prevailing Arizona Time)**; provided, however, that to the extent the Winning Bidder is an entity other than the Stalking Horse Bidder, any supplemental or further objections to the assumption, assignment and sale of a Contract to the Winning Bidder by a counterparty to such Contract, based solely on the ability of the Winning Bidder(s) and/or Backup Bidder(s) ability to provide adequate assurance of future performance shall be filed no later than **September 21, 2015 at 12:00 p.m. (Prevailing Arizona Time)** and the Debtors or any other party in interest may present orally a reply to any such objection at the Sale Hearing; provided further that the deadline to object to an Amended Notice of Assumption, Assignment and Sale shall be no earlier than seven (7) calendar days after the date of service of such Amended Notice of Assumption, Assignment and Sale.  If no objection is timely filed and served, (x) the counterparty to a Contract shall be deemed to have consented to the assumption, assignment and sale of the Contract to the Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, and (y) the Cure Amount set forth in the Notice of Assumption, Assignment and Sale (or Amended Notice of Assumption, Assignment and Sale) shall be controlling, notwithstanding anything to the contrary in any Contract, or any other document, and the counterparty to the Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from

13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   asserting any other claims related to such Contract against the Debtors or

2   the Winning Bidder, or the property of any of them.

3   vi.  If the Winning Bidder or the Back-Up Bidder at the Auction is not the

4   Stalking Horse Bidder, then within one (1) business day after the Auction,

5   the Debtors shall (i) file and serve on each counterparty to the Contracts, a

6   supplemental Notice of Assumption, Assignment and Sale identifying the

7   Winning Bidder and Back-Up Bidder (if applicable) and providing

8   information regarding the Winning Bidder's and Back-Up Bidder's (if

9   applicable) Adequate Assurance Information and (ii) publish such

10   supplemental Notice of Assumption, Assignment and Sale on the Website.

11   20.   A list of all Contracts assumed, assigned and sold to the Winning Bidder as

12   "Purchased Contracts" under the Asset Purchase Agreement (or Modified Agreement) shall be filed

13   with the Court no later than five (5) business days following the Closing of such agreement.  In

14   addition, one or more notices of all Designation Rights Assets sold (or to be sold) to the Winning

15   Bidder shall be filed with the Court no later than five (5) business days following the expiration of

16   the Designation Rights Period.

17   21.   The Debtors and their advisors shall reasonably consult regularly with the Committee

18   and their advisors on all material aspects of the sale process described in this Order and all material

19   decisions and documents contemplated herein, including, without limitation, all instances in which

20   such parties have express consultation rights as set forth herein.  The Debtors shall have the

21   discretion, in consultation with the Committee and their advisors, to modify, supplement, amend, or

22   waive the procedures set forth herein if necessary to maximize the value of the estates and otherwise

23   comply with the Debtors' fiduciary obligations.

24   22.   Notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the

25   terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

26   23.   This Court shall retain jurisdiction and power to enforce and interpret the provisions

27   of this Order.

28   **\*DATED AND SIGNED AS INDICATED ABOVE\***

14

**EXHIBIT B**

**(Stalking Horse Asset Purchase Agreement)**

DOCS_SF:87773.2

# **EXHIBIT C**

**(Sale Order)**

1  John W. Lucas (CA Bar No. 271038)          Randy Nussbaum (AZ Bar No. 6417)
   Jason H. Rosell (CA Bar No. 269126)        Dean M. Dinner (AZ Bar No. 10216)
2  PACHULSKI STANG ZIEHL & JONES LLP          John Parzych (AZ Bar No. 26079)
   150 California Street, 15th Floor          Nussbaum Gillis & Dinner, P.C.
3  San Francisco, CA 94111                    14850 N. Scottsdale Road, Suite 450
   Telephone: (415) 263-7000                  Scottsdale, AZ 85254
4  Facsimile: (415) 263-7010                  Telephone: (480) 609-0011
   E-mail:  jlucas@pszjlaw.com                Facsimile:  (480) 609-0016
5           jrosell@pszjlaw.com               Email:  rnussbaum@ngdlaw.com
                                                      ddinner@ngdlaw.com
6  Proposed Counsel for Debtors and Debtors in        jparzych@ngdlaw.com
   Possession

7

8                      **UNITED STATES BANKRUPTCY COURT**

9                       **FOR THE DISTRICT OF ARIZONA**

10

11  In re:

12  Z'Tejas Scottsdale, LLC, et al.,          Case No.: 2:15-bk-_____

13                            Debtors.         Chapter 11

14  Joint Administration Pending With:        Joint Administration Pending With Case Nos.:

15  Z'Tejas 6th Street, LLC                   2:15-bk-_____
    Z'Tejas Avery Ranch, LLC                  2:15-bk-_____
16  Z'Tejas Bellevue, LLC                     2:15-bk-_____
    Z'Tejas Bethany Home LLC                  2:15-bk-_____
17  Z'Tejas Chandler, LLC                     2:15-bk-_____
    Z'Tejas Costa Mesa, LLC                   2:15-bk-_____
18  Z'Tejas GP, LLC                           2:15-bk-_____
    Z'Tejas Grill Gateway, L.L.C.             2:15-bk-_____
19  Z'Tejas Holdings, Inc.                    2:15-bk-_____
    Z'Tejas, Inc.                             2:15-bk-_____
20  Z'Tejas La Cantera, LLC                   2:15-bk-_____
    Z'Tejas LP, LLC                           2:15-bk-_____
21  Z'Tejas of Arboretum, LLC                 2:15-bk-_____
    Z'Tejas Restaurant Holdings, LP           2:15-bk-_____
22  Z'Tejas Salt Lake City, LLC               2:15-bk-_____
    Z'Tejas Summerlin, LLC                    2:15-bk-_____
23  Z'Tejas Tempe, LLC                        2:15-bk-_____
    Taco Guild Osborn LLC                     2:15-bk-_____

24  This Pleading applies to:                 **ORDER: (1) APPROVING ASSET
                                              PURCHASE AGREEMENT AMONG THE
25         ☑  All Debtors                     DEBTORS AND THE BUYER, (2)
           ☐  Specified Debtors               APPROVING SALE OF SUBSTANTIALLY
26                                            ALL ASSETS FREE AND CLEAR OF ALL
                                              LIENS, CLAIMS, ENCUMBRANCES AND
27                                            OTHER INTERESTS PURSUANT TO**

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**BANKRUPTCY CODE SECTIONS 105, 363(B), (F) AND (M), (3) APPROVING ASSUMPTION, ASSIGNMENT AND SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365, AND (4) DETERMINING THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND GRANTING RELATED RELIEF**

The Court having considered the *Motion Requesting (A) the Scheduling of an Auction and Sale Hearing in Connection with the Sale of Substantially All the Debtors' Assets, (B) Approval of Bidding Procedures for Such Assets, (C) Approval of Purchase Agreement with Stalking Horse Bidder, (D) Approval of the Form and Scope of Notice of Auction and Sale Hearing, (E) Approval of Procedures for the Assumption, Assignment and Sale of Contracts and Leases to the Purchaser, and (F) Approval of Sale of the Debtors' Assets to the Purchaser* (the "Motion")[1] filed by Z'Tejas Scottsdale, LLC, the debtors and debtors in possession in the above-captioned cases (the "Debtors"), whereby the Debtors sought an order, among other things, (a) approving certain procedures to conduct a sale of substantially all of the Debtors' assets and for approval, at a subsequent hearing, of the sale of such assets to Cornbread Ventures, LP (the "Stalking Horse Bidder" or "Purchaser") or the highest bidder that complies with the applicable procedures, including the overbid provisions (the "Bid Procedures"), in connection with the proposed sale at an auction (the "Auction") of the Purchased Assets, pursuant to the terms of the Asset Purchase Agreement substantially in the form attached to the Motion (the "Stalking Horse Agreement") to the Stalking Horse Bidder, or such other party making a higher and better bid at the Auction, (b) authorizing the sale of the Purchased Assets and the transactions contemplated thereby (the "Sale Transaction") to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement, or alternatively, to the other successful bidder(s) or back-up bidder(s) pursuant to the applicable agreement(s) with such other successful bidder(s) or back-up bidder(s) entered into in accordance with the Bid Procedures, (c) approving the assumption,

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Asset Purchase Agreement (as defined below).

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

assignment and sale of the Purchased Contracts under section 365 of the Bankruptcy Code, subject to the terms of the applicable purchase agreement(s), and (d) scheduling the Auction and hearing for the sale of the Purchased Assets; and this Court having entered an order on [DATE], 2015 [Docket No. #] (the "Sale Procedures Order") approving, among other things, the dates, deadlines and procedures with respect to the Sale Transaction (the "Sale Procedures"), and notice of the Sale Transaction; and the Debtors having extended certain deadlines set forth in the Sale Procedures Order by notice to the Court filed on [DATE], 2015 [Docket No. #]; and [BUYER NAME] having submitted that certain Stalking Horse Agreement, dated as of [DATE], 2015 (as amended, supplemented, or otherwise modified from time to time) by and between the Debtors and [BUYER NAME] (the "Asset Purchase Agreement")[2] for the sale of substantially all of the Debtors' assets as designated thereunder (the "Purchased Assets"); and a hearing having been held on [DATE], 2015 (the "Sale Hearing") to consider approval of the Asset Purchase Agreement and Sale Transaction; and adequate and sufficient notice of the Sale Motion having been given to all parties in interest in these cases; and all such parties having been afforded due process and an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (a) the Sale Motion; (b) the objections to the Sale Motion, if any; and (c) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation and sufficient cause appearing;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) & (O).  Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory bases for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 6004-1 and 6006-1.

C.      As evidenced by the affidavits of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice, and a reasonable opportunity to object or be heard with

---

[2] A true and correct copy of the Asset Purchase Agreement is filed with the Court as [Docket No. __].

DOCS_SF:87773.2

3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

respect to the Sale Motion and the relief requested therein, has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Sale Procedures Order and the Asset Purchase Agreement; (ii) such notice was good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion is or shall be required.

D.     As demonstrated by (i) evidence adduced at and prior to the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have determined that the Asset Purchase Agreement represents the highest and/or best offer for the Purchased Assets and that no further marketing or sales process with respect to the Purchased Assets is in the best interests of the Debtors' estates or creditors or is likely to lead to an offer that provides consideration in excess of the consideration provided in the Asset Purchase Agreement.  The Sale Procedures were non-collusive, duly noticed, substantively and procedurally fair to all parties, and were the result of arm's length negotiations.  The Sale Procedures Order has been complied with in all material respects.

E.     Upon entry of this order (the "Sale Order"), the Debtors shall have full authority to consummate the Sale Transaction.

F.     Approval of the Asset Purchase Agreement and the Management Agreement and consummation of the Sale Transaction is in the best interests of the Debtors, their estates, creditors, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Purchaser pursuant to section 363(b) of the Bankruptcy Code.

G.     The Asset Purchase Agreement and the Management Agreement were negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's length bargaining positions.  The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101 of the Bankruptcy Code.

H.     The sale price in respect of the Purchased Assets was not controlled by any agreement among potential acquirers of the Debtors' Assets and neither the Debtors nor the Purchaser engaged in collusion or any other conduct that would cause or permit the Asset Purchase Agreement or Sale Transaction to be avoided under section 363(n) of the Bankruptcy Code.  Accordingly, neither the

4

Asset Purchase Agreement nor the Sale Transaction may be avoided and no party shall be entitled to any damages or other recovery pursuant to section 363(n).

I.      The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchaser is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction.

J.      The consideration to be provided by the Purchaser pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and/or best offer for the Purchased Assets; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration.

K.      The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including Liens, claims, encumbrances and interests of any Governmental Body), other than (i) Liens specifically assumed by Purchaser under the Asset Purchase Agreement, (ii) Liquor Licenses or other licenses, registrations, qualifications, or permits necessary to continue operation of the Business that are subject to review and approval by a Governmental Body, (iii) any alcohol beverage inventory that can be transferred only upon authorization of the pertinent Governmental Body or issuance of the pertinent Liquor License Approval, and (iv) Permitted Exceptions; provided, that all Liens, claims, encumbrances and interests of which the Purchased Assets are sold free and clear shall attach to the proceeds of the sale, in order of priority. The Debtors may sell the Purchased Assets free and clear of all such Liens, claims, encumbrances and interests because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied.

L.      For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have, in connection with offering a product or service, previously disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. § 101(41A)) about individuals to persons that are not affiliated with the Debtors, and the Sale

5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Transaction is consistent with that policy because the policy, as in effect on the Petition Date, specifically permits the transfer of such "personally identifiable information" to the Purchaser because the Purchaser has agreed to be bound by the same or substantially similar privacy protections as those established by the Debtors' privacy policy.

M. The transfer of the Purchased Assets to the Purchaser or its designee(s), including the assumption by the Debtors and assignment and sale to the Purchaser or its designee(s) of the Purchased Contracts, will not subject the Purchaser or its designee(s) to any liability whatsoever (including any successor liability) with respect to the operation of the Business prior to the Closing or by reason of such transfer, except that the Purchaser or its designee(s), as applicable, shall remain liable for the Assumed Liabilities.

N. The Asset Purchase Agreement and the Management Agreement are valid and binding contracts between the Debtors and the Purchaser, which are and shall be enforceable according to their respective terms.

O. Notice of the Debtors' assumption, assignment and sale to the Purchaser of the Purchased Contracts has been provided to each non-Debtor party thereto, together with a statement therein from the Debtors with respect to the amount, if any, to be paid to such non-Debtor party under section 365(b) of the Bankruptcy Code as a condition to such assumption, assignment and sale [Docket No. #]. With respect to each Purchased Contract, payment of the amounts set forth on Schedules 1.1(e) and 1.3(b) of the Asset Purchase Agreement (the "Cure Schedule") (each a "Cure Cost" and collectively, the "Cure Costs") is sufficient for the Debtors to comply fully with the requirements of section 365(b)(1)(A) and (B) of the Bankruptcy Code. In addition, the Purchaser has provided adequate assurance of its ability to perform its obligations under each of the Purchased Contracts within the meaning of section 365(f)(2)(B) of the Bankruptcy Code. Therefore, the Purchased Contracts may be assumed by the Debtors and assigned and sold to the Purchaser.

P. The Debtors currently hold or have been issued Liquor Licenses or other licenses, registrations, qualifications, or permits necessary to continue operation of the Business that remain in effect authorizing the respective licensees to conduct retail sales of alcohol beverages at each of the restaurant properties included in the Purchased Assets and the Designation Rights Assets.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Schedule 1.1(g) of the Asset Purchase Agreement identifies (i) each such Liquor License or other license, registration, qualification, or permit; (ii) the property location that is the licensed premises associated with each such Liquor License or other license, registration, qualification, or permit; and (iii) the state or municipal government alcohol regulatory agency respectively responsible for issuing and regulating each such Liquor License or other license, registration, qualification, or permit.  The sale of alcohol beverages is an important component of the Business.  The Court finds that it is in the best interests of the estates and all other parties in interest for these sales to continue uninterrupted during the transition of ownership from the Debtors to the Purchaser following the Court-ordered transfer of the Purchased Assets (including, without limitation, any Designation Rights Asset that is deemed a Purchased Asset pursuant to Section 2.7(c) of the Asset Purchase Agreement), subject to reasonable and good faith efforts to timely transfer existing Liquor Licenses or other licenses, registrations, qualifications, or permits or apply for new licenses, permits, registrations or qualifications equivalent to the existing Liquor Licenses or other licenses, registrations, qualifications, or permits that are not subject to transfer.

Q.     There is other good and sufficient cause to grant the relief requested in the Sale Motion and approve the Asset Purchase Agreement, the Management Agreement and the Sale Transaction.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Sale Motion is GRANTED.

2.     Except as otherwise provided in this Sale Order, any objections to the Sale Motion or the entry of this Sale Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby DENIED and OVERRULED.

3.     The Asset Purchase Agreement, including all of its terms and conditions, and the Sale Transaction are hereby approved.

4.     The Management Agreement, including all of its terms and conditions, is hereby approved.

5.     Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized to (i) execute, deliver, and perform under, consummate, and implement the Asset Purchase

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Agreement and Management Agreement together with all additional instruments and documents that are requested by the Purchaser and may be reasonably necessary or desirable to implement the Asset Purchase Agreement and Management Agreement, and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to Purchaser's possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement, including, without limitation, any and all actions reasonably requested by the Purchaser to effectuate the Asset Purchase Agreement.

6. Pursuant to sections 105(a), 363(f) and 365(b) of the Bankruptcy Code, upon the Closing: (i) the transfer of the Purchased Assets to the Purchaser pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Purchaser with all right, title, and interest in and to the Purchased Assets; (ii) the Purchased Assets shall be transferred to the Purchaser free and clear of all Liens, encumbrances, and other interests of any kind and every kind whatsoever (including Liens, claims, encumbrances and interests of any Governmental Body), other than Liens specifically assumed by Purchaser under the Asset Purchase Agreement and Permitted Exceptions, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens, claims, encumbrances and interests of which the Purchased Assets are sold free and clear to attach to the proceeds of the Sale Transaction, in the order of their priority, with the same validity, force, and effect which they had against the Purchased Assets prior to the entry of this Sale Order, subject to any rights, claims, and defenses the Debtors and all interested parties may possess with respect thereto; and (iii) each of the Contracts designated as Purchased Contracts at Closing shall be deemed assumed by the Debtors and assigned and sold to the Purchaser.

7. This Sale Order is and shall be effective as a determination that all Liens, claims, encumbrances and interests, other than Liens specifically assumed by Purchaser under the Asset Purchase Agreement and Permitted Exceptions, shall be and are, without further action by any Person, released with respect to the Purchased Assets as of the Closing Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8. Except to the extent expressly included in the Assumed Liabilities or to enforce the Asset Purchase Agreement, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), all debt security holders, all equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory or investigatory authorities of any sort, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever against, in or with respect to any of the Debtors, the Business, or all or any part of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, all or any part of the Purchased Assets, the operation of the Business prior to the Closing Date, or the transfer of the Purchased Assets to the Purchaser shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Liens, claims, encumbrances, or other interests, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any affiliate, successor, or assign thereof, or against the Purchased Assets.

9. The Purchaser shall not be deemed or considered a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity and the Purchaser has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except as otherwise expressly provided in the Asset Purchase Agreement.

10. Subject to specific requirements imposed by Law over the sale and service of alcohol beverages and the provisions of the Asset Purchase Agreement relating to such matters, on the Closing Date all any and all causes of action, claims, objections and defenses arising under or deriving from Sections 506(d), 510, 542, 544, 545, 547, 548, 550, 551, 553(b) or 724(a) of the Bankruptcy Code, or any similar state or federal law ("Avoidance Actions") and proceeds relating thereto, of the Debtors, shall be assigned, sold and transferred to Purchaser, free and clear of all Liens, claims, encumbrances and interests.

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

11.     Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Purchased Contracts and assign and sell the Purchased Contracts to the Purchaser.  The Purchaser shall pay with Cash Payment to the Purchased Contracts set forth in Schedules 1.1(e) and 1.3(b) of the Asset Purchase Agreement the Cure Costs set forth on the Cure Schedule currently with Closing; provided, however, that the Purchaser may direct the removal of any such contract or lease from the list of Purchased Contracts set forth in Schedule 1.1(b) of the Asset Purchase Agreement, in which case such contract or lease shall not constitute a Purchased Contract and neither the Debtors nor the Purchaser shall have any obligation to pay any Cure Amount with respect thereto.  Purchaser may direct the removal of any Contract from the list of Purchased Contracts set forth in Schedule 1.1(e) of the Asset Purchase Agreement in Purchaser's sole and absolute discretion (i) until the Closing, and (ii) after the Closing, if the Cure Amount for such Contract is subject to dispute as of the Closing and is determined by the Bankruptcy Court after the Closing to be greater than the amount set forth in the Cure Schedule or Schedule 1.3(b) of the Asset Purchase Agreement. Notwithstanding anything to the contrary in this Sale Order or the Asset Purchase Agreement, in connection with the Debtors' non-residential real property leases that are being assumed by the Debtors and assigned to the Purchaser pursuant to this Sale Order (collectively, the "Leases"), subject to the Section 2.7(c) of the Asset Purchase Agreement, the Purchaser shall assume the liability for all accrued, but unbilled, tenant obligations under and to the extent set forth in the Leases for common area maintenance, taxes, rent adjustments, and reconciliations relating to the period prior to assumption and assignment of the Leases.  The Purchaser shall also indemnify and hold harmless the counterparties to the Leases to the extent set forth in the Leases for any event which occurs prior to assumption and assignment of the Leases but that is unknown to the counterparties as of the date of assumption and assignment.

12.     The Purchased Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Purchased Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  Pursuant

10

to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment and sale to the Purchaser.

13.     Subject to all of the applicable terms and conditions set forth in the Asset Purchase Agreement:

a.  During the Designation Rights Period, the Debtors shall (A) not reject any Contract unless such Contract is expressly designated by Purchaser in writing as an Excluded Contract or unless otherwise agreed to in writing by Purchaser, (B) hold all Permits and other assets specified by Purchaser in writing in abeyance pending designation for assignment or exclusion by Purchaser in accordance with Section 2.7(c) of the Asset Purchase Agreement, and (C) comply with their obligations under section 365(d)(3) of the Bankruptcy Code..

b.  Any Contract (A) set forth on Schedule 2.7(c) of the Asset Purchase Agreement, and any Permits and other assets designated in writing by Purchaser on Schedule 2.7(c) of the Asset Purchase Agreement, in each case prior to Closing, shall constitute a "Designation Rights Asset."  Purchaser shall have the right, by written notice to the Debtors within the Designation Rights Period, to specify that (A) any Designation Rights Asset that is a Contract shall be held by the Debtors and not rejected pursuant to section 365 of the Bankruptcy Code for the duration of the Designation Rights Period or earlier as provided in Section 2.7(c) of the Asset Purchase Agreement, and (B) any Designation Rights Asset that is not a Contract shall be held by the Debtors in abeyance during the Designation Rights Period pending designation for assignment or exclusion by Purchaser in accordance with Section 2.7(c) of the Asset Purchase Agreement.

c.  As to each Designation Rights Asset, as soon as practical after receiving further written notice(s) (each, a "Designation Notice") from Purchaser during the Designation Rights Period (i.e., the period commencing on the Closing Date and ending six (6) months after the Closing Date; provided, however, that such period shall be 210 days after the Petition Date for any Designation Rights Asset that is a

11

Real Property Lease pursuant to Section 365 of the Bankruptcy Code unless such deadline is extended by the applicable landlord) requesting assumption, assignment and sale of any Designation Rights Asset to Purchaser or a third party, the Debtors shall, subject to Purchaser or such third party resolving any objections reserved herein and paying all Cure Costs to the extent required by section 365 of the Bankruptcy Code, take all actions required by this Sale Order or otherwise that are reasonably necessary to seek to assume, assign and sell to Purchaser or such third party the applicable Designation Rights Asset pursuant to section 363 of the Bankruptcy Code and, if such Designation Rights Asset is a Contract, section 365 of the Bankruptcy Code.

    d.   Notwithstanding anything in the Asset Purchase Agreement or this Sale Order to the contrary, on the date any Designation Rights Asset is assumed, assigned and sold to Purchaser or its designee pursuant to Section 2.7(c) of the Asset Purchase Agreement, such Designation Rights Asset shall be deemed a Purchased Asset for all purposes under the Asset Purchase Agreement and this Sale Order, and no further consideration (except for the applicable Cure Cost with respect to Designation Rights Assets that are Contracts) shall be required to be paid for any Designation Rights Asset that is assumed, assigned and sold to Purchaser or its designee.

    e.   Following the earlier of (A) the end of the Designation Rights Period and (B) the date of the Debtors' receipt of written notice from Purchaser designating the exclusion of a Designation Rights Asset, a Designation Rights Asset shall be deemed to be an Excluded Asset for all purposes under the Asset Purchase Agreement.

14.    All defaults or other obligations of the Debtors under each Purchased Contract arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured and any pecuniary loss arising therefrom deemed compensated, upon payment of the Cure Amount

12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

with respect thereto, if any, and the Purchaser shall have no liability or obligation arising or accruing in respect of the Purchased Contracts on or prior to the Closing. The non-Debtor parties to the Purchased Contracts are barred from asserting against the Debtors, the Purchaser, and their respective successors and assigns, any default or unpaid obligation allegedly arising or accruing before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Purchased Contracts arising or incurred prior to the Closing, other than the Cure Amounts.

15. The consideration provided by the Purchaser for the Purchased Assets under the Asset Purchase Agreement and the Management Agreement, including the assumption of the Assumed Liabilities, payment of the Cash Payment as set forth in Section 2.1 of the Asset Purchase Agreement, and release of the Escrow Deposit for the payment of the secured claims and other wind-down expenses of the Debtors, is fair and reasonable.

16. The Asset Purchase Agreement, the Management Agreement and the Sale Transaction shall not be avoided under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Asset Purchase Agreement, the Management Agreement or the Sale Transaction.

17. The Asset Purchase Agreement, the Management Agreement and the Sale Transaction are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Purchase Agreement, the Management Agreement and the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Purchaser or any other aspect of the Sale Transaction, unless this Sale Order is duly stayed pending such appeal. The Purchaser is a good faith purchaser of the Purchased Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

18. With the exception of alcohol beverage inventories that are received, possessed sold and served pursuant to the Liquor Licenses, all persons and entities that are in possession of some or all of the Purchased Assets as of the Closing are hereby ordered to surrender possession of such Purchased Assets to the Purchaser as of the Closing. Possession of each and any such alcohol beverage inventory shall be surrendered to the Purchaser at the earlier of (i) immediately following

13

DOCS_SF:83773.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Closing where allowed by applicable Law; (ii) receipt by the Purchaser of authorization from the pertinent Governmental Body where required by applicable Law, or (iii) receipt by the Purchaser of the pertinent Liquor License Approval.

19.     This Sale Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Purchased Assets free and clear of all Liens, claims, encumbrances and interests, other than Liens specifically assumed by Purchaser under the Asset Purchase Agreement and Permitted Exceptions (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded claims, Liens and interests against the Purchased Assets recorded prior to the date of this Sale Order, other than Liens specifically assumed by Purchaser under the Asset Purchase Agreement and Permitted Exceptions.

20.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement, the Management Agreement and the Sale Transaction.

21.     To the extent any Liquor License or other license, registration, qualification or permit necessary for the operation of the Business is not an assumable and assignable executory contract, Purchaser shall make reasonable efforts to apply for and obtain such Liquor License or other license, registration, qualification or permit promptly after the Closing Date, and the Debtors shall cooperate reasonably with Purchaser in those efforts at Purchaser's expense in accordance with the terms of the Management Agreement and the Asset Purchase Agreement.  Each existing Liquor License or other license, registration, qualification or permit applicable to the Business, including but not limited to each of the Liquor Licenses identified on Schedule 1.1(g) of the Asset Purchase Agreement, shall remain in place for Purchaser's benefit until either (i) an equivalent new Liquor License or other license, registration, qualification or permit is obtained, or (ii) the required Liquor License

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Approvals are secured, or the existing Liquor License or other license, registration, qualification or permit is transferred in accordance with applicable administrative procedures and all costs relating to such shall be borne solely by the Purchaser in addition to the Cash Payment.

22.     Specifically, with regard to the sale of alcohol beverages and food at any of the restaurant business properties encompassed by the Purchased Assets (including any Designation Rights Asset that is deemed a Purchased Asset pursuant to Section 2.7(c) of the Asset Purchase Agreement), the Court hereby orders that the Debtors and all other parties in interest shall cooperate with and support the Purchaser in executing such applications and furnishing such documents as are necessary for the Purchaser to obtain, in its name, any such temporary new alcohol beverage license, Liquor License Approvals, transferred Liquor License, and/or other licenses, registrations, qualifications, and permits necessary to continue operation of the Business without interruption. Moreover, except for good cause based on any alleged violations of Law (other than alleged violations based on the transfer of ownership of the Business occurring pursuant to the Asset Purchase Agreement and this Sale Order) each of the state or municipal government agencies regulating restaurants and the sale of food and alcoholic beverages at restaurants shall not interrupt the Business conducted at any of the restaurant business properties listed on Schedule 1.1(g) of the Asset Purchase Agreement, including the sale of alcoholic beverages and food by the Purchaser either on its own behalf, or on behalf of one or more of the Debtors pursuant to a duly executed Management Agreement, without first obtaining relief from this Court. The Purchaser may continue to operate at each of the restaurant business properties identified on Schedule 1.1(g) of the Asset Purchase Agreement under existing Liquor Licenses, state food service licenses, local occupational licenses, and any other licenses, registrations, qualifications or permits needed to operate at any of those restaurant business properties, with no interruption of the business conducted at any such premises, until the Liquor License Approvals have been secured and other licenses, registrations, qualifications and permits have been transferred to the Purchaser, or new alcohol beverage licenses and other licenses, registrations, qualifications and permits have been issued to the Purchaser.

23.     The terms and provisions of the Asset Purchase Agreement, the Management Agreement, the other ancillary agreements, and this Sale Order shall be binding in all respects upon,

15

and shall inure to the benefit of, the Debtors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of the Debtors' cases to cases under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance. The Asset Purchase Agreement, the Management Agreement, the Sale Transaction and this Sale Order shall be binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Cases. Further, nothing contained in any plan of reorganization (or liquidation) confirmed in these chapter 11 cases or any order confirming any plan of reorganization (or liquidation) or any other order entered in these cases shall conflict with or derogate from the provisions of the Asset Purchase Agreement, the provisions of the Management Agreement or the terms of this Sale Order.

24.     The Asset Purchase Agreement, the Management Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates.

25.     The failure to include specifically any particular provision of the Asset Purchase Agreement or the Management Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and the Management Agreement be authorized and approved in their entirety.

26.     To the extent of any inconsistency between the provisions of this Sale Order, the Asset Purchase Agreement, the Management Agreement, and any documents executed in connection therewith, the provisions contained in the Sale Order, the Asset Purchase Agreement, the Management Agreement and any documents executed in connection therewith shall govern, in that order.

27.     To the extent the Schedules to the Asset Purchase Agreement are updated in accordance therewith (with the approval of the Purchaser), the Debtors shall file updated Schedules

16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

to the Asset Purchase Agreement (as such Schedules may be approved by the Purchaser) as soon as practicable, but in no event later than five (5) Business Days following the Closing Date.

28.     The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of all Liens, claims, encumbrances and interests, other than Liens specifically assumed by Purchaser under the Asset Purchase Agreement and Permitted Exceptions, shall be self-executing, and notwithstanding the failure of the Debtors, the Purchaser, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof, all Liens, claims, encumbrances, and other interests on or against such Purchased Assets (other than Liens specifically assumed by Purchaser under the Asset Purchase Agreement and Permitted Exceptions), if any, shall be deemed released, discharged and terminated.

29.     Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d) or 7062, this Sale Order shall be effective and enforceable immediately and shall not be stayed.

30.     This Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or related to this Sale Order, the Asset Purchase Agreement, the Management Agreement or any other related agreements, including without limitation: (a) any actual or alleged breach or violation of this Sale Order, the Asset Purchase Agreement, the Management Agreement or any related agreements, (b) the enforcement of any relief granted in this Sale Order, or (c) as otherwise set forth in the Asset Purchase Agreement or in the Management Agreement.

**\*DATED AND SIGNED AS INDICATED ABOVE\***

DOCS_SF:83773.2

# **EXHIBIT D**

## **(Form Sale Notice)**

| | |
|---|---|
| John W. Lucas (CA Bar No. 271038) | Randy Nussbaum (AZ Bar No. 6417) |
| Jason H. Rosell (CA Bar No. 269126) | Dean M. Dinner (AZ Bar No. 10216) |
| PACHULSKI STANG ZIEHL & JONES LLP | John Parzych (AZ Bar No. 26079) |
| 150 California Street, 15th Floor | Nussbaum Gillis & Dinner, P.C. |
| San Francisco, CA 94111 | 14850 N. Scottsdale Road, Suite 450 |
| Telephone: (415) 263-7000 | Scottsdale, AZ 85254 |
| Facsimile: (415) 263-7010 | Telephone: (480) 609-0011 |
| E-mail: jlucas@pszjlaw.com | Facsimile: (480) 609-0016 |
| jrosell@pszjlaw.com | Email: rnussbaum@ngdlaw.com |
| | ddinner@ngdlaw.com |
| | jparzych@ngdlaw.com |

Proposed Counsel for Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | |
| Z'Tejas Scottsdale, LLC, et al., | Case No.: 2:15-bk-_____ |
| Debtors. | Chapter 11 |
| Joint Administration Pending With: | Joint Administration Pending With Case Nos.: |
| Z'Tejas 6th Street, LLC | 2:15-bk-_____ |
| Z'Tejas Avery Ranch, LLC | 2:15-bk-_____ |
| Z'Tejas Bellevue, LLC | 2:15-bk-_____ |
| Z'Tejas Bethany Home LLC | 2:15-bk-_____ |
| Z'Tejas Chandler, LLC | 2:15-bk-_____ |
| Z'Tejas Costa Mesa, LLC | 2:15-bk-_____ |
| Z'Tejas GP, LLC | 2:15-bk-_____ |
| Z'Tejas Grill Gateway, L.L.C. | 2:15-bk-_____ |
| Z'Tejas Holdings, Inc. | 2:15-bk-_____ |
| Z'Tejas, Inc. | 2:15-bk-_____ |
| Z'Tejas La Cantera, LLC | 2:15-bk-_____ |
| Z'Tejas LP, LLC | 2:15-bk-_____ |
| Z'Tejas of Arboretum, LLC | 2:15-bk-_____ |
| Z'Tejas Restaurant Holdings, LP | 2:15-bk-_____ |
| Z'Tejas Salt Lake City, LLC | 2:15-bk-_____ |
| Z'Tejas Summerlin, LLC | 2:15-bk-_____ |
| Z'Tejas Tempe, LLC | 2:15-bk-_____ |
| Taco Guild Osborn LLC | 2:15-bk-_____ |
| This Pleading applies to: | **NOTICE OF AUCTION AND SALE HEARING** |
| ☑ All Debtors | |
| ☐ Specified Debtors | |

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.  On July 22, 2015, Z'Tejas Scottsdale, LLC, et al. (collectively, the "**Debtors**"), each filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Arizona (the "**Bankruptcy Court**").

2.  On July 22, 2015, the Debtors filed a motion [Docket No. #] (the "**Bid Procedures/Sale Motion**"), pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006, seeking entry of an order (the "**Bid Procedures Order**") (a) scheduling an auction (the "**Auction**") for the sale of substantially all of the Debtors' assets (as more fully set forth in the Asset Purchase Agreement, the "**Purchased Assets**") for [DATE], 2015 and a hearing to approve the sale of the Purchased Assets (the "**Sale Hearing**") for [DATE], 2015 at _____; (b) approving dates, deadlines and procedures (the "**Bid Procedures**") for submitting competing bids for the Purchased Assets; (c) approving that certain *Asset Purchase Agreement*, dated as of [DATE], 2015 (the "**Asset Purchase Agreement**"), with [NAME] (the "**Stalking Horse Bidder**") for the sale of the Purchased Assets, subject to the outcome of the Auction; (d) approving the form and manner of the notice of the Auction and the Sale Hearing; and (e) approving procedures for the assumption, assignment and sale of contracts and leases to any purchaser of the Purchased Assets, and to resolve any objections thereto.  As more fully set forth in the Asset Purchase Agreement, the purchase price to be paid by the Stalking Horse Bidder consists of (i) $[#], plus (ii) the assumption of the Assumed Liabilities (as set forth in the Asset Purchase Agreement) by the Stalking Horse Bidder.

3.  On or about [DATE], 2015, the Bankruptcy Court entered the Bid Procedures Order.  Pursuant to the Bid Procedures Order, if the Debtors receive any Qualified Bids (as defined in the Bid Procedures Order) other than that of the Stalking Horse Bidder, for the Purchased Assets, an Auction shall take place on [DATE], **2015 at 10:00 a.m. (Prevailing Arizona Time)** at the offices of local counsel for the Debtors, [LOCATION], or such other place and time designated by the Debtors and prior notice to all Qualified Bidders.  Only parties that have submitted a Qualified Bid, as set forth in the Bid Procedures Order, by no later than [DATE], **2015 at 4:00 p.m. (Prevailing Arizona Time)** (the "**Bid Deadline**") may bid at the Auction.  Any party that wishes to take part in this process and submit a bid for the Purchased Assets must submit its competing bid prior to the Bid Deadline and in accordance with the Bid Procedures.

4.  The Sale Hearing to consider approval of the sale of the Purchased Assets to the Stalking Horse Bidder or to the winning bidder at the Auction, as applicable, free and clear of all liens, claims, encumbrances and other interests not expressly permitted under the Asset Purchase Agreement (or Modified Agreement), will be held before the Honorable Paul Sala, United States Bankruptcy Judge, District of Arizona, [LOCATION] on [DATE], **2015 at _____ a.m. (prevailing Pacific time)**, or at such other time thereafter as counsel may be heard.  The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

5.  Objections, if any, to the sale, must: (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules; and (c) be filed with the clerk of the Bankruptcy Court for the District of Arizona, 230 N. 1st Avenue, Suite 101, Phoenix, AZ 85003, on or before [DATE], **2015 at 4:00 p.m. (Prevailing Arizona Time)**; and be served upon (a) counsel for the Debtors, Pachulski, Stang, Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111, Attn: John W. Lucas; (b) counsel to the Committee, if any; (c) Mastodon Ventures, Inc., 515 Congress Avenue, Suite 1400, Austin, TX 78701, Attn: Robert Hersch; and the U.S. Trustee, 230 N. 1st Avenue, Suite 204, Phoenix, AZ 85003; so as to be received no later than [DATE], **2015 at 4:00 p.m. (Prevailing Arizona Time)**; provided, however, that to the extent the Winning Bidder at the Auction is a bidder other than the Stalking Horse Bidder, any supplemental or further objections to the sale to the Winning Bidder solely on the basis of such other Winning Bidder's adequate assurance of future performance shall be filed and served so as to be received no later than [DATE],

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2

**2015 at 12:00 p.m. (Prevailing Arizona Time).** The Debtors or any other party in interest may file a reply in support of the Sale Transaction by no later than [DATE]**, 2015 at 4:00 p.m. (Prevailing Arizona Time)**, provided that any reply to an objection with respect to an alternative Winning Bidder's adequate assurance of future performance may be presented orally to the Court at the Sale Hearing. UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED WITHOUT FURTHER HEARING AND NOTICE.

      6.    This Notice of Auction and Sale Hearing is subject to the fuller terms and conditions of the Bid Procedures/Sale Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety. Parties interested in receiving more information regarding the sale of the Purchased Assets and/or copies of any related document, including the Asset Purchase Agreement, the Bid Procedures/Sale Motion, or the Bid Procedures Order, may make a written request to: (a) the investment bankers to the Debtors, Mastodon Ventures, Inc., 515 Congress Avenue, Suite 1400, Austin, TX 78701, Attn: Robert S. Hersch, or (b) counsel to the Debtors, Pachulski, Stang, Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA 90067, Attn: John W. Lucas. In addition, copies of the Bid Procedures/Sale Motion, the Bid Procedures Order and this Notice can be found on (i) the Court's website, www.azb.uscourts.gov or (ii) by contacting ocarpio@pszjlaw.com.

Dated: _____, 2015          NUSSBAUM GILLIS & DINNER, P.C.

By: _____
      Randy Nussbaum
      Dean Dinner
      John Parzych
      Nussbaum Gillis & Dinner, P.C.
      14850 N. Scottsdale Road, Suite 450
      Scottsdale, AZ 85254
      Telephone: (480) 609-0011
      Facsimile: (480) 609-0016
      Email:  rnussbaum@ngdlaw.com
              ddinner@ngdlaw.com
              jparzych@ngdlaw.com

      and

      John W. Lucas
      Jason H. Rosell
      PACHULSKI STANG ZIEHL & JONES LLP
      150 California Street, 15th Floor
      San Francisco, CA 94111
      Telephone: (415) 263-7000
      Facsimile: (415) 263-7010
      E-mail:    jlucas@pszjlaw.com
              jrosell@pszjlaw.com

      Proposed Counsel for Debtors and Debtors in Possession

3

# **EXHIBIT E**

**(Form Notice of Assumption, Assignment and Sale)**

1  John W. Lucas (CA Bar No. 271038)       Randy Nussbaum (AZ Bar No. 6417)
   Jason H. Rosell (CA Bar No. 269126)     Dean M. Dinner (AZ Bar No. 10216)
2  PACHULSKI STANG ZIEHL & JONES LLP       John Parzych (AZ Bar No. 26079)
   150 California Street, 15th Floor        Nussbaum Gillis & Dinner, P.C.
3  San Francisco, CA 94111                  14850 N. Scottsdale Road, Suite 450
   Telephone: (415) 263-7000                Scottsdale, AZ 85254
4  Facsimile: (415) 263-7010                Telephone: (480) 609-0011
   E-mail:  jlucas@pszjlaw.com              Facsimile:  (480) 609-0016
5           jrosell@pszjlaw.com             Email:  rnussbaum@ngdlaw.com
                                                    ddinner@ngdlaw.com
6  Proposed Counsel for Debtors and Debtors in      jparzych@ngdlaw.com
   Possession

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                      **FOR THE DISTRICT OF ARIZONA**

10

11  In re:

12  Z'Tejas Scottsdale, LLC, et al.,              Case No.: 2:15-bk-_____

13                           Debtors.             Chapter 11

14  Joint Administration Pending With:            Joint Administration Pending With Case Nos.:

15  Z'Tejas 6th Street, LLC                       2:15-bk-_____
    Z'Tejas Avery Ranch, LLC                      2:15-bk-_____
16  Z'Tejas Bellevue, LLC                         2:15-bk-_____
    Z'Tejas Bethany Home LLC                      2:15-bk-_____
17  Z'Tejas Chandler, LLC                         2:15-bk-_____
    Z'Tejas Costa Mesa, LLC                       2:15-bk-_____
18  Z'Tejas GP, LLC                               2:15-bk-_____
    Z'Tejas Grill Gateway, L.L.C.                 2:15-bk-_____
19  Z'Tejas Holdings, Inc.                        2:15-bk-_____
    Z'Tejas, Inc.                                 2:15-bk-_____
20  Z'Tejas La Cantera, LLC                       2:15-bk-_____
    Z'Tejas LP, LLC                               2:15-bk-_____
21  Z'Tejas of Arboretum, LLC                     2:15-bk-_____
    Z'Tejas Restaurant Holdings, LP               2:15-bk-_____
22  Z'Tejas Salt Lake City, LLC                   2:15-bk-_____
    Z'Tejas Summerlin, LLC                        2:15-bk-_____
23  Z'Tejas Tempe, LLC                            2:15-bk-_____
    Taco Guild Osborn LLC                         2:15-bk-_____

24  This Pleading applies to:

25        ☑    All Debtors                    **NOTICE OF PROPOSED ASSUMPTION,**
          ☐    Specified Debtors              **ASSIGNMENT AND SALE OF EXECUTORY**
26                                            **CONTRACTS AND UNEXPIRED LEASES**

27

28

*(left margin, rotated)* PACHULSKI STANG ZIEHL & JONES LLP / ATTORNEYS AT LAW / SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**You are receiving this *Notice of Proposed Assumption, Assignment and Sale of Executory Contracts and Unexpired Leases* (the "Notice of Assumption, Assignment and Sale") because you may be a counterparty to a contract or lease with S.B. Restaurant Co. or one or more of its affiliated debtors. Please read this notice carefully as your rights may be affected by the transactions described herein.**

**PLEASE TAKE NOTICE** that on [DATE], 2015, the United States Bankruptcy Court for the District of Arizona (the "**Bankruptcy Court**") entered an order (the "**Bid Procedures Order**") approving the *Motion of Debtors Requesting (A) the Scheduling of an Auction and Sale Hearing in Connection with the Sale of Substantially All the Debtors' Assets, (B) Approval of Bidding Procedures for Such Assets, (C) Approval of Purchase Agreement with Stalking Horse Bidder, (D) Approval of the Form and Scope of Notice of Auction and Sale Hearing, (E) Approval of Procedures for the Assumption, Assignment and Sale of Contracts and Leases to the Purchaser, and (F) Approval of Sale of the Debtors' Assets to the Purchaser* (the "**Bid Procedures/Sale Motion**"), filed by Z'Tejas Scottsdale, LLC and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"). The Bid Procedures/Sale Motion and Bid Procedures Order set forth certain dates, deadlines and procedures (the "**Bid Procedures**") in connection with the sale of substantially all of the Debtors' assets (the "**Sale Transaction**"). Additional information regarding the Bid Procedures and the Sale Transaction is available on Court's website (www.azb.uscourts.gov) at the case number cited above or by contacting ocarpio@pszjlaw.com.

**PLEASE TAKE FURTHER NOTICE** that the contracts and leases listed on Exhibit 1 attached hereto (each, a "**Contract**" and collectively, the "**Contracts**") may be designated as "Purchased Contracts" under that certain *Asset Purchase Agreement* (the "**Asset Purchase Agreement**"), dated as of [DATE], 2015, between the Debtors and [NAME] (the "**Stalking Horse Bidder**"). If the Stalking Horse Bidder is the Winning Bidder (as such term is defined in the Bid Procedures/Sale Motion), and the Bankruptcy Court enters an order approving the Sale Transaction (a "**Sale Order**"), then all Contracts that are listed as Purchased Contracts at the Closing of the Asset Purchase Agreement will be assumed by the Debtors and assigned and sold to the Stalking Horse Bidder, and any Contract designated as a Designation Right Asset at the Closing of the Asset Purchase Agreement may be assumed by the Debtors and assigned and sold to the designated person or entity, if it makes a written election to accept an assignment of such Contract within the time frame provided in the Asset Purchase Agreement. The amount necessary, if any, to cure any and all defaults under each Contract and compensate the counterparty thereto for any and all pecuniary loss in respect of such default(s) under Bankruptcy Code section 365(b), if any, as a condition to assumption, assignment and sale of each Contract (the "**Cure Costs**") is set forth on Exhibit 1 hereto.[1] Attached as Exhibit 2 hereto is evidence of the Stalking Horse Bidder's ability to provide adequate assurance of performance under the Contracts listed on Exhibit 1.

**PLEASE TAKE FURTHER NOTICE** that if the Stalking Horse Bidder is not the Winning Bidder and the Bankruptcy Court enters a Sale Order approving the Sale of the Purchased Assets to an alternative Winning Bidder, then (i) the Contracts listed on Exhibit 1 hereto may be designated as Purchased Contracts under the asset purchase agreement proposed by such other Winning Bidder (a "**Modified Agreement**") and assumed, assigned and sold to such other Winning Bidder upon the closing of such agreement, or as a Designation Right Asset, which may be assumed by the Debtors and assigned and sold to such other Winning Bidder, if the other Winning Bidder or its designee makes a written election to have such Contract assigned within the time frame provided in the Modified Agreement. If the Stalking Horse Bidder is not the Winning Bidder, then within one (1) day after the auction determining the Winning Bidder, the Debtors will send a supplemental notice to each known counterparty to the Contracts identifying the Winning Bidder and providing information regarding the Winning Bidder's adequate assurance of future performance under the

---

[1] The Cure Costs noted on Exhibit 1 is the amount owed as of [DATE], 2015. To the extent such amount is reduced by payments made after such date, the Cure Costs will be reduced by the amount of such payments.

Contracts to the extent not previously provided. Such notice will also be filed with the Court and published on the Website.

PLEASE TAKE FURTHER NOTICE that the Debtors may, prior to the closing of the Asset Purchase Agreement (or Modified Agreement), amend this Notice of Assumption, Assignment and Sale and give notice of the supplement or modification by the Winning Bidder of the list of Purchased Contracts under the Asset Purchase Agreement (or Modified Agreement), including a modification by which a Purchased Contract may be determined to be a Designation Rights Asset. If you are affected by any such amendment, supplement or modification, you will receive prompt notice thereof. Following the closing of the transactions contemplated by the Asset Purchase Agreement (or Modified Agreement), the Debtors may remove a Contract from the list of Purchased Contracts under the Asset Purchase Agreement (or Modified Agreement) if the Court determines after such closing that the Cure Amount for such Contract is in excess of the amount set forth on Exhibit 1 hereto and based on that the Winning Bidder determines to remove such Contract from its list of Purchased Contracts.

PLEASE TAKE FURTHER NOTICE that any objections to the assumption, assignment and sale of any Contract identified in this notice, including to the Cure Amount set forth in Exhibit 1 to this notice, must be in writing, filed with the Bankruptcy Court, and be **actually received** by the Objection Notice Parties (as defined below) no later than [DATE]**, 2015 at 4:00 p.m. (Prevailing Arizona Time)** (the "**Assignment and Cure Objection Deadline**"); provided, however, that to the extent the Winning Bidder is a bidder other than the Stalking Horse Bidder, any supplemental or further objections to the sale to the Winning Bidder by a counterparty to a Contract based solely on the ability of the Winning Bidder and/or Backup Bidder (as such term is defined in the Bid Procedures/Sale Motion) to provide adequate assurance of future performance shall be filed and served so as to be **actually received** by the Objection Notice Parties no later than [DATE]**, 2015 at 12:00 p.m. (Prevailing Arizona Time)** (the "**Supplemental Assignment and Cure Objection Deadline**"). Any such objections must set forth the specific defaults under the Contract and claim a specific monetary amount that differs from the Cure Amount, if any, specified by the Debtors. Other than the Cure Amounts listed on Exhibit 1, the Debtors are not aware of any amounts due and owing in respect of the Contracts listed therein or any other amounts that must be paid as a condition to assumption, assignment and sale of the Contracts pursuant to the Bankruptcy Code. If any party believes that any such additional amounts are owed in respect of any Contract included on Exhibit 1, such party must assert such claim in accordance with the procedures set forth above no later than the Assignment and Cure Objection Deadline or be forever barred from asserting such claim. The Debtors or any other party in interest may file a reply to any objection by no later than [DATE]**, 2015 at 4:00 p.m. (Prevailing Arizona Time)**, provided that any reply to an objection with respect to an alternative Winning Bidder's adequate assurance of future performance may be presented orally to the Court at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE that each non-debtor party to a Contract that does not timely file an objection by the Assignment and Cure Objection Deadline or the Supplemental Assignment and Cure Objection Deadline (as applicable) shall be forever barred from objecting to assumption, assignment and sale of the Contract or to the Cure Costs set forth in Exhibit 1, including, without limitation, the right to assert any additional cure or other amounts with respect to the Contract arising or relating to any period prior to such assumption, assignment and sale. The Debtors are not aware of any defaults under any Contract, other than defaults that will be cured and compensated by payment of the Cure Costs, if any, set forth on Exhibit 1 hereto. If any non-debtor party fails to raise a timely objection, such non-debtor party shall be barred from raising such defaults against any person or entity and shall be deemed to have waived such default for all purposes.**

PLEASE TAKE FURTHER NOTICE that the Objection Notice Parties are (a) counsel for the Debtors, Pachulski, Stang, Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111, Attn: John W. Lucas; (b) counsel to the Committee, if any; (c) Mastodon

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Ventures, Inc., 515 Congress Avenue, Suite 1400, Austin, TX 78701, Attn: Robert S. Hersch; and (d) the U.S. Trustee, 230 N. 1st Avenue, Suite 204, Phoenix, AZ 85003.

        **PLEASE TAKE FURTHER NOTICE** that, if no objections are received by the above deadlines, the assumption, assignment and sale of the Contracts set forth on <u>Exhibit 1</u> shall be authorized pursuant to the terms of the Sale Transaction and the Sale Order and the Cure Amounts set forth in <u>Exhibit 1</u> shall be binding upon the non-debtor party to the Contract for all purposes and will constitute a final determination of total cure amounts required to be paid by the Debtors in connection with the assumption, assignment and sale of the Contract.

        **PLEASE TAKE FURTHER NOTICE** that if a timely objection is received and such objection cannot otherwise be resolved by the parties, the Bankruptcy Court may hear such objection at the Sale Hearing or at a later date set by the Court.

        **PLEASE TAKE FURTHER NOTICE** that this Notice of Assumption, Assignment and Sale is subject to the fuller terms and conditions of the Bid Procedures/Sale Motion and the Bid Procedures Order, with such Bid Procedures Order controlling in the event of any conflict, and the Debtors encourage parties-in-interest to review such documents in their entirety. Parties with questions regarding the proposed assumption, assignment and sale procedures contained herein should contact the Debtors' counsel, contact information for which is reflected above and on the Website.

Dated: _____, 2015        NUSSBAUM GILLIS & DINNER, P.C.

By:_____

    Randy Nussbaum
    Dean Dinner
    John Parzych
    Nussbaum Gillis & Dinner, P.C.
    14850 N. Scottsdale Road, Suite 450
    Scottsdale, AZ 85254
    Telephone: (480) 609-0011
    Facsimile: (480) 609-0016
    Email: rnussbaum@ngdlaw.com
         ddinner@ngdlaw.com
         jparzych@ngdlaw.com

    and

    John W. Lucas
    Jason H. Rosell
    PACHULSKI STANG ZIEHL & JONES LLP
    150 California Street, 15th Floor
    San Francisco, CA 94111
    Telephone: (415) 263-7000
    Facsimile: (415) 263-7010
    E-mail: jlucas@pszjlaw.com
         jrosell@pszjlaw.com

    Proposed Counsel for Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# Exhibit 1

**Contracts and Cure Amounts**

DOCS_SF:87773.2

# Exhibit 2

**Proof of Stalking Horse Bidder's Ability to Provide Adequate Assurance of Performance**

DOCS_SF:87773.2