John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail: jlucas@pszjlaw.com
 jrosell@pszjlaw.com

Randy Nussbaum (AZ Bar No. 6417)
Dean M. Dinner (AZ Bar No. 10216)
John Parzych (AZ Bar No. (26079)
Nussbaum Gillis & Dinner, P.C.
14850 N. Scottsdale Road, Suite 450
Scottsdale, AZ 85254
Telephone: (480) 609-0011
Facsimile: (480) 609-0016
Email: rnussbaum@ngdlaw.com
 ddinner@ngdlaw.com
 jparzych@ngdlaw.com

Proposed Counsel for
Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | |
| Z'Tejas Scottsdale, LLC, et al., | Case No.: 2:15-bk-09178-PS |
| Debtors. | Chapter 11 |
| Joint Administration Pending With: | Joint Administration With Case Nos.: |
| Z'Tejas 6th Street, LLC | 2:15-bk-09180-PS |
| Z'Tejas Avery Ranch, LLC | 2:15-bk-09184-PS |
| Z'Tejas Bellevue, LLC | 2:15-bk-09188-PS |
| Z'Tejas Bethany Home LLC | 2:15-bk-09193-PS |
| Z'Tejas Chandler, LLC | 2:15-bk-09194-PS |
| Z'Tejas Costa Mesa, LLC | 2:15-bk-09195-PS |
| Z'Tejas GP, LLC | 2:15-bk-09198-PS |
| Z'Tejas Grill Gateway, L.L.C. | 2:15-bk-09200-PS |
| Z'Tejas Holdings, Inc. | 2:15-bk-09201-PS |
| Z'Tejas, Inc. | 2:15-bk-09203-PS |
| Z'Tejas La Cantera, LLC | 2:15-bk-09205-PS |
| Z'Tejas LP, LLC | 2:15-bk-09207-PS |
| Z'Tejas of Arboretum, LLC | 2:15-bk-09208-PS |
| Z'Tejas Restaurant Holdings, LP | 2:15-bk-09210-PS |
| Z'Tejas Salt Lake City, LLC | 2:15-bk-09212-PS |
| Z'Tejas Summerlin, LLC | 2:15-bk-09213-PS |
| Z'Tejas Tempe, LLC | 2:15-bk-09214-PS |
| Taco Guild Osborn LLC | 2:15-bk-09215-PS |

| This Pleading applies to: | **INTERIM ORDER: (A) AUTHORIZING POSTPETITION SECURED FINANCING; (B) AUTHORIZING USE OF CASH COLLATERAL; (C) GRANTING ADEQUATE PROTECTION; (D) GRANTING RELATED RELIEF; AND (E) SCHEDULING FINAL HEARING** |
|---|---|
| ☐ All Debtors<br>☑ Specified Debtors | |

On the motion (the "**Motion**") of the specified debtors and debtors-in-possession subject to this Motion (the "**Debtors**")[1] under §§ 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking:[2]

    (a)    The Court's authorization for the Debtors to obtain postpetition term loan financing (the "**DIP Loan**") of up to $725,000, $320,000 of which would be available on an interim basis under this order (the "**Interim Order**"), with further borrowings as authorized under a final order on the Motion, from Cornbread Ventures, LP, a Texas limited partnership (the "**Lender**"), with the DIP Loan:

        (i)    having priority under § 364(c)(1) over any administrative expenses of the kind specified in §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), 1113, and 1114, subject only to the Carveout (defined below);

        (ii)    being secured under § 364(c)(2) by a perfected first-priority lien, subject only to the Carveout, on all the Debtors' prepetition and postpetition property including any cash, inventory, accounts receivable, rights to payment, contracts, properties, plants, equipment, general intangibles, documents, instruments, leaseholds, proceeds of any interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, and capital stock of subsidiaries, but excluding all chapter 5 causes of action and their proceeds (together, the "**Avoidance Actions**"), not subject to valid, perfected, non-avoidable liens and all proceeds of the foregoing (the "**Unencumbered Property**");

---

[1] For purposes of the Motion and this Interim Order, the relief granted herein shall not include following Debtors: Z'Tejas La Cantera, LLC, Z'Tejas Salt Lake City, LLC, Z'Tejas Summerlin, LLC, and Z'Tejas Bellvue, LLC.

[2] "Including" means "including without limitation." "Lien" means any lien or security interest in any property under applicable law. Unless otherwise noted, all chapter and § references are to the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(iii) being secured under § 364(c)(3) by a perfected lien, subject only to the Carveout, on all the Debtors' prepetition and postpetition property (other than Avoidance Actions) subject to valid, perfected, non-avoidable liens (including tax liens) existing on the Petition Date or arising postpetition under applicable law or order of this Court ("**Prior Liens**") immediately junior to the Prior Liens;

(iv) being secured under § 364(d)(1) by a perfected first-priority priming lien, subject only to the Carveout, on all the Debtors' prepetition and postpetition property already subject to Prior Liens in favor of the Lender (as successor to CEF Funding II, LLC) or, except to the extent of $1,200,000, KarpReilly Investments, LLC (as successor to National Bank of Arizona, N.A.) ("**KRI**");

(b) the Court's authorization for the Debtors to use, under §§ 361 and 363, Cash Collateral (as defined in § 363(a)) and all other prepetition property of the Debtors subject to Prior Liens existing as of the Petition Date (together with the Cash Collateral, the "**Prepetition Collateral**") and provide adequate protection with respect to any diminution in the value of KRI's and the Lender's (as successor to CEF Funding II, LLC) interest in the Prepetition Collateral resulting from the DIP Loan, the Debtors' use of Cash Collateral, the Debtors' use, sale, or lease of the Prepetition Collateral in the ordinary course of the Debtors' business, and the imposition of the automatic stay;

(c) relief related to the foregoing; and

(d) the scheduling of a final hearing on the Motion.

The Court having held an interim hearing on the Motion on July 24, 2015 (the "**Interim Hearing**"), having considered all pleadings filed with this Court and the evidence submitted in support of the Motion both from the *Declaration of Steven Micheletti in Support of Emergency First Day Motions* and the proffers of evidence made at the Interim Hearing, on the record made at the Interim Hearing and the entire record of these cases, and for adequate cause

**THE COURT FINDS, CONCLUDES, AND ORDERS THAT**:

1. *Jurisdiction*. This Court has core jurisdiction over these cases and the Motion under 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

2. *Notice*. The Debtors filed their chapter 11 petitions for relief on July 22, 2015 (the "**Petition Date**"). The Debtors served notice of the Motion and the Interim Hearing on: (a) the Debtors' twenty largest unsecured creditors; (b) the US Trustee for the District of Arizona; (c) counsel to KRI; (d) counsel to the Lender; (e) the Internal Revenue Service; and (f) the state and local taxing authorities with jurisdiction over the Debtors' various business locations. Under the circumstances, the nature and extent of this notice constitutes sufficient notice under Rules 4001(b) and (c) and Local Bankruptcy Rules 2002-1 and 4001-4.

3. *Objections*. Any objections to the entry of this Interim Order not resolved by this Interim Order's terms are overruled.

4. *Debtor's Stipulations*. Without prejudice to the estates or any other party's rights and subject to a Challenge under paragraph 19 below, the Debtors stipulate that:

    (a) With respect to KRI, as of the Petition Date:

        (i) the Debtors were indebted to KRI in the outstanding principal amount no less than $5,941,552 in respect of senior secured loans made by KRI or its predecessors, plus accrued and unpaid interest and fees, expenses, and other obligations incurred in connection with those loans (collectively, the "**KRI Loan**"; the amount due is the "**KRI Loan Claim**");

        (ii) the KRI Loan constitutes the Debtors' valid and binding obligation, enforceable in accordance with its terms (except as stayed under § 362), not subject to avoidance, recharacterization, or subordination;

        (iii) the Debtors do not have, and forever release on their own behalf but not on the estates' behalf, any claims, counterclaims, causes of action, defenses, or setoff rights, against KRI or its predecessors, affiliates, agents, officers, directors, employees, or attorneys and advisors with respect to the KRI Loan;

        (iv) the liens granted to KRI in connection with and to secure the Debtors' obligations under the KRI Loan are valid, binding, perfected, unavoidable, and enforceable first-priority liens on certain Prepetition Collateral (the "**Prepetition KRI Liens**"), subject and subordinate only to the Priming Lien granted under this Interim Order;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(b) With respect to the Lender, as of the Petition Date:

    (i) the Debtors were indebted to the Lender in the outstanding principal amount of $663,662 in respect of senior secured loans made by the Lender or its predecessors, plus accrued and unpaid interest and fees, expenses, and other obligations incurred in connection with those loans (collectively, the "**Chandler Loan**"; the amount due is the "**Chandler Loan Claim**");[3]

    (ii) the Chandler Loan constitutes the Debtors' valid and binding obligation, enforceable in accordance with its terms (except as stayed under § 362), not subject to avoidance, re-characterization, or subordination;

    (iii) the Debtors do not have, and forever release on their own behalf but not on the estates' behalf, any claims, counterclaims, causes of action, defenses, or setoff rights, against the Lender or its predecessors, affiliates, agents, officers, directors, employees, or attorneys and advisors with respect to the Chandler Loan;

    (iv) the liens granted to the Lender or its predecessors in connection with and to secure the Debtors' obligations under the Chandler Loan are valid, binding, perfected, unavoidable, and enforceable first-priority liens on certain Prepetition Collateral (the "**Prepetition Chandler Liens**"), subject and subordinate only to the Priming Lien granted under this Interim Order.

5. *Findings Regarding the DIP Loan.*

    (a) Good cause has been shown for the entry of this Interim Order.

    (b) The Debtors must immediately obtain the DIP Loan and use the Prepetition Collateral, including Cash Collateral, to enable, among other things the continuation of the Debtors' business operations, payroll, and business relationships with vendors, suppliers and customers. The Debtors' access to sufficient working capital and liquidity from the DIP Loan and use of Cash Collateral is vital to preserving and maintaining the Debtors' going concern value and chances for a successful reorganization.

    (c) The Debtors cannot obtain secured financing on more favorable terms from sources other than the Lender and cannot obtain adequate unsecured credit allowable under § 503(b)(1) as an administrative expense or unsecured credit with the enhanced priority afforded by § 364(c)(1). The Debtor also cannot obtain secured credit allowable under §§ 364(c)(1), 364(c)(2), or

---

[3] The Chandler Loan relates to the Debtors' restaurant located in Chandler, Arizona.

364(c)(3) without granting to the Lender, subject to the Carveout, the Priming Liens and the Superpriority Claims (defined below) under the terms and conditions set forth in this Interim Order.

(d) The terms of the DIP Loan and the use of Cash Collateral are fair and reasonable, reflect the Debtors' prudent business judgment, and constitute reasonably equivalent value and fair consideration.

(e) The DIP Loan and the use of Cash Collateral have been negotiated in good faith between the Debtors and the Lender. All the Debtors' obligations arising under the DIP Loan, including all borrowings and other obligation arising under this Interim Order (collectively, the "**DIP Obligations**"), have been extended by the Lender in good faith as that term is used in § 364(e) and expressly relying on the protections offered by § 364(e) and, therefore, are entitled to the full protection of § 364(e) if any provision of this Interim Order is vacated, reversed, or modified on appeal or otherwise.

(f) The Debtors have requested entry of this Interim Order under Bankruptcy Rule 4001(b)(2) and (c)(2). Without receiving the relief granted in this Interim Order, the Debtors' estates will be immediately and irreparably harmed. Consummating the DIP Loan and using Cash Collateral in accordance with this Interim Order are in the best interests of the Debtors' estates.

6. *Authorization of the DIP Loan.*

(a) The DIP Loan is approved solely to the extent provided in this Interim Order. The Debtors may collectively borrow under the DIP Loan up to the principal amount of $320,000, for all uses and purposes permitted under the operating budget attached to this Interim Order as Exhibit A (the "**Budget**").

(b) The Debtors are authorized and directed to perform any acts, to execute and deliver any documents, and to pay any fees reasonably required to effect the obligations under the DIP Loan or this Interim Order's provisions. On entry of this Interim Order, the DIP Loan constitutes the Debtors' joint and several, valid, and binding obligation, enforceable against the Debtors and their properties in accordance with this Interim Order. No separate loan agreement or security documents are required to establish the DIP Loan and the Priming Liens; this Interim Order and any final order on the Motion that supersedes this Interim Order govern the relationship between

the Debtors and the Lender with respect to the DIP Loan. No transfer of any Debtor's interest in property in accordance with this Interim Order is subject to any defense, counterclaim, or setoff, or is avoidable or recoverable under the Bankruptcy Code or under any applicable fraudulent transfer or fraudulent conveyance law.

7. *Superpriority Claims.* Under § 364(c)(1), the DIP Obligations constitute allowed claims against the Debtors with priority over all administrative expenses, diminution claims (including all Adequate Protection Obligations (defined below)), and all other claims against the Debtors, including all administrative expenses specified in §§ 503(b) and 507(b) and any claims arising under §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), 726, 1113, or 1114 (the "**Superpriority Claims**"), payable from all the Debtors' prepetition and postpetition property and all proceeds thereof, subject only to the Carveout. For the avoidance of doubt, the Superpriority Claims are not payable from Avoidance Actions.

8. *Carveout.* The Superpriority Claims and Priming Liens are subject to the payment of a carveout (the "**Carveout**"). The Carveout means a carveout for: (i) allowed, accrued, but unpaid professional fees and expenses of the Debtor and any official committee of unsecured creditors appointed in the Bankruptcy Cases (the "**Committee**"), in each case as set forth in the Budget for each professional (on a cumulative basis with a rollover of any unused amounts to prior or subsequent weeks) incurred before a Default (defined below) not otherwise cured by the Debtors or waived by the Lender; (ii) allowed, accrued, but unpaid professional fees and expenses of the Debtors and the Committee incurred in the Bankruptcy Cases after a Default (that is not waived or cured) not to exceed an aggregate amount equal to $100,000; (iii) all accrued, but unpaid ordinary course operating expenses of the Debtors incurred before a Default, as set forth in the Budget (on a cumulative basis); and (iv) accrued but unpaid fees under 28 U.S.C. § 1930.

9. *Priming Liens.* As security for the DIP Obligations, effective and perfected on entry of this Interim Order and without the execution or recordation of any security agreement, control agreement, pledge, financing statement, or other similar document, the following liens (the "**Priming Liens**") are granted to the Lender, not subject to §§ 510, 549, or 550 and subject only to the Carveout:

(a) *First Lien on Unencumbered Property.* Under § 364(c)(2), a valid, binding, continuing, enforceable, perfected first-priority lien on all Unencumbered Property;

(b) *Liens Priming the Lender's Prior Liens.* Under § 364(d)(1), a valid, binding, continuing, enforceable, perfected first-priority priming lien on all the Debtors' prepetition and postpetition property (except Avoidance Actions) subject, as of the Petition Date, to the Prepetition Chandler Liens;

(c) *Liens Partially Priming KRI's Prior Liens.* Under § 364(d)(1), a valid, binding, continuing, enforceable, perfected first-priority priming lien on all the Debtors' prepetition and postpetition property (except Avoidance Actions) subject, as of the Petition Date, to the Prepetition KRI Liens, except that $1,200,000 of the Prepetition KRI Liens remain senior to any Priming Lien granted under this Interim Order;

(d) *Liens Junior to Tax Liens.* Under § 364(c)(3), a valid, binding, continuing, enforceable, perfected lien on all the Debtors' prepetition and postpetition property (except Avoidance Actions) subject, as of the Petition Date, to any valid and unavoidable lien arising by operation of statute or ordinance in favor of any federal, state, or municipal taxing authority (a "**Tax Lien**") such that, in each instance, the lien granted under this subparagraph is senior to all liens other than any Tax Lien; and

(e) *No Direct Liens on Real Property Leases.* For the avoidance of doubt, and notwithstanding the granting of liens in this Interim Order, the Priming Liens extend only to the proceeds of leased real property and this Interim Order does not grant any direct liens on the Debtors' leases of real property to the extent any such real property lease prohibits or restricts the granting of a lien on such lease or otherwise prohibits or restricts hypothecation of the leasehold interest.

10. *Protection of Lender's Rights.*

(a) Whenever any amount remains outstanding or the Lender has any funding commitment under the DIP Loan, the Lender:

    (i) may not take any action to foreclose on or recover in connection with the Prepetition Chandler Liens or this Interim Order or otherwise

exercise any remedy against any collateral not authorized by this Court's order;

(ii) may be heard as a party-in-interest in connection with any proceeding relating to the sale, transfer, or other disposition of any property subject to the Prepetition Chandler Liens or the Priming Liens, including as part of a sale of substantially all the Debtors' assets under § 363 (a "**Sale**");

(iii) retains all rights to credit bid arising under the DIP Loan and Chandler Loan in connection with any Sale.

(b) The automatic stay under § 362 is modified to the extent necessary to permit the Lender to (i) implement the DIP Loan, (ii) take any act to create, validate, evidence, or perfect any lien granted or authorized under this Interim Order (although nothing in this Interim Order requires any such act), (iii) to charge, collect, advance, and receive payments under the DIP Loan, (iv) on the occurrence and during the continuance of a Default and the giving of five (5) business days' prior written notice to the Debtors, KRI, and any official committee of unsecured creditors, exercise any available right or remedy against any property subject to the Priming Liens, including foreclosing on and taking possession of such property and any party interest may request an expedited hearing to contest the same. The Lender is not subject to the equitable doctrine of marshaling or any similar doctrine with respect to its collateral. The Lender's failure to seek relief or otherwise exercise its rights and remedies under this Interim Order does not waive any right or remedy.

(c) Neither the Lender nor KRI consents to any surcharge of their respective collateral for any expense associated with the administration of these cases under §506(c) or otherwise and no such consent may be implied by any party's action, inaction, or acquiescence.

11. *Consents of KRI.* KRI has evinced its consent to entry of this Interim Order, including the granting of the Priming Liens. Its consent to the terms of this Interim Order does not constitute consent to any additional impact on KRI's interests in connection with relief materially different from that granted in this Interim Order. In connection with any Sale, KRI consents to limit its right to credit bid any amount of the KRI Loan Claim to no more than $1,200,000 and agrees to accept

cash in any amount over $1,200,000 to release all Prepetition KRI Liens on all property of the estates subject to the Sale.

12. *Operative Terms of DIP Loan.* All borrowings under the DIP Loan are subject to the following terms:

(a) *Availability.* The Debtors may borrow up to $320,000 under the DIP Loan through one or more draws, pending a final hearing on the Motion.

(b) *Interest Rate.* All amounts outstanding under the DIP Loan accrue simple interest at the rate of 12% per year.

(c) *Term.* The Lender's commitment to fund borrowings under the DIP Loan expires, the DIP Loan matures, and all principal and accrued interest owing under the DIP Loan becomes due in full on the earliest to occur of (i) a Sale, (ii) a Default, and (iii) December 31, 2015 (the earliest is the "**Maturity Date**").

(d) *No Debt Service.* All interest accrues and is due and payable, together with all outstanding principal, in full and in cash on the Maturity Date. The Debtors are not obligated to make any payments of principal or interest during the term of the DIP Loan.

(e) *Default.* At any time during which any amount is outstanding under the DIP Loan, any of the following, other than a Challenge (defined below), constitutes a "**Default**" under the DIP Loan and this Interim Order:

(i) The entry of an order dismissing one or more of these cases or converting one or more of these cases to a case under Chapter 7, or a Debtor's filing of a motion or failing to oppose a motion seeking such relief;

(ii) Any Debtor's failure to comply with any of its material obligations under the Bankruptcy Code or contained in this Interim Order (including a failure to comply with the Budget, a failure to provide any financial reporting to KRI or the Lender as required in this Interim Order, and a failure to time file any monthly operating report);

(iii) Except for the Carveout or as permitted in this Interim Order or a final order on the Motion, the entry of any order in these cases granting a super-priority claim or lien *pari passu* with or senior to the Prepetition Chandler Liens or the Priming Liens;

- 10 -

(iv) The entry of any order in these cases or any successor case constituting the stay, modification, appeal, or reversal of this Interim Order or otherwise undermining the effectiveness of this Interim Order;

(v) The entry of an order in these cases appointing any examiner with expanded powers or a trustee to operate all or a substantial part of the Debtors' business;

(vi) The entry of an order in these cases granting relief from the automatic stay allowing a third party (i) to proceed against any Debtor's property whose fair market value is reasonably expected to exceed $50,000, or (ii) to commence or continue any litigation against any Debtor involving potential liability not covered by insurance in excess of $250,000 in the aggregate;

(vii) The entry of any judgment or order with respect to a postpetition event against any Debtor, not stayed by reason of appeal or otherwise for ten days following entry, that does or would reasonably be expected to (i) cause a material adverse change in the value of the Debtors' business, operations, assets, liabilities (contingent or otherwise), or financial condition or (ii) have a material adverse effect on the Lender's rights and remedies under this Interim Order;

(viii) Any Debtor sells any of its assets subject to any lien in the Lender's favor for aggregate proceeds in excess of $100,000 without the Lender's written consent and without granting the Lender a right to credit bid under §363(k), other than sales of inventory or other property in the ordinary course of business.

(f) In addition to any other right or remedy provided in this Interim Order, on the occurrence of a Default, the Debtors must immediately cease using Cash Collateral and must segregate and hold all Cash Collateral for the benefit of its lienholders subject to further order of this Court.

13. *Use of Cash Collateral.* The Debtors' cash, including all cash and other amounts on deposit or maintained in any account and any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of property, constitutes proceeds of KRI's or the Lender's prepetition collateral and, therefore, constitutes cash collateral within the meaning of § 363(a) (the "**Cash Collateral**"). The Debtors are authorized to use Cash Collateral strictly in accordance with the Budget (as further qualified below) and the provision of adequate protection under this Interim Order. The Debtors' right to use Cash Collateral automatically terminates on the Maturity Date.

14. *Budget Constraints.* Subject to the following sentence, the Debtors may only use Cash Collateral in accordance with the Budget, with unused amounts for each weekly period being carried forward to the next weekly period cumulatively, and within a variance of no more than 10% per line item in any monthly period without the Lender's and KRI's express written consent. Nonetheless, unused amounts in respect of the line item "U.S. Trustee Fees" may be used only for that line item and may not be used for any other purpose. The Debtors must pay U.S. Trustee fees under 28 U.S.C. § 1930 as and when due.

15. *Adequate Protection.* As a condition to their consent to the relief granted in this Interim Order, the Lender and KRI are entitled, under §§ 361, 363(c)(2), 363(e) and 364(d)(1), to adequate protection of their respective interests in their prepetition collateral, to the extent such interests are valid, in an amount equal to any aggregate diminution in value of that collateral, including any diminution resulting from the DIP Loan, the Priming Liens, the Debtors' use of the prepetition collateral and Cash Collateral, and the imposition of the automatic stay. As adequate protection, KRI and the Lender are granted the following (collectively, the "**Adequate Protection**"):

(a) *Replacement Liens.* KRI and the Lender are each granted (effective and perfected on entry of this Interim Order) a valid, perfected replacement lien (the "**Replacement Liens**"), subject only to the Carveout, on all the Debtors' postpetition property (including Cash Collateral but excluding all Avoidance Actions) of a type in which each of KRI and the Lender had a respective perfected lien as of the Petition Date and all such property's proceeds, products, rents, and profits. Notwithstanding the foregoing, the Replacement Liens are subordinate to the Priming Liens and the Carveout. The Replacement Liens are valid and perfected as of the entry of this Interim Order without the need for the execution or filing of any further document.

(b) *Limits on Cash Collateral Use.* The Debtors may not use Cash Collateral to make any payments to the Debtors' directors, officers, employees, or agents in connection with any retention agreements, retention bonuses, stay bonuses, or severance agreements unless those payments have been disclosed to KRI and the Lender, provided for in the Budget, and specifically approved by the Court.

- 12 -

DOCS_SF-87987.10
Case 2:15-bk-09178-PS    Doc 45    Filed 07/27/15    Entered 07/27/15 11:17:18    Desc
Main Document    Page 12 of 18

(c) *Access to Information.* KRI and the Lender and their respective advisors may access the Debtors' books, records, and documents during normal business hours on reasonable notice and without interfering with the Debtors' operations.

(d) *Budget Reconciliation.* The Debtors must provide to KRI and the Lender by 12:00 noon prevailing Pacific Time each Thursday, a weekly operating statement containing a reconciliation of actual receipts and disbursements with receipts and disbursements set forth in the Budget for the immediately preceding week. The Debtors must also provide to KRI and the Lender as promptly as reasonably possible any other information or reports either reasonably requests from time to time.

16. *Reservation of Rights as to Adequate Protection.* The Adequate Protection is reasonable and sufficient under the present circumstances. KRI and the Lender each may request further or different adequate protection and may object to any request by the Debtors or any other party in interest with respect to any financing other than the DIP Loan, and the Debtor or any other party may contest any such request or objection. The Debtors may object to any additional request for adequate protection.

17. *Perfection of Liens.*

(a) KRI and the Lender are authorized, but not required, to file or record any document in any jurisdiction or take any other action reasonably necessary to validate and perfect the liens granted under this Interim Order. A certified copy of this Interim Order may be filed or recorded with any governmental agency or office in lieu of any financing statement or other instrument evidencing a lien, and all such agencies and offices are authorized to accept a certified copy of this Interim Order for filing and recordation without imposing any tax or fee.

(b) The Debtors must execute and deliver to KRI or the Lender any document either KRI or the Lender reasonably requests to evidence, validate, or perfect any lien granted under this Interim Order.

(c) Any provision of any lease, license, or agreement that requires consent, approval, or the payment of any fee or obligation, in order for a Debtor to obtain financing is

inconsistent with the Bankruptcy Code and, therefore, unenforceable with respect to this Interim Order.

(d) Any provision of any lease, license, or agreement that requires consent or approval or the payment of any fee or obligation in order for a Debtor to pledge, grant, sell, assign, or otherwise transfer any interest in property evidenced by that lease, license, or agreement or any related property is inconsistent with the Bankruptcy Code and, therefore, unenforceable with respect to the granting of any liens under this Interim Order.

18. *Survival.* The liens granted under this Interim Order, the Superpriority Claims, the Adequate Protection, and all other rights and remedies granted in this Interim Order survive and may not be modified or impaired by the entry of an order dismissing one or more of these cases, converting one of more of these cases to chapter 7, or confirming a plan of reorganization in one or more of these cases. Under § 1141(d)(4), the Debtors waive any discharge as to any unpaid amount under the DIP Loan. The terms of this Interim Order and the DIP Loan continue in full effect until all amounts owing under the DIP Loan are indefeasibly paid in full, irrespective of the appointment of a trustee in, the dismissal of, or the conversion to chapter 7 of any of these cases.

19. *Effect of Stipulations on Committee and Other Third Parties.* The stipulations and admissions regarding the KRI Loan, the Prepetition KRI Liens, the Chandler Loan, and the Prepetition Chandler Liens contained in this Interim Order (the "**Stipulations**") bind the Debtors in all circumstances and bind all other parties, including any official committee of unsecured creditors (the "**Committee**"), unless the Committee on the estates' behalf or a non-Debtor party has timely filed an adversary proceeding, or a motion but only to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, no later than 60 days after entry of this Interim Order challenging the validity, enforceability, priority, or extent of the Prepetition KRI Liens or the Prepetition Chandler Liens, the amount owing under the KRI Loan Claim or the Chandler Loan Claim, or asserting any Avoidance Action or other claim or defense against KRI or the Lender (or their respective agents, affiliates, directors, officers, employees, attorneys, or advisors) in connection with matters relating to the KRI Loan or the Chandler Loan or the respective collateral for those loans (a "**Challenge**"). The Debtors waive any right to bring a Challenge. KRI and the Lender agree that the Committee has

- 14 -

standing to bring a Challenge on the estates' behalf. If no Challenge is timely brought: (a) the KRI Loan Claim and the Chandler Loan Claim constitute allowed claims not subject to any counterclaim, setoff, subordination, re-characterization, defense, or avoidance for all purposes in these cases and any subsequent Chapter 7 cases; (b) the Prepetition KRI Liens and the Prepetition Chandler Liens are legal, valid, binding, and perfected in the priorities described in the Motion, not subject to avoidance; and (c) the Prepetition KRI Liens, the Prepetition Chandler Liens, the KRI Loan Claim, and the Chandler Loan Claim may not be subject to any challenge by any party. If a Challenge is timely brought, the Stipulations nonetheless bind all parties except to the extent that any specific Stipulation is expressly made the subject of the Challenge.

20. *Limitation on Use of DIP Loan Proceeds and Cash Collateral.* No borrowings under the DIP Loan, no Cash Collateral, and no portion of the Carveout may be used to: (a) object to or contest the validity, perfection, priority, extent, or enforceability of any amount due under the DIP Loan, the KRI Loan, or the Chandler Loan, or the liens and claims granted under this Interim Order; (b) bring a Challenge or assert any causes of action against KRI or the Lender, or its respective agents, affiliates, directors, officers, employees, attorneys, or advisors; (c) prevent, hinder, or delay the Lender's rights and remedies under the DIP Loan or this Interim Order; (d) seek to modify any right granted to KRI or the Lender under this Interim Order without the affected party's prior written consent; or (e) pay any amount on account of any claims arising before the Petition Date unless approved by an order of this Court and made in accordance with the DIP Loan.

21. *No Obligation to Extend Credit*. The Lender has no obligation to make any advance under the DIP Loan unless all the conditions precedent to the making of such advance under this Interim Order have been satisfied in full or waived by the Lender in writing. Entry of this Interim Order without material modification approved by the Lender is among the conditions precedent to making any advance under the DIP Loan.

22. *Insurance Policies*. On entry of this Interim Order, the Lender is to be deemed, without any further action or notice, an additional insured and loss payee on each insurance policy maintained by the Debtors covering any pre- or post-petition property subject to Priming Liens. The

Debtors are authorized and directed to take any action necessary to have the Lender added as an additional insured and loss payee on each insurance policy.

23. *Indemnification*. The Debtors must indemnify the Lender and its respective directors, officers, agents, affiliates, successors, and professionals in their respective capacities against any damages, losses, liabilities, or claims, and reasonable costs and expenses incurred, arising out of or related to the DIP Loan and this Interim Order, except if the result of the indemnified party's gross negligence or willful misconduct as determined by a final, non-appealable order of a court of competent jurisdiction.

24. *Limitation of Liability*. In making the DIP Loan, the Lender may not be deemed to be in control of the Debtors' operations or to be acting as a "responsible person" or "owner or operator" with respect to the Debtors' operation or management for any purpose under federal, state, or local law. Nothing in this Interim Order may in any way be construed or interpreted to impose or allow the imposition on the Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtors and their affiliates (as defined in § 101(2)) in the operation of their businesses or in connection with their restructuring efforts.

25. *Binding Effect of Interim Order*. Immediately on the Court's entry (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order become valid and binding on and inure to the benefit of the Debtors, KRI, the Lender, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary appointed in any of these cases or on dismissal or conversion of any of these cases.

26. *Leased Premises*. Notwithstanding the rights and remedies set forth in this Interim Order, or in applicable loan documents, the Lender's right to use or occupy any of the Debtors' leased premises in connection with the exercise of any right or remedy on the occurrence of a Default is limited to (i) the existing rights of the Lender and applicable landlord under applicable non-bankruptcy law, (ii) the written consent of the applicable landlord, or (iii) the further order of the Bankruptcy Court on motion and notice to landlords appropriate under the circumstances.

- 16 -

DOCS_SE-87987.10
Case 2:15-bk-09178-PS    Doc 45    Filed 07/27/15    Entered 07/27/15 11:17:18    Desc
Main Document    Page 16 of 18

27. *Retention of Jurisdiction.* The Court has and retains jurisdiction to enforce this Interim Order according to its terms.

28. *Final Hearing.* The Final Hearing will be held on August 19, 2015 at 9:00 a..m. (Arizona time). The Debtors must, within two days of entry of this Interim Order, serve copies of a notice of the entry of this Interim Order and a notice of the Final Hearing, to all creditors and to respective counsels for KRI, the Lender, and the Committee. The notice of Final Hearing must state that any party in interest that objects to the DIP Loan must file written objections with the Court no later than 4:00 p.m. (Arizona time) on August 12, 2015 (the "**Objection Deadline**"), and that objections must be served so that they are received on or before the Objection Deadline by: (a) counsel to the Debtors, (i) Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, Attention: John W. Lucas, jlucas@pszjlaw.com; and (ii) Nussbaum Gillis & Dinner, P.C., 14850 North Scottsdale Road, Suite 450, Scottsdale, AZ 85254, Attention: Randy Nussbaum, rnussbaum@ngdlaw.com; (b) counsel to KRI, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attention: Carl P. Marcellino, carl.marcellino@ropesgray.com; (c) counsel to Lender, Perkins Coie LLP, 2901 North Central Avenue, Suite 2000, Phoenix, AZ 85012, Attention: Jordan A. Kroop, jkroop@perkinscoie.com; and (d) the Office of the United States Trustee for the District of Arizona. The Debtors may file a reply to objections or response on or before August 17, 2015 at 4:00 p.m.

**SIGNED AND DATED ABOVE**

**AGREED AS TO FORM AND CONTENT:**

PACHULSKI STANG ZIEHL & JONES
Counsel for Debtors

By: /s/ John W. Lucas
　　　John W. Lucas


PERKINS COIE, LLP
Counsel for Lender

By: /s/ Jordan A. Kroop
　　　Jordan A. Kroop

KARPREILLY INVESTMENTS, LLC

By: /s/ Chris Reilly
　　　Chris Reilly