PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

In re:

Z'Tejas Scottsdale, LLC, et al.,

                      Debtors.

Joint Administration Pending With:

| | |
|---|---|
| Z'Tejas 6th Street, LLC | 2:15-bk-09180-PS |
| Z'Tejas Avery Ranch, LLC | 2:15-bk-09184-PS |
| Z'Tejas Bellevue, LLC | 2:15-bk-09188-PS |
| Z'Tejas Bethany Home LLC | 2:15-bk-09193-PS |
| Z'Tejas Chandler, LLC | 2:15-bk-09194-PS |
| Z'Tejas Costa Mesa, LLC | 2:15-bk-09195-PS |
| Z'Tejas GP, LLC | 2:15-bk-09198-PS |
| Z'Tejas Grill Gateway, L.L.C. | 2:15-bk-09200-PS |
| Z'Tejas Holdings, Inc. | 2:15-bk-09201-PS |
| Z'Tejas, Inc. | 2:15-bk-09203-PS |
| Z'Tejas La Cantera, LLC | 2:15-bk-09205-PS |
| Z'Tejas LP, LLC | 2:15-bk-09207-PS |
| Z'Tejas of Arboretum, LLC | 2:15-bk-09208-PS |
| Z'Tejas Restaurant Holdings, LP | 2:15-bk-09210-PS |
| Z'Tejas Salt Lake City, LLC | 2:15-bk-09212-PS |
| Z'Tejas Summerlin, LLC | 2:15-bk-09213-PS |
| Z'Tejas Tempe, LLC | 2:15-bk-09214-PS |
| Taco Guild Osborn LLC | 2:15-bk-09215-PS |

Case No.: 2:15-bk-09178-PS

Chapter 11

Joint Administration Pending With Case Nos.:

This Pleading applies to:

    ☑    All Debtors

**NOTICE OF FILING THE AMENDED AND RESTATED ASSET PURCHASE AGREEMENT BETWEEN DEBTORS AND CORNBREAD VENTURES, LP**

       **PLEASE TAKE NOTICE** that annexed here to **Exhibit A** is the *Amended and Restated Asset Purchase Agreement*, dated September 27, 2015 between the Debtors and Cornbread Ventures, LP.

Dated: September 29, 2015

        PACHULSKI STANG ZIEHL & JONES LLP

By:       */s/ John W. Lucas*

By:      */s/ John W. Lucas*

John W. Lucas
Jason H. Rosell
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
E-mail:    jlucas@pszjlaw.com
            jrosell@pszjlaw.com

Counsel for Debtors and Debtors in Possession

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# **EXHIBIT A**

**(Asset Purchase Agreement)**

DOCS_SF:88913.1

2

## AMENDED AND RESTATED

## ASSET PURCHASE AGREEMENT

by and among

**Cornbread Ventures, LP, a
Texas limited partnership**

**as Purchaser,**

**and**

**Z'Tejas Holdings, Inc., a Delaware corporation and Z'Tejas Restaurant Holdings, LP, a
Delaware limited partnership and their Subsidiaries who are Signatories hereof,**

as Sellers

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "***Agreement***") is made and entered into as of September 27, 2015 (the "***Effective Date***") by and among Z'Tejas Holdings, Inc., a Delaware corporation ("***Z'Tejas Holdings***"), Z'Tejas Restaurant Holdings, LP, a Delaware limited partnership ("**ZT LP**") and those subsidiaries of Z'Tejas Holdings and ZT LP who are signatories of this Agreement (each of the foregoing a "**Seller**" and collectively, the "**Sellers**") and Cornbread Ventures, LP, a Texas limited partnership (the "***Purchaser***"). Sellers and Purchaser are sometimes collectively referred to as the "***Parties***."

## RECITALS

The Parties hereby acknowledge that:

A.      Sellers are engaged in the business of owning and operating restaurants in Arizona and Texas (such restaurants located in such states, the "***Restaurants***" and such business as conducted in such states, the "***Business***").

B.      Following the mutual execution and delivery of this Agreement, each of the Sellers will be filing Petitions to initiate chapter 11 bankruptcy cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code, 11 U.S.C. sections 101 *et seq.* (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Arizona (the "***Bankruptcy Court***").

C.      On the terms and conditions of this Agreement, and pursuant to sections 105, 363 and 365 of the Bankruptcy Code, Sellers wish to sell to Purchaser, and Purchaser wishes to purchase from Sellers, certain of the assets and properties of Sellers relating to the Business, and the assumption and assignment of certain executory contracts and unexpired leases pursuant to the terms hereof, all in the manner and subject to the terms and conditions set forth herein and in accordance with Sections 105, 363 and 365 of the Bankruptcy Code (such transactions, the "***Contemplated Transactions***").

## AGREEMENT

In consideration of their respective covenants set forth herein, the Parties agree as follows:

1.      <u>Transfer of Assets</u>.

    1.1      <u>Purchase and Sale of Assets</u>On the Closing Date and on the terms and conditions hereinafter set forth in this Agreement and pursuant to sections 363 and 365 of the Bankruptcy Code and the Sale Order, Sellers shall sell, assign, transfer, convey and deliver to Purchaser, and Purchaser shall purchase, acquire, accept and receive from Sellers, free and clear of all Encumbrances to the extent provided in the Sale Order, all of each Seller's respective right, title and interest as of the Closing Date in and to the following assets and properties used by Sellers in connection with the operation of the Business including the Schedules referenced herein, other than any Excluded Assets (such assets and properties described below, other than the Excluded Assets, are collectively referred to herein as the "***Purchased Assets***"):

(a)     all Furniture and Equipment of Sellers identified on Schedule 1.1(a), to the extent located at any of the Acquired Restaurants as of the Closing Date;

(b)     all Inventory that is located at (or in transit to) any of the Acquired Restaurants as of the Closing Date, and all rights of Sellers to take delivery of any Inventory ordered by Sellers before the Closing Date for delivery to any of the Acquired Restaurants, which Inventory has not been delivered as of the Closing Date;

(c)     All cash net of cash reasonably required by the Sellers to satisfy post-Petition Date operating expenses of the Business through the Closing Date

(d)     all Restaurant Petty Cash;

(e)     all Large Party Deposits;

(f)     all Intangible Property Assets identified on Schedule 1.1(f) hereto;

(g)     any interest of Sellers under the Restaurant Leases for the Acquired Restaurants and the other Contracts of Sellers that are described on Schedule 1.1(g) hereto (collectively, the **"Purchased Contracts"**) subject to Section 2.7;

(h)     the liquor license of Debtor Z'Tejas Costa Mesa, LLC; and

(i)     to the extent transferable and assignable, all of the Sellers' interest in those Business Permits and all Liquor License held by Sellers relating to the Acquired Restaurants that are described on Schedule 1.1(i) hereto, in each case to the extent transferable, other than alcohol Business Permits (including Liquor Licenses) in jurisdictions where the law does not permit Purchaser to take title to such Permits until it obtains the requisite approvals from the pertinent Governmental Body; Sellers shall transfer, assign convey and deliver to Purchaser such Business Permits in each instance only upon issuance of the requisite approvals from the relevant Governmental Body (collectively, the "*Business Permits*").

1.2     Excluded Assets The Purchased Assets shall include only those assets and interested specifically listed in Section 1.1 above and shall in all events exclude all right, title or interest of Sellers in or to any of the following (collectively, the "*Excluded Assets*"):

(a)     any bank accounts of Sellers;

(b)     all accounts receivable (whether current or non-current) of the Business attributable to the operation of the Acquired Restaurants as of the Closing even if such accounts receivable becomes due and payable after the Closing and all causes of action specifically pertaining to the collection of the foregoing (collectively, the "*Receivables*");

(c)     the Purchase Price and Sellers' rights under this Agreement;

2

(d) any Excluded Contracts, including any refund, rebate, credit or payment due to Sellers thereunder;

(e) any Claims other than those arising post-Closing with respect to or in connection with any Purchased Contract or Purchased Asset;

(f) any books and records relating to any pre-Closing Period that the Sellers are under Legal Requirement to retain, including, without limitation, (i) Tax Returns, financial statements, and corporate or other Entity filings (*provided, however,* that Purchaser shall have the right to make copies of any portions of such retained books and records that relate to the Business or any of the Purchased Assets), (ii) minute books, stock ledgers, and stock certificates of any Subsidiaries of Sellers, and (iii) documents relating to proposals to acquire the Business by Persons other than Purchaser;

(g) all securities, whether capital stock or debt, and other ownership interests issued by any of the Sellers;

(h) all assets of any Section 401(k) or other Seller benefit plan;

(i) all intercompany claims by any Seller against any other Seller or any Subsidiary or other Affiliate of any Seller;

(j) any item expressly excluded pursuant to the provisions of Section 1.1 above;

(k) [reserved];

(l) all Avoidance Actions;

(m) all of the trust assets, including but not limited to $150,629.51 in cash which is impressed with the trust arising under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.,* the Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.,* and in Sellers' possession solely to satisfy the interests held by Worldwide Produce ($16,127.48), U.S. Foods ($13,416.37), Brothers Produce of Austin ($46,167.09), and Grand Avenue Produce ($64,091.00), and the attorneys' fees of Grand Avenue Produce in the amount of $10,827.57; and

(n) any premium refunds of the Sellers arising from their insurance policies on account of reduction in workforce, liability coverage, and the like.

3

1.3    Executory Contracts

(a)    All Purchased Contracts shall be assumed by Sellers and assigned to Purchaser at the Closing.  Any Contract of any Seller that is as an Excluded Contract may be assumed or rejected by Sellers in Sellers' sole discretion and shall be deemed an Excluded Asset.

(b)    As part of the Sale Motion, Sellers shall seek approval by the Bankruptcy Court of the sale, assumption and assignment by Sellers to Purchaser of all Purchased Contracts.  Sellers shall serve the Sale Motion on all counterparties to all such Purchased Contracts along with a notice specifically stating that Sellers are or may be seeking the sale, assumption and assignment of such Purchased Contracts and shall notify such parties of the deadline for objecting to the Cure Costs listed on Schedule 1.3(b) (collectively, the **"Cure Costs"**) hereto, which deadline shall be not less than three (3) Business Days prior to the Sale Hearing.  As part of the Sale Motion, Sellers shall seek authority to file with the Bankruptcy Court the list identifying Purchased Contracts and the amounts necessary to cure defaults under each as determined by Sellers in accordance with Schedule 1.3(b) hereto, so as to enable any such party to object to the proposed Cure Costs and the Bankruptcy Court to determine such Cure Costs as promptly as reasonably possible. The Cure Costs shall be paid by the Sellers with revenues generated prior to the Closing and with the proceeds from the Purchase Price in connection with the Closing.

2.    Consideration.

2.1    Purchase PriceIn consideration of the transfer of the Purchased Assets to Purchaser and the other undertakings set forth herein, the purchase price ($3,777,324) (the "***Purchase Price***") for the Purchased Assets shall be (i) $663,662 (the "**Chandler Debt**"), to be satisfied in the form of a credit against Chandler Debt Obligations pursuant to section 363(k) of the Bankruptcy Code, plus (ii) the cancellation in full of postpetition, secured indebtedness of Sellers held by Purchaser in the amount of $470,000 (the amount of indebtedness so cancelled (including all principal and interest), the **"Postpetition Debt"** and combined with the Chandler Debt, the "***Credit Bid Amount***"), plus (iii) cash in an amount equal to $2,643,662 (the "***Cash Purchase Price***"), of which $1,250,000 will be escrowed and segregated pending documentation and approval by the Court of the settlement among the Sellers, Committee, and holders of First Lien Debt), plus (iv) the assumption by Purchaser of the Assumed Liabilities.

(b)    The proceeds of the Purchase Price shall be allocated among the Purchased Assets and the Sellers as follows:

(i)    the Chandler Debt shall be credit bid in the amount of $663,662 and allocated to all Purchased Assets owned by Z'Tejas Chandler, LLC and all Purchased Contracts to which Z'Tejas Chandler, LLC is a party; and

(ii)    the Postpetition Debt shall be credit bid in the amount of $470,000 and allocated evenly (*i.e.,* $52,222.22 each) among all Purchased Assets owned by Z'Tejas Scottsdale, LLC, Z'Tejas 6th Street, LLC, Z'Tejas

4

Avery Ranch, LLC, Z'Tejas Bethany Home, LLC, Z'Tejas Grill Gateway, LLC, Z'Tejas, Inc., Z'Tejas of Arboretum, LLC, Z'Tejas Tempe, LLC, Taco Guild Osborn, LLC, and all Purchased Contracts to which one or more of those Sellers is a party.

2.2     Deposit.

(a)     Purchaser hereby agrees to pledge, for the benefit of Sellers and in accordance with the Procedures Order, a portion of the allowed postpetition financing claims granted to the Purchaser as lender in an amount equal to $280,000 (the "***Deposit***"), within five (5) Business Days following the date hereof. If the Closing occurs, the Buyer Deposit shall be applied to the Credit Bid Amount.

(b)     At Closing, the Deposit shall be credited and applied toward the Credit Bid Amount.

(c)     Except as set forth in Section 2.2(d) hereof, if this Agreement terminates without a Closing, the Seller shall release its pledge of the Deposit to Purchaser.

(d)     If this Agreement is terminated without a Closing by Sellers pursuant to Section 14.3(a) or by Purchaser other than in accordance with this Agreement, the Deposit shall constitute a setoff against the Purchaser's allowed postpetition financing claims.

2.3     Assumed Liabilities Effective as of the Closing Date, Purchaser shall assume the following Liabilities of Sellers (collectively, the "***Assumed Liabilities***"):

(a)     any obligation of Sellers to honor Gift Certificates issued in the ordinary course of Sellers' business that remain outstanding as of the Closing Date whether or not such Gift Certificates were issued prior to or after the commencement of the Chapter 11 Cases of the Sellers. A historical summary of the Seller's liabilities relating to Gift Certificates is listed on Schedule 2.3(a); *provided*, *however*, the Purchaser's assumption of the liabilities arising from the Gift Certificates shall include all such liabilities even if they are greater than the historical amounts on Schedule 2.3(a);

(b)     Liabilities relating to the ownership or operation of the Purchased Assets after the Closing Date;

(c)     there shall be an adjustment between Sellers and Purchaser at the Closing such that (regardless of when the same become due and payable) Sellers shall bear and be responsible for all Liabilities relating to the ownership and operation of the Purchased Assets that are attributable to the period prior to the Closing Date (including, without limitation, Liabilities for sales tax relating to the operation of the Business and real property or ad valorem Taxes, and personal property Taxes applicable to the Purchased Assets) and Purchaser shall bear and be responsible for all such Liabilities to the extent such Liabilities are attributable to the period from and after the Closing Date;

(d)     Liabilities of Sellers under any of the Purchased Contracts, to the extent such Liabilities arise and are payable (whether as part of a reconciliation under such Purchased Contract or otherwise) after the Closing Date, including but not limited to, in the case of any Restaurant Leases for Acquired Restaurants included among the Purchased Assets, any rent, common area maintenance, Tax, and Utilities;

(e)     All Liabilities of Sellers under any Large Party Reservation made with the payment of a Large Party Deposit at any time before the Closing Date and scheduled to be honored after the Closing Date

(f)     all environmental Liabilities arising from and after the Closing Date under federal, state and local law relating to or arising out of or in connection with the Purchased Assets or the Business;

(g)     accrued vacation, sick pay, and other paid time off of the Transferred Employees as set forth on Schedule 2.3(g), as such amounts may change (increase or decrease) in the ordinary course of the Business pending the Closing Date;

(h)     Post-Petition trade payables of the Business that come due after the Closing and post-Petition obligations to customers of Sellers for refunds, rebates, returns, discounts and the like as of the Closing Date, but in each of the foregoing cases described in this clause only to the extent the same were incurred by Sellers in the ordinary course of the Business from and after the commencement of the Chapter 11 Cases; provided, however, in the case of the Post-Petition trade payables relating to U.S. Foods, the Purchaser shall pay such liabilities in connection with the closing of the this Agreement; and

(i)     Accrued ordinary course payroll of Transferred Employees coming due after the Closing attributable to the regular two-week payroll period immediately preceding the Closing Date and any pre-Closing Date portion of the regular two-week payroll period during which the Closing Date occurs.

2.4     Excluded Liabilities.Notwithstanding anything to the contrary contained in this Agreement, other than the Assumed Liabilities, Purchaser shall not be obligated to assume or to perform or discharge any Liability of Sellers (such Liabilities not assumed by Purchaser, the "***Excluded Liabilities***"), which for the avoidance of doubt shall not include those listed on Schedule 2.4 and the following:

(a)     claims arising under section 503(b)(9) of the Bankruptcy Code;

(b)     claims or liabilities arising under the Perishable Agricultural Commodities Act, 7 U.S.C. §499a *et seq.,* the Packers and Stockyards Act, 7 U.S.C. §181 *et seq., or their state law correlates;*

(c)     any costs or expenses incurred in connection with, or related to, the administration of the Chapter 11 Cases, including, without limitation, any accrued professional fees and expenses of attorneys, accountants, financial advisors and other professional advisors related to the Chapter 11 Cases;

6

2.5  <u>Payment of Cure Costs</u>All Cure Costs shall be the responsibility of the Seller and shall be paid with the revenues generated by the Business or proceeds of the Cash Purchase Price in connection with the Closing Date.

2.6  <u>Utilities Transition</u>Before the Closing Date, Sellers and Purchaser shall make mutually satisfactory arrangements with respect to, or take readings or other measurements of, gas, water, electricity and other utilities at the Acquired Restaurants (the ***"Utilities"***); *provided*, *however*, that to the extent any post-Petition claims for Utilities services comes due after the Closing, such claims shall be the responsibility of the Purchaser.

2.7  <u>Transitional Matters</u>From and after Closing, Sellers shall retain full right and authority to use, enforce, pursue remedies and take actions with respect to any of the Excluded Assets.

(b)  From and after the Closing, Purchaser will retain and make available to Sellers or any trustee or other bankruptcy estate representative and their respective representatives acting on behalf of Sellers' estates, during normal business hours and upon reasonable advance notice to Purchaser and for a period of one (1) year following the Closing Date, the Documents delivered by Sellers to Purchaser, if reasonably needed by Sellers for liquidation, winding up, Tax reporting or other proper purposes; provided, that Sellers will use reasonable efforts to retain copies of Documents and the Parties otherwise will reasonably cooperate to minimize inconvenience to Purchaser.  Further, during the same period, Purchaser shall promptly provide such reports as Sellers may reasonably request to facilitate Sellers' post-Closing activities for the purposes described above in this <u>Section 2.7(b)</u>.

(c)  <u>Designation Rights</u>.

(i)  During the Designation Rights Period, Sellers shall (A) not reject any Contract unless such Contract is expressly designated by Purchaser in writing as an Excluded Contract or unless otherwise agreed to in writing by Purchaser and (B) hold all Permits and other assets specified by Purchaser in writing in abeyance pending designation for assignment or exclusion by Purchaser in accordance with this <u>Section 2.7(c)</u>.

(ii)  Any Contract set forth on <u>Schedule 2.7(c)</u>, and any Permits and other assets designated in writing by Purchaser on <u>Schedule 2.7(c)</u>, in each case prior to Closing, shall constitute a "**Designation Rights Asset.**"  Purchaser shall have the right, by written notice to Sellers within the Designation Rights Period, to specify that (A) any Designation Rights Asset that is a Contract shall be held by the Sellers and not rejected pursuant to section 365 of the Bankruptcy Code for the duration of the Designation Rights Period or earlier as provided in this <u>Section 2.7(c)</u>, and (B) any Designation Rights Asset that is not a Contract shall be held by Sellers in abeyance during the Designation Rights Period pending designation for assignment or exclusion by Purchaser in accordance with this <u>Section 2.7(c)</u>.  With respect to any Designation Rights Asset, (i) Purchaser shall advance to Sellers and thereby be solely responsible for all costs associated with the continuation or holding by Sellers of such Designation Rights Asset for the period from the Closing through the earlier of (A) the end of the Designation Rights Period and (B) the date that is thirty (30) calendar days following Sellers' receipt of written notice from Purchaser designating the assignment or exclusion of such Designation Rights Asset, (ii) for the

7

avoidance of doubt, all consideration received by Sellers in respect of, and other benefits deriving from, such Designation Rights Asset (including Designation Rights Assets sold or assigned to third parties in accordance with clause (iii) below) shall be promptly delivered to Purchaser, and (iii) the foregoing shall not affect the validity of the transfer to Purchaser of any other Purchased Asset whether or not related to such Designation Rights Asset. For the avoidance of doubt, Purchaser shall retain the right to use all Furniture and Equipment, supplies and Inventory at any Designation Rights Restaurant (as defined in the Management Agreement), and to receive one hundred percent (100%) of the proceeds from the sale or use of such Furniture and Equipment, supplies and Inventory, in each case during the Designation Rights Period.

(iii)     As to each Designation Rights Asset, as soon as practical after receiving further written notice(s) (each, a "**Designation Notice**") from Purchaser during the Designation Rights Period requesting assumption, assignment and sale of any Designation Rights Asset to Purchaser or a third party, Sellers shall, subject to Purchaser or such third party demonstrating adequate assurance of future performance thereunder and paying all Cure Costs to the extent required by section 365 of the Bankruptcy Code, take all actions required by the Sale Order or otherwise that are reasonably necessary, all at Purchaser's sole cost and expense, to seek to assume, assign and sell to Purchaser or such third party the applicable Designation Rights Asset pursuant to section 363 of the Bankruptcy Code and, if such Designation Rights Asset is a Contract, section 365 of the Bankruptcy Code.  Following the earlier of (A) the end of the Designation Rights Period and (B) the date that is thirty (30) calendar days following Sellers' receipt of written notice from Purchaser designating the exclusion of a Designation Rights Asset, and full satisfaction of Purchaser's obligation with respect to the payment of the costs associated with the applicable Designation Rights Asset, a Designation Rights Asset shall thereafter be deemed to be an Excluded Asset for all purposes under this Agreement.

(iv)     Sellers and Purchaser agree and acknowledge that the covenants set forth in this Section 2.7(c) shall survive the Closing.

(v)     Notwithstanding anything in this Agreement to the contrary, on the date any Designation Rights Asset is assumed, assigned and sold to Purchaser or its designee pursuant to this Section 2.7(c), such Designation Rights Asset shall be deemed a Purchased Asset for all purposes under this Agreement and no further consideration (except for Purchaser's payment of any Transfer Taxes applicable to the transfer) shall be required to be paid for any Designation Rights Asset that is assumed, assigned and sold to Purchaser or its designee.

(vi)     Subject to Purchaser's obligation to bear and pay all costs associated with Sellers' retention of such Restaurant Leases and other Contracts post-Closing, Sellers shall use commercially reasonable efforts to extend the deadline for assumption or rejection of any Designation Rights Asset that is a Restaurant Lease for the maximum permitted period of time under section 365 of the Bankruptcy Code.

(d)     Previously Omitted Contracts.

(i)     If prior to or following Closing it is discovered that a Contract should have been listed on Schedule 1.1(g) but was not listed on Schedule 1.1(g) (any such Contract, a "**Previously Omitted Contract**"), Sellers shall, promptly following the discovery

8

thereof (but in no event later than five (5) Business Days following the discovery thereof), notify Purchaser in writing of such Previously Omitted Contract and all Cure Costs (if any) for such Previously Omitted Contract. Purchaser shall thereafter deliver written notice to Sellers, no later than five (5) Business Days following notification of such Previously Omitted Contract from Sellers, designating such Previously Omitted Contract as "Assumed" or "Rejected" (a "**Previously Omitted Contract Designation**"). A Previously Omitted Contract designated in accordance with this <u>Section 2.7(d)(i)</u> as "Rejected," or with respect to which Purchaser fails to timely deliver a Previously Omitted Contract Designation, shall be an Excluded Contract.

(ii) If Purchaser designates a Previously Omitted Contract as "Assumed" in accordance with <u>Section 2.7(d)(i)</u>, (A) <u>Schedule 1.1(g)</u> shall be amended to include such Previously Omitted Contract and (ii) Sellers shall serve a notice (the "**Previously Omitted Contract Notice**") on the counterparties to such Previously Omitted Contract notifying such counterparties of the Cure Costs with respect to such Previously Omitted Contract and Sellers' intention to assume and assign such Previously Omitted Contract in accordance with this <u>Section 2.7(d)</u> with no adjustment to the Purchase Price. The Previously Omitted Contract Notice shall provide the counterparties to such Previously Omitted Contract with seven (7) days to object, in writing to the Sellers and Purchaser, to the Cure Cost and the assumption, assignment and sale of the Previously Omitted Contract. If the counterparties, Sellers and Purchaser are unable to reach a consensual resolution with respect to the objection, Sellers will seek an expedited hearing before the Bankruptcy Court to determine the Cure Costs and approve the assumption, assignment and sale. If no objection is timely served on Sellers and Purchaser, Sellers shall seek an Order of the Bankruptcy Court fixing the Cure Costs and approving the assumption of the Previously Omitted Contract.

(e) To the extent that the assignment to Purchaser of any Purchased Contract pursuant to this Agreement is not permitted without the consent of a third party and such restriction cannot be effectively overridden or canceled by the Sale Order or other related order of the Bankruptcy Court, the Parties will use commercially reasonable efforts to obtain consent prior to the Closing. If such consent is not obtained by the Closing, each Seller will, with respect to each such Contract, from and after the Closing and until the earlier to occur of (x) the date on which such applicable consent is obtained and (y) the date on which such Seller liquidates and ceases to exist, use commercially reasonable efforts (subject to restrictions under Law) during the term of such Contract to (i) provide to Purchaser the benefits under such Contract, (ii) cooperate in any reasonable and lawful arrangement (including holding such Contract in trust for Purchaser, pending receipt of the required consent) designed to provide such benefits to Purchaser, and (iii) enforce for the account of Purchaser any rights of such Seller under such Contract (including the right to elect to terminate such Contract in accordance with the terms thereof upon the direction of Purchaser). Purchaser will cooperate with the applicable Sellers in order to enable Sellers to provide to Purchaser the benefits contemplated by this <u>Section 2.7(e)</u>. Purchaser will pay any amount it would have been required to pay under any such Contract had the Contract been assigned (after obtaining the requisite consent) to Purchaser at the Closing in accordance with this Agreement. For the avoidance of doubt, the efforts contemplated by this <u>Section 2.7(e)</u> shall not include any obligation by Sellers to pay money (advance or otherwise) to any third party or to incur out of pocket expenses unless Purchaser advances such amounts.

9

2.8    Purchase Price Allocation Not later than twenty-eight (28) days following the Closing, Purchaser shall prepare and deliver to Sellers for their review and consideration a schedule (the **"Allocation Schedule"**) allocating the Purchase Price among the various assets comprising the Purchased Assets in accordance with Treasury Regulation 1.1060-1 (or any comparable provisions of state or local tax law) or any successor provision.  If Sellers disagree with or raise objections to the Allocation Schedule, Purchaser and Sellers will negotiate in good faith to resolve such objections. If the Parties are able to agree upon the allocation of the Purchase Price, Purchaser and Sellers shall report and file all tax returns (including any amended tax returns and claims for refund) consistent with such mutually agreed Purchase Price allocation, and shall take no position contrary thereto or inconsistent therewith (including in any audits or examinations by any taxing authority or any other proceedings).  Purchaser and Sellers shall file or cause to be filed any and all forms (including U.S. Internal Revenue Service Form 8594), statements and schedules with respect to such allocation, including any required amendments to such forms.  If, on the other hand, the Parties are unable mutually to agree upon the manner in which the Purchase Price should be allocated, Purchaser and Sellers shall be free to make their own respective allocations of the Purchase Price for tax purposes.  Notwithstanding any other provisions of this Agreement, in the event the Parties mutually agree upon the allocation of the Purchase Price, the provisions of this Section 2.7 shall survive the Closing.

3.    Closing Transactions

3.1    Closing The Closing of the Contemplated Transactions (the "**Closing**") shall take place at 10:00 a.m. on or before the third (3rd) business day following the satisfaction or waiver by the appropriate Party of all the conditions contained in Section 4, or on such other date (no later than the Outside Date) as may be agreed to by the Parties hereto (the date on which the Closing occurs, hereinafter the "***Closing Date***").

3.2    Sellers' Deliveries to Purchaser at Closing On the Closing Date, Sellers shall make the following deliveries to or for the benefit of Purchaser:

(a)    direct payment of a portion(s) of the Cash Purchase Price to be paid at Closing in accordance with Schedule 3.2(a) hereto in an amount(s) sufficient to satisfy the "Claim Amount" listed in Schedule 3.2(a) and the other Liabilities to be satisfied with the proceeds from the Cash Purchase Price as set forth herein, including the consent of the holder of the Prepetition First Lien Debt and release of its collateral as set forth herein in amount equal to $1,250,000, which sum Sellers' counsel will escrow and segregate pending documentation and approval by the Court of the settlement among the Sellers, Committee, and holders of First Lien Debt);

(b)    deliver one or more Assignments and Assumption of Restaurant Lease substantially in the form attached as Exhibit "A" hereto, duly executed by Sellers, with respect to the Restaurant Leases for the Acquired Restaurants (the "***Assignments of Restaurant Leases***");

(c)    deliver an Assignment and Assumption of Leases and Contracts substantially in the form attached as Exhibit "B" hereto, duly executed by Sellers,

10

pursuant to which Sellers' interest in all Purchased Contracts (other than any Restaurant Leases) shall be assigned to Purchaser (the "***Assignment of Other Contracts***");

(d)  deliver an Assignment of Intangible Property Assets, duly executed by Sellers, in the form and content of the assignment of intangible property attached as <u>Exhibit "C"</u> hereto, pursuant to which Sellers' interest all the Intangible Property Assets shall be assigned to Purchaser (the "***Assignment of Intangible Property Assets***");

(e)  deliver a Bill of Sale and Assignment, substantially in the form attached as <u>Exhibit "D"</u> hereto, duly executed by Sellers, pursuant to which Sellers' interest in any Purchased Assets not otherwise assigned at the Closing shall be assigned to Purchaser (the "***Bill of Sale***");

(f)  the duly executed Management Agreement attached as <u>Exhibit G</u>;

(g)  deliver certificates of title, duly executed by Sellers, required to convey ownership of any motor vehicles or similar equipment included within the Purchased Assets;

(h)  deliver the certificate contemplated by <u>Section 4.1(a)</u>, duly executed by Sellers; and

(i)  deliver any such other documents, funds or other things reasonably requested by Purchaser or contemplated by this Agreement to be delivered by Sellers to Purchaser at the Closing.

3.3  <u>Purchaser's Deliveries to Sellers at Closing</u>On the Closing Date, Purchaser shall make the following deliveries to or for the benefit of Sellers:

(a)  pay, by wire transfer of immediately available funds, all Cure Costs to the parties to whom and pursuant to the terms by which the Bankruptcy Court directs such payments to be made under the Sale Order from the proceeds of the Cash Purchase Price;

(b)  instruct the Seller's advisors in writing to release to Sellers, by wire transfer of immediately available funds, the Deposit as a credit against the Cash Purchase Price;

(c)  pay to Sellers, by wire transfer of immediately available funds an amount equal to the Cash Purchase Price, <u>less</u> the funds to be released pursuant to <u>Section 3.3(b)</u>;

(d)  deliver the certificate contemplated by <u>Section 4.1(a)</u>, duly executed by Purchaser;

(e)  deliver a counterpart of the Assignments of Restaurant Leases, duly executed by Purchaser;

11

(f)     deliver a counterpart of the Assignment of Other Contracts, duly executed by Purchaser;

(g)     deliver an Assumption of Liabilities with respect to the Assumed Liabilities, substantially in the form attached as <u>Exhibit "E"</u> hereto, duly executed by Purchaser (the "***Assumption of Liabilities***");

(h)     deliver any certificates of title required to convey ownership of any motor vehicles or similar equipment owned by Sellers, if acknowledgement or endorsement thereof is required by Purchaser;

(i)     deliver appropriate evidence of all necessary Entity action by Purchaser in connection with the Contemplated Transactions, including, without limitation:  (i) certified copies of resolutions duly adopted by Purchaser's general partner(s) approving the Contemplated Transactions and authorizing the execution, delivery, and performance by Purchaser of this Agreement; and (ii) a certificate as to the incumbency of those officers of Purchaser executing this Agreement and any instrument or other document delivered in connection with the Contemplated Transactions; and

(j)     deliver any such other documents, funds or other things reasonably requested by Sellers or contemplated by this Agreement to be delivered by Purchaser to Sellers at the Closing.

3.4     <u>Sales, Use and Other Taxes</u>Any and all sales, purchase, transfer, stamp, documentary stamp, use or similar taxes under the laws of the states in which any portion of the Purchased Assets is located, or any subdivision of any such state, or under any federal law or the laws or regulations of any federal agency or authority, which may be payable by reason of the sale or transfer of the Purchased Assets under this Agreement or the Contemplated Transactions (collectively, the "***Transfer Taxes***") shall be in addition to the Purchase Price and borne and paid by Purchaser.

3.5     <u>Possession and Risk of Loss</u>Right to possession of the Purchased Assets shall transfer to Purchaser on the Closing Date.  Sellers shall transfer and deliver to Purchaser on the Closing Date such keys, locks and safe combinations and other similar items as Purchaser may reasonably require to obtain occupation and control of the Purchased Assets, and shall also make available to Purchaser at their then existing locations the originals of all documents in Sellers' actual possession that are required to be transferred to Purchaser by this Agreement.  The risk of loss of or damage or destruction to any of the Acquired Restaurants to be conveyed to Purchaser under this Agreement shall be borne by Sellers to the time of Closing.

3.6     <u>Closing Date</u>All actions to be taken on the Closing pursuant to this Agreement shall be deemed to have occurred simultaneously, and no act, document or transaction shall be deemed to have been taken, delivered or effected until all such actions, documents and transactions have been taken, delivered or effected.  Unless provide otherwise herein or agreed otherwise in writing by the Parties, documents delivered at the Closing shall be dated as of the Closing Date.

12

4.    Conditions Precedent to Closing.

4.1    Conditions to Sellers' Obligations Sellers' obligation to make the deliveries required of Sellers at the Closing Date and otherwise consummate the Contemplated Transactions shall be subject to the satisfaction of each of the following conditions (unless such condition is waived by Sellers):

(a)    All of the representations and warranties of Purchaser contained herein shall continue to be true and correct at the Closing in all material respects, and Purchaser shall have substantially performed or tendered performance of each material covenant on Purchaser's part to be performed which, by its terms, is required to be performed at or before the Closing, and Sellers shall have received a certificate by an officer of Purchaser, dated as of the Closing Date, to such effect and to the effect that each of the conditions precedent to Closing set forth in Section 4.2 either have been satisfied or have been waived by Purchaser.

(b)    Purchaser shall have tendered delivery of all items required to be delivered by Purchaser under Section 3.3.

(c)    No action, suit or other proceedings that is not stayed by the Bankruptcy Court shall be pending before any Governmental Body seeking or threatening to restrain or prohibit the consummation of the Contemplated Transactions, or seeking to obtain substantial damages in respect thereof, or involving a Claim that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Body having appropriate jurisdiction.

(d)    The Bankruptcy Court shall have entered the Procedures Order and the Sale Order, both in accordance with Section 9 below and the Sale Order shall not have been stayed as of the Closing Date.

4.2    Conditions to Purchaser's Obligations Purchaser's obligation to make the deliveries required of Purchaser at the Closing and otherwise consummate the Contemplated Transactions shall be subject to the satisfaction of each of the following conditions (unless such condition is waived by Purchaser):

(a)    All of the representations and warranties of Sellers contained herein shall continue to be true and correct at the Closing in all material respects, and Sellers shall have substantially performed or tendered performance of each and every covenant on Sellers' part to be performed which, by its terms, is required to be performed at or before the Closing (provided, however, that Sellers shall have performed in all respects its covenants hereunder to sell, assign, transfer, convey and deliver to Purchaser all of the Sellers' right, title and interest in and to all Purchased Assets free and clear of all Encumbrances), and Purchaser shall have received a certificate by officers of Sellers, dated as of the Closing Date, to such effect and to the effect that each of the conditions precedent to Closing set forth in Section 4.1 either have been satisfied or have been waived by Sellers.

13

(b)     Sellers shall have tendered delivery of all items required to be delivered by Sellers under <u>Section 3.2</u>.

(c)     No action, suit or other proceedings that is not stayed by the Bankruptcy Court shall be pending before any Governmental Body seeking or threatening to restrain or prohibit the consummation of the Contemplated Transactions, or seeking to obtain substantial damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Body having appropriate jurisdiction.

(d)     The Bankruptcy Court shall have entered the Procedures Order and the Sale Order, both in accordance with <u>Section 9</u> below and the Sale Order shall not have been stayed as of the Closing Date.

5.     <u>Sellers' Representations and Warranties.</u>

Each of the Sellers hereby makes the following representations and warranties to Purchaser:

5.1     <u>Organization</u>Each of the Sellers has all requisite entity power and authority to own, lease and, subject to the provisions of the Bankruptcy Code applicable to debtors in possession, to operate its properties, carry on the Business as now being conducted, and to enter into this Agreement and to consummate the Contemplated Transactions.

5.2     <u>Validity and Enforceability</u>The execution, delivery and performance of this Agreement by each of the Sellers and the consummation by each of the Sellers of the Contemplated Transactions have been duly authorized by all requisite corporate action. Subject to the entry and effectiveness of the Sale Order, this Agreement has been duly and validly executed and delivered by each of the Sellers and (assuming this Agreement constitutes a valid and binding agreement of Purchaser) constitutes a valid and binding agreement of each of the Sellers, enforceable against each of the Sellers in accordance with its terms, except as to the effect, if any, of the Standard Exceptions to Enforceability.

5.3     <u>No Conflict</u>Subject to the entry of the Sale Order, neither the execution, delivery or performance of this Agreement by any of the Sellers, nor the consummation by any of the Sellers of the Contemplated Transactions, nor compliance by any the Sellers with any of the provisions hereof, (a) conflict with or result in any breach of the articles of incorporation or bylaws of Sellers, (b) result in a violation or breach of, or constitute (with or without notice or lapse of time) a default (or give rise to any right of termination, cancellation, vesting, payment, exercise, acceleration, suspension or revocation) under, any of the terms, conditions or provisions of, any note, bond, mortgage, deed of trust, security interest, or Contract to which any of the Sellers is a party or by which any of the Sellers' properties or assets may be bound or affected, (c) violate any Legal Requirement applicable to the Sellers or to the Sellers' properties or assets, (d) result in the creation or imposition of any Encumbrance on any asset of the Sellers, or (e) cause the suspension or revocation of any Business Permits or Licenses.

5.4     <u>Litigation</u>Except for the contemplated Chapter 11 Case and except as set forth in <u>Schedule 5.4</u> hereto, there is no material Legal Proceeding pending that, once the Sale

14

Order is given effect, will result in any Liability on Purchaser or, to the Sellers' Knowledge, threatened against or affecting any of the Sellers that would likely result in the imposition of any Liability on Purchaser or in respect of the Purchased Assets, nor is there any material judgment or Order of any Governmental Body outstanding against Sellers.

5.5     Broker's or Finder's FeesNo agent, broker, person or firm acting on behalf of any of the Sellers is, or will be, entitled to any commission or broker's or finder's fees from Purchaser in connection with the Contemplated Transactions; *provided*, *however*, the Seller's investment banker, Mastodon Ventures, Inc. shall seek the Bankruptcy Court's approval to receive a transaction fee in accordance with the terms its retention application and upon notice and hearing, which, if approved, shall be paid with the Proceeds of the Cash Purchase Price.

6.     Purchaser's Warranties and Representations.

In addition to the representations and warranties contained elsewhere in this Agreement, Purchaser hereby makes the following representations and warranties to Sellers as of the Closing Date:

6.1     OrganizationPurchaser is a limited partnership duly formed, validly existing and in good standing under the laws of Texas. Purchaser has all requisite limited partnership power and authority to own, lease and operate its properties, execute and deliver this Agreement, and to perform its obligations hereunder and consummate the Contemplated Transactions.

6.2     Validity and EnforceabilityThis Agreement has been duly executed and delivered by Purchaser and constitutes the valid and binding obligation of Purchaser enforceable against it in accordance with its terms, except as may be limited by the Standard Exceptions to Enforceability.

6.3     No ConflictThe execution, delivery and performance of this Agreement and all writings relating hereto by Purchaser have been duly and validly authorized. The execution and delivery of this Agreement, the consummation of the Contemplated Transactions, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Purchaser do not and will not: (i) conflict with or result in a breach of the certificate of formation or limited liability company agreement of Purchaser; (ii) violate any Legal Requirement; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Purchaser is a party or by which Purchaser or its assets or properties may be bound.

6.4     Financial ResourcesThe Purchaser has the financial resources necessary to consummate the Contemplated Transactions upon the terms and conditions set forth in this Agreement, and such financial resources are not subject to any constraints, conditions or contingencies that could in any way materially affect the Purchaser's ability to consummate the Contemplated Transactions or perform hereunder.

6.5     Broker's or Finder's FeesNo agent, broker, person or firm acting on behalf of Purchaser is, or will be, entitled to any commission or broker's or finder's fees from Sellers in connection with the Contemplated Transactions.

15

7.     "AS IS" Transaction

Purchaser hereby acknowledges and agrees that, except only as provided in <u>Section 5</u> above, Sellers make no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Purchased Assets (including, without limitation, income to be derived or expenses to be incurred in connection with the Purchased Assets, the physical condition of any tangible Purchased Assets, the environmental condition or other matter relating to the physical condition of any real property or improvements which are the subject of any Restaurant Lease, the zoning of any real property or improvements which are the subject of any Restaurant Lease, the value of the Purchased Assets (or any portion thereof), the transferability of the Purchased Assets or any portion thereof, the terms, amount, validity, collectability or enforceability of the Receivables or any Assumed Liabilities or Sellers' Contract, the merchantability or fitness of the Furniture and Equipment, the Inventory or any other portion of the Purchased Assets for any particular purpose, or any other matter or thing relating to the Purchased Assets or any portion thereof). Without in any way limiting the foregoing, Sellers hereby disclaim any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Purchased Assets. Purchaser further acknowledges that Purchaser has conducted an independent inspection and investigation of the physical condition of all portions the Purchased Assets and all such other matters relating to or affecting or comprising the Purchased Assets and/or the Assumed Liabilities as Purchaser deemed necessary or appropriate and that in proceeding with the Contemplated Transactions, Purchaser is doing so based solely upon such independent inspections and investigations. Accordingly, except only for the representations set forth in <u>Section 5</u> above, Purchaser will accept the Purchased Assets at the Closing "AS IS," "WHERE IS," and "WITH ALL FAULTS."

8.     Covenants

8.1     <u>Liquor License Approvals</u>. Sellers shall reasonably cooperate with Purchaser in connection with Purchaser's filings with any Governmental Body or third party with respect to any of the Liquor Licenses and obtaining the necessary consents and approvals pertaining to transfer and/or issuance of the Liquor Licenses to Purchaser ("**Liquor License Approvals**"), including by entering into the Management Agreement and, if reasonably requested by Purchaser, initiating and/or participating, at no cost or expense to Sellers and with reasonable assurances from Purchaser against any potential Liability in connection therewith, in such Legal Proceedings reasonably requested by Purchaser to obtain such Liquor License Approvals.

8.2     <u>Adequate Assurance Regarding Purchased Contracts</u>. With respect to each Purchased Contract and Restaurant Lease set forth on <u>Schedule 1.1(g)</u>, Purchaser shall provide adequate assurance of the future performance of such Purchased Contract and Restaurant Lease by Purchaser as required by sections 365(b)(1)(C) and/or 365(f)(2)(B) of the Bankruptcy Code, as applicable and Purchaser shall bear all risk associated with any failure by Purchaser to make such showing to the Bankruptcy Court's satisfaction.

8.3     <u>Personally Identifiable Information</u>. Purchaser shall honor and observe any and all policies of Sellers in effect on the Petition Date prohibiting the transfer of

16

personally identifiable information about individuals and otherwise comply with the requirements of Section 363(b)(1)(A) of the Bankruptcy Code.

9.      Bankruptcy Court Approvals.

9.1      Promptly following the Effective Date (and in no event later than five (5) days thereafter), Sellers shall make a motion (the "*Sale Motion*") for an order by the Bankruptcy Court, substantially in the form attached hereto as Exhibit "H," approving the sale of the Purchased Assets to Purchaser on the terms and conditions set forth in this Agreement (the "*Sale Order*").  Any material changes to the form of the Sale Order must be approved by Purchaser and Sellers in their respective sole discretion.  If requested by Sellers or the Bankruptcy Court, Purchaser shall provide adequate assurance of future performance (satisfactory to the Bankruptcy Court) to the counterparties to the Sellers' Contracts.

9.2      As part of the Sale Motion (or pursuant to a separate motion in the Sellers' sole discretion), Sellers shall also request and use commercially reasonable efforts to obtain from the Bankruptcy Court an order (the "**Procedures Order**") in the form and content attached as Exhibit "I."

9.3      Following the filing of the Sale Motion, Sellers shall use commercially reasonable efforts to obtain both the Procedures Order and the Sale Order.

10.     Commercially Reasonable Efforts.  Subject to the terms and conditions of this Agreement:

10.1      During the period prior to Closing, Sellers and Purchaser shall (a) use their commercially reasonable efforts (i) to cause the conditions in Section 4 to be satisfied, (ii) to deliver or cause to be delivered at the Closing the items to be delivered by Sellers and Purchaser pursuant to Section 3.2 and Section 3.3, and (iii) to take all other actions to consummate the Contemplated Transactions, and (b) not take any action that will have the effect of unreasonably delaying, impairing or impeding the receipt of any authorizations, Consents, or Orders to be sought pursuant to this Agreement.

10.2      From and after the Closing, Sellers and Purchaser shall use commercially reasonable efforts to deliver or cause to be delivered such additional documents and other papers and to take or cause to be taken such further actions as may be necessary, proper or advisable to make effective the Contemplated transactions and to carry out the provisions hereof; provided that nothing herein shall require Sellers to execute any document or take any action that would (i) impose or involve obligations or Liabilities on Sellers over and above those imposed on Sellers by the other provisions of this Agreement, (ii) involve any cost or expense (individually or in the aggregate) that is not nominal in amount, or (iii) include joining or otherwise becoming a party to any action or proceeding of any kind.

10.3      From and after the Closing, Purchaser and Sellers shall reasonably cooperate in the transition of the Business from Sellers to Purchaser, provided that neither

Case 2:15-bk-09178-PS    Doc 175    Filed 09/29/15    Entered 09/29/15 11:40:15    Desc
Main Document    Page 20 of 127

Party shall be required to expend other than nominal unreimbursed costs in providing such cooperation.

11.    Conduct Pending Closing.

11.1    Except with the prior written consent of Purchaser, as otherwise contemplated or permitted by this Agreement or as required by the Bankruptcy Code, from the Effective Date until the Closing Date, Sellers shall operate the Business in the ordinary course of business (taking into account Sellers' status as debtors-in-possession) and consistent with good industry practices, comply with all Legal Requirements applicable to the operation of its business and preserve its present business organization intact.

11.2    Sellers shall promptly inform Purchaser in writing of the occurrence or non-occurrence of any event actually known by Sellers that would cause any condition set forth in Section 4.2 not to be satisfied or the breach of any covenant hereunder by Sellers.

11.3    Purchaser and Purchaser's financial advisors, legal counsel, accountants, consultants, financing sources and other authorized representatives shall be authorized and entitled, in Purchaser's discretion and without the involvement or presence of Sellers or their agents, to contact and to enter into discussions and negotiate with Sellers' landlords, lenders, bankers, vendors, suppliers, strategic business partners and other third parties, including but not limited to Governmental Bodies, regarding the Contemplated Transactions and Purchaser's potential business relationships with such persons following the Closing, and Sellers shall provide contact information and other reasonable cooperation to Purchaser in connection with such activities.   From the date of this Agreement through the Closing Date, Sellers shall afford Purchaser and such persons reasonable access during ordinary business hours to Sellers employees, consultants and independent contractors and to all the books and records of Sellers relating to the Business or to the assets or Liabilities of Sellers and shall furnish to Purchaser and such persons, as promptly as practicable, all other information as Purchaser or any of such persons may reasonably request in furtherance of the Contemplated Transactions.

11.4    Each Party agrees that it will not make any public announcement or issue any press release or respond to any press inquiry with respect to this Agreement or the Contemplated Transactions without the prior approval of the other Party (which approval will not be unreasonably withheld), except as may be required (i) by any applicable Legal Requirement, or (ii) to administer the Chapter 11 Cases.

18

12.     [Reserved].

13.     <u>Employee Matters.</u>

13.1     Prior to the Closing, Purchaser shall offer to employ, commencing immediately following the Closing, all employees of Seller at their salaries, wages, compensation levels, benefits, and terms and conditions of employment applicable to their employment by Sellers immediately prior to the Closing, except those employees listed on <u>Schedule 13.1</u>. Such employees who become employees of Purchaser shall be collectively referred to as the **"Transferred Employees"** and shall be terminated by Sellers effective immediately prior to the Closing.  Purchaser shall give Transferred Employees full credit for purposes of eligibility and vesting and benefit accrual (other than benefit accrual under a defined benefit pension plan) under the employee benefit plans or arrangements maintained by the Purchaser in which such Transferred Employees participate for such Transferred Employees' service with the Seller.

13.2     From the Effective Date until the Closing Date, Sellers may not materially alter the salary, wages, compensation level, benefits, terms or conditions of employment for any employee, irrespective of whether the employee is a Transferred Employee or not.

13.3     With respect to any welfare benefit plans maintained by Purchaser for the benefit of Transferred Employees on and after the Closing Date, Purchaser shall (i) cause there to be waived any eligibility requirements or pre-existing condition limitations, and (ii) give effect, in determining any deductible and maximum out-of-pocket limitations, amounts paid by such Transferred Employees with respect to benefit plans maintained by Sellers.

13.4     Sellers shall retain and shall be responsible for paying and discharging all liabilities for vacation time, sick leave, personal leave and other compensated time off accrued by those of Sellers' employees who do not become Transferred Employees at the Closing.

13.5     Purchaser shall provide group health plan continuation coverage, pursuant to the requirements of COBRA, to all Sellers employees, former employees of Sellers receiving group health plan continuation coverage from Sellers on the Closing Date, and former employees of Sellers who are in a COBRA-election period on the Closing Date, each only to the extent that such persons:  (i) properly request such coverage; (ii) will not be hired by Purchaser; and (C) timely pay for such coverage.

13.6     Sellers shall be solely liable for complying with the WARN Act and any and all comparable state law obligations (and for any failures to so comply), in any case, applicable to employees of Sellers who do not become Transferred Employees for any reason (including, for the avoidance of doubt, any employees of Sellers who do not accept and commence employment with Purchaser).  Purchaser shall be solely liable for complying with the WARN Act and any and all comparable state law obligations (and for any failures to so comply), that become applicable to any Transferred Employees with

19

respect to events occurring after the Closing Date. Purchaser shall be solely responsible for all Liabilities relating to or arising in connection with any actual, constructive or deemed termination of employment by Purchaser of any Transferred Employee after the Closing Date.

14.   Termination.

14.1   Termination by Mutual Consent This Agreement may be terminated at any time prior to the Closing Date by mutual written agreement of the Parties.

14.2   Termination by Either Purchaser or Sellers This Agreement may be terminated at any time prior to the Closing Date by either Purchaser or Sellers if any Governmental Body shall have issued an Order permanently restraining, enjoining or otherwise prohibiting the consummation of the Contemplated Transactions and either (i) thirty (30) days shall have elapsed from the issuance of such Order and such Order has not been removed or vacated, or (ii) such Order shall have become final and non-appealable.

14.3   Termination by Sellers This Agreement may be terminated at any time prior to the Closing Date by Sellers as follows:

(a)   if there has been a material breach by Purchaser, which breach Purchaser has failed to cure within fourteen (14) days following its receipt of written notice thereof from Sellers;

(b)   if any condition precedent of Sellers specified in Section 4.1 shall not have been satisfied or waived and shall have become impossible to satisfy, unless the failure of such condition to have been satisfied was caused primarily by a material breach by Sellers;

(c)   if the Procedures Order is not entered by the Bankruptcy Court by twenty-one (21) days after the Petition Date; or

(d)   the Sale Order is not entered by the Bankruptcy Court by forty-nine (49) days after the entry of the Procedures Order;

(e)   if the Closing Date shall not have occurred on or before 5:00 p.m. Pacific time on the Outside Date, but only to the extent the Closing has not occurred as of the Outside Date for reasons other than Sellers' failure to meet its obligations hereunder, including without limitation using all diligent and commercially reasonable efforts to obtain approval of the Sale Order by the dates set forth herein.

14.4   Termination by Purchaser This Agreement may be terminated at any time prior to the Closing Date by Purchaser as follows:

(a)   If the Petitions initiating the Chapter 11 Cases have not been filed by July 22, 2015;

(b)      if the Procedures Order is not entered by the Bankruptcy Court by twenty-one (21) days after the Petition Date;

(c)      the Sale Order is not entered by the Bankruptcy Court by forty-nine (49) days after the entry of the Procedures Order;

(d)      if there has been a material breach by Sellers, which breach Sellers have failed to cure within fourteen (14) days following its receipt of written notice thereof from Purchaser;

(e)      if any condition precedent of Purchaser specified in <u>Section 4.2</u> shall not have been satisfied or waived or, in the reasonable judgment of Purchaser, shall have become reasonably unlikely to be satisfied, unless the failure of such condition to have been satisfied was caused primarily by a material breach by Purchaser;

(f)      if the Bankruptcy Court enters any Order approving any Alternative Transaction or confirming any Chapter 11 Plan involving any Alternative Transaction; or

(g)      if the Closing Date shall not have occurred on or before 5:00 p.m. Pacific time on the Outside Date, but only to the extent the Closing has not occurred as of the Outside Date for reasons other than Purchaser's failure to meet its obligations hereunder;

(h)      if the Chapter 11 Case shall be dismissed or converted to cases under Chapter 7 of the Bankruptcy Code, or if any trustee is appointed in the Chapter 11 Case; or

(i)      if for any reason (other than Purchaser's failure to provide adequate assurance of future performance sufficient to satisfy the relevant requirements of section 365 of the Bankruptcy Code or applicable nonbankruptcy law and section 365(c)(1) prohibits assignment without the counterparty's consent) Sellers are unable, or fail, to assume and assign to Purchaser at the Closing all Purchased Contracts.

14.5    <u>Effect of Termination</u>In the event of termination by either Party of this Agreement pursuant to this <u>Section 14</u>, written notice thereof shall as promptly as practicable be given to the other Party and thereupon this Agreement shall terminate and the Contemplated Transactions shall be abandoned without further action by the Parties hereto.  Upon termination of this Agreement, (a) except as otherwise provided in this Agreement, this Agreement shall cease to have any force or effect, (b) the Parties shall not have any liability to each other, except for fraud occurring on or before the date of such termination; <u>provided</u>, <u>however</u>, that if this Agreement is terminated by reason of (i) any material breach hereof by the non-terminating Party or (ii) any material non-compliance by the non-terminating Party with its obligations under this Agreement, which non-compliance shall have been the cause of the failure of one or more of the conditions to the terminating Party's obligations to effect the Contemplated Transactions to have been satisfied, the terminating Party's right to pursue any available remedies at law will survive such termination unimpaired, and (c) the Parties under this Agreement shall cease to have any further obligations under this Agreement except pursuant to <u>Sections 2.2</u>, <u>12</u>, <u>14.5</u>, <u>16.1</u>, <u>16.2</u>,

21

<u>16.3</u>, <u>16.4</u>, <u>16.5</u>, <u>16.6</u>, <u>16.7</u>, <u>16.8</u>, <u>16.9</u>, <u>16.11</u>, <u>16.12</u>, <u>16.13</u>, <u>16.14</u>, <u>16.15</u>, <u>16.16</u>, <u>16.17</u>, <u>16.18</u>, <u>16.19</u>, <u>16.20</u>, and <u>16.21</u> (as such obligations are affected by any defined terms contained herein relating thereto), and (d) all filings, applications and other submissions made pursuant to the Contemplated Transactions shall, to the extent practicable, be withdrawn from the government authority or person to which made.

       14.6   <u>Notification of Certain Events</u>Sellers shall give notice to Purchaser promptly upon becoming aware of any occurrence, or failure to occur, of any event, which occurrence or failure to occur has caused or could reasonably be expected to cause any condition to the obligations of Purchaser to effect the Contemplated Transactions not to be satisfied. If Sellers give Purchaser a notice pursuant to this <u>Section 14.6</u>, then Purchaser shall be permitted to terminate this Agreement pursuant to <u>Section 14.4</u>.

      15.   <u>Post-Closing Matters.</u>

       15.1   <u>Further Conveyances and Assumptions</u>.

       (a)   From time to time following the Closing, Sellers shall make available to Purchaser such data in personnel records of Transferred Employees as is reasonably necessary for Purchaser to transition such employees into Purchaser's records.

       (b)   From time to time following the Closing, Sellers and Purchaser shall, and shall cause their respective Affiliates to, execute, acknowledge and deliver all such further conveyances, notices, assumptions, releases and acquaintances and such other instruments, and shall take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser under this Agreement and to assure fully to each of the Sellers and its successors and assigns, the assumption of the liabilities and obligations intended to be assumed by Purchaser under this Agreement, and to otherwise make effective the Contemplated Transactions. For the avoidance of all doubt, nothing herein shall require Sellers to execute any document or take any action that would (i) impose or involve obligations or Liabilities on Sellers over and above those imposed on Sellers by the other provisions of this Agreement, (ii) involve any cost or expense (individually or in the aggregate) that is not nominal in amount, or (iii) include joining or otherwise becoming a party to any action or proceeding of any kind.

       15.2   <u>Reasonable Access to Records and Certain Personnel</u>For a period of one (1) year following the Closing, (i) the Purchaser shall permit Sellers' counsel and other professionals and counsel for any successor to Sellers and their respective professionals (collectively, **"Permitted Access Parties"**) reasonable access to the financial and other books and records relating to the Purchased Assets or the Business, which access shall include (xx) the right of such Permitted Access Parties to copy, at such Permitted Access Parties' expense, such documents and records as they may request in furtherance of the purposes described above, and (yy) Purchaser's copying and delivering to the relevant Permitted Access Parties such documents or records as they may request, but only to the extent such Permitted Access Parties furnish Purchaser with reasonably detailed written descriptions of the materials to be so copied and the

applicable Permitted Access Party reimburses the Purchaser for the reasonable costs and expenses thereof, and (ii) Purchaser shall provide the Permitted Access Parties (at no cost to the Permitted Access Parties) with reasonable access during regular business hours to assist Seller and the other Permitted Access Parties in their post-Closing activities (including, without limitation, preparation of tax returns), provided that such access does not unreasonably interfere with the Purchaser's business operations.

16.    Miscellaneous.

16.1    Attorneys' Fees In the event that either Party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, each Party in that action or proceeding shall bear its own attorneys' fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees).

16.2    Notices Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by any Party to the other shall be deemed effected upon personal delivery in writing, one Business Day after being dispatched by reputable overnight courier (*e.g.*, FedEx), postage prepaid, or in the case of delivery by facsimile, as of the date of facsimile transmission (with answer back confirmation of such transmission) or in the case of delivery by email, as of the date of the email transmission (with read-receipt enabled).  Notices shall be addressed as set forth below, but each Party may change his address by written notice in accordance with this Section 16.2.

To Seller(s):    Z'Tejas Holdings, Inc.
6909 E. Greenway Parkway
Suite 195
Scottsdale, AZ 85254
Facsimile:  480.612.6392
Attn:  Steven Micheletti
Email: stevenm@ztejas.com

With a copy to (which shall not constitute notice):

Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA  94111
Attn:    John W. Lucas
Jason H. Rosell
Email: jlucas@pszjlaw.com
jrosell@pszjlaw.com
Facsimile:  (310) 201-0760


To Purchaser:    Cornbread Ventures, LP
12912 Hill Country Boulevard
Building F-201
Austin, TX 78738
Attn:    Michael Stone

23

Email:  mstone@thestonegroupcre.com

With a copy to (which shall not constitute notice):

> Perkins Coie LLP
> 2901 N. Central Avenue
> Suite 2000
> Phoenix, AZ 85012
> Attn:    Jordan A. Kroop
> Email:  jkroop@perkinscoie.com

16.3    Entire AgreementThis Agreement and the documents to be executed pursuant hereto contain the entire agreement between the Parties relating to the sale of the Business and replace the Letter of Intent in its entirety.    Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

16.4    ModificationThis Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto which expressly indicates the intention to modify, amend or supplement this Agreement.

16.5    SeverabilityShould any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

16.6    CaptionsAll captions, Section titles and headings contained in this Agreement are for convenience of reference only and shall be without substantive meaning or context of any kind whatsoever and shall not be construed to limit or extend the terms or conditions of this Agreement.

16.7    WaiverNo waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver; *provided, however*, that the Consent of a Party to the Closing shall constitute a waiver by such Party of any condition precedent to Closing not satisfied as of the Closing Date.

16.8    Payment of Fees and ExpensesExcept as provided in Sections 12 and 16.1 above, each Party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the Contemplated Transactions.

16.9    SurvivalThe respective representations and warranties of Purchaser and Sellers under this Agreement shall lapse and cease to be of any further force or effect effective upon the Closing.  Except as provided in the immediately preceding sentence, the covenants and agreements of Sellers and Purchaser herein, or in any certificates or other documents delivered prior to or at the Closing, shall not be deemed waived or otherwise affected by the Closing.

24

16.10 <u>Assignments</u>This Agreement shall not be assigned by Sellers or Purchaser without the prior written consent of the other(s), which consent Purchaser or Sellers may grant or withhold in their respective sole and absolute discretion.

16.11 <u>Binding Effect</u>This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties hereto.

16.12 <u>Applicable Law</u>This Agreement shall be governed by and construed in accordance with the Bankruptcy Code and to the extent not inconsistent with the Bankruptcy Code, the law of the State of Arizona applicable to contracts made and performed in such State.

16.13 <u>Construction</u>In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

16.14 <u>CONSENT TO JURISDICTION</u>THE PARTIES AGREE THAT THE BANKRUPTCY COURT SHALL BE THE EXCLUSIVE FORUM FOR ENFORCEMENT OF THIS AGREEMENT OR THE CONTEMPLATED TRANSACTIONS AND (ONLY FOR THE LIMITED PURPOSE OF SUCH ENFORCEMENT) SUBMIT TO THE JURISDICTION THEREOF; PROVIDED THAT IF THE BANKRUPTCY COURT DETERMINES THAT IT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, THEN EACH PARTY (A) AGREES THAT ALL SUCH ACTIONS OR PROCEEDINGS SHALL BE HEARD AND DETERMINED IN A FEDERAL COURT OF THE UNITED STATES SITTING IN THE CITY OF PHOENIX, ARIZONA, (B) IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, (C) CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS AND WAIVES ANY OBJECTION THAT SUCH PARTY MAY NOW OR HEREAFTER HAVE TO THE VENUE OR JURISDICTION OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT, AND (D) AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO SUCH PARTY AT ITS ADDRESS AS PROVIDED IN <u>SECTION 16.2</u> (PROVIDED THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY ARIZONA LAW).

16.15 <u>Counterparts</u>This Agreement may be signed in counterparts. The Parties further agree that this Agreement may be executed by the exchange of facsimile or electronic pdf signature pages provided that by doing so the Parties agree to undertake to provide original signatures as soon thereafter as reasonable in the circumstances.

16.16 <u>Non-Recourse</u>No past, present or future stockholder, director, officer, employee, or incorporator of Sellers or Purchaser shall have any liability for any obligation or liability of Sellers or Purchaser, as the case may be, under this Agreement or for any claim, counter-claim, cause of action or demand based on, in respect of, or by reason of, the

Contemplated Transactions except for any claim against any individual based on the fraud or gross negligence of such individual in connection with any representations of Sellers or Purchaser hereunder, as the case may be.

16.17    <u>Time is of the Essence</u>Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

16.18    <u>Interpretation and Rules of Construction</u>In this Agreement, except to the extent that the context otherwise requires:

(a)    when a reference is made in this Agreement to an Article, Section, Exhibit or Schedule, such reference is to an Article or Section of, or an Exhibit or a Schedule to, this Agreement unless otherwise indicated;

(b)    the headings and captions used in this Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Agreement;

(c)    whenever the words "include," "includes" or "including" are used in this Agreement, they are deemed to be followed by the words "without limitation";

(d)    the words "hereof," "herein" and "hereunder" and works of similar import, when used in this Agreement, refer to this Agreement as a whole and not to any particular provision of this Agreement;

(e)    all terms defined in this Agreement have the defined meanings when used in any certificate or other document made or delivered pursuant hereto, unless otherwise defined therein;

(f)    the definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms;

(g)    any law defined or referred to herein or in any agreement or instrument that is referred to herein means such law or statute as from time to time amended, modified or supplemented, including by succession of comparable successor laws;

(h)    references to a person are also to its permitted successors and assigns; and

(i)    the use of "or" is not intended to be exclusive unless expressly indicated otherwise.

16.19    <u>Third Party Beneficiaries</u>This Agreement is intended to be solely for the benefit of the Parties hereto and is not intended to confer, and shall not be deemed to confer, any benefits upon, or create any rights in or in favor of, any person or entity other than the Parties hereto, and their respective permitted assigns.

16.20 <u>Liquidated Damages as Sole Remedy of Sellers</u>**THE PARTIES ACKNOWLEDGE THAT SELLERS' ACTUAL DAMAGES IN THE EVENT THAT THE CONTEMPLATED TRANSACTIONS ARE NOT CONSUMMATED WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE. THEREFORE, BY SEPARATELY EXECUTING THIS <u>SECTION 16.20</u> BELOW, THE PARTIES ACKNOWLEDGE THAT THE AMOUNT OF THE DEPOSIT THAT IS THE SUBJECT OF <u>SECTION 2.2</u> OF THIS AGREEMENT HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES' REASONABLE ESTIMATE OF THE SELLERS' DAMAGES, AND AS THE SELLERS' SOLE AND EXCLUSIVE REMEDY AGAINST THE PURCHASER (OTHER THAN FOR INTENTIONAL MISREPRESENTATION OR FRAUD), WHETHER AT LAW OR IN EQUITY, FOR ANY LIABILITY UNDER THIS AGREEMENT AND THE EXHIBITS AND SCHEDULES HERETO, INCLUDING THE FAILURE OF THE PURCHASER TO PERFORM ANY OF ITS OBLIGATIONS UNDER THIS AGREEMENT OR ANY OF THE EXHIBITS OR SCHEDULES HERETO.**

(b) **BY SEPARATELY EXECUTING THIS <u>SECTION 16.20</u> BELOW THE PURCHASER AND SELLERS ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTOOD THE ABOVE PROVISIONS COVERING LIQUIDATED DAMAGES, AND THAT EACH PARTY WAS REPRESENTED BY COUNSEL WHO EXPLAINED THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION AT THE TIME THIS AGREEMENT WAS EXECUTED.**

**SELLERS:** _____

**PURCHASER:** _____

16.21 <u>Liquidated Damages as Sole Remedy of Purchaser</u>.

(a) **THE PARTIES ACKNOWLEDGE THAT PURCHASER'S ACTUAL DAMAGES IN THE EVENT THAT THE CONTEMPLATED TRANSACTIONS ARE NOT CONSUMMATED WOULD BE EXTREMELY DIFFICULT OR IMPRACTICABLE TO DETERMINE. THEREFORE, BY SEPARATELY EXECUTING THIS <u>SECTION 16.21</u> BELOW, THE PARTIES ACKNOWLEDGE THAT THE AMOUNT OF THE BREAK-UP FEE, WHICH IS THE SUBJECT OF <u>SECTION 12</u> OF THIS AGREEMENT HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES' REASONABLE ESTIMATE OF THE PURCHASER'S DAMAGES, AND AS THE PURCHASER'S SOLE AND EXCLUSIVE REMEDY (OTHER THAN FOR INTENTIONAL MISREPRESENTATION OR FRAUD) AGAINST THE SELLER, WHETHER AT LAW OR IN EQUITY, FOR ANY LIABILITY UNDER THIS AGREEMENT AND THE EXHIBITS AND SCHEDULES HERETO, INCLUDING THE FAILURE OF THE SELLERS TO PERFORM ANY OF THEIR OBLIGATIONS UNDER THIS AGREEMENT OR ANY OF THE EXHIBITS OR SCHEDULES HERETO.**

27

(b)     **BY SEPARATELY EXECUTING THIS <u>SECTION 16.21</u> BELOW THE PURCHASER AND SELLERS ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTOOD THE ABOVE PROVISIONS COVERING LIQUIDATED DAMAGES, AND THAT EACH PARTY WAS REPRESENTED BY COUNSEL WHO EXPLAINED THE CONSEQUENCES OF THIS LIQUIDATED DAMAGES PROVISION AT THE TIME THIS AGREEMENT WAS EXECUTED.**

**SELLERS:**          _____

**PURCHASER:**     _____

17.     <u>Definitions</u>In addition to the other terms defined elsewhere in this Agreement, for the purposes of same, the following words and terms shall have the meaning set forth below (such meanings being equally applicable to both the singular and plural form of the terms defined).   The exhibits and schedules referenced in this <u>Section 17</u> and throughout the Agreement are deemed to be part of the Agreement and are incorporated herein by reference.

"***Acquired Restaurant***" means those restaurants which are operated at the premises leased pursuant to a Restaurant Lease.

"***Affiliate***" of a Person means a Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the first-mentioned Person.   For purposes of this definition, "control," when used with respect to any specified Person, means the power to direct or cause the direction of the management and policies of such Person, directly or indirectly, whether through ownership of voting securities or by contract or otherwise, and the terms "controlling" and "controlled by" have meanings correlative to the foregoing.

"***Agreement***" shall have the meaning provided for in the preamble.

"***Allocation Schedule***" shall have the meaning provided for under <u>Section 2.7</u>.

"***Alternative Transaction***" shall have the meaning provided for under <u>Section 12.4</u>.

"***Assignment of Restaurant Leases***" shall have the meaning provided for under <u>Section 3.2(b)</u>.

"***Assignment of Intangible Property Assets***" shall have the meaning provided for under <u>Section 3.2(d)</u>.

"***Assignment of Other Contracts***" shall have the meaning provided for under Section 3.2(c).

"***Assumed Liabilities***" shall have the meaning provided for under <u>Section 2.3.</u>

"***Assumption of Liabilities***" shall have the meaning provided for under <u>Section 3.3(h)</u>.

"***Avoidance Action***" means all preference or avoidance claims and actions of the Sellers, including, without limitation, any such claims and actions arising under sections 544, 547, 548, 549, and 550 of the Bankruptcy Code and any other affirmative Claim (as defined herein) of the Sellers against third parties, including, without limitation, any Claims arising under non-

28

bankruptcy law.

"***Bankruptcy Code***" shall have the meaning provided for under <u>Recital B</u>.

"***Bankruptcy Court***" shall have the meaning provided for under <u>Recital B</u>.

"***Bill of Sale***" shall have the meaning provided for under <u>Section 3.2(e)</u>.

"***Break-Up Fee***" shall have the meaning provided for under <u>Section 12.1</u>.

"***Business***" shall have the meaning provided for under <u>Recital A</u>.

"***Business Day***" means any day other than a Saturday or Sunday or a legal holiday on which banks in Arizona are closed.

"***Business Permit***" means any business permit, license, certificate of occupancy, registration, certificate of public convenience and necessity, approval, easement, authorization or operating right issued or granted by any Governmental Body having jurisdiction over the Business.

"***Cancelled Debt***" shall have the meaning provided for under Section 2.1.

"***Cash Purchase Price***" shall have the meaning provided for under <u>Section 2.1(a)</u>.

"***Chandler Debt***" has the meaning ascribed in Section 2.1.

"***Chandler Debt Obligations***" means the prepetition secured claims arising under that certain Loan Agreement between Z'Tejas Chandler, Inc. (the predecessor in interest to Debtor Z'Tejas, Inc.) and GE Capital Franchise Finance Corporation (or its assignee or purchaser) and the judgment therefor.

"***Chapter 11 Cases***" shall have the meaning provided for under <u>Recital B</u>.

"***Chapter 11 Plan***" shall have the meaning provided for under <u>Section 11.6</u>.

"***Claim***" means any claim, cause of action, right of recovery, right of set-off, and right of recoupment of every kind and nature including but not limited to prepayments, warranties, guarantees, refunds, reimbursements.

"***Closing***" shall have the meaning provided for under <u>Section 3.1</u>.

"***Closing Date***" shall have the meaning provided for under <u>Section 3.1</u>.

"***Code***" means the Internal Revenue Code of 1986, as amended.

"***Consent***" means any consent, approval, authorization, affirmative vote, waiver, agreement or license by, or report or notice to, any Person.

"***Contemplated Transactions***" shall have the meaning provided for under <u>Recital C</u>.

"***Contract***" means any executory contract or unexpired lease within the meaning of the Bankruptcy Code.

"***Copyright***" means all copyrightable works, and all United States and foreign registered copyrights and applications, registrations and renewals therefor, and any past, present or future claims or causes of actions arising out of or related to any infringement or misappropriation of any of the foregoing.

"***Credit Bid Amount***" has the meaning ascribed in Section 2.1.

"**Cure Cost**" means the amount required to be paid as a cure amount under Section 365 of the Bankruptcy Code so that Sellers may sell, assume and assign any Purchased Contract to Purchaser.

"**Deposit**" shall have the meaning provided for under Section 2.2(a).

"**Designation Notice**" has the meaning set forth in Section 2.7(c).

"**Designation Rights Asset**" has the meaning set forth in Section 2.7(c).

"**Designation Rights Period**" means the period commencing on the Closing Date and ending six (6) months after the Closing Date; *provided*, *however*, that such period shall end 210 days after the Petition Date for any Designation Rights Asset that is a Restaurant Lease, pursuant to section 365 of the Bankruptcy Code, unless such deadline is extended by the applicable landlord.

"**Domain Name**" means the internet domain names owned by Sellers, and all registrations, applications and renewals related to the foregoing.

"**Effective Date**" shall have the meaning provided for in the preamble.

"**Encumbrance**" means any claim, lien, pledge, option, charge, easement, Tax assessment, security interest, deed of trust, mortgage, right-of-way, encroachment, building or use restriction, conditional sales agreement, encumbrance or other right of third parties of any sort whatsoever, whether voluntarily incurred or arising by operation of law, and includes any agreement to give any of the foregoing in the future, and any contingent sale or other title retention agreement or lease in the nature thereof.

"**Entity**" means any corporation (including any nonprofit corporation), general partnership, limited partnership, limited liability partnership, joint venture, estate, trust, cooperative, foundation, society, political party, union, company (including any limited liability company or joint stock company), firm or other enterprise, association, organization or entity.

"**Excluded Assets**" shall have the meaning provided for under Section 1.2.

"**Excluded Contract**" means any Sellers' Contract that is not a Purchased Contract.

"**Excluded Liability**" shall have the meaning provided for under Section 2.4.

"**Expense Reimbursement**" shall have the meaning provided for under Section 11.1.

"**Final Order**" means an Order of the Bankruptcy Court the operation or effect of which has not been stayed, reversed or amended, and as to which Order the time to appeal or to seek review or rehearing has expired and as to which (i) no appeal or request for review or rehearing was filed, or (ii) if an appeal or request for review or rehearing was filed, such appeal or request for review or rehearing is no longer pending.

"**Furniture and Equipment**" means all fixtures and other Leasehold Improvements, counters, POS system, hoods, washers, disposal systems, ovens, grills, friers, refrigeration units, artwork, racks, stands, displays, counters, desks, chairs, tables, dispensers, and other furniture and furnishings, Hardware, vehicles, tools, smallware, and other equipment (copiers, fax machines, telephone lines and numbers, and other telecommunication equipment), and miscellaneous office and store supplies and other items of tangible personal property owned or used by the Sellers in the conduct of the Business.  As used herein, the Furniture and Equipment

does not include any tangible property held by the Sellers pursuant to a Contract where Purchaser does not assume at the Closing the underlying Contract relating to such property.

"*Gift Certificates*" means any gift certificates, gift cards, or food/beverage credits that are issued by Seller and required to be honored by Sellers in the ordinary course of business prior to the Closing Date.

"*Governmental Body*" means any: (a) nation, principality, state, commonwealth, province, territory, county, municipality, district or other jurisdiction of any nature; (b) federal, state, local, municipal, foreign or other government; (c) governmental or quasi-governmental authority of any nature (including any governmental division, subdivision, department, agency, bureau, branch, office, commission, council, board, instrumentality, officer, official, representative, organization, unit, body or Entity and any court or other tribunal); (d) multinational organization or body; or (e) individual, Entity or body exercising, or entitled to exercise, any executive, legislative, judicial, administrative, regulatory, police, military or taxing authority or power of any nature.

"*Intangible Property Assets*" means any Intellectual Property Assets or Other Intangible Property owned or held by the Sellers. As used in this Agreement, Intangible Property Assets shall in all events exclude: (i) any materials containing information about employees (other than Transferred Employees), disclosure of which is prohibited under applicable law, and (ii) any software or other item of intangible property held by the Sellers pursuant to a license or other Contract where Purchaser does not assume the underlying Contract relating to such intangible personal property at the Closing.

"*Intellectual Property Assets*" means intellectual property or other proprietary rights of Sellers of every kind throughout the world, both domestic and foreign, which, in each case, are related to the Business, including all inventions and improvements thereon, Patents, Trademarks, Trademark Rights, Copyrights, Domain Names, Technology and trade secrets.

"*Inventory*" means all food, paper products, and other items of inventory owned and held by Sellers or used in connection with the Business, wherever located.

"*Knowledge*" of a Person means such Person's actual, current knowledge and, with respect to Sellers' knowledge, refers only to the knowledge of Steven Micheletti.

"*Large Party Deposit*" means any cash deposit, prepayment, down-payment, or reservation fee made to the Sellers in connection with a Large Party Reservation.

"*Large Party Reservation*" means a reservation for space, food, beverage, and associated service for any party larger than 12 people at any Acquired Restaurant made with the payment of a Large Party Deposit for a date and time after the Closing Date including, for example, a large family party or gathering, a corporate party or function, or a similar group function planned in advance.

"*Leasehold Improvements*" means any leasehold improvements or appurtenances to such improvements (including, without limitation, buildings, structures, storage areas, driveways, walkways, planters, landscaping and parking areas).

"*Legal Requirement*" means any applicable federal, state, local, municipal, foreign or other law, statute, legislation, constitution, principle of common law, resolution, ordinance, code, edict, decree, proclamation, treaty, convention, rule, regulation, ruling, directive, pronouncement, requirement, notice requirement, guideline, Order, specification, determination, decision, opinion or interpretation issued, enacted, adopted, passed, approved, promulgated,

made, implemented or otherwise put into effect by or under the authority of any Governmental Body.

"*Liability*" means any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty or endorsement of any type whatsoever, whether accrued or unaccrued, absolute or contingent, matured or unmatured, liquidated or unliquidated, known or unknown, asserted or unasserted, due or to become due.

"*Liquor License*" means all liquor licenses (including, without limitation, beer and wine licenses) held or used by each Seller.

"*Management Agreement*" means the agreement substantially in the form attached as Exhibit G.

"*Order*" means any judgment, decision, consent decree, injunction, ruling or order of any Governmental Body that is binding on any Person or its property under applicable law.

"*Other Contract*" means any Sellers' Contract other than the Restaurant Leases.

"*Other Intangible Property Assets*" means all intangible personal property (other than the Intellectual Property Assets) owned or held by Sellers, including, without limitation, (A) the books and records pertaining to the Business; (B) proprietary information relating to the Business, including but not limited to catalogues, customer lists and other customer data bases, correspondence with present or prospective customers and suppliers, advertising materials, software programs, and telephone numbers identified with the Business; and (C) all goodwill of the Business.

"*Other Lease*" means any Sellers' Contract that is a lease other than a Restaurant Lease.

"*Outside Date*" means September 30, 2015.

"*Parties*" shall have the meaning provided for in the preamble.

"*Patent*" means the United States patents and patent applications owned by the Sellers, including, any continuations, divisionals, continuations in part, or reissues of patent applications and patents issuing thereon and any past, present or future claims or causes of action arising out of or related to any infringement or misappropriation of any of the foregoing.

"*Person*" means an individual, Entity or Governmental Body.

"*Petition*" means the petition that commenced the Chapter 11 Cases.

"*Petition Date*" means the date of the filing of the Petition with the Bankruptcy Court.

"*Postpetition Debt*" has the meaning ascribed in Section 2.1.

"*Prepetition First Lien Debt*" means the obligations arising under those promissory notes, dated November 16, 2011, with an original principal amount of $7,500,000 in the aggregate, issued by the Debtors to Northern Bank of Arizona and currently held and owned by KarpReilly Investments, LLC or any subsequent purchaser thereof..

"*Prepetition Secured Debt*" means the Prepetition First Lien Debt and Chandler Debt Obligations.

"*Purchase Price*" shall have the meaning provided for under Section 2.1(a).

"**_Purchased Assets_**" shall have the meaning provided for under <u>Section 1.1</u>.

"**_Purchased Contract_**" is defined in <u>Section 1.1(e)</u> hereof.

"**_Purchaser_**" shall have the meaning provided for in the preamble.

"**_Receivables_**" shall have the meaning provided for under <u>Section 1.1(f)</u>.

"**_Restaurant Lease_**" means any real property lease set forth on Schedule 1.1(g) by any of the Sellers under which a Restaurant is the leased premises, together with all rights and interests of the Sellers relating thereto, whether held directly by the Sellers or indirectly through an agent or nominee (including but not limited to all security deposits, purchase options, renewal options, rights of first refusal, reconveyance rights and expansion rights, if any, fixtures, systems, equipment and items of personal property of the Sellers attached or appurtenant thereto, all buildings and improvements thereon or forming a part thereof and all easements, licenses, rights and appurtenances thereto and associated with such Purchased Lease).

"**_Restaurant Petty Cash_**" shall mean petty cash of Sellers on the premises of the Acquired Restaurants, other than Excluded Petty Cash.

"**_Sale Hearing_**" means the hearing conducted by the Bankruptcy Court to approve the Contemplated Transactions.

"**_Sale Motion_**" shall have the meaning provided for under <u>Section 9.1</u>.

"_**Sale Order**_" shall have the meaning provided for under <u>Section 9.1</u>.

"**_Sellers_**" shall have the meaning provided for in the preamble.

"**_Sellers' Contract_**" means any Contract (a) to which any of the Sellers is a party or by which any of the Sellers is bound and (b) that is related to the Business.

"**_Standard Exceptions to Enforceability_**" means any bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer or other laws (whether statutory, regulatory or decisional), now or hereafter in effect, relating to or affecting the rights of creditors generally or by equitable principles (regardless of whether considered in a proceeding at law or in equity).

"**_Subsidiary_**" means, with respect to any Person, (a) any corporation of which at least 50% of the securities or interests having, by their terms, ordinary voting power to elect members of the board of directors, or other persons performing similar functions with respect to such corporation, is held, directly or indirectly by such Person and (b) any partnership or limited liability company of which (i) such Person is a general partner or managing member or (ii) such Person possesses a 50% or greater interest in the total capitalization or total income of such partnership or limited liability company.

"**_Tax_**" means any federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

"**_Tax Return_**" means any return, declaration, report, claim for refund, transfer pricing report or information return or statement relating to Taxes, including any schedule or attachment

thereto, and including any amendment thereof.

"*Technology*" means, collectively, all designs, formulae, algorithms, procedures, methods, techniques, know how, research and development, technical data, programs, subroutines, tools, materials, specifications, processes, inventions (whether patentable or unpatentable and whether or not reduced to practice), apparatus, creations, improvements, works of authorship and other similar materials, and all recordings, graphs, drawings, reports, analyses, and other writings, and other tangible embodiments of the foregoing, in any form whether or not specifically listed herein, and all related technology.

"*Trademarks*" means all trademark registrations and applications for trademark registration owned by Sellers, together with the goodwill associated with any of the foregoing, and all applications, registrations and renewals thereof, and any past, present or future claims or causes of action arising out of or related to any infringement or misappropriation of any of the foregoing.

"*Trademark Rights*" means all common law rights in the United States in any trade names, corporate names, logos, slogans, designs, trade dress, and unregistered trademarks and service marks owned by Sellers, together with all translations, adaptations, derivations and combinations thereof, and the goodwill associated with any of the foregoing.

"*Transaction Expenses*" shall have the meaning provided for under Section 12.7.

"*Transfer Taxes*" shall have the meaning provided for under Section 3.4.

"*Transferred Employee*" means any employee of any of the Sellers, upon accepting an offer of employment from Purchaser.

"*Utilities*" shall have the meaning provided for under Section 2.6.

"*WARN Act*" means the United States Worker Adjustment and Retraining Notification Act, and the rules and regulations promulgated thereunder, or any formulation of similar rights arising under applicable state law.

*[SIGNATURE PAGES FOLLOW; REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

IN WITNESS WHEREOF, Purchaser and Sellers have executed this Agreement as of the day and year first above written.

**PURCHASER:**

**Cornbread Ventures, LP**,
A Texas limited partnership

By: _____
Name: Michael Stone
Its: Managing Partner

**SELLERS:**

**Z'Tejas, Inc., a Delaware corporation**

By: _____
Name: Steven Micheletti
Its: President and Chief Financial Officer

**Z'Tejas Restaurant Holdings, LP, a Delaware Limited partnership**

By: _____
Name: Steven Micheletti
Its: Manager

**Z'Tejas 6th Street, LLC, a Texas limited liability company**

By: _____
Name: Steven Micheletti
Its: Manager

**Z'Tejas Scottsdale, LLC, an Arizona limited liability company**

By: _____
Name: Steven Micheletti
Its: Manager

IN WITNESS WHEREOF, Purchaser and Sellers have executed this Agreement as of the day and year first above written.

**PURCHASER:**

_____,

_____

By: _____

Name: Michael Stone

Its: _____

**SELLERS:**

**Z'Tejas, Inc., a Delaware corporation**

By: _____

Name: Steven Micheletti

Its: President and Chief Financial Officer

**Z'Tejas Restaurant Holdings, LP, a Delaware Limited partnership**

By: _____

Name: Steven Micheletti

Its: Manager

**Z'Tejas 6th Street, LLC, a Texas limited liability company**

By: _____

Name: Steven Micheletti

Its: Manager

**Z'Tejas Scottsdale, LLC, an Arizona limited liability company**

By: _____

Name: Steven Micheletti

Its: Manager

**Z'Tejas of Arboretum, LLC, a Texas**
**limited liability company**

By: _____
Name: Steven Micheletti
Its:    Manager


**Z'Tejas Grill Gateway, LLC, an Arizona**
**limited liability company**

By: _____
Name: Steven Micheletti
Its:    Manager


**Z'Tejas Summerlin, LLC, an Arizona**
**limited liability company**

By: _____
Name: Steven Micheletti
Its:    Manager


**Z'Tejas Tempe, LLC, an Arizona**
**limited liability company**

By: _____
Name: Steven Micheletti
Its:    Manager

**Z'Tejas Chandler, LLC, an Arizona**
**limited liability company**

By: _____
Name: Steven Micheletti
Its:    Manager

**Z'Tejas Costa Mesa, LLC, a California limited liability company**

By: _____

Name: Steven Micheletti

Its: Manager


**Z'Tejas Salt Lake City, LLC, a Utah limited liability company**

By: _____

Name: Steven Micheletti

Its: Manager


**Z'Tejas Avery Ranch, LLC, a Texas limited liability company**

By: _____

Name: Steven Micheletti

Its: Manager


**Z'Tejas La Cantera, LLC, a Texas limited liability company**

By: _____

Name: Steven Micheletti

Its: Manager


**Z'Tejas Bethany Home LLC, an Arizona limited liability company**

By: _____

Name: Steven Micheletti

Its: Manager

**Taco Guild Osborne LLC, a Arizona limited liability company**

By: _____
Name: Steven Micheletti
Its:   Manager

# SCHEDULES

Z'Tejas: APA Schedule
**1.1(a) - FF&E**
9/25/2015

| Location | Store # | City | State | Assets |
|---|---|---|---|---|
| Z'Tejas 6th Street | 101 | Austin | TX | All Assets |
| Z'Tejas of Arboretum | 104 | Austin | TX | All Assets |
| Z'Tejas Scottsdale | 102 | Scottsdale | AZ | All Assets |
| Z'Tejas Gateway | 105 | Phoenix | AZ | All Assets |
| Z'Tejas Tempe | 108 | Tempe | AZ | All Assets |
| Z'Tejas Chandler | 109 | Chandler | AZ | All Assets |
| Z'Tejas Avery Ranch | 120 | Austin | TX | All Assets |
| Z'Tejas Bethany Home | 122 | Phoenix | AZ | All Assets |
| Taco Guild Osborn | 301 | Phoenix | AZ | All Assets |
| Corporate | 901 | Scottsdale | AZ | All Assets |

The Seller makes no representation that the property listed on this Schedule 1.1(a) is up to date because in certain instances the Seller might have removed and replaced property listed on the Schedule (and not updated the Seller's corporate records). For the avoidance of doubt, the Purchaser is acquiring all personal property owned by the Seller related to the restaurants listed in this Schedule 1.1(a).

| Asset Register | 6/1/2015 |
|---|---|

| Date Acq | Conv/Status | Description |
|---|---|---|
| Store : 101 - 6th Street | | |
| Asset A/C# : 162000 - Leasehold Improvements | | |
| 4/8/2007 | FM / A | 75295 12/7/05 KEVIN WHEALEN- |
| 4/8/2007 | FM / A | A/C COMPRESSOR- |
| 4/8/2007 | FM / A | AC BLOWER & CONDENSER- |
| 4/8/2007 | FM / A | ADDITIONAL AIR FOR KITCHEN- |
| 4/8/2007 | FM / A | AIR CONDITIONER IN KITCHEN- |
| 4/8/2007 | FM / A | AIR CONDITIONING COMPRESSOR- |
| 4/8/2007 | FM / A | AIR HANDLER REPLACEMENT- |
| 4/8/2007 | FM / A | ALTERNATIVE DRY GOODS STORAGE- |
| 4/8/2007 | FM / A | AN EXTRA HAND- |
| 4/8/2007 | FM / A | AN EXTRA HAND- |
| 4/8/2007 | FM / A | ANNEX REMODEL - CONSTRUCTION- |
| 4/8/2007 | FM / A | ANNEX REMODEL - DESIGN/ARCHITE- |
| 4/8/2007 | FM / A | ANNEX REMODEL - LANDSCAPING- |
| 4/8/2007 | FM / A | ANNEX REMODEL - SURVEYING- |
| 4/8/2007 | FM / A | BAR FLOORING- |
| 4/8/2007 | FM / A | BATHROOM PARTITIONS- |
| 4/8/2007 | FM / A | BATHROOM REMODEL PERMIT- |
| 4/8/2007 | FM / A | BATHROOM REMODEL- |
| 4/8/2007 | FM / A | BATHROOM REMODEL- |
| 4/8/2007 | FM / A | BATHROOM REMODEL- |
| 4/8/2007 | FM / A | CARPET- |
| 4/8/2007 | FM / A | CONCRETE- |
| 4/8/2007 | FM / A | CONCRETE- |
| 4/8/2007 | FM / A | COTHRONS SAFE & LOCKS- |
| 4/8/2007 | FM / A | DECK RAILINGS AND STEPS- |
| 4/8/2007 | FM / A | DEPT OF STATE HEALTH SERVICES- |
| 4/8/2007 | FM / A | DISHROOM REMODEL- |
| 4/8/2007 | FM / A | DRAWING- |
| 4/8/2007 | FM / A | ELECTRIC UPGRADE- |
| 4/8/2007 | FM / A | ELECTRICAL- |
| 4/8/2007 | FM / A | ELECTRICAL- |
| 4/8/2007 | FM / A | ELECTRICAL- |
| 4/8/2007 | FM / A | ENTRY DOOR & WOOD FLOOR- |
| 4/8/2007 | FM / A | FENCE- |

| | | |
|---|---|---|
| 4/8/2007 | FM / A | FENCE- |
| 4/8/2007 | FM / A | FIRE EXIT LOCK & DOORS- |
| 4/8/2007 | FM / A | FLOOR REPAIR- |
| 4/8/2007 | FM / A | FLOOR REPAIR- |
| 4/8/2007 | FM / A | FLOORING- |
| 4/8/2007 | FM / A | FLOORING- |
| 4/8/2007 | FM / A | FLOORING- |
| 4/8/2007 | FM / A | FRONT DOORS- |
| 4/8/2007 | FM / A | GUTTERS- |
| 4/8/2007 | FM / A | HANDICAP ELEVATOR- |
| 4/8/2007 | FM / A | HVAC 5 TON W/CLOSET- |
| 4/8/2007 | FM / A | HVAC SYSTEM- |
| 4/8/2007 | FM / A | HVAC- |
| 4/8/2007 | FM / A | KITCHEN REMODEL FINISH-OUT- |
| 4/8/2007 | FM / A | L.H. IMPROV- |
| 4/8/2007 | FM / A | LEASEHOLD IMPROVEMENT- |
| 4/8/2007 | FM / A | LEASEHOLD IMPROVEMENT- |
| 4/8/2007 | FM / A | LEASEHOLD IMPROVEMENT- |
| 4/8/2007 | FM / A | LEASEHOLD IMPROVEMENT- |
| 4/8/2007 | FM / A | LEASEHOLD IMPROVEMENTS- |
| 4/8/2007 | FM / A | LEASEHOLD IMPROVEMENTS- |
| 4/8/2007 | FM / A | MOBIL STORAGE- |
| 4/8/2007 | FM / A | MOBILE MINI- |
| 4/8/2007 | FM / A | NEW A/C- |
| 4/8/2007 | FM / A | NEW BALCONY DECK- |
| 4/8/2007 | FM / A | NEW FLOOR INSTALLATION FINAL- |
| 4/8/2007 | FM / A | NEW FLOOR INSTALLATION- |
| 4/8/2007 | FM / A | NEW KITCHEN FLOOR/REPAIR WALL- |
| 4/8/2007 | FM / A | PAINT BUILDING INTERIOR & EXTE- |
| 4/8/2007 | FM / A | PAINT BUILDING INTERIOR AND EX- |
| 4/8/2007 | FM / A | PAINT BUILDING INTERIOR AND EX- |
| 4/8/2007 | FM / A | PATIO REMODEL- |
| 4/8/2007 | FM / A | PB CONSTRUCTION DECK IMPROVEME- |
| 4/8/2007 | FM / A | PORTABLE STOREAGE- |
| 4/8/2007 | FM / A | ROOF ADDITION- |
| 4/8/2007 | FM / A | SHEETROCK� / FLOOR REPAIR / RE- |
| 4/8/2007 | FM / A | STORAGE CONSTRUCTION- |
| 4/8/2007 | FM / A | STORAGE ROOM- |
| 4/8/2007 | FM / A | STORAGE ROOM- |
| 4/8/2007 | FM / A | STRUCTURAL ENGINEER- |
| 4/8/2007 | FM / A | STRUCTURAL ENGINEER- |
| 4/26/2007 | FM / A | AC COMPRESSOR- |
| 6/6/2007 | FM / A | BATHROOM REMODEL- |
| 6/19/2007 | FM / A | ICE BIN - REMODEL- |
| 7/2/2007 | FM / A | PATIO WINDOW- |
| 7/5/2007 | FM / A | LAVATORY FAUCETS- |
| 7/12/2007 | FM / A | FENCING- |
| 7/29/2007 | FM / A | 6TH ST CAPEX REFUND- |
| 7/29/2007 | FM / A | DECK- |
| 8/13/2007 | FM / A | HVAC RELOCATION AND ROOF REPAI- |
| 9/10/2007 | FM / A | ELECTRICAL - REMODEL PROJECT- |
| 9/10/2007 | FM / A | LIGHTS AND FANS- |
| 9/26/2007 | FM / A | PATIO REMODEL POTS/PLANTS- |
| 9/28/2007 | FM / A | PATIO REMODEL- |
| 9/28/2007 | FM / A | PATIO REMODEL- |
| 10/4/2007 | FM / A | REMODEL PROJECT FEE- |
| 10/25/2007 | FM / A | PATIO REMODEL- |
| 10/29/2007 | FM / A | CARPETING- |
| 11/12/2007 | FM / A | HEATING & AIR REPAIRS- |
| 11/13/2007 | FM / A | FLOORING REMODEL- |
| 11/21/2007 | FM / A | FLOORING AND ROOFING- |
| 12/31/2007 | FM / A | GUTTERS- |
| 12/31/2007 | FM / A | ROOF REPLACEMENT- |

| | | |
|---|---|---|
| 2/26/2008 | FM / A | MMA FLOORING- |
| 3/7/2008 | FM / A | SLIP RESISTANT FLOOR SYSTEM- |
| 4/14/2008 | FM / A | EXTERIOR TRIM & SIDING REPAIRS- |
| 5/29/2008 | FM / A | ELECTRICAL FOR EXTERNAL LIGHTI- |
| 6/5/2008 | FM / A | SIDEWALK ENGINEERING FEES- |
| 6/6/2008 | FM / A | ENGINEERING- TENANT IMPROVMENT- |
| 6/30/2008 | FM / A | DECK RENOVATION- |
| 7/7/2008 | FM / A | LANDSCAPING- |
| 7/9/2008 | FM / A | LANDSCAPING- |
| 7/9/2008 | FM / A | TREES- |
| 7/10/2008 | FM / A | IRRIGATION SYSTEM- |
| 7/25/2008 | FM / A | DECK SEATING RENOVATION #3 AND- |
| 9/26/2008 | FM / A | DECK SEATING RENOVATION INV 4- |
| 9/30/2008 | FM / A | ELECTRICAL DRAWINGS FOR PATIO- |
| 11/13/2008 | FM / A | BRADFORD WHITE WATER HEATER- |
| 11/13/2008 | FM / A | ELECTRICAL FOR WATER HEATER- |
| 12/8/2008 | FM / A | FAS TOP S URETHANE MORTAR- |
| 12/16/2008 | FM / A | 5-TON TRANE RTU HEATER UNIT &- |
| 4/17/2009 | FM / A | DOOR & INSTALL- |
| 7/24/2009 | FM / A | DESIGN WORK-BILL BIGGADIK-. |
| 7/27/2009 | FM / A | OUTDOOR LANDSCAPING-BILL BIGGADIK-. |
| 7/27/2009 | FM / A | OUTDOOR LANDSCAPING-BILL BIGGADIK-. |
| 7/31/2009 | FM / A | AC UNIT-HHCC INC  -. |
| 8/28/2009 | FM / A | WOOD BLINDS-A+ SERVICES  -. |
| 9/14/2009 | FM / A | HEATING CABINET CONFERENCE TAB-LONE STAR RES-. |
| 4/2/2010 | FM / A | REPAIR A/C FAN-PRO-AIR ENGIN-. |
| 11/18/2010 | FM / A | BACKSPLASH W/ DRIP EDGE OVER S-WISE CHOICE S-. |
| 12/30/2011 | FM / A | HANDYMAN CONN-.-STAIRS |
| 1/15/2012 | FM / A | HANDYMAN CONN-.-STAIRS |
| 1/15/2012 | FM / A | HANDYMAN CONN-.-STAIRS |
| 6/7/2012 | FM / A | PRO-AIR ENGIN-.-5 TON A/C CONDENSING UNIT |
| 6/15/2012 | FM / A | PRO-AIR ENGIN-.-AC UNIT - REPLACEMENT AIR HAND |
| 6/15/2012 | FM / A | PRO-AIR ENGIN-.-AC UNIT - REPLACEMENT COMPRESS |
| 8/3/2012 | FM / A | PRO-AIR ENGIN-.-5 TON A/C CONDENSING UNIT |
| 10/3/2012 | FM / A | LAWTON COMMER-.-HOT WATER HEATER - ANNEX |
| 4/9/2013 | FM / A | AUSTIN HARDI--.-GUTTERING AND ROOF REPAIRS 1 O |
| 4/9/2013 | FM / A | AUSTIN HARDI--.-GUTTERING AND ROOF REPAIRS 2 O |
| 4/9/2013 | FM / A | AUSTIN HARDI--.-GUTTERING AND ROOF REPAIRS 3 O |
| 3/11/2014 | FM / A | NEW HEATER 2ND FL BAR |
| 5/2/2014 | FM / A | UPGRADE BATHROOMS |
| 10/27/2014 | FM / A | NEW CARPET |
| 12/31/2014 | FM / A | New front doors |

Totals 162000  ( 140 assets )


Store  :  101 - 6th Street

Asset A/C#  :  163000 - Restaurant Equipment

| | | |
|---|---|---|
| 4/8/2007 | FM / A | 1 TUBE HEATERS AND INSTALLATIO- |
| 4/8/2007 | FM / A | 2 DEEP FRYERS- |
| 4/8/2007 | FM / A | ALARM INSTALLATION- |
| 4/8/2007 | FM / A | ALOHA UPGRADE- |
| 4/8/2007 | FM / A | AVANTA DATA SYSTEMS- |
| 4/8/2007 | FM / A | BERMIXER- |
| 4/8/2007 | FM / A | CABLE INSTALL- |
| 4/8/2007 | FM / A | CASH REGISTER- |
| 4/8/2007 | FM / A | CHASE CARPET RUBBER TRACKING- |
| 4/8/2007 | FM / A | COMMERCIAL DESIGN- |
| 4/8/2007 | FM / A | COMPUTER SERVER- |
| 4/8/2007 | FM / A | CONDENSING UNIT- |
| 4/8/2007 | FM / A | DELL COMPUTER- |
| 4/8/2007 | FM / A | DISHWASHER- |
| 4/8/2007 | FM / A | EQUIPMENT- |
| 4/8/2007 | FM / A | EQUIPMENT- |

| | | |
|---|---|---|
| 4/8/2007 | FM / A | EQUIPMENT- |
| 4/8/2007 | FM / A | EQUIPMENT- |
| 4/8/2007 | FM / A | EQUIPMENT- |
| 4/8/2007 | FM / A | FIRE EQUIPMENT- |
| 4/8/2007 | FM / A | FIRE EQUIPMENT- |
| 4/8/2007 | FM / A | GREASE TRAP- |
| 4/8/2007 | FM / A | ICE FREEZER- |
| 4/8/2007 | FM / A | KITCHEN CHAIRS (12)- |
| 4/8/2007 | FM / A | KITCHEN EQUIPMENT INSTALLATION- |
| 4/8/2007 | FM / A | LABOR SCHEDULER SOFTWARE- |
| 4/8/2007 | FM / A | MICROWAVE (AMANA)- |
| 4/8/2007 | FM / A | MICROWAVE- |
| 4/8/2007 | FM / A | MUSIC SYSTEM - ANNEX- |
| 4/8/2007 | FM / A | NACHO CHIP WARMER- |
| 4/8/2007 | FM / A | NEXCALL 60 COASTER KIT- |
| 4/8/2007 | FM / A | NTN BUZZTIME PAGER- |
| 4/8/2007 | FM / A | PATIO HEATERS- |
| 4/8/2007 | FM / A | POS ALOJA REGISTER SYSTEM- |
| 4/8/2007 | FM / A | POS SYSTEM UPGRADE - ANNEX- |
| 4/8/2007 | FM / A | POS SYSTEM- |
| 4/8/2007 | FM / A | POS SYSTEMS- |
| 4/8/2007 | FM / A | PREP TABLE- |
| 4/8/2007 | FM / A | REFRIGERATOR COMPRESSOR- |
| 4/8/2007 | FM / A | REFRIGRATOR COMPRESSOR- |
| 4/8/2007 | FM / A | SANDWICH STEAMER- |
| 4/8/2007 | FM / A | SECURITY ALARM - ANNEX- |
| 4/8/2007 | FM / A | SHELVING HOOD METAL WORK- |
| 4/8/2007 | FM / A | STAINLESS STEEL FLASHING AT CH- |
| 4/8/2007 | FM / A | STEAM TABLE- |
| 4/8/2007 | FM / A | SUN COUNTRY A/C- |
| 4/8/2007 | FM / A | TAYLOR FREEZER - MARGARITAS- |
| 4/8/2007 | FM / A | TAYLOR FREEZER - MARGARITAS- |
| 4/8/2007 | FM / A | TOUCH SCREEN SYSTEM- |
| 4/8/2007 | FM / A | WALK IN REFRIGERATOR- |
| 4/8/2007 | FM / A | WALK IN REFRIGERATOR- |
| 5/11/2007 | FM / A | ICECREAM CABINET & SALAD DISPE- |
| 6/6/2007 | FM / A | PREP TABLE- |
| 6/18/2007 | FM / A | ICE BIN- |
| 6/27/2007 | FM / A | CHARBROILER- |
| 7/29/2007 | FM / A | CHARBOILER GAS COUNTER- |
| 7/29/2007 | FM / A | ICE MACHINE INSTALLATION- |
| 9/10/2007 | FM / A | HHCC CREDIT- |
| 9/19/2007 | FM / A | CONDENSING UNIT- |
| 9/21/2007 | FM / A | INTALL PATIO FANS- |
| 9/27/2007 | FM / A | BAKER'S PRIDE CHARBOILED GAS O- |
| 9/27/2007 | FM / A | INSTALLION OF CHARBOILER- |
| 9/29/2007 | FM / A | BURGLAR ALARM- |
| 10/8/2007 | FM / A | VCHR 121118 COOLER- |
| 10/17/2007 | FM / A | POS SYSTEM- |
| 11/1/2007 | FM / A | VCHR. 121507 PATIO UMBRELLA'S- |
| 11/1/2007 | FM / A | YARDIAC PATIO HEATERS- |
| 11/1/2007 | FM / A | YARDIAC PATIO HEATERS- |
| 11/7/2007 | FM / A | POS CABLEING- |
| 11/30/2007 | FM / A | AIR CONDITIONER CONDENSER- |
| 11/30/2007 | FM / A | HHCC CREDIT- |
| 12/1/2007 | FM / A | HALYCON HOUSE - ANTIQUE BUFFET- |
| 12/10/2007 | FM / A | OVEN - CONVEC DOUBLE DECK- |
| 12/17/2007 | FM / A | COOLER COMPRESSOR- |
| 12/31/2007 | FM / A | ICE MAKER W/ BIN- |
| 2/27/2008 | FM / A | CONDIMENT COUNTER MODIFICATION- |
| 3/7/2008 | FM / A | WAIT STATION MODIFICATIONS- |
| 3/14/2008 | FM / A | WATER STATION- |
| 4/7/2008 | FM / A | CHEESEMELTER- |

| | | |
|---|---|---|
| 4/15/2008 | FM / A | EVAPORATOR COIL FOR WALK IN- |
| 4/23/2008 | FM / A | BOOMARANG CHAIRS (36)- |
| 4/24/2008 | FM / A | INSTALL/REINSTALL CHEESE MELTE- |
| 5/5/2008 | FM / A | LIQUOR CABINET- |
| 5/5/2008 | FM / A | SOUND SYSTEM AMP REPLACEMENT- |
| 5/28/2008 | FM / A | COMPRESSOR AND CONDENSOR- |
| 5/30/2008 | FM / A | TAYLOR MODEL 390 FREEZER- |
| 6/21/2008 | FM / A | REPLACED AC CONDENSER- |
| 6/23/2008 | FM / A | CONDENSER & EVAPORATOR COIL- |
| 7/31/2008 | FM / A | MARGARITA MACHINE- |
| 9/26/2008 | FM / A | PREP TABLE- |
| 10/6/2008 | FM / A | TAYLOR FREEZER- |
| 12/23/2008 | FM / A | TURBO BROILER GAS COUNTER- |
| 1/7/2009 | FM / A | DYEZZ SURVEIL-.- |
| 1/7/2009 | FM / A | DYEZZ SURVEIL-.- |
| 11/15/2009 | FM / A | FRESH20 TRIPLE SYSTEM - DISHWA-ECOLAB INSTIT-. |
| 11/15/2009 | FM / A | TOSTADA DISPENSER/CHIP MASTER-WASSERSTROM C-. |
| 2/4/2010 | FM / A | EXHAUST HOOD-PRO-AIR ENGIN-. |
| 2/7/2010 | FM / A | HARDWARE-RCLS CSK EPIC DX-2000 0810 |
| 7/2/2010 | FM / A | REFRIG UNDERCOUNTER REACH IN-LONE STAR RES-. |
| 8/24/2010 | FM / A | 36 GRIDDLE-LONE STAR RES-. |
| 12/3/2010 | FM / A | STAND UP FLOOR MIXER-LONE STAR RES-. |
| 12/29/2010 | FM / A | FRYER 40LB-LONE STAR RES-. |
| 11/21/2011 | FM / A | LONE STAR RES-.-CONVECTION OVEN |
| 11/21/2011 | FM / A | LONE STAR RES-.-MIXER - 20QT |
| 11/29/2011 | FM / A | RICHARD LOWE -.-WIC COMPRESSOR |
| 12/29/2011 | FM / A | ECOLAB INSTIT-.-CLEANING CADDY |
| 1/9/2012 | FM / A | WASSERSTROM C-.-REACH-IN COOLER COMPRESSOR |
| 1/15/2012 | FM / A | LONE STAR RES-.-ICE MACHINE |
| 4/4/2012 | FM / A | RICHARD LOWE -.-WALK-IN COOLER |
| 7/1/2012 | FM / A | LAWTON COMMER-.-WATER HEATER REPAIR |
| 10/15/2012 | FM / A | RICHARD LOWE -.-UNDER GRILL REFRIDGERATOR |
| 1/22/2013 | FM / A | US FOODSERVIC-.-FRYER OIL FILTRATOR |
| 7/15/2013 | FM / A | SS TACO HOLDER |
| 8/25/2013 | FM / A | TACO HOLDER |
| 8/25/2013 | FM / A | TACO HOLDER |
| 5/2/2014 | FM / A | SANDWICH UNIT 48 IN 12 PAN |
| 5/22/2014 | FM / A | BEVERAGE MERCHANDISER CABINET |
| 6/23/2014 | FM / A | KITCHEN EXHAUST FAN FOR ANNEX |
| 6/27/2014 | FM / A | Replace make up air fan |
| 7/1/2014 | FM / A | Equipment Upgrade -Cameras |
| 7/26/2014 | FM / A | Computer Equipment - Banquet Laptop |
| 10/29/2014 | FM / A | UPGRADE WATER PUMP |
| 10/31/2014 | FM / A | REPLACED MOTOR MAIN KITCHEN HOOD |
| 12/1/2014 | FM / A | TACO SLIM HOLDER |
| 12/1/2014 | FM / A | TACO SLIM HOLDER TAX |
| 12/4/2014 | FM / A | DOUBLE STACK CONVECTION OVEN |
| 3/18/2015 | FM / A | NEW OVEN SMOKER |

Totals 163000  ( 127 assets )


Store  :  101 - 6th Street
Asset A/C#  :  164000 - Furniture & Fixtures

| | | |
|---|---|---|
| 4/8/2007 | FM / A | ABC HOTEL & RESTAURANT- |
| 4/8/2007 | FM / A | ADDITIONAL CHAIRS- |
| 4/8/2007 | FM / A | AN EXTRA HAND- |
| 4/8/2007 | FM / A | ANTIQUE CABINET- |
| 4/8/2007 | FM / A | BANQUET DECOR- |
| 4/8/2007 | FM / A | BAR STOOLS- |
| 4/8/2007 | FM / A | BARSTOOLS (4)- |
| 4/8/2007 | FM / A | CEILING COVERS - ANNEX- |
| 4/8/2007 | FM / A | CHAIRS - ANNEX- |
| 4/8/2007 | FM / A | CHAIRS BARSTOOLS- |

| | | |
|---|---|---|
| 4/8/2007 | FM / A | CHAIRS DONIE NATURAL-12- |
| 4/8/2007 | FM / A | CHAIRS- |
| 4/8/2007 | FM / A | COCKTAIL UNIT / BAR SINK- |
| 4/8/2007 | FM / A | CURTAINS- |
| 4/8/2007 | FM / A | DONIE CHAIRS (12)- |
| 4/8/2007 | FM / A | HABITAT (TABLES CHAIRS LIGHT- |
| 4/8/2007 | FM / A | LAMPS/ LIGHT FIXTURES- |
| 4/8/2007 | FM / A | MISC. FURNISHINGS- |
| 4/8/2007 | FM / A | MISC.- |
| 4/8/2007 | FM / A | NEON SIGN - ANNEX- |
| 4/8/2007 | FM / A | PARKING LOT LIGHTS- |
| 4/8/2007 | FM / A | PATIO FURNITURE- |
| 4/8/2007 | FM / A | PATIO FURNITURE- |
| 4/8/2007 | FM / A | SCONCES- |
| 4/8/2007 | FM / A | SIDEBOARD HUTCH- |
| 4/8/2007 | FM / A | SIGN- |
| 4/8/2007 | FM / A | SIGNAGE- |
| 4/8/2007 | FM / A | STEEL SHELVING- |
| 4/8/2007 | FM / A | TABLES & CHAIRS- |
| 4/11/2007 | FM / A | HP PRINTER P2015DN- |
| 6/1/2007 | FM / A | PATIO CHAIRS - 150- |
| 6/26/2007 | FM / A | FENCING- |
| 6/27/2007 | FM / A | PATIO TABLES- |
| 7/29/2007 | FM / A | RECHARGEABLE TEA LIGHT SET- |
| 8/9/2007 | FM / A | STONE TABLE TOP (2) AND TABLE- |
| 10/27/2007 | FM / A | 2 - WALL SHELFS- |
| 11/2/2007 | FM / A | 10 - SHELF'S- |
| 11/29/2007 | FM / A | SANDWICH UNIT 48- |
| 12/27/2007 | FM / A | ADT - INSTALLATION CHARGE- |
| 12/28/2007 | FM / A | ADT - INSTALLATION CHARGE- |
| 12/28/2007 | FM / A | TABLE- |
| 9/23/2008 | FM / A | CDW COMPUTER- |
| 9/25/2008 | FM / A | CDW COMPUTER- |
| 10/27/2008 | FM / A | WIRELESS AUDIO COMPONENTS- |
| 12/14/2008 | FM / A | VIZIO TV 0609- |
| 12/16/2008 | FM / A | 44 BEACHWOOD CHAIRS- |
| 1/7/2009 | FM / A | SURVEILLANCE SYSTEM 1ST PART- |
| 1/7/2009 | FM / A | SURVEILLANCE SYSTEM- |
| 11/11/2009 | FM / A | DRAPES (5)-MOLLY GREY  -. |
| 12/1/2009 | FM / A | DRAPES (4)-MOLLY GREY  -. |
| 4/14/2010 | FM / A | SIDE CHAIR-GAR PRODUCTS -. |
| 5/28/2010 | FM / A | TABLE & CHAIRS-LONE STAR RES-. |
| 12/19/2010 | FM / A | RCSLS IMMEDIA TV 4252 0611- |
| 4/26/2011 | FM / A | TV-ADAM MURPHY  -. |
| 9/13/2011 | FM / A | SIDE CHAIRS-GAR PRODUCTS -. |
| 9/14/2011 | FM / A | HOSTESS CABLE-NEW HORIZONS -. |
| 9/19/2011 | FM / A | PATIO CHAIRS-GAR PRODUCTS -. |
| 11/20/2011 | FM / A | MANAGER WORKSTATION-MTOWER |
| 11/29/2011 | FM / A | MTOWER CONSUL-.-THERMAL PRINTER |
| 3/20/2012 | FM / A | WISE CHOICE S-.-BAR EXTENSION |
| 6/8/2012 | FM / A | INTEGRITY COM-.-PHONE SYSTEM - PARTNER ACS PRO |
| 7/1/2012 | FM / A | RICHARD LOWE -.-AC COMPRESSOR |
| 4/7/2013 | FM / A | CDW DIRECT VERNON HI VERNON HI-FORTINET WIFI 60C |
| 11/26/2013 | FM / A | COMPUTERS |
| 3/22/2014 | FM / A | MULTIMEDIA PROJECTOR |
| 4/8/2014 | FM / A | COMPUTER - OPTIPLEX WORK STATION |
| 1/1/2015 | FM / A | Upgrade video surveillance cameras |
| 1/9/2015 | FM / A | Upgrade video surveillance cameras |
| 1/9/2015 | FM / A | Upgrade video surveillance cameras |

Totals 164000  ( 69 assets )

Totals 101  ( 336 assets )

Store : 102 -

Asset A/C# : 162000 - Leasehold Improvements

| | | |
|---|---|---|
| 4/8/2007 | FM / A | AC REPAIRS- |
| 4/8/2007 | FM / A | ADDING COCKTAIL AREA TO THE BA- |
| 4/8/2007 | FM / A | ARCHITECT FEES- |
| 4/8/2007 | FM / A | ARCHITECT FEES- |
| 4/8/2007 | FM / A | ARCHITECT FEES- |
| 4/8/2007 | FM / A | ARCHITECT FEES- |
| 4/8/2007 | FM / A | BAR STAINLESS STEEL- |
| 4/8/2007 | FM / A | CABLE CONNECTIONS- |
| 4/8/2007 | FM / A | CONTRACTOR FEES- |
| 4/8/2007 | FM / A | ELECTRIC FOR TV'S ON PATIO- |
| 4/8/2007 | FM / A | ETCHED DOOR HARDWARE- |
| 4/8/2007 | FM / A | EXHAUST HOOD- |
| 4/8/2007 | FM / A | FLOOR COATING- |
| 4/8/2007 | FM / A | FLOOR COATING- |
| 4/8/2007 | FM / A | FLOOR COATING- |
| 4/8/2007 | FM / A | FLOORING - REMODEL- |
| 4/8/2007 | FM / A | HVAC (2) 5 TON UNITS- |
| 4/8/2007 | FM / A | INS REIM PLUMBING WORK- |
| 4/8/2007 | FM / A | LEGAL FEES PATIO CONSTRUCTION- |
| 4/8/2007 | FM / A | MEETING ROOM REMODEL- |
| 4/8/2007 | FM / A | MEETING ROOM REMODEL- |
| 4/8/2007 | FM / A | MEETING ROOM REMODEL- |
| 4/8/2007 | FM / A | MURAL- |
| 4/8/2007 | FM / A | NETWORK PATIO- |
| 4/8/2007 | FM / A | NETWORK PATIO- |
| 4/8/2007 | FM / A | NETWORK PATIO- |
| 4/8/2007 | FM / A | NETWORK-CABLE- |
| 4/8/2007 | FM / A | NEW KITCHEN FLOORING- |
| 4/8/2007 | FM / A | NEW KITCHEN FLOORING- |
| 4/8/2007 | FM / A | PATIO ADDITION ARCHITECTURE FE- |
| 4/8/2007 | FM / A | PATIO ADDITION ARCHITECTURE FE- |
| 4/8/2007 | FM / A | PATIO ADDITION ARCHITECTURE FE- |
| 4/8/2007 | FM / A | PATIO ADDITION ARCHITECTURE FE- |
| 4/8/2007 | FM / A | PATIO ADDITION DRAW 3A- |
| 4/8/2007 | FM / A | PATIO ADDITION DRAW 3B- |
| 4/8/2007 | FM / A | PATIO ADDITION DRAW 3C- |
| 4/8/2007 | FM / A | PATIO ADDITION DRAW 3D- |
| 4/8/2007 | FM / A | PATIO ADDITION REIMBURSEMENT- |
| 4/8/2007 | FM / A | PATIO BAR MODIFICATIONS- |
| 4/8/2007 | FM / A | PATIO CONSTRUCTION- |
| 4/8/2007 | FM / A | PATIO CONSTRUCTION- |
| 4/8/2007 | FM / A | PATIO REMODEL DESIGN- |
| 4/8/2007 | FM / A | PATIO REMODEL DESIGN- |
| 4/8/2007 | FM / A | PLUMBING AND CONCRETE WORK- |
| 4/8/2007 | FM / A | PLUMBING UPGRADE- |
| 4/8/2007 | FM / A | REMODEL BALANCE- |
| 4/8/2007 | FM / A | REMODEL- |
| 4/8/2007 | FM / A | REMODEL- |
| 4/8/2007 | FM / A | REMODEL- |
| 4/8/2007 | FM / A | REMODEL- |
| 4/8/2007 | FM / A | REPLACE PLUMBING BELOW DINING- |
| 4/8/2007 | FM / A | REPLACE PLUMBING BELOW DINING- |
| 4/8/2007 | FM / A | REPLACE PLUMBING BELOW DINING- |
| 4/8/2007 | FM / A | SFS REFUND - LHI / PATIO- |
| 4/8/2007 | FM / A | SIGNS- |
| 4/8/2007 | FM / A | VOID CHECK- |
| 8/31/2007 | FM / A | REMODEL PROJECT- |
| 6/6/2008 | FM / A | DESIGN FEES- |
| 6/6/2008 | FM / A | RESTROOM RENOVATIONS- |
| 6/6/2008 | FM / A | RESTROOM RENOVATIONS- |
| 6/6/2008 | FM / A | WATER HEATER- |

| Date | Type | Description |
|---|---|---|
| 8/23/2009 | FM / A | REPAIR WATER LINES-RCLS EAGLE SERV 16683 0210 |
| 8/23/2009 | FM / A | WATERLINE REPLACEMENT-RCLS EAGLE SERV 16684 0210 |
| 8/24/2009 | FM / A | ELECTRICAL WORK-ARTISTIC LIGH-. |
| 8/31/2009 | FM / A | REMODEL-NELSEN HENRIC-. |
| 9/2/2009 | FM / A | INSTALL SINK/HOT H20 LINE-EAGLE SERVICE-. |
| 9/3/2009 | FM / A | UNHEATED AIR CURTAIN-WASSERSTROM C-. |
| 9/15/2009 | FM / A | SINK-WASSERSTROM C-. |
| 9/21/2009 | FM / A | SS SINK-EAGLE SERVICE-. |
| 9/28/2009 | FM / A | BAR STOOL COVERS-MAYER-PAETZ F-. |
| 9/28/2009 | FM / A | WINDO-MCNAMARA & HI-. |
| 10/1/2009 | FM / A | BAR STOOL COVERS-MAYER-PAETZ F-. |
| 10/1/2009 | FM / A | RENOVATION - CARTER-CARTER M SCHI-. |
| 10/3/2009 | FM / A | BAR REFINISH-UNIQUE RESTAU-. |
| 10/3/2009 | FM / A | BAR REMODEL-STUDIO IRON L-. |
| 10/3/2009 | FM / A | CARPET-SOURCE FLOORI-. |
| 10/14/2009 | FM / A | BAR STOOL COVERS-MAYER-PAETZ F-. |
| 10/22/2009 | FM / A | ELIASON DOOR-DEGRAFF BUILD-. |
| 10/22/2009 | FM / A | RESTROOM INSTA-HOTS-ARTISTIC LIGH-. |
| 10/28/2009 | FM / A | WATER HEATERS-EAGLE SERVICE-. |
| 11/6/2009 | FM / A | BAR REFINISH-UNIQUE RESTAU-. |
| 12/4/2009 | FM / A | CONSULTING-DAWN LEUZZI  -. |
| 1/2/2010 | FM / A | RENOVATION - CARTER-CARTER M SCHI-. |
| 1/7/2010 | FM / A | REMODEL FEES-SCOTTSDALE FA-. |
| 1/26/2010 | FM / A | FLOORING-RE: SOURCE AR-. |
| 1/27/2010 | FM / A | REMODEL FEES-SCOTTSDALE FA-. |
| 1/27/2010 | FM / A | SIGN LIGHTS-CHANDLER SIGN-. |
| 2/4/2010 | FM / A | RENOVATION - CARTER-CARTER M SCHI-. |
| 2/16/2010 | FM / A | RESTROOM REPAIR-EAGLE SERVICE-. |
| 3/1/2010 | FM / A | REMODEL CHAIRS/BAR-AMERICAN EXPR-. |
| 3/1/2010 | FM / A | REMODEL-HENRICH DESIG-. |
| 3/1/2010 | FM / A | REMODEL-STRATEGIC/R&R-. |
| 3/4/2010 | FM / A | FLOORING WORK-ARIZONA SUPER-. |
| 3/4/2010 | FM / A | REMODEL-CARTER M SCHI-. |
| 3/4/2010 | FM / A | REMODEL-SIMPLEXGRINNE-. |
| 3/8/2010 | FM / A | SIDEMARK-REID WITLIN L-. |
| 3/10/2010 | FM / A | FLOORING WORK-ARIZONA SUPER-. |
| 3/19/2010 | FM / A | INSTALL CANDLE HOLDERS-APEX IRON   -. |
| 3/24/2010 | FM / A | REMODEL-STRATEGIC/R&R-. |
| 4/4/2010 | FM / A | ARCHITECTURE FEES-08/15/08 NELSEN HEN 275 |
| 4/4/2010 | FM / A | ARCHITECTURE FEES-11/30/08 NELSEN HEN 2751907 |
| 4/4/2010 | FM / A | CONSULTING-DAWN LEUZZI  -. |
| 4/4/2010 | FM / A | LIGHTING CIRCUITS-10/20/08  VIKING ELECTRIC |
| 4/4/2010 | FM / A | PROJECT MANAGEMENT-07/30/08 CARTER M S 070 |
| 4/6/2010 | FM / A | INSTALL CANDLE HOLDERS-APEX IRON   -. |
| 4/21/2010 | FM / A | INSTALL STAIR TREADS-RE: SOURCE AR-. |
| 6/18/2010 | FM / A | RETURN OF SECURITY DEPOSIT-SCOTFASHSQULLC-CONSSECDEP |
| 12/5/2010 | FM / A | KITCHEN LIGHT FIXTURES-MR ELECTRIC  -. |
| 12/16/2010 | FM / A | CEILING INSTALLATION-TODEK ACOUSST-. |
| 3/13/2011 | FM / A | SPEAKERS-STEVEN A MICH-. |
| 3/15/2011 | FM / A | SPEAKERS-DEFINITIVE EN-. |
| 11/5/2012 | FM / A | ARTISTIC LIGH-.-ANSUL SYSTEM |
| 8/8/2013 | FM / A | SHERCON CONST-.-DRYWALL AND CEILING TILES |
| 8/24/2013 | FM / A | KITCHEN AC UNIT |

Totals 162000  ( 114 assets )


Store  :  102 -
Asset A/C#  :  163000 - Restaurant Equipment

| Date | Type | Description |
|---|---|---|
| 4/8/2007 | FM / A | 3 COMPARTMENT SINK- |
| 4/8/2007 | FM / A | 36 IN COCKTAIL SERVER- |
| 4/8/2007 | FM / A | 42 & 50 PLASMA TV'S- |
| 4/8/2007 | FM / A | AC REFUND- |
| 4/8/2007 | FM / A | AC REPAIR- |

| | | |
|---|---|---|
| 4/8/2007 | FM / A | ALOHA EQUIPMENT- |
| 4/8/2007 | FM / A | ALOHA UPGRADE- |
| 4/8/2007 | FM / A | AZ SALES TAX AUDIT 98 - 02- |
| 4/8/2007 | FM / A | BEER SYSTEM- |
| 4/8/2007 | FM / A | BM PAGER GLOWSTER & ADAPTER- |
| 4/8/2007 | FM / A | BOTTLE COOLER- |
| 4/8/2007 | FM / A | BOTTLE COOLER- |
| 4/8/2007 | FM / A | COMPUTER - WARRENTY- |
| 4/8/2007 | FM / A | COMPUTER HARDWARE- |
| 4/8/2007 | FM / A | CONVECTION OVEN- |
| 4/8/2007 | FM / A | COPELAND CONDENSER- |
| 4/8/2007 | FM / A | DIFFERENT SUPPLIES FOR RESTAUR- |
| 4/8/2007 | FM / A | FREEZER COMP- |
| 4/8/2007 | FM / A | FREEZER COMPRESSOR- |
| 4/8/2007 | FM / A | FREEZER- |
| 4/8/2007 | FM / A | FROZEN DRINK MACHINE BUYOUT- |
| 4/8/2007 | FM / A | GRILL GAS HOSE- |
| 4/8/2007 | FM / A | GUEST PAGERS - 14- |
| 4/8/2007 | FM / A | HAND SINK- |
| 4/8/2007 | FM / A | HOT UNIT DROP IN PAN- |
| 4/8/2007 | FM / A | ICE CHEST- |
| 4/8/2007 | FM / A | ICE MACHINE- |
| 4/8/2007 | FM / A | ICE MACHINE- |
| 4/8/2007 | FM / A | IMPROVING USEFULNESS OF REACH-- |
| 4/8/2007 | FM / A | INSTALLATION OF CIRCUITS TO RU- |
| 4/8/2007 | FM / A | KITCHEN EQUIPMENT - REMODEL- |
| 4/8/2007 | FM / A | KITCHEN EQUIPMENT- |
| 4/8/2007 | FM / A | KITCHEN FIRE EQUIPMENT- |
| 4/8/2007 | FM / A | KITCHEN GRIDDLE- |
| 4/8/2007 | FM / A | LABOR SCHEDULER SOFTWARE- |
| 4/8/2007 | FM / A | LASER PRINTER- |
| 4/8/2007 | FM / A | MARGARITA EQUIPMENT- |
| 4/8/2007 | FM / A | MUSIC SYSTEM- |
| 4/8/2007 | FM / A | PLUMBING UPGRADE- |
| 4/8/2007 | FM / A | POS ALOJA REGISTER SYSTEM- |
| 4/8/2007 | FM / A | POS SYSTEM- |
| 4/8/2007 | FM / A | POS TERMINALS- |
| 4/8/2007 | FM / A | PYROCHEM SYSTEM- |
| 4/8/2007 | FM / A | REPAIRS- |
| 4/8/2007 | FM / A | REPIPING & REBUILDING THE COMP- |
| 4/8/2007 | FM / A | SIGNS- |
| 4/8/2007 | FM / A | SIMPLEX 100 110V/60-50 USA- |
| 4/8/2007 | FM / A | SYSCO KITCHEN EQUIP- |
| 4/8/2007 | FM / A | SYSCO KITCHEN EQUIP- |
| 4/8/2007 | FM / A | SYSCO KITCHEN EQUIP- |
| 4/8/2007 | FM / A | SYSCO KITCHEN EQUIPMENT- |
| 4/8/2007 | FM / A | SYSCO KITCHEN EQUIPMENT- |
| 4/8/2007 | FM / A | UNDERCOUNTER REFRIGERATOR- |
| 4/8/2007 | FM / A | UPGRADE ALL COOLERS- |
| 4/19/2007 | FM / A | 6 BURNER RANGE OVEN- |
| 5/6/2007 | FM / A | TELEPHONE SYSTEM- |
| 5/9/2007 | FM / A | NEW TV- |
| 7/29/2007 | FM / A | 24 GLASS FROSTER- |
| 7/29/2007 | FM / A | 79 KEG COOLER- |
| 7/29/2007 | FM / A | KEG - EQUIPMENT- |
| 7/29/2007 | FM / A | WATER FILTRATION SYSTEM- |
| 8/28/2007 | FM / A | GLASS DOOR FOR BAR COOLER- |
| 7/31/2008 | FM / A | COMPUTER REPAIRS- |
| 7/31/2008 | FM / A | TV INSTALLS- |
| 10/3/2008 | FM / A | SINK & GREASE INTERCEPTOR- |
| 10/15/2008 | FM / A | GAS CHARBROILER & EQMT STAND- |
| 12/10/2008 | FM / A | CONVECTION OVEN VECTAIRE GAS &- |
| 5/31/2009 | FM / A | RECLASS ECOLAB- |

| | | |
|---|---|---|
| 7/7/2009 | FM / A | AC WORK-CHILL REFRIGE-. |
| 7/30/2009 | FM / A | KITCHEN AC-CHILL REFRIGE-. |
| 8/28/2009 | FM / A | MIXER-WASSERSTROM C-. |
| 9/10/2009 | FM / A | SHELVING-WASSERSTROM C-. |
| 9/29/2009 | FM / A | EXHAUST FAN MOTER-CHILL REFRIGE-. |
| 10/9/2009 | FM / A | ICE MACHINE-CHILL REFRIGE-. |
| 10/26/2009 | FM / A | ICE MAKER-WASSERSTROM C-. |
| 1/1/2010 | FM / A | KOROSEAL PRODUCTS-AMERICAN EXPR-. |
| 1/4/2010 | FM / A | PATIO HEATERS-ARTISTIC LIGH-. |
| 1/6/2010 | FM / A | 3 PATIO HEATERS-WASSERSTROM C-. |
| 1/24/2010 | FM / A | INSTALL HEATER-JUST IN TIME -. |
| 1/24/2010 | FM / A | INSTALL WATER HEATER-JUST IN TIME -. |
| 1/28/2010 | FM / A | CONDENSING UNIT-CHILL REFRIGE-. |
| 2/21/2011 | FM / A | FOOD SLICER-US FOODSERVIC-SUPPLIES-KITCHEN |
| 3/1/2011 | FM / A | FOOD PROCESSOR W/BOWL-WASSERSTROM C-. |
| 5/20/2011 | FM / A | PANTRY LINE COOLER REPAIR-LONE STAR RES-. |
| 5/25/2011 | FM / A | KITCHEN A/C UNIT REPAIR-KROLL REFRIGE-. |
| 6/6/2011 | FM / A | FRY FILTRATION MACHINE-WASSERSTROM C-. |
| 6/6/2011 | FM / A | FRY FILTRATION MACHINE-WASSERSTROM C-. |
| 9/25/2011 | FM / A | CLEANING CADDY W/VAC PKD-ECOLAB |
| 11/18/2011 | FM / A | EAGLE SERVICE-.-WATER HEATER |
| 7/9/2012 | FM / A | O'ROURKE & CO-.-FRYLOW FX25 (3) |
| 9/6/2012 | FM / A | JAX COMMERCIA-.-WALK-IN DOOR |
| 10/25/2012 | FM / A | WINDY CITY EQ-.-STEAM TABLE |
| 12/21/2012 | FM / A | AVDB GROUP LC-.-COMPUTER SOFTWARE/HARDWARE |
| 7/26/2013 | FM / A | SMOKER OVEN |
| 7/30/2013 | FM / A | MOTOR |
| 9/17/2013 | FM / A | PREP TABLE |
| 11/18/2013 | FM / A | STAINLESS STEEL TABLE |
| 12/4/2013 | FM / A | REMOTE CONDENSING SYSTEM |
| 3/21/2014 | FM / A | Equipment Purchase - Refrigerated Pizza Table |
| 1/19/2015 | FM / A | Replaced Condenser in beer walk-in cooler |

Totals 163000  ( 100 assets )


Store : 102 -
Asset A/C# : 164000 - Furniture & Fixtures

| | | |
|---|---|---|
| 4/8/2007 | FM / A | 3 RED OAK TABLE TOPS / 2 BOOTH- |
| 4/8/2007 | FM / A | 4 RED OAK TABLE TOPS- |
| 4/8/2007 | FM / A | A/C COMPRESSOR & ACCUMULATOR- |
| 4/8/2007 | FM / A | AUTOFLUSH TOILETS- |
| 4/8/2007 | FM / A | AUTOFLUSH TOILETS- |
| 4/8/2007 | FM / A | BAR STOOLS- |
| 4/8/2007 | FM / A | BAR STOOLS- |
| 4/8/2007 | FM / A | BARSTOOLS - 16 MAPLE PLUS FREI- |
| 4/8/2007 | FM / A | BARSTOOLS - 16- |
| 4/8/2007 | FM / A | BARSTOOLS - TBASE BLACK 3- |
| 4/8/2007 | FM / A | CHAIRS- |
| 4/8/2007 | FM / A | CHAIRS- |
| 4/8/2007 | FM / A | MUSIC SYSTEM BAR AREA- |
| 4/8/2007 | FM / A | PATIO FURNITURE CREDIT- |
| 4/8/2007 | FM / A | PATIO TV INSTALLATION- |
| 4/8/2007 | FM / A | SEATING REFINISHING- |
| 4/8/2007 | FM / A | SEATING REFINISHING- |
| 4/8/2007 | FM / A | TABLE TOPS FOR PATIO- |
| 4/8/2007 | FM / A | TV WALLMOUNTS FOR PATIO- |
| 4/8/2007 | FM / A | UPHOLSTERY - BOOTHS- |
| 7/29/2007 | FM / A | RECHARGEABLE TEA LIGHT SET- |
| 9/14/2007 | FM / A | LCD TV (2) AND PLASMA TV- |
| 7/27/2009 | FM / A | POWERVAR 600 VA SERVER GROUNDG-F&B MANAGEMEN-. |
| 9/4/2009 | FM / A | 221 SEATS-SANDLER SEATI-. |
| 9/4/2009 | FM / A | 221 SEATS-SANDLER SEATI-. |
| 9/4/2009 | FM / A | TAXES ON CHAIRS-SANDLER SEATING SALES TAX |

| | | |
|---|---|---|
| 9/30/2009 | FM / A | FABRIC-ARCHITEX  -. |
| 10/1/2009 | FM / A | TV-AMERICAN EXPR-. |
| 11/15/2009 | FM / A | SERVER-F&B MANAGEMEN-. |
| 11/27/2009 | FM / A | 6 CHAIRS-PANCOM INC  -. |
| 12/10/2009 | FM / A | RENOVATION - CARTER-CARTER SCHLIF |
| 12/13/2009 | FM / A | FABRIC-ARCHITEX  -. |
| 12/15/2009 | FM / A | FRAMED ART-MIKE STOBBS  -. |
| 12/15/2009 | FM / A | TABLES-SHELBY WILLIA-. |
| 12/16/2009 | FM / A | CAST ACRYLIC SAND-ACRYLIC DESIG-. |
| 12/17/2009 | FM / A | FRAME AND HANGING-THORNSMITH DE-. |
| 12/17/2009 | FM / A | FRAMED ART-THE ART DEPAR-. |
| 12/18/2009 | FM / A | FRAMED ART-SUSAN HARTENH-. |
| 12/22/2009 | FM / A | CONSULTING-HENRICH DESIG-. |
| 12/31/2009 | FM / A | 6 CHAIRS-PANCOM INC  -. |
| 1/26/2010 | FM / A | 2 STEELBACK PLATES-THORNSMITH DE-. |
| 1/26/2010 | FM / A | FRAMED ART-SUSAN HARTENH-. |
| 1/26/2010 | FM / A | FRAMED ART-THE ART DEPAR-. |
| 1/26/2010 | FM / A | TABLES-SHELBY WILLIA-. |
| 2/3/2010 | FM / A | BULBS-HINKLEY'S CUS-. |
| 2/3/2010 | FM / A | LIGHTING-HINKLEY'S CUS-. |
| 2/12/2010 | FM / A | 6 CHAIRS-PANCOM INC  -. |
| 2/17/2010 | FM / A | TEA LIGHT SET-PATHFINDER PR-. |
| 2/18/2010 | FM / A | LIGHTING-HINKLEY'S CUS-. |
| 2/18/2010 | FM / A | TABLE STORAGE-YRC  -. |
| 2/22/2010 | FM / A | CANCELLED ART-SUSANRHAYGOOD CANCELLED ART |
| 3/1/2010 | FM / A | PRIVACY DRAPERIES-THE WORKROOM -. |
| 4/4/2010 | FM / A | LIGHTING-HINKLEY'S CUS-PAYMENT ON PO#08 |
| 5/3/2010 | FM / A | DRIVE COMPRESSOR-ZEMAN DESIGN -. |
| 3/23/2011 | FM / A | OPEN TABLE-MTOWER CONSUL-. |
| 3/28/2011 | FM / A | HOSTESS STAND PHONE-NEW HORIZONS -. |
| 4/10/2011 | FM / A | COMPUTER-RCLS MGR WRKSTN 1011 |
| 5/1/2011 | FM / A | OPEN TABLE-AMERICAN EXPR-. |
| 5/17/2011 | FM / A | FORTINET FORTIWIFI FIREWALL-MTOWER CONSUL-. |
| 7/15/2011 | FM / A | J TECH GUEST PAGING SYSTEM-JTECH COMMUNI-. |
| 9/15/2011 | FM / A | FLAT PANEL TV'S-IMMEDIA AUDIO-. |
| 10/19/2011 | FM / A | LIGHT FIXTURE-LIGHTFORM LIG-. |
| 11/29/2011 | FM / A | MTOWER CONSUL-.-THERMAL PRINTER |
| 7/2/2012 | FM / A | MTOWER CONSUL-.-ALOHA SERVER |
| 1/16/2013 | FM / A | AVDB GROUP LC-.-AV EQUIPMENT - SPEAKERS AMP |
| 6/15/2013 | FM / A | DELL 655626061513-ALOHA SYSTEM |
| 8/8/2013 | FM / A | AMERICAN EXPR-.-42 LG LCD TV |
| 9/16/2013 | FM / A | SPEAKERS |
| 8/1/2014 | FM / A | COMPEAT SOFTWARE |
| 8/27/2014 | FM / A | Equipment Purchase - Patio TV |
| 8/28/2014 | FM / A | COMPEAT SOFTWARE |
| 8/31/2014 | FM / A | COMPEAT SOFTWARE |

Totals 164000  ( 72 assets )

Totals 102  ( 286 assets )


e :  104 - Arboretum

et A/C#  :  162000 - Leasehold Improvements

| | |
|---|---|
| FM / A | AC UNIT FOR KITCHEN- |
| FM / A | ARCHITECTURAL - PATIO REMODEL- |
| FM / A | BACK DOOR IN KITCHEN WITH WIND- |
| FM / A | BOOTH UPHOLSTERY- |
| FM / A | BUILDING LIGHTS- |
| FM / A | BUILDOUT - ORIGINAL- |
| FM / A | CARPET- |
| FM / A | CARPET◆ ENTIRE RESTAURANT- |
| FM / A | COMPRESSOR- |
| FM / A | CONCRETE- |
| FM / A | CONCRETE- |
| FM / A | DISHROOM REPAIRS- |

| | |
|---|---|
| FM / A | DOOR VIEWER & ALARM EXIT INST- |
| FM / A | EXHAUST FAN- |
| FM / A | EXHAUST UNIT- |
| FM / A | FIRE SPRINKLERS - PATIO REMODE- |
| FM / A | FIREPLACE - PATIO REMODEL- |
| FM / A | FIREPLACE DOORS- |
| FM / A | GF DAYCARE LIGHTS- |
| FM / A | GRILL EXTINGUISHER- |
| FM / A | HOT WATER TO SINKS PER HD- |
| FM / A | INTERIOR LIGHT REPLACEMENT- |
| FM / A | KITCHEN DOOR- |
| FM / A | KITCHEN FLOOR- |
| FM / A | KITCHEN FLOOR- |
| FM / A | LANDSCAPING - PATIO REMODEL- |
| FM / A | MEN'S RESTROOM FIXTURE- |
| FM / A | NEW BAR TILE- |
| FM / A | PAINT EXTERIOR- |
| FM / A | PAINT EXTERIOR- |
| FM / A | PARKING LOT ENTRANCE- |
| FM / A | PARKING LOT LIGHTING- |
| FM / A | PARKING LOT- |
| FM / A | PATIO REMODEL CONSTRUCTION DRA- |
| FM / A | PATIO REMODEL CONSTRUCTION- |
| FM / A | PATIO REMODEL- |
| FM / A | PATIO REMODEL- |
| FM / A | PATIO REMODEL- |
| FM / A | PERMITS / FEES - PATIO REMODEL- |
| FM / A | REPLACE METAL DOOR- |
| FM / A | SOUND ABSORBERS- |
| FM / A | SOUND ABSORBERS- |
| FM / A | STONE VENEER - PATIO REMODEL- |
| FM / A | WATER HEATER- |
| FM / A | GARBARGE DOORS- |
| FM / A | CARPET- |
| FM / A | AC REPAIRS- |
| FM / A | ELECTRICAL - REMODEL PROJECT- |
| FM / A | CONDENSING UNIT- |
| FM / A | ELECTRICAL - REMODEL PROJECT- |
| FM / A | FIRE ALARM REPAIRS- |
| FM / A | ROOF TOP UNIT- |
| FM / A | RELOCATE FEED TO DISHWASHER AN- |
| FM / A | AWININGS- |
| FM / A | ENTRY DOOR & PAVING REPAIRS- |
| FM / A | KITCHEN REPAIRS- |
| FM / A | HVAC INSTALL- |
| FM / A | AWININGS- |
| FM / A | AWININGS- |
| FM / A | AWININGS- |
| FM / A | KITCHEN & ENTRY REPAIRS- |
| FM / A | KITCHEN REPAIRS- |
| FM / A | A/C REPAIRS- |
| FM / A | KITCHEN EXHAUST FANS- |
| FM / A | CIRCUITS FOR 2 COOLERS- |
| FM / A | WOOD BLINDS-A+ SERVICES  -. |
| FM / A | WATER LEAK REPAIR-HHCC INC    -. |
| FM / A | DUCT INSULATING-PRO-AIR ENGIN-. |
| FM / A | GREASE GUARDS-FACILTEC SOUT-. |
| FM / A | A/C BLOWER-PRO-AIR ENGIN-. |
| FM / A | DRIP GUARDS-FACILTEC SOUT-. |
| FM / A | ROOF REPAIR-EMPIRE ROOFIN-. |
| FM / A | ADDITIONAL DIFFUSERS-PRO-AIR ENGIN-. |
| FM / A | REMODEL - BATHROOM-6TH STREET CO-. |
| FM / A | AIR CONDITIONER COMPRESSOR-PRO-AIR ENGIN-. |

| FM / A | DINING EXTERIER REMODEL-6TH STREET CO-. |
| FM / A | ENCLOSURE GUY--PATIO CURTAINS |
| FM / A | ENCLOSURE GUY--PATIO CURTAINS |
| FM / A | PRO-AIR ENGIN--5 TON A/C UNIT |
| FM / A | ROCKFORD BUSI--CARPET |
| FM / A | JUAN ALVARADO-.-CONCRETE WORK WHEEL CHAIR RAMP |
| FM / A | ROOF REPAIR |
| FM / A | GREASE TRAP |

ıls 162000 ( 83 assets )


e :  104 - Arboretum
et A/C# :  163000 - Restaurant Equipment

| FM / A | 2 TUBE HEATERS AND INSTALLATIO- |
| FM / A | AIR CONDITIONER - PATIO- |
| FM / A | AIR DOOR- |
| FM / A | ALOHA UPGRADE- |
| FM / A | BAR STOOLS- |
| FM / A | BEER COOLER- |
| FM / A | CAST IRON SKILLETS & UNDERLINE- |
| FM / A | CHEESE MELTER- |
| FM / A | CHEESEMELTER- |
| FM / A | CHIP WARMER / SHELVES- |
| FM / A | COMMERCIAL MIRCOWAVE- |
| FM / A | COMPRESSOR- |
| FM / A | COMPRESSOR- |
| FM / A | COMPUTER HARDWARE- |
| FM / A | COMPUTER HARDWARE- |
| FM / A | CONDENSING UNIT 7.5 TON & FURN- |
| FM / A | CURTAINS- |
| FM / A | DIGITAL SATELLITE SYSTEM- |
| FM / A | FOOD PROCESSOR- |
| FM / A | FOOD PROCESSOR- |
| FM / A | GARBAGE DISPOSAL- |
| FM / A | GARLAND CHARBROILER - OVEN- |
| FM / A | GRILL EXHAUST FAN- |
| FM / A | GUEST PAGERS- |
| FM / A | ICE MACHINE ELECTRICAL- |
| FM / A | ICE MAKER- |
| FM / A | INSTALL WORKSTATION- |
| FM / A | LABOR SCHEDULER SOFTWARE- |
| FM / A | MGR WORKSTATION- |
| FM / A | PAGERS- |
| FM / A | PARTNER EXPANSION MODULE- |
| FM / A | PATIO SHADE SOUTH INTERIOR- |
| FM / A | PIZZA PREP STATION- |
| FM / A | PORTABLE HEATERS- |
| FM / A | POS ALOJA REGISTER SYSTEM- |
| FM / A | POS EQUIPMENT- |
| FM / A | PREP TABLE- |
| FM / A | RANGE 6 BURNER- |
| FM / A | RANGE- |
| FM / A | REFRIG. 2 DOOR- |
| FM / A | REFRIGERATOR- |
| FM / A | REFRIGERATOR- |
| FM / A | SANDWICH COUNTER- |
| FM / A | SATELLITE SYSTEM ADDITION- |
| FM / A | STEAM TABLES (2)- |
| FM / A | SUPPORT SERVICES POS- |
| FM / A | TOSTADA CHIP WARMER- |
| FM / A | WIRING- |
| FM / A | WIRING- |
| FM / A | RECHARGABLE TEA LIGHTS- |

| | |
|---|---|
| FM / A | FRYER- |
| FM / A | FRYER- |
| FM / A | KROWNE ICE BAIN- |
| FM / A | CREDIT- |
| FM / A | MONTAGUE 2115A CONVECTION OVEN- |
| FM / A | NETWORK REDESIGN- |
| FM / A | FROSTER- |
| FM / A | MONTAGUE 2115A CONVECTION OVEN- |
| FM / A | BURGLAR ALARM- |
| FM / A | INSTALLATION OF COMPUTER EQUIP- |
| FM / A | COMPUTER EQUIPMENT- |
| FM / A | COMPUTER EQUIPMENT- |
| FM / A | FILE SERVER AND SOFTWARE- |
| FM / A | 17 LCD MONITOR- |
| FM / A | MONTAGU CASTER SET- |
| FM / A | WHEELS MONTAGUE OVEN- |
| FM / A | VIEWSONIC MONITOR- |
| FM / A | APC BATTERY BACKUP- |
| FM / A | TAX/FREIGHT ON SOFTWARE UPGRAD- |
| FM / A | SOFTWARE LICENSE UPGRADE- |
| FM / A | COOLER- |
| FM / A | NETGEAR- |
| FM / A | CSK INSTALLATION- |
| FM / A | PHONE SYSTEM- |
| FM / A | CREDIT- |
| FM / A | FROSTER- |
| FM / A | FROSTER- |
| FM / A | GAS VALVE / COMBUSTION FAN- |
| FM / A | FRYER- |
| FM / A | FRYMAX- |
| FM / A | REMOVE & INSTALL STEAM WELLS- |
| FM / A | RCLS CSK EQUIP 0209- |
| FM / A | BOYD REFRIGERATION- |
| FM / A | 48 12 PAN SANDWICH COOLER- |
| FM / A | RECLASS ECOLAB- |
| FM / A | RECLASS SEALTEX- |
| FM / A | RECLASS TAYLOR FREEZER- |
| FM / A | PREP TABLE-WASSERSTROM C-. |
| FM / A | RANGE-LONE STAR RES-. |
| FM / A | ICE BIN-WASSERSTROM C-. |
| FM / A | VERTICAL FLAPS-LANDMARK AWNI-. |
| FM / A | REFRIGERATED COUNTER/SALAD TOP-WASSERSTROM C-. |
| FM / A | ICE MACHINE-LONE STAR RES-. |
| FM / A | ICE MACHINE INSTALL-RICHARD LOWE -. |
| FM / A | CONDENSER UNIT - MARGARITA MAC-LANE EQUIPMEN-. |
| FM / A | A/C REPAIR-PRO-AIR ENGIN-. |
| FM / A | REFRIGERATOR COMPRESSOR-RICHARD LOWE -. |
| FM / A | A/C REPAIR-PRO-AIR ENGIN-. |
| FM / A | FRYER 40 LBS NAT DEAN-LONE STAR RES-. |
| FM / A | ECOLAB INSTIT-.-CLEANING CADDY |
| FM / A | LONE STAR RES-.-SLICER - 10 |
| FM / A | F&B MANAGEMEN-.-ADAPTERS & MEMORY |
| FM / A | AMERICAN EXPRESS-FORNTINET WIFI |
| FM / A | PRO-AIR ENGIN-.-INSTALL 4 TON ROOFTOP A/C UNIT |
| FM / A | INTEGRITY COM-.-PHONE SYSTEM |
| FM / A | SS TACO HOLDER |
| FM / A | WALL & DOOR REPAIR |
| FM / A | COLD COCKTAIL UNIT |
| FM / A | COLD COCKTAIL UNIT FREIGHT |
| FM / A | COLD COCKTAIL UNIT TAX |
| FM / A | FRYER 1307FM0031 |
| FM / A | REPLACE COOLER COIL |
| FM / A | REPLACED COMPRESSOR KITCHEN A/C UNIT |

| | | |
|---|---|---|
| FM / A | WATER HEATER REPLACEMENT |
| FM / A | Equipment Replacement - Broiler |
| FM / A | INSTALL MAIN BUILDING HOT WATER SYSTEM |
| FM / A | Replaced Condenser in beer walk-in cooler |
| FM / A | FRYMASTER-MACHINE OIL FLTR 50 LB |

ls 163000 ( 118 assets )

e : 104 - Arboretum
t A/C# : 164000 - Furniture & Fixtures

| | |
|---|---|
| FM / A | BARSTOOLS RE-UPHOLSTERY- |
| FM / A | CHAIRS-34 SIDE WITH WICKER &- |
| FM / A | COPY MACHINE- |
| FM / A | FURNITURE- |
| FM / A | FURNITURE- |
| FM / A | LIGHTS FOR PARKING LOT- |
| FM / A | MECHANISM TO CLOSE DOOR- |
| FM / A | MISTER SYSTEM- |
| FM / A | NEED INVOICE WHAT IS THIS?- |
| FM / A | PATIO FURNITURE- |
| FM / A | PATIO FURNITURE- |
| FM / A | REFURBISH CANVAS PANELS- |
| FM / A | REUPHOLSTER 144 CHAIRS- |
| FM / A | REUPHOLSTER BOOTH- |
| FM / A | SAFE- |
| FM / A | TABLE TOPS REFINISHED-18- |
| FM / A | TABLES-6 42 SQUARE- |
| FM / A | TABLES-9 36 SQUARE- |
| FM / A | UPHOLSTERY FOR BOOTH AND PANEL- |
| FM / A | UPHOLSTERY FOR BOOTHS- |
| FM / A | VALUATION ASSET- |
| FM / A | MONTAGUE CASTER SET- |
| FM / A | COOLER - 2 SIDE DOORS- |
| FM / A | CHINA CAP- |
| FM / A | HOBART MIXER W/ ACCESSORIES- |
| FM / A | 42 PLASMA SAMSUNG & INSTALL- |
| FM / A | ICE BIN INSTALL-COCA-COLA/ATL-. |
| FM / A | CSK EQUIP-RCLS CSK EQUIP 1110 |
| FM / A | AIR CONDITIONER-PRO-AIR ENGIN-. |
| FM / A | MGR WORKSTATION-RCLS MGR WORKSTATION 0411 |
| FM / A | COMPUTER EQUIPMENT-F&B MANAGEMEN-. |
| FM / A | POWERVAR-F&B MANAGEMEN-. |
| FM / A | SIDE CHAIRS-GAR PRODUCTS -. |
| FM / A | HOSTESS CABLE-NEW HORIZONS -. |
| FM / A | PATIO CHAIRS-GAR PRODUCTS -. |
| FM / A | MTOWER CONSUL-.-THERMAL PRINTER |
| FM / A | LIGHTFORM LIG-.-LAMPS |
| FM / A | RCLS CSK EPIC F&B 11899 0812-EXPERT HOSPITALITY DX-2000 |
| FM / A | F&B MANAGEMEN-.-EXPERT HOSPITALITY CONTROLLER |
| FM / A | MTOWER CONSUL-.-MANAGER WORKSTATION |
| FM / A | JULIE KEAST  -.-ARTWORK |
| FM / A | DALE WHISTLER-.-SCONCE/CANDLE SHELF |
| FM / A | DALE WHISTLER-.-4 SCONCES 1/2 DOWN |
| FM / A | DALE WHISTLER-.-DESIGN OF SCONCE/SHELVES |
| FM / A | JULIE KEAST  -.- |
| FM / A | QSR COMPUTER |
| FM / A | DELL-ALOHA SYSTEM |
| FM / A | FLAME TECHNOLOGY |
| FM / A | FLAME TECHNOLOGIES |
| FM / A | COMPUTER - OPTIPLEX WORK STATION |
| FM / A | New Laptop Computer |

ls 164000 ( 51 assets )
ls 104 ( 252 assets )

Asset A/C# : 162000 - Leasehold Improvements

| | | |
|---|---|---|
| 4/8/2007 | FM / A | A/C COMPRESSOR- |
| 4/8/2007 | FM / A | A/C COMPRESSOR- |
| 4/8/2007 | FM / A | AC COMPRESSOR- |
| 4/8/2007 | FM / A | AC MOTOR- |
| 4/8/2007 | FM / A | AC REPAIR- |
| 4/8/2007 | FM / A | AIR CONDITIONER- |
| 4/8/2007 | FM / A | AIR CONDITIONER- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | CAPITALIZED INTEREST- |
| 4/8/2007 | FM / A | CARPET- |
| 4/8/2007 | FM / A | CARPET- |
| 4/8/2007 | FM / A | COMPRESSOR- |
| 4/8/2007 | FM / A | CONSTRUCTION IN PROGRESS PYMT- |
| 4/8/2007 | FM / A | CONSTRUCTION IN PROGRESS PYMT- |
| 4/8/2007 | FM / A | CONSTRUCTION IN PROGRESS PYMT- |
| 4/8/2007 | FM / A | CONSTRUCTION IN PROGRESS PYMT- |
| 4/8/2007 | FM / A | CONSTRUCTION IN PROGRESS PYMT- |
| 4/8/2007 | FM / A | CONSTRUCTION IN PROGRESS PYMT- |
| 4/8/2007 | FM / A | CONSTRUCTION IN PROGRESS PYMT- |
| 4/8/2007 | FM / A | CONSTRUCTION IN PROGRESS PYMT- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSTRUCTION PERMITS- |
| 4/8/2007 | FM / A | CONSTRUCTION PERMITS- |
| 4/8/2007 | FM / A | DESIGN DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN SERVICES- |
| 4/8/2007 | FM / A | DESIGN SERVICES- |
| 4/8/2007 | FM / A | DESIGN SERVICES- |
| 4/8/2007 | FM / A | DRAINAGE PIPE REPLACEMENT- |
| 4/8/2007 | FM / A | ENDORSEMENTS TO L/H POLICY- |
| 4/8/2007 | FM / A | EVAPORATIVE COOLER- |
| 4/8/2007 | FM / A | EXHAUST FAN- |
| 4/8/2007 | FM / A | EXPO WALL RECONSTRUCTION TILE- |
| 4/8/2007 | FM / A | EXPO WALL RECONSTRUCTION- |
| 4/8/2007 | FM / A | EXPO WALL RECONSTRUCTION- |
| 4/8/2007 | FM / A | GREASE INTERCEPTOR & CUSTOM FI- |
| 4/8/2007 | FM / A | HVAC WINDOWS ARCHITECT FEES- |
| 4/8/2007 | FM / A | KITCHEN TILE REPLACEMENT 12/10- |
| 4/8/2007 | FM / A | KITCHEN TILE REPLACEMENT- |
| 4/8/2007 | FM / A | MANAGEMENT FEES/EXPENSES- |
| 4/8/2007 | FM / A | MANAGEMENT FEES/EXPENSES- |
| 4/8/2007 | FM / A | MANAGEMENT FEES/EXPENSES- |
| 4/8/2007 | FM / A | MIRRORS- |
| 4/8/2007 | FM / A | NEON SIGN- |
| 4/8/2007 | FM / A | NEON SIGN- |
| 4/8/2007 | FM / A | PAINT EXTERIOR DOOR & GATES- |
| 4/8/2007 | FM / A | REPLACE TILE IN KITCHEN- |
| 4/8/2007 | FM / A | SCHEMATIC DESIGN & DOCUMENTS- |

| | | |
|---|---|---|
| 4/8/2007 | FM / A | SCHEMATIC DESIGN- |
| 4/8/2007 | FM / A | SECURITY SYSTEM INSTALL- |
| 4/8/2007 | FM / A | SECURITY SYSTEM INSTALL- |
| 4/8/2007 | FM / A | SECURITY SYSTEM INSTALL- |
| 4/8/2007 | FM / A | TENANT IMPROVEMENT REIMBURSEME- |
| 4/8/2007 | FM / A | TENANT IMPROVEMENT REIMBURSEME- |
| 4/8/2007 | FM / A | TENANT IMPROVEMENT REIMBURSEME- |
| 4/8/2007 | FM / A | WATER MISTERS FOR PATIO- |
| 6/12/2007 | FM / A | PAINTING - LEASEHOLD- |
| 8/21/2007 | FM / A | PAINT AND REPAIR- |
| 1/17/2008 | FM / A | REPAINT EXTERIOR AND INTERIOR- |
| 1/22/2008 | FM / A | ROOFING- |
| 2/22/2008 | FM / A | CUSTOM SINKS- |
| 3/12/2008 | FM / A | ENGINEERING- TENANT IMPROVMENT- |
| 3/12/2008 | FM / A | FILTER FILTRATOR- |
| 3/12/2008 | FM / A | PAINTING- |
| 5/2/2008 | FM / A | BEVERAGE STATION- |
| 8/18/2008 | FM / A | AIR DIRECTORS- |
| 9/16/2008 | FM / A | A/C REPAIRS- |
| 1/23/2009 | FM / A | NEW EXHAUST FAN & INSTALL- |
| 3/10/2009 | FM / A | 10 TON AC UNIT- |
| 4/7/2009 | FM / A | AIR CONDITIONER & INSTALL- |
| 3/10/2010 | FM / A | PLUMBING WORK-RKS PLUMBING -. |
| 12/1/2010 | FM / A | WIRING-NEW HORIZONS -. |
| 5/2/2011 | FM / A | STEEL PRIVACY WALL-VICTORY METAL-. |
| 3/19/2012 | FM / A | RE: SOURCE AR-.-FLOORING |
| 3/19/2012 | FM / A | RESOURCE ARIZ-.-FLOORING |
| 10/26/2012 | FM / A | TRI-MEGA MECH-.-CARRIER 20 TON HVAC UNIT |
| 7/25/2013 | FM / A | YORK HVAC |
| 8/14/2013 | FM / A | HVAC UNIT |
| 1/14/2014 | FM / A | UPGRADE FRP |
| 4/1/2014 | FM / A | NEW WATER HEATER |
| 6/18/2014 | FM / A | Building Upgrade |
| 6/22/2014 | FM / A | Kitchen Upgrade |
| 7/9/2014 | FM / A | Building Upgrade |
| 7/22/2014 | FM / A | Ceiling Replacement |
| 7/30/2014 | FM / A | Restroom Upgrades |

Totals 162000 ( 99 assets )


Store : 108 -

Asset A/C# : 163000 - Restaurant Equipment

| | | |
|---|---|---|
| 4/8/2007 | FM / A | 2 PIZA PREP TABLES- |
| 4/8/2007 | FM / A | AC UNIT COMPRESSOR- |
| 4/8/2007 | FM / A | ALOHA UPGRADE- |
| 4/8/2007 | FM / A | AZ SALES TAX AUDIT 98 - 02- |
| 4/8/2007 | FM / A | COMPRESSOR FOR MARGARITA MACHI- |
| 4/8/2007 | FM / A | COMPRESSOR- |
| 4/8/2007 | FM / A | COMPUTER HARDWARE- |
| 4/8/2007 | FM / A | COMPUTER SERVER- |
| 4/8/2007 | FM / A | DMX MUSIC SYSTEM- |
| 4/8/2007 | FM / A | FINAL PYMT POS SYSTEM- |
| 4/8/2007 | FM / A | FOOD PROCESSOR- |
| 4/8/2007 | FM / A | GLASS CHILLER- |
| 4/8/2007 | FM / A | ICE MACHINE- |
| 4/8/2007 | FM / A | INSTALLATION OF POS SYSTEM- |
| 4/8/2007 | FM / A | KITCHEN EQUIPMENT- |
| 4/8/2007 | FM / A | KITCHEN EQUIPMENT- |
| 4/8/2007 | FM / A | KITCHEN EQUIPMENT- |
| 4/8/2007 | FM / A | KITCHEN FAN- |
| 4/8/2007 | FM / A | LABOR SCHEDULER SOFTWARE- |
| 4/8/2007 | FM / A | LINE OVER FOR CONVECTION OVEN- |
| 4/8/2007 | FM / A | MANAGERS TOOL KIT- |

| | | |
|---|---|---|
| 4/8/2007 | FM / A | MARGARITA MACHINE COMPRESSOR- |
| 4/8/2007 | FM / A | MARGARITA MACHINE COMPRESSOR- |
| 4/8/2007 | FM / A | MISCELLANEOUS KITCHEN EQUIPMEN- |
| 4/8/2007 | FM / A | PAGER SYSTEM- |
| 4/8/2007 | FM / A | PHONE SYSTEM REPAIR- |
| 4/8/2007 | FM / A | POS EQUIPMENT NETWORKWIRING- |
| 4/8/2007 | FM / A | POS EQUIPMENT- |
| 4/8/2007 | FM / A | POS SYSTEM- |
| 4/8/2007 | FM / A | POS SYSTEM- |
| 4/8/2007 | FM / A | PRINTER- |
| 4/8/2007 | FM / A | REPAIR EQUIPMENT- |
| 4/8/2007 | FM / A | REPLACE TEMPERATURE CONTROL ON- |
| 4/8/2007 | FM / A | TAX-KITCHEN EQUIPMENT- |
| 4/8/2007 | FM / A | TAYLOR FREEZER- |
| 4/8/2007 | FM / A | TELEPHONE EQUIPMENT- |
| 4/8/2007 | FM / A | TV CONVERTER BOX- |
| 4/8/2007 | FM / A | TV'S & INSTALL- |
| 5/7/2007 | FM / A | EXHAUST HOOD- |
| 5/15/2007 | FM / A | CONVECTION OVEN - DOUBLE DECKE- |
| 6/29/2007 | FM / A | GAS RANGE & BROILER- |
| 7/29/2007 | FM / A | CHARGE INSL- |
| 7/29/2007 | FM / A | CHARGE INSL- |
| 7/29/2007 | FM / A | CONNECTOR HOSE KIT GAS- |
| 7/29/2007 | FM / A | CUSTOM SINKS- |
| 7/29/2007 | FM / A | SETUP CHARGES- |
| 8/9/2007 | FM / A | NETWORK RECABLING- |
| 8/21/2007 | FM / A | 12.5 TON ROOF TOP- |
| 9/17/2007 | FM / A | REFRIGERATOR- |
| 2/24/2009 | FM / A | UNDERCOUNTER REFRIGERATOR- |
| 5/31/2009 | FM / A | RECLASS AIR FACTOR- |
| 2/24/2010 | FM / A | EVAPORATOR-CHILL REFRIGE-. |
| 3/12/2010 | FM / A | HOT PLATE-US FOODSERVIC-HOT PLATE |
| 7/14/2010 | FM / A | FUB DISPENSER-TAYLOR FREEZE-. |
| 7/19/2010 | FM / A | COMPRESSOR-CHILL REFRIGE-. |
| 10/7/2010 | FM / A | COPELAND CONDENSING UNIT-KROLL REFRIGE-. |
| 10/26/2010 | FM / A | SAFETY SYSTEM MOVEABLE GAS CON-WASSERSTROM C-. |
| 10/29/2010 | FM / A | SOLSTICE STANDARD FRYER-WASSERSTROM C-. |
| 11/4/2010 | FM / A | INSTALL NEW FRYERS-JAX COMMERCIA-. |
| 12/1/2010 | FM / A | COOLER EVAPORATOR-KROLL REFRIGE-. |
| 12/4/2010 | FM / A | EXHAUST FAN AND INSTALLATION-KROLL REFRIGE-. |
| 12/16/2010 | FM / A | MAKE UP AIR UNIT W/ HP MOTOR-KROLL REFRIGE-. |
| 5/9/2011 | FM / A | MARS AIR CURTAIN-ANDYMAN ELECT-. |
| 6/3/2011 | FM / A | CONDENCING UNIT REPLACEMENT-KROLL REFRIGE-. |
| 6/7/2011 | FM / A | HOSHIZAKI WATER PUMP REPLACEME-KROLL REFRIGE-. |
| 8/29/2011 | FM / A | COMPRESSOR& LOW PRESSURE SWITC-CADENCE COOLI-. |
| 9/15/2011 | FM / A | COMPRESSOR FOR KITCHEN AC-CARUSO MECHAN-. |
| 9/16/2011 | FM / A | COMPRESSOR - KITCHEN AC-CARUSO MECHAN-. |
| 10/3/2011 | FM / A | EXHAUST FAN - KITCHEN-KESLER/VENTMA-. |
| 10/3/2011 | FM / A | FOOD PROCESSOR W/BOWL-WASSERSTROM C-. |
| 10/3/2011 | FM / A | MIXER-WASSERSTROM C-. |
| 10/31/2011 | FM / A | SMOKER OVEN-LONE STAR RES-. |
| 12/29/2011 | FM / A | ECOLAB INSTIT-.-CLEANING CADDY |
| 4/26/2012 | FM / A | O'ROURKE & CO.--FRYLOW FX 25 |
| 10/19/2012 | FM / A | SOUTHWEST RES-.-ICE MACHINE |
| 11/28/2012 | FM / A | GOLDEN AIR IN-.-COMPRESSOR - REACH IN COOLER |
| 1/21/2013 | FM / A | GOLDEN AIR IN-108-BEER COOLER |
| 4/8/2013 | FM / A | GENERAL PARTS-.-CONVECTION OVEN |
| 4/8/2013 | FM / A | RCLS CSK EPIC 0913- |
| 5/9/2013 | FM / A | SOUTHWEST REST-REACH IN FREEZER |
| 9/24/2013 | FM / A | STAINLESS STEEL REFRIG |
| 8/10/2014 | FM / A | Taylor MD 30 Frozen Drink MachinE |
| 9/1/2014 | FM / A | 1 60 REFRIGERATION SANDWICH PREP TABLE-EPBWR2 |
| 9/1/2014 | FM / A | 2 REFRIGERATION SANDWICH PREP TABLE-EPBR3 |

| | | |
|---|---|---|
| 11/24/2014 | FM / A | Replaced faucet in men's restroom |
| 2/26/2015 | FM / A | REPLACED TOP LOAD CHIP WARMER |

Totals 163000 ( 86 assets )


Store : 108 -
Asset A/C# : 164000 - Furniture & Fixtures

| | | |
|---|---|---|
| 4/8/2007 | FM / A | BAR STOOLS- |
| 4/8/2007 | FM / A | BAR STOOLS- |
| 4/8/2007 | FM / A | BAR STOOLS- |
| 4/8/2007 | FM / A | CABINET DOORS & RECOVERED BOOT- |
| 4/8/2007 | FM / A | CAFE OLE SIDE CHAIRS - 16 - FI- |
| 4/8/2007 | FM / A | CAFE OLE SIDE CHAIRS - 16- |
| 4/8/2007 | FM / A | CHAIR SHIPPING COSTS- |
| 4/8/2007 | FM / A | CHAIR SHIPPING COSTS- |
| 4/8/2007 | FM / A | CHAIR SHIPPING COSTS- |
| 4/8/2007 | FM / A | CHAIR STORAGE- |
| 4/8/2007 | FM / A | CHAIRS- |
| 4/8/2007 | FM / A | FRAMING & PHOTO'S- |
| 4/8/2007 | FM / A | INTERIOR DECORATIONS- |
| 4/8/2007 | FM / A | INTERIOR DECORATIONS- |
| 4/8/2007 | FM / A | NEW SIGNS FOR THE TEMPE LOCATI- |
| 4/8/2007 | FM / A | PATIO FURNITURE- |
| 4/8/2007 | FM / A | PATIO UMBRELLAS- |
| 4/8/2007 | FM / A | SIDE CHAIRS & BARSTOOLS- |
| 4/8/2007 | FM / A | SIDE CHAIRS & BARSTOOLS- |
| 4/8/2007 | FM / A | SIDE CHAIRS (10)- |
| 4/8/2007 | FM / A | SIDE CHAIRS (15)- |
| 4/8/2007 | FM / A | SIGNAGE- |
| 4/8/2007 | FM / A | SOLID MAHOGANY TABLE TOPS W/BA- |
| 4/8/2007 | FM / A | SQUARE DINING TABLES (12)- |
| 4/8/2007 | FM / A | SQUARE DINING TABLES - 4- |
| 4/8/2007 | FM / A | TABLE SHIPPING COSTS- |
| 4/8/2007 | FM / A | WROUGHT IRON FURNITURE SHIPPIN- |
| 7/29/2007 | FM / A | RECHARGEABLE TEA LIGHT SET- |
| 8/15/2007 | FM / A | TEA LIGHT SETS- |
| 9/14/2007 | FM / A | LCD TV (2)- |
| 10/7/2008 | FM / A | NEW HORIZON- |
| 10/7/2008 | FM / A | NEW HORIZONS- |
| 4/15/2009 | FM / A | COMPUTER- |
| 7/23/2010 | FM / A | 5 BLINDS & INSTALLATION-BLINDS & BEYO-. |
| 8/16/2010 | FM / A | PHONES-NEW HORIZONS -. |
| 10/7/2010 | FM / A | SERVER-F&B MANAGEMEN-. |
| 2/18/2011 | FM / A | PATIO-CEILLING FANS AND LIGHTI-ANDYMAN ELECT-. |
| 3/14/2011 | FM / A | CEILING FAN & LIGHTS-ANDYMAN ELECT-. |
| 4/12/2011 | FM / A | OPEN TABLE WIRING-NEW HORIZONS -. |
| 4/29/2011 | FM / A | SIDE CHAIR W/SEAT CUSHION-CMS COMMERCIA-. |
| 6/18/2011 | FM / A | FORTINET FORTIWIFI FIREWALL-MTOWER CONSUL-. |
| 11/29/2011 | FM / A | MTOWER CONSUL-.-THERMAL PRINTER |
| 7/1/2012 | FM / A | GOLDLINE UPHO-.-BOOTH REUPHOLSTERY |
| 7/1/2012 | FM / A | GOLDLINE UPHO-.-BOOTH REUPHOLSTERY |
| 9/3/2012 | FM / A | MTOWER CONSUL-.-DELL VOSTRO 260S - MANAGER WOR |
| 3/12/2013 | FM / A | CMS COMMERCIA-.-12 CASA SIDE CHAIRS 1 OF 2 |
| 3/12/2013 | FM / A | CMS COMMERCIA-.-12 CASA SIDE CHAIRS 2 OF 2 |
| 4/17/2013 | FM / A | GOLDLINE UPHO-.-63 CHAIRS REUPHOLSTER 1 OF 2 |
| 4/17/2013 | FM / A | GOLDLINE UPHO-.-63 CHAIRS REUPHOLSTER 2 OF 2 |
| 5/3/2013 | FM / A | GAR PRODUCTS -.-26 BARSTOOLS |
| 6/18/2013 | FM / A | DELL-ALOHA SYSTEM |
| 7/31/2013 | FM / A | 24IN BACK BAR |

Totals 164000 ( 52 assets )
Totals 108 ( 237 assets )

Store : 109 -

Asset A/C# : 162000 - Leasehold Improvements

| | | |
|---|---|---|
| 4/8/2007 | FM / A | AC COMPRESSOR- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | ARCHITECTURAL SERVICES- |
| 4/8/2007 | FM / A | BOILER REPLACEMENT- |
| 4/8/2007 | FM / A | BUILDING PERMIT EXTENSION- |
| 4/8/2007 | FM / A | BUILDING PERMIT- |
| 4/8/2007 | FM / A | CAPITALIZED INTEREST- |
| 4/8/2007 | FM / A | CAPITALIZED OVERHEAD- |
| 4/8/2007 | FM / A | CAPITALIZED RENT- |
| 4/8/2007 | FM / A | CHANDLER DEED OF TRUST- |
| 4/8/2007 | FM / A | CHANDLER LEASE EXTENSION- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSTRUCTION MANAGEMENT FEES- |
| 4/8/2007 | FM / A | CONSULTING FEES- |
| 4/8/2007 | FM / A | CONSULTING FEES- |
| 4/8/2007 | FM / A | DESIGN & DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN & DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN & DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN & DEVELOPMENT- |
| 4/8/2007 | FM / A | DESIGN & DEVELOPMENT- |
| 4/8/2007 | FM / A | ELECTRICAL- |
| 4/8/2007 | FM / A | FIRE SPRINKLER SYSTEM- |
| 4/8/2007 | FM / A | FLOORING- |
| 4/8/2007 | FM / A | GENERAL SITEWORK- |
| 4/8/2007 | FM / A | HVAC- |
| 4/8/2007 | FM / A | HVAC- |
| 4/8/2007 | FM / A | INITIAL MANAGEMENT FEE- |
| 4/8/2007 | FM / A | LANDSCAPING- |
| 4/8/2007 | FM / A | LEGAL & CONSULTING FEES- |
| 4/8/2007 | FM / A | LEGAL & CONSULTING- |
| 4/8/2007 | FM / A | LEGAL FEES- |
| 4/8/2007 | FM / A | LEGAL FEES- |
| 4/8/2007 | FM / A | LEGAL FEES- |
| 4/8/2007 | FM / A | LEGAL FEES- |
| 4/8/2007 | FM / A | LEGAL FEES- |
| 4/8/2007 | FM / A | LEGAL FEES- |
| 4/8/2007 | FM / A | LEGAL FEES- |
| 4/8/2007 | FM / A | LEGAL FEES- |
| 4/8/2007 | FM / A | LEGAL FEES- |
| 4/8/2007 | FM / A | LIQUOR LICENSE LEGAL FEES- |
| 4/8/2007 | FM / A | MASONRY- |
| 4/8/2007 | FM / A | MILLWORK/CARPENTRY- |
| 4/8/2007 | FM / A | MISCELLANEOUS LEASEHOLD- |
| 4/8/2007 | FM / A | MISCELLANEOUS LEASHOLD- |
| 4/8/2007 | FM / A | NETWORK WIRING - POS- |
| 4/8/2007 | FM / A | NEW AC COMPRESSOR- |
| 4/8/2007 | FM / A | NEW AC COMPRESSOR- |
| 4/8/2007 | FM / A | PAINT- |
| 4/8/2007 | FM / A | PARKING LOT- |
| 4/8/2007 | FM / A | PLUMBING- |
| 4/8/2007 | FM / A | PROJECT MANAGEMENT FEE- |
| 4/8/2007 | FM / A | RECORDING FEES- |
| 4/8/2007 | FM / A | ROOFING- |
| 4/8/2007 | FM / A | SEWAGE CHANEL DRAIN- |

| | | |
|---|---|---|
| 4/8/2007 | FM / A | SITE IMPROVEMENT- |
| 4/8/2007 | FM / A | SITE INVESTIGATION- |
| 4/8/2007 | FM / A | STRUCTURE- |
| 4/8/2007 | FM / A | TILE & GROUT- |
| 4/8/2007 | FM / A | UNEMPLOYEMENT TAX APPLICATION- |
| 4/8/2007 | FM / A | WINDOWS/DOORS- |
| 7/29/2007 | FM / A | LEASEHOLD IMPROVEMENTS- |
| 2/1/2008 | FM / A | COMMERCIAL GLENDALE- |
| 9/16/2008 | FM / A | A/C REPAIRS- |
| 9/16/2008 | FM / A | SPRINKLER REPAIRS- |
| 11/17/2008 | FM / A | 2 AO SMITH WATER HEATERS (100- |
| 4/1/2009 | FM / A | FLOOR & INSTALL- |
| 5/2/2009 | FM / A | CARPETING - RE:SOURCE ARIZONA- |
| 6/19/2009 | FM / A | ADOBE PAINT -.- |
| 6/22/2009 | FM / A | ADOBE PAINT -.- |
| 6/24/2009 | FM / A | CARPETING - RE:SOURCE ARIZONA- |
| 7/10/2009 | FM / A | INTERIOR DESIGN-DAWN LEUZZI 0906.01 |
| 7/31/2009 | FM / A | INTERIOR DESIGN-DAWN LEUZZI  090701 |
| 8/31/2009 | FM / A | STONE TOP-CMS COMMERCIA-. |
| 9/3/2009 | FM / A | BLINDS-BLINDS & BEYO-. |
| 10/1/2009 | FM / A | MIRRORS-MOMENTUM GROU-. |
| 10/15/2009 | FM / A | RESTROOM MIRRORS-EVER READY GL-. |
| 11/13/2009 | FM / A | DESIGN CONSULTING-DAWN LEUZZI  -. |
| 11/15/2009 | FM / A | BATHROOM SINKS-ARCHITECTURAL-. |
| 11/15/2009 | FM / A | BLINDS-BLINDS & BEYO-. |
| 1/1/2010 | FM / A | INTERIOR DESIGN-DAWN LEUZZI  0901.0 |
| 1/2/2010 | FM / A | REMODEL-CARTER M SCHI-. |
| 1/10/2010 | FM / A | INTERIOR DESIGN-DAWN LEUZZI  090301 |
| 1/10/2010 | FM / A | INTERIOR DESIGN-DAWN LEUZZI  0908.0 |
| 1/10/2010 | FM / A | INTERIOR DESIGN-DAWN LEUZZI 0902.01 |
| 1/10/2010 | FM / A | INTERIOR DESIGN-DAWN LEUZZI 0905-01 |
| 1/10/2010 | FM / A | INTERIOR DESIGN-DAWN LEUZZI0904-01 |
| 4/30/2010 | FM / A | AMP-IMMEDIA AUDIO-. |
| 4/30/2010 | FM / A | TRIMCAP-YESCO      -. |
| 2/22/2011 | FM / A | PANTRY COOLER REPAIR-KROLL REFRIGE-. |
| 2/12/2012 | FM / A | KROLL REFRIGE-.-HVAC/CONDENSING UNIT & 9K BTU |
| 9/28/2012 | FM / A | REMINGTON RES-.-AC COMPRESSOR |
| 8/28/2013 | FM / A | PUMP ASSEMBLY |
| 12/2/2013 | FM / A | AC UNIT |
| 2/10/2015 | FM / A | REPLACED BAR AC UNIT |
| 2/19/2015 | FM / A | REPLACED WATER HEATER CONTROLLER BOARD |
| 3/4/2015 | FM / A | REPLACED WEST KITCHEN AC |

Totals 162000  ( 103 assets )


Store  :  109 -
Asset A/C#  :  163000 - Restaurant Equipment

| | | |
|---|---|---|
| 4/8/2007 | FM / A | AC UNIT- |
| 4/8/2007 | FM / A | ALUMINUM STEAMER SET- |
| 4/8/2007 | FM / A | AZ SALES TX AUDIT 98 - 02- |
| 4/8/2007 | FM / A | BAR SUPPLIES- |
| 4/8/2007 | FM / A | BEER COOLER HIGH PRESSURE CONT- |
| 4/8/2007 | FM / A | CHINA- |
| 4/8/2007 | FM / A | CHINA- |
| 4/8/2007 | FM / A | COMPRESSOR- |
| 4/8/2007 | FM / A | COMPRESSOR- |
| 4/8/2007 | FM / A | COMPUTER- |
| 4/8/2007 | FM / A | ESPRESSO MACHINE/GRINDER- |
| 4/8/2007 | FM / A | EVAPORATOR COIL- |
| 4/8/2007 | FM / A | FABRIC & INSTALL OF DRAPERY PA- |
| 4/8/2007 | FM / A | FIRE EXTINGUISHER- |
| 4/8/2007 | FM / A | FOOD PROCESSOR/MIXER- |
| 4/8/2007 | FM / A | FREIGHT-EQUIPMENT- |

| | | |
|---|---|---|
| 4/8/2007 | FM / A | FRY BASKET ROUND- |
| 4/8/2007 | FM / A | FRYER- |
| 4/8/2007 | FM / A | GUACAMOLE STATION- |
| 4/8/2007 | FM / A | GUEST SUPPLIES- |
| 4/8/2007 | FM / A | HP 25 PGM NETWORK PRINTER- |
| 4/8/2007 | FM / A | INSTALLATION-EQUIPMENT- |
| 4/8/2007 | FM / A | INSTALLATION-EQUIPMENT- |
| 4/8/2007 | FM / A | KITCHEN EQUIPMENT- |
| 4/8/2007 | FM / A | KITCHEN SMALLWARES- |
| 4/8/2007 | FM / A | KITCHEN SMALLWARES- |
| 4/8/2007 | FM / A | KITCHEN SMALLWARES- |
| 4/8/2007 | FM / A | KITCHEN SMALLWARES- |
| 4/8/2007 | FM / A | KITCHEN SMALLWARES- |
| 4/8/2007 | FM / A | KITCHEN SMALLWARES- |
| 4/8/2007 | FM / A | KITCHENAID 5QT MIXER- |
| 4/8/2007 | FM / A | KNIFE SHARPENER/BLADE- |
| 4/8/2007 | FM / A | LABOR SCHEDULER SOFTWARE- |
| 4/8/2007 | FM / A | LASER PRINTER- |
| 4/8/2007 | FM / A | MAHAGONY STAND- |
| 4/8/2007 | FM / A | MAHOGANY STAND- |
| 4/8/2007 | FM / A | METAL MEDICAL CABINET- |
| 4/8/2007 | FM / A | MISCELLANEOUS EQUIPMENT- |
| 4/8/2007 | FM / A | MISCELLANEOUS EQUIPMENT- |
| 4/8/2007 | FM / A | MISCELLANEOUS EQUIPMENT- |
| 4/8/2007 | FM / A | MIXING EQUIPMENT- |
| 4/8/2007 | FM / A | MOBILE RACK 10 CAN- |
| 4/8/2007 | FM / A | PAGING SYSTEM- |
| 4/8/2007 | FM / A | PATIO HEATERS- |
| 4/8/2007 | FM / A | POS EQUIPMENT- |
| 4/8/2007 | FM / A | POS EQUIPMENT- |
| 4/8/2007 | FM / A | POS EQUIPMENT- |
| 4/8/2007 | FM / A | POS EQUIPMENT- |
| 4/8/2007 | FM / A | PROCURVE SWITCH - POS- |
| 4/8/2007 | FM / A | REFRIGERATION EQUIPMENT- |
| 4/8/2007 | FM / A | REFRIGERATOR COMPRESSOR- |
| 4/8/2007 | FM / A | REFRIGERATOR COMPRESSOR- |
| 4/8/2007 | FM / A | S/S DISHWASHER- |
| 4/8/2007 | FM / A | TAX-EQUIPMENT- |
| 4/8/2007 | FM / A | TELEPHONE EQUIPMENT- |
| 4/8/2007 | FM / A | WALK IN COOLER- |
| 4/8/2007 | FM / A | WALK-IN DOOR CURTAINS- |
| 4/8/2007 | FM / A | WATER FILTER- |
| 4/8/2007 | FM / A | WATER SOFTENER SYS WITH 2 FLAV- |
| 4/10/2007 | FM / A | KITCHEN MGMT SOFTWARE- |
| 4/23/2007 | FM / A | MEMORY- |
| 4/30/2007 | FM / A | BROILER- |
| 4/30/2007 | FM / A | CHARGE INSULATOR- |
| 5/3/2007 | FM / A | DVD- |
| 5/3/2007 | FM / A | DVD- |
| 5/22/2007 | FM / A | KITCHEN MGMT SOFTWARE- |
| 7/29/2007 | FM / A | EQUIPMENT- |
| 7/29/2007 | FM / A | EXHAUST FAN- |
| 7/29/2007 | FM / A | REFRIGERATOR REPAIR- |
| 8/16/2007 | FM / A | OVEN REPAIR- |
| 10/11/2007 | FM / A | NETGEAR- |
| 10/29/2007 | FM / A | AZ ALOHA FILE SERVER- |
| 2/1/2008 | FM / A | OVEN- |
| 3/12/2008 | FM / A | FREEZER- |
| 3/12/2008 | FM / A | MISTER- |
| 6/9/2008 | FM / A | FRYER DEEP- |
| 11/16/2008 | FM / A | CSK EQUIPMENT- |
| 11/16/2008 | FM / A | CSK EQUIPMENT- |
| 2/23/2009 | FM / A | FRYER FLR 35-40 LB S/S- |

| | | |
|---|---|---|
| 5/2/2009 | FM / A | AMERICAN EXPR-.- |
| 5/2/2009 | FM / A | AMERICAN EXPR-.- |
| 5/27/2009 | FM / A | ARTSTUDIO 1 0-.- |
| 5/27/2009 | FM / A | ARTSTUDIO 1 0-.- |
| 6/5/2009 | FM / A | DAWN LEUZZI -.- |
| 6/5/2009 | FM / A | DAWN LEUZZI -.- |
| 6/10/2009 | FM / A | MERESTONE -.- |
| 6/10/2009 | FM / A | MERESTONE -.- |
| 6/24/2009 | FM / A | RE: SOURCE AR-.- |
| 6/24/2009 | FM / A | RE: SOURCE AR-.- |
| 6/26/2009 | FM / A | ARTSTUDIO101- OVERPAY REFUND- |
| 6/26/2009 | FM / A | ARTSTUDIO101- OVERPAY REFUND- |
| 12/6/2009 | FM / A | COMPUTER-MTOWER CONSUL-. |
| 4/13/2010 | FM / A | FUB DISPENSER-TAYLOR FREEZE-. |
| 4/15/2010 | FM / A | COMPRESSOR-CHILL REFRIGE-. |
| 12/2/2010 | FM / A | REPAIR REFRIGERATOR-KROLL REFRIGE-. |
| 1/11/2011 | FM / A | REPAIR REFRIGERATOR-KROLL REFRIGE-. |
| 4/12/2011 | FM / A | COMPRESSOR-KROLL REFRIGE-. |
| 7/1/2011 | FM / A | HEAT LAMPS-ANDYMAN ELECT-. |
| 8/19/2011 | FM / A | HEAT LAMPS-LONE STAR RES-. |
| 9/7/2011 | FM / A | HOSIZAKI ICE MACHINE AND ICE B-VENTANA DISTR-. |
| 9/27/2011 | FM / A | CLEANING CADDY W/ VAC PKD-ECOLAB INSTIT-. |
| 12/29/2011 | FM / A | ECOLAB INSTIT-.-CLEANING CADDY |
| 4/27/2012 | FM / A | GCS SERVICE I-109-WALK-IN COOLER |
| 7/9/2012 | FM / A | O'ROURKE & CO-.-FRYLOW FX25 (3) |
| 8/27/2012 | FM / A | TAYLOR FREEZE-.-MARGARITA MACHINE |
| 2/13/2013 | FM / A | RCLS QSR EPIC2000 0813-CSK EPIC MACHINE |
| 4/8/2013 | FM / A | GOLDEN AIR IN-.-WIC CONDENSING UNITS 2 OF 2 |
| 4/8/2013 | FM / A | GOLDEN AIR IN-108-WIC CONDENSING UNITS 1 OF 2 |
| 12/19/2013 | FM / A | BROILER COOLER COMPRESSOR |
| 4/4/2014 | FM / A | Kitchen display system |
| 4/4/2014 | FM / A | Equipment Upgrade |
| 7/4/2014 | FM / A | Refrigerator Upgrade |
| 7/16/2014 | FM / A | Equipment AC Upgrade |
| 7/26/2014 | FM / A | Security Equip Install |
| 7/30/2014 | FM / A | REPLACED KITCHEN AC DRIER UNIT |
| 9/21/2014 | FM / A | KITCHEN DUCT REPLACEMENT |
| 10/10/2014 | FM / A | INSTALL PATIO DISPLAY |
| 10/10/2014 | FM / A | REPLACED COMPRESSOR KITCHEN A/C UNIT |
| 10/16/2014 | FM / A | INSTALL KITCHEN LIGHTS |

Totals 163000 ( 119 assets )


Store : 109 -
Asset A/C# : 164000 - Furniture & Fixtures

| | | |
|---|---|---|
| 4/8/2007 | FM / A | DRAPERIES- |
| 4/8/2007 | FM / A | FIBERSTONE TABLES (3) 42 (3- |
| 4/8/2007 | FM / A | FURNITURE & FIXTURES- |
| 4/8/2007 | FM / A | FURNITURE & FIXTURES- |
| 4/8/2007 | FM / A | FURNITURE & FIXTURES- |
| 4/8/2007 | FM / A | FURNITURE & FIXTURES- |
| 4/8/2007 | FM / A | FURNITURE & FIXTURES- |
| 4/8/2007 | FM / A | FURNITURE & FIXTURES- |
| 4/8/2007 | FM / A | FURNITURE & FIXTURES- |
| 4/8/2007 | FM / A | LIGHTING & FIXTURES- |
| 4/8/2007 | FM / A | PATIO CHAIRS - 12 HAMMERED TON- |
| 4/8/2007 | FM / A | SIGNAGE- |
| 4/8/2007 | FM / A | SIGNAGE- |
| 4/8/2007 | FM / A | STAINLESS STEEL & TRIM- |
| 4/8/2007 | FM / A | TABLE BASE AND CHAIRS- |
| 4/8/2007 | FM / A | WINDOW COVERINGS - INSIDE- |
| 9/14/2007 | FM / A | LCD TV (2)- |
| 10/17/2008 | FM / A | 17 VIEWSONIC MONITOR VA703B- |

| Date | Type | Description |
|---|---|---|
| 5/27/2009 | FM / A | ARTSTUDIO 1.0.1. ART WORK- |
| 5/27/2009 | FM / A | ARTSTUDIO 1.0.1. ART WORK- |
| 7/10/2009 | FM / A | TEQUILA TREE-MERESTONE   -. |
| 8/6/2009 | FM / A | WALL D�COR-MERESTONE   -. |
| 9/8/2009 | FM / A | DRAPES (3)-MOUNTAIN STAT-. |
| 11/30/2009 | FM / A | DRAPES (3)-MOUNTAIN STAT-. |
| 12/2/2009 | FM / A | MIRROR INSTALL-EVER READY GL-. |
| 1/10/2010 | FM / A | ART STUDIO CREDIT-MIRRORS/ART |
| 1/10/2010 | FM / A | MIRRORS/ART-ARTSTUDIO 1 0-. |
| 4/9/2010 | FM / A | OVERPAYMENT-EVER-READYGLASS-REFUOVERPMNT |
| 9/28/2010 | FM / A | BENCHES-CUSTOM TEAK  -. |
| 12/19/2010 | FM / A | RCLS EPIC DX-2000 CSK 0611- |
| 3/30/2011 | FM / A | BAR STOOLS & SIDE CHAIRS-GAR PRODUCTS -. |
| 4/4/2011 | FM / A | HOSTESS STAND CABLES-NEW HORIZONS -. |
| 5/17/2011 | FM / A | FORTINET FORTIWIFI FIREWALL-MTOWER CONSUL-. |
| 5/23/2011 | FM / A | FORTINET FORTIWIFI FIREWALL-MTOWER CONSUL-. |
| 6/22/2011 | FM / A | GUEST PASS PAGING SYSTEM REPLA-JTECH COMMUNI-. |
| 11/29/2011 | FM / A | MTOWER CONSUL-.-THERMAL PRINTER |
| 12/6/2011 | FM / A | TRAVIS MILLER-.-FLAT SCREEN TV |
| 2/12/2012 | FM / A | IMMEDIA AUDIO-.-42 LCD TV/MOUNTING |
| 10/4/2012 | FM / A | AVDB GROUP LC-.-PLASMA TV INSTALLATION - PATIO |
| 10/4/2012 | FM / A | MESA DISCOUNT-.-PLASMA TVS - PATIO |
| 6/18/2013 | FM / A | DELL-ALOHA SYSTEM |
| 2/18/2014 | FM / A | UPGRADE ALOHA POS |
| 4/2/2014 | FM / A | UPGRADE ALOHA POS TRAVEL |
| 4/4/2014 | FM / A | COMPUTER QSR ONYX |
| 4/7/2014 | FM / A | AUDIO EQUIPMENT |
| 4/8/2014 | FM / A | COMPUTER MONITOR CSK |
| 4/8/2014 | FM / A | COMPUTER MONITOR CSK |
| 8/15/2014 | FM / A | Ktichen Software |

Totals 164000  ( 48 assets )
Totals 109  ( 270 assets )

Store : 120 -
Asset A/C# : 162000 - Leasehold Improvements

| Date | Type | Description |
|---|---|---|
| 1/21/2008 | FM / A | DESIGN FEES- |
| 3/24/2008 | FM / A | LEGAL FEES- |
| 3/31/2008 | FM / A | LANDSCAPING- |
| 3/31/2008 | FM / A | SECURITY SYSTEM- |
| 5/12/2008 | FM / A | DESIGN FEES- |
| 5/12/2008 | FM / A | DESIGN FEES- |
| 5/12/2008 | FM / A | LANDSCAPING- |
| 6/10/2008 | FM / A | PATIO DECK FANS (3) INSTALL AN- |
| 8/11/2008 | FM / A | SECURITY SYS- |
| 9/16/2008 | FM / A | SECURITY SYS- |
| 10/19/2009 | FM / A | DECK REPAIRS-DJ WINTER CON-. |
| 11/6/2009 | FM / A | UNDERCABINET LIGHTING-PAYNE ELECTRI-. |
| 12/22/2009 | FM / A | CARPET-ROCKFORD BUSI-. |
| 4/8/2010 | FM / A | ROOF REPAIR- |
| 5/11/2010 | FM / A | TILE WORK-6TH STREET CO-. |
| 5/11/2010 | FM / A | TILE WORK-6TH STREET CO-. |
| 8/27/2010 | FM / A | PARKING GATES-ROUND ROCK IS-. |
| 6/22/2012 | FM / A | PRO-AIR ENGIN-.-AC UNIT - BLOWER MOTOR |
| 8/19/2013 | FM / A | WALL CONSTRUCTION |
| 9/13/2013 | FM / A | AC COMPRESSOR |
| 2/9/2015 | FM / A | New Metal Empergency Door |

Totals 162000  ( 21 assets )

Store : 120 -
Asset A/C# : 163000 - Restaurant Equipment

| Date | Type | Description |
|---|---|---|
| 8/13/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/13/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |

| | | |
|---|---|---|
| 8/13/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/14/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/14/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/14/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/14/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/14/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/14/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/14/2007 | FM / A | MDC WALLCO 40346990- |
| 8/20/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/20/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/21/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/22/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/24/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 8/31/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/4/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/12/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/13/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/13/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/14/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/14/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/22/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/22/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/26/2007 | FM / A | ETHERNET LAN BOX- |
| 9/26/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 9/28/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/4/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/5/2007 | FM / A | EQUIPMENT DELIVERY- |
| 10/9/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/9/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/11/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/11/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/11/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/16/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/16/2007 | FM / A | ROUTER- |
| 10/17/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/22/2007 | FM / A | VIEWSONIC MONITOR- |
| 10/25/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/25/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 10/29/2007 | FM / A | COMPUTER- |
| 10/29/2007 | FM / A | SHELVING & WARMER- |
| 10/29/2007 | FM / A | SLICER/MICROWAVE/FRY FILTER $1- |
| 10/31/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 11/1/2007 | FM / A | EQUIPMENT- |
| 11/1/2007 | FM / A | YARDIAC PATIO HEATERS- |
| 11/3/2007 | FM / A | INSTALL POS- |
| 11/5/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 11/6/2007 | FM / A | SOFTWARE- |
| 11/12/2007 | FM / A | FURNITURE- |

| 12/2/2007 | FM / A | TV INSTALL- |
|---|---|---|
| 12/3/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 12/3/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 12/3/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 12/3/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 12/6/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 12/6/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 12/6/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 12/6/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 12/6/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 12/6/2007 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 2/5/2008 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 2/15/2008 | FM / A | DESIGN SPECS- |
| 2/15/2008 | FM / A | INITIAL SETUP COSTS - AVERY RA- |
| 2/15/2008 | FM / A | RECLASS- |
| 5/12/2008 | FM / A | 3 TABLES- |
| 5/12/2008 | FM / A | ART WORK- |
| 5/12/2008 | FM / A | LONE STAR ABC REFUND O/P- |
| 5/12/2008 | FM / A | RCLS OVER PAY. AVERY RANCH 110- |
| 5/12/2008 | FM / A | WALNUT MENU HOLDERS/RECEPTION- |
| 6/29/2008 | FM / A | RCLS J PERTUIT V74553 1308- |
| 6/29/2008 | FM / A | RCLS J PERTUIT V74766 1308- |
| 7/24/2008 | FM / A | TREE MOBILE- |
| 7/31/2008 | FM / A | TD INDUSTRIES-.- |
| 12/30/2010 | FM / A | UNDERCOUNTER REFRIGERATOR-LONE STAR RES-. |
| 12/29/2011 | FM / A | ECOLAB INSTIT-.-CLEANING CADDY |
| 1/9/2012 | FM / A | LAWTON COMMER-.-INSTALL HAND SINK IN DISH AREA |
| 1/26/2012 | FM / A | PRO-AIR ENGIN-.-GREASE HOOD EXHAUST FAN ASSEMB |
| 4/8/2012 | FM / A | RCLS WASS 9402268714 1012-FOOD PROCESSOR W/ BOWL ATT |
| 9/14/2012 | FM / A | PRO-AIR ENGIN-.-AC MAKE-UP COMPRESSOR |
| 4/8/2013 | FM / A | RCLS CSK EPIC 0913- |
| 5/28/2013 | FM / A | SUNRAY CONTRA-.-SALAMANDER AND SHELVING |
| 8/25/2013 | FM / A | FRYER |
| 12/18/2014 | FM / A | EVAPORATOR REPLACEMENT |
| 4/15/2015 | FM / A | Replaced Booster Heater in Disch Machine |

Totals 163000 ( 100 assets )


Store : 120 -
Asset A/C# : 164000 - Furniture & Fixtures

| 9/25/2007 | FM / A | CABINETS- |
|---|---|---|
| 10/12/2007 | FM / A | TEA LIGHT SETS- |
| 10/25/2007 | FM / A | TABLE AND BOOTH- |
| 11/20/2007 | FM / A | TEA LIGHT SETS- |
| 12/12/2007 | FM / A | HEAT LAMP- |
| 12/18/2007 | FM / A | TEA LIGHT SETS- |
| 12/19/2010 | FM / A | RCLS EPIC DX-2000 CSK 0611- |
| 7/12/2011 | FM / A | HOT WATER HEATER-LAWTON COMMER-. |
| 9/14/2011 | FM / A | HOSTESS CABLE-NEW HORIZONS -. |
| 11/29/2011 | FM / A | MTOWER CONSUL-.-THERMAL PRINTER |
| 1/13/2012 | FM / A | AMERICAN EXPR-.-FORTINET WIFI 60C |
| 7/1/2012 | FM / A | F&B MANAGEMEN-.-EXPERT HOSPITALITY CONTROLLER |
| 7/1/2012 | FM / A | MTOWER CONSUL-.-DELL VOSTRO |
| 8/13/2013 | FM / A | RECOVER BOOTH |
| 4/8/2014 | FM / A | COMPUTER - OPTIPLEX WORK STATION |

Totals 164000 ( 15 assets )
Totals 120 ( 136 assets )


Store : 122 -
Asset A/C# : 162000 - Leasehold Improvements

| 11/1/2011 | FM / A | ARCHITECT FEE |
|---|---|---|
| 4/1/2012 | FM / A | ARCHITECT FEE |

| | | |
|---|---|---|
| 11/30/2012 | FM / A | CITY OF PHOEN-.-LICENSES AND PERMITS |
| 1/2/2013 | FM / A | ARCHITECT FEE |
| 2/1/2013 | FM / A | ARCHITECT FEE |
| 4/8/2013 | FM / A | ADEQ      -.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | ADOBE AWNING -.-WINDOW SHADES |
| 4/8/2013 | FM / A | BERRY & DAMOR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | BERRY & DAMOR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | BERRY & DAMOR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | BERRY & DAMOR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | BERRY & DAMOR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | BERRY & DAMORE-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CARTER M SCHI-122-PROJECT SUPERVISION |
| 4/8/2013 | FM / A | CHART INC   -.-CO2 CABINET |
| 4/8/2013 | FM / A | CHRISTOFFERSO-.-GENERAL CONTRACTOR |
| 4/8/2013 | FM / A | CHRISTOFFERSO-.-GENERAL CONTRACTOR |
| 4/8/2013 | FM / A | CHRISTOFFERSO-.-GENERAL CONTRACTOR |
| 4/8/2013 | FM / A | CHRISTOFFERSO-.-GENERAL CONTRACTOR |
| 4/8/2013 | FM / A | CHRISTOFFERSO-.-GENERAL CONTRACTOR |
| 4/8/2013 | FM / A | CHRISTY SIGNS-.-SIGNAGE |
| 4/8/2013 | FM / A | CHRISTY SIGNS-.-SIGNAGE |
| 4/8/2013 | FM / A | CITY OF PHOEN-.-BUILDING PERMIT |
| 4/8/2013 | FM / A | CITY OF PHOEN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | CITY OF PHOEN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | CUDDY & MCCAR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCAR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCAR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCAR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCAR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCAR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCAR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCAR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCAR-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCAR-LEGAL-LEGAL COUNSEL |
| 4/8/2013 | FM / A | CUDDY & MCCARTY-LEGAL COUNSEL |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |

| | | |
|---|---|---|
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-.-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-122-ARCHITECTURE |
| 4/8/2013 | FM / A | DPA ARCHITECT-ARCHITECTURE |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | EPSILON ENGIN-.-LICENSES AND PERMITS |
| 4/8/2013 | FM / A | HIGH ROAD CUS-.-BACK BAR GLASS SHELF |
| 4/8/2013 | FM / A | LANDMARK KIT-KITCHEN DESIGN |
| 4/8/2013 | FM / A | LANDMARK KITC-.-KITCHEN DESIGN |
| 4/8/2013 | FM / A | LANDMARK KITC-.-KITCHEN DESIGN |
| 4/8/2013 | FM / A | LANDMARK KITC-.-KITCHEN DESIGN |
| 4/8/2013 | FM / A | LANDMARK KITC-.-KITCHEN DESIGN |
| 4/8/2013 | FM / A | LEIBOWITZ SOL-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | LEIBOWITZ SOL-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | LEWKOWITZ LAW-.-LEGAL COUNSEL |
| 4/8/2013 | FM / A | LODGING CONCE-.-SEATING |
| 4/8/2013 | FM / A | NEW HORIZONS -.-CABLING |
| 4/8/2013 | FM / A | NEW HORIZONS -.-PHONE SYSTEM |
| 4/8/2013 | FM / A | SHIP SMART BAR TOP (SHIPPING)-BAR TOP |
| 4/8/2013 | FM / A | STANLEY CONVE-.-SECURITY SYSTEM |
| 4/8/2013 | FM / A | TAB TECHNOLOG-.- |
| 4/8/2013 | FM / A | TWENTY 1 FIVE-.-BAR TOP |
| 4/8/2013 | FM / A | US FOODSERVIC-.-TOWEL DISPENSER |
| 4/10/2013 | FM / A | CHRISTOFFERSO-.-GENERAL CONTRACTOR |
| 4/10/2013 | FM / A | TAB TECHNOLOG-.-DUCT SMOKE DETECTOR |
| 4/16/2013 | FM / A | NEW HORIZONS -122-CABLING |
| 4/19/2013 | FM / A | EM MORRIS   -.-STEEL SHELVING |
| 4/20/2013 | FM / A | MTOWER CONSUL-.-IT INSTALLATION |
| 4/23/2013 | FM / A | STANLEY CONVE-.-SECURITY SYSTEM |
| 4/26/2013 | FM / A | HIGH ROAD CUS-.-BACK BAR GLASS SHELVES |
| 5/2/2013 | FM / A | CARTER M SCHI-.-PROJECT SUPERVISION |
| 5/9/2013 | FM / A | CHRISTOFFERSO-.-GENERAL CONTRACTOR |
| 5/20/2013 | FM / A | CHRISTOFFERSO-.-GENERAL CONTRACTOR |
| 6/4/2013 | FM / A | EM MORRIS   -.-STEEL SHELVING |
| 6/10/2013 | FM / A | CHRISTOFFERSO-.-GENERAL CONTRACTOR |
| 6/21/2013 | FM / A | WOOD BEAM PROTECTION |
| 9/5/2013 | FM / A | ARCHITECT FEE |
| 10/3/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 12/15/2013 | FM / A | DRAWINGS |
| 1/1/2014 | FM / A | UPGRADE SIGN |
| 7/24/2014 | FM / A | Building Upgrade |

Totals 162000  ( 119 assets )


Store : 122 -
Asset A/C# : 163000 - Restaurant Equipment
| | | |
|---|---|---|
| 3/26/2013 | FM / A | SHELVING UNIT |
| 3/27/2013 | FM / A | ICE MAKER; COOLERS; KITCHEN ITEMS |
| 4/1/2013 | FM / A | KITCHEN REFRIG |
| 4/8/2013 | FM / A | ANALOX SENSOR TECHNO HUNTINGTO- |

| 4/8/2013 | FM / A | DOUBLE LINE S-.-EQUIPMENT - KITCHEN |
|---|---|---|
| 4/8/2013 | FM / A | DOUBLE LINE S-.-EQUIPMENT - KITCHEN |
| 4/8/2013 | FM / A | ECOLAB INSTIT-.-EQUIPMENT - KITCHEN |
| 4/8/2013 | FM / A | F&B MANAGEMEN-.-ALOHA SERVER |
| 4/8/2013 | FM / A | KOROSEAL PRODUCTS A  FAIRLAWN- |
| 4/8/2013 | FM / A | WASSERSTROM C-.-EQUIPMENT - KITCHEN |
| 4/8/2013 | FM / A | WASSERSTROM C-.-EQUIPMENT - KITCHEN |
| 4/8/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/8/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/8/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/8/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/8/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/8/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/9/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/9/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/9/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/11/2013 | FM / A | EM MORRIS    -.-STEEL SHELVING |
| 4/11/2013 | FM / A | WASSERSTROM C-.-SMALLWARES |
| 4/12/2013 | FM / A | DOUBLE LINE S-.-EQUIPMENT - KITCHEN |
| 4/12/2013 | FM / A | DOUBLE LINE S-.-EQUIPMENT - KITCHEN |
| 4/12/2013 | FM / A | WASSERSTROM C-SMALLWARES |
| 4/12/2013 | FM / A | WASSERSTROM C-SMALLWARES |
| 4/12/2013 | FM / A | WASSERSTROM C-SMALLWARES |
| 4/16/2013 | FM / A | WASSERSTROM C-SMALLWARES |
| 4/19/2013 | FM / A | WET WASTE BOX |
| 4/25/2013 | FM / A | F&B MANAGEMEN-.-POS TERMINALS |
| 4/26/2013 | FM / A | DRAIN ON DRAIN PAN |
| 5/2/2013 | FM / A | COMPEAT RESTA-.-ODL LICENSE AND HOSTING FEE |
| 7/1/2013 | FM / A | COOLER |
| 9/15/2014 | FM / A | REPLACE CO2 DETECTION SYSTEM |
| 10/7/2014 | FM / A | UPGRADE ROOF & 1ST FLOOR A/C UNIT |
| 10/14/2014 | FM / A | REPLACED BROILER |
| 12/14/2014 | FM / A | VITA PREP BLENDER |
| 12/14/2014 | FM / A | VITA PREP BLENDER TAX |

Totals 163000  ( 38 assets )


Store  :  122 -

Asset A/C#  :  164000 - Furniture & Fixtures

| 4/8/2013 | FM / A | 2 PRONG OUTLE-.-ARTWORK & MIRRORS |
|---|---|---|
| 4/8/2013 | FM / A | ADOBE AWNING -.-WINDOW SHADES |
| 4/8/2013 | FM / A | AMERICAN EXPR-.-SAFE |
| 4/8/2013 | FM / A | AMERICAN EXPR-CDW DIRECT VERNO-ACER TABLETS |
| 4/8/2013 | FM / A | AMERICAN EXPR-CDW DIRECT VERNO-FORTINET WIFI |
| 4/8/2013 | FM / A | AMERICAN EXPR-VIRTUAL GRAFFITI-FORTINET FORTIRACK |
| 4/8/2013 | FM / A | AVDB GROUP LC-.-AUDIO VISUAL |
| 4/8/2013 | FM / A | AVDB GROUP LC-122-AUDIO VISUAL |
| 4/8/2013 | FM / A | CDW DIRECT VERNON HI VERNON HI-FILESHARE SERVER |
| 4/8/2013 | FM / A | CRATERS & FRE-.-ANTIQUE GAS PUMP |
| 4/8/2013 | FM / A | DELL BUSINESS-.-ALOHA SERVER |
| 4/8/2013 | FM / A | DELL BUSINESS-.-BATTERY BACKUP |
| 4/8/2013 | FM / A | DELL BUSINESS-.-KITCHEN MONITORS |
| 4/8/2013 | FM / A | DELL BUSINESS-.-MANAGER WORKSTATION |
| 4/8/2013 | FM / A | DELL BUSINESS-.-NETWORK SWITCHES |
| 4/8/2013 | FM / A | DELL BUSINESS-.-NETWORK SWITCHES |
| 4/8/2013 | FM / A | DELL BUSINESS-.-NETWORK SWITCHES |
| 4/8/2013 | FM / A | DELL BUSINESS-.-NETWORK SWITCHES |
| 4/8/2013 | FM / A | DELL BUSINESS-.-OFFICE PRINTER |
| 4/8/2013 | FM / A | DELL-ALOHA SYSTEM |
| 4/8/2013 | FM / A | FOUR HANDS   -.-DINING ROOM CHAIRS |
| 4/8/2013 | FM / A | GAR PRODUCTS -.-SEATING |
| 4/8/2013 | FM / A | GAR PRODUCTS -.-SEATING |
| 4/8/2013 | FM / A | GAR PRODUCTS -.-SEATING |

| | | |
|---|---|---|
| 4/8/2013 | FM / A | GAR PRODUCTS -.-SEATING |
| 4/8/2013 | FM / A | GOLDLINE UPHO-.-SEATING |
| 4/8/2013 | FM / A | GOLDLINE UPHO-.-SEATING |
| 4/8/2013 | FM / A | HBF      -.-SEATING |
| 4/8/2013 | FM / A | HBF      -.-SEATING |
| 4/8/2013 | FM / A | HBF      -.-SEATING |
| 4/8/2013 | FM / A | HIGH ROAD CUS-.-SEATING |
| 4/8/2013 | FM / A | HIGH ROAD CUS-.-SEATING |
| 4/8/2013 | FM / A | HIGH ROAD CUS-.-SEATING |
| 4/8/2013 | FM / A | LODGING CONCE-.-SEATING |
| 4/8/2013 | FM / A | MAHARAM SALE-.-SEATING |
| 4/8/2013 | FM / A | MAHARAM SALE-.-SEATING |
| 4/8/2013 | FM / A | MAHARAM SALE-.-SEATING |
| 4/8/2013 | FM / A | PROFESSIONAL -.-LIVING WALL TROPICALS |
| 4/8/2013 | FM / A | PROFESSIONAL -.-LIVING WALL TROPICALS |
| 4/8/2013 | FM / A | PROFESSIONAL -.-LIVING WALL TROPICALS |
| 4/8/2013 | FM / A | STEVEN A MICH-.-CHAIRS |
| 4/8/2013 | FM / A | TEKSERVEPOS  -.-FOH RECEIPT PRINTERS |
| 4/8/2013 | FM / A | TEKSERVEPOS  -.-FOH RECEIPT PRINTERS |
| 4/8/2013 | FM / A | THE GAS PUMP -.-ANTIQUE GAS PUMP |
| 4/8/2013 | FM / A | THE GAS PUMP -GAS DEPOSIT-ANTIQUE GAS PUMP |
| 4/8/2013 | FM / A | TWENTY 1 FIVE-122-BAR TOP |
| 4/10/2013 | FM / A | MUZAK - CHARL-.-MUZAK INSTALLATION |
| 4/10/2013 | FM / A | NEW HORIZONS -.-PHONE SYSTEM |
| 4/10/2013 | FM / A | STEVEN A MICH-.-CHAIRS |
| 4/15/2013 | FM / A | GAR PRODUCTS -.-SEATING |
| 4/16/2013 | FM / A | POS SYSTEM |
| 4/17/2013 | FM / A | JACK REED   -.-TABLES - FUN BAR |
| 4/19/2013 | FM / A | MAYER-PAETZ F-.-SEATING |
| 4/22/2013 | FM / A | HIGH ROAD CUS-.-SEATING |
| 4/24/2013 | FM / A | 5 TIER LOCKER |
| 4/25/2013 | FM / A | 2 PRONG OUTLE-.-ARTWORK & MIRRORS |
| 4/29/2013 | FM / A | TEKSERVEPOS  -.-FOH RECEIPT PRINTERS |
| 6/1/2013 | FM / A | CRATEANDBARREL WEB 0 NAPERVILL-CHAIRS |
| 6/10/2013 | FM / A | GAR PRODUCTS -.-SEATING |
| 6/12/2013 | FM / A | WASSERSTROM-TACO HOLDER SLIM |
| 6/19/2013 | FM / A | QSR COMPUTER |

Totals 164000 ( 61 assets )

Totals 122 ( 218 assets )


Store : 301 -

Asset A/C# : 162000 - Leasehold Improvements

| | | |
|---|---|---|
| 11/18/2013 | FM / A | ARCHITECT FEE |
| 11/18/2013 | FM / A | ARCHITECT FEE |
| 11/18/2013 | FM / A | ARCHITECT FEE |
| 11/18/2013 | FM / A | ARCHITECT FEE |
| 11/18/2013 | FM / A | ARCHITECT FEE |
| 11/18/2013 | FM / A | ARCHITECT FEE |
| 11/18/2013 | FM / A | ARCHITECT FEE |
| 11/18/2013 | FM / A | ARCHITECT FEE |
| 11/18/2013 | FM / A | ARCHITECT FEES |
| 11/18/2013 | FM / A | ARCHITECT FEES |
| 11/18/2013 | FM / A | ARCHITECT FEES |
| 11/18/2013 | FM / A | ARCHITECT FEES |
| 11/18/2013 | FM / A | ARCHITECT FEES |
| 11/18/2013 | FM / A | ARCHITECT FEES |
| 11/18/2013 | FM / A | BUILDERS RISK INSURANCE |
| 11/18/2013 | FM / A | BUILDING PERMIT |
| 11/18/2013 | FM / A | BUILDING PERMIT |
| 11/18/2013 | FM / A | CHRISTY SIGNAGE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |

| 11/18/2013 | FM / A | CONSTRUCTION FEE |
|---|---|---|
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CONSTRUCTION FEE |
| 11/18/2013 | FM / A | CUSTOM LIGHTING |
| 11/18/2013 | FM / A | DECORATIVE WALL PAINTING |
| 11/18/2013 | FM / A | DEMO PERMIT |
| 11/18/2013 | FM / A | DESIGN CONSULTANT |
| 11/18/2013 | FM / A | DESIGN CONSULTANT |
| 11/18/2013 | FM / A | DESIGN CONSULTANT |
| 11/18/2013 | FM / A | DESIGN CONSULTANT |
| 11/18/2013 | FM / A | DESIGN DEVELOPMENT |
| 11/18/2013 | FM / A | DRAWINGS REFUND |
| 11/18/2013 | FM / A | ELECTRICAL |
| 11/18/2013 | FM / A | FIRE SPRINLKER DESIGN |
| 11/18/2013 | FM / A | FOREIGN CURRENCY FEE |
| 11/18/2013 | FM / A | GEORGE SHAFER-. |
| 11/18/2013 | FM / A | GRAFFITI |
| 11/18/2013 | FM / A | INTERIOR CONSTRUCTION |
| 11/18/2013 | FM / A | INTERIOR CONSTRUCTION |
| 11/18/2013 | FM / A | INTERIOR CONSTRUCTION DOCUMENTS |
| 11/18/2013 | FM / A | LEASHOLD IMPROVEMENTS |
| 11/18/2013 | FM / A | LEASHOLD IMPROVEMENTS |
| 11/18/2013 | FM / A | MAKEUP AIR UNIT |
| 11/18/2013 | FM / A | PERMIT FEES |
| 11/18/2013 | FM / A | PERMIT FEES |
| 11/18/2013 | FM / A | PLANNING AND DEVELOPMENT |
| 11/18/2013 | FM / A | PLASTER RADIUS WALL |
| 11/18/2013 | FM / A | PROF SERVICES |
| 11/18/2013 | FM / A | SCHEMATIC DESIGN |
| 11/18/2013 | FM / A | SECURITY SYSTEM |
| 11/18/2013 | FM / A | SIGNAGE |
| 11/18/2013 | FM / A | SIGNAGE |

Totals 162000 ( 59 assets )


Store : 301 -
Asset A/C# : 163000 - Restaurant Equipment

| 11/18/2013 | FM / A | BAR STOOLS |
|---|---|---|
| 11/18/2013 | FM / A | BUN RACK |
| 11/18/2013 | FM / A | COMBO PACK |
| 11/18/2013 | FM / A | CUTTING BOARD |
| 11/18/2013 | FM / A | FLATWARE |
| 11/18/2013 | FM / A | FLATWARE |
| 11/18/2013 | FM / A | FLATWARE |
| 11/18/2013 | FM / A | FLATWARE; KITCHEN ITEMS |
| 11/18/2013 | FM / A | GLASS JAR |
| 11/18/2013 | FM / A | GLASS RACK |
| 11/18/2013 | FM / A | GLASS; HI BALL |
| 11/18/2013 | FM / A | GLOVES |
| 11/18/2013 | FM / A | HOLDER |
| 11/18/2013 | FM / A | INSTALLATION KITCHEN EQUIP |
| 11/18/2013 | FM / A | INSTALLATION KITCHEN EQUIP |
| 11/18/2013 | FM / A | IRON TABLES |
| 11/18/2013 | FM / A | IRON TABLES |
| 11/18/2013 | FM / A | KID CUPS |
| 11/18/2013 | FM / A | KITCHEN BOWLS |

| | | |
|---|---|---|
| 11/18/2013 | FM / A | KITCHEN DESIGN |
| 11/18/2013 | FM / A | KITCHEN EQUIPMENT |
| 11/18/2013 | FM / A | KITCHEN EQUIPMENT |
| 11/18/2013 | FM / A | KITCHEN EQUIPMENT |
| 11/18/2013 | FM / A | KITCHEN REFRIG SYSTEM |
| 11/18/2013 | FM / A | KITCHEN REFRIG SYSTEM |
| 11/18/2013 | FM / A | KITCHEN SMALLWARE |
| 11/18/2013 | FM / A | KITCHEN SMALLWARE |
| 11/18/2013 | FM / A | KNIFE SET |
| 11/18/2013 | FM / A | KNIFE SET |
| 11/18/2013 | FM / A | KOROSEAL PRODUCT |
| 11/18/2013 | FM / A | KOROSEAL PRODUCT |
| 11/18/2013 | FM / A | METAL CONTAINER |
| 11/18/2013 | FM / A | METAL CONTAINER |
| 11/18/2013 | FM / A | MISC KITCHEN TOOLS; SUPPLIES |
| 11/18/2013 | FM / A | MIXER |
| 11/18/2013 | FM / A | MIXER |
| 11/18/2013 | FM / A | MIXER |
| 11/18/2013 | FM / A | MIXING BOWL |
| 11/18/2013 | FM / A | MIXING BOWL |
| 11/18/2013 | FM / A | PANS |
| 11/18/2013 | FM / A | SAFES |
| 11/18/2013 | FM / A | SAFETY GLOVES |
| 11/18/2013 | FM / A | SAFETY GLOVES |
| 11/18/2013 | FM / A | SERVICE TRAYS |
| 11/18/2013 | FM / A | SHAKERS |
| 11/18/2013 | FM / A | SHELVING UNIT |
| 11/18/2013 | FM / A | SHELVING UNIT |
| 11/18/2013 | FM / A | SHOOTER TRAY |
| 11/18/2013 | FM / A | SLICING PLATE |
| 11/18/2013 | FM / A | SLICING PLATE |
| 11/18/2013 | FM / A | SMALLWARE |
| 11/18/2013 | FM / A | SMALLWARE |
| 11/18/2013 | FM / A | SMALLWARE |
| 11/18/2013 | FM / A | SMALLWARE |
| 11/18/2013 | FM / A | SMALLWARE |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SMALLWARES |
| 11/18/2013 | FM / A | SPEED RACK |
| 11/18/2013 | FM / A | SS SHELF |
| 11/18/2013 | FM / A | STABLE BASES |
| 11/18/2013 | FM / A | TABLE |
| 11/18/2013 | FM / A | TEQUILA FLIGHT HOLDERS |
| 11/18/2013 | FM / A | VELETS |
| 11/18/2013 | FM / A | VISA LATE FEE |
| 11/18/2013 | FM / A | WINE TASTER |
| 11/18/2013 | FM / A | WIRE SHELF |
| 1/2/2014 | FM / A | INSTALLATION PREP TABLE |
| 2/17/2014 | FM / A | INSTALLATION STEAM TABLE |
| 2/28/2014 | FM / A | DOUTH DIVIDER ROUNDER |
| 9/25/2014 | FM / A | INSTALL CABLE 2 TV'S |
| 10/1/2014 | FM / A | Crestron AM-100 AirMedia Presentation Gateway |

Totals 163000  ( 81 assets )

Store : 301 -

Asset A/C# : 164000 - Furniture & Fixtures

| | | |
|---|---|---|
| 11/18/2013 | FM / A | 14 BAR STOOLS |
| 11/18/2013 | FM / A | 14 BAR STOOLS |
| 11/18/2013 | FM / A | 15 CHAIRS |
| 11/18/2013 | FM / A | 15 CHAIRS |
| 11/18/2013 | FM / A | 18 BAR STOOLS |
| 11/18/2013 | FM / A | 19 TABLE TOPS |
| 11/18/2013 | FM / A | 2 IRON TABLES |
| 11/18/2013 | FM / A | 28 TABLE TOPS |
| 11/18/2013 | FM / A | 3 POS PRINTERS |
| 11/18/2013 | FM / A | 40 WOOD BARSTOOLS |
| 11/18/2013 | FM / A | 5 POS PRINTERS |
| 11/18/2013 | FM / A | 5 TABLE TOPS |
| 11/18/2013 | FM / A | ALOHA SYSTEM |
| 11/18/2013 | FM / A | AUDIO VIDEO EQUIPMENT |
| 11/18/2013 | FM / A | BAR SHAKERS |
| 11/18/2013 | FM / A | BENCH PEWS; BOOTHS |
| 11/18/2013 | FM / A | BENCH PEWS; BOOTHS |
| 11/18/2013 | FM / A | CDW DIRECT |
| 11/18/2013 | FM / A | CDW DIRECT |
| 11/18/2013 | FM / A | CHAIRS; BOOTH VINYL |
| 11/18/2013 | FM / A | COMPUTERS |
| 11/18/2013 | FM / A | COMPUTERS |
| 11/18/2013 | FM / A | CORP DEPOSIT DAVID WETTA |
| 11/18/2013 | FM / A | CUSTOM LIGHTS |
| 11/18/2013 | FM / A | CUSTOM LIGHTS |
| 11/18/2013 | FM / A | DELL PRINTER |
| 11/18/2013 | FM / A | D�COR |
| 11/18/2013 | FM / A | FS PLANS FOR PERMIT SUBMITTAL |
| 11/18/2013 | FM / A | FURNITURE |
| 11/18/2013 | FM / A | HI CHAIR |
| 11/18/2013 | FM / A | IT POS SYSTEM |
| 11/18/2013 | FM / A | IT POS SYSTEM |
| 11/18/2013 | FM / A | IT POS SYSTEM |
| 11/18/2013 | FM / A | IT SETUP |
| 11/18/2013 | FM / A | JACKS LAPTOP |
| 11/18/2013 | FM / A | LEGAL SERVICES |
| 11/18/2013 | FM / A | LEGAL SERVICES |
| 11/18/2013 | FM / A | LEGAL SERVICES |
| 11/18/2013 | FM / A | LEGAL SERVICES |
| 11/18/2013 | FM / A | LEGAL SERVICES |
| 11/18/2013 | FM / A | LEGAL SERVICES |
| 11/18/2013 | FM / A | LIGHTING FIXTURES |
| 11/18/2013 | FM / A | LIGHTING FIXTURES |
| 11/18/2013 | FM / A | LIGHTING FIXTURES |
| 11/18/2013 | FM / A | LIGHTING FIXTURES |
| 11/18/2013 | FM / A | LIGHTING FIXTURES |
| 11/18/2013 | FM / A | LIGHTING FIXTURES |
| 11/18/2013 | FM / A | MENU BOARDS |
| 11/18/2013 | FM / A | METAL TREE DESIGN |
| 11/18/2013 | FM / A | MOON VALLEY NURSERY |
| 11/18/2013 | FM / A | MUZAK |
| 11/18/2013 | FM / A | MY SISTERS ATTIC FF&E |
| 11/18/2013 | FM / A | PATIO HEATERS |
| 11/18/2013 | FM / A | PATIO OVERHANG |
| 11/18/2013 | FM / A | PATIO SHADE; BAR |
| 11/18/2013 | FM / A | PATIO SHADE; BAR |
| 11/18/2013 | FM / A | PHONES |
| 11/18/2013 | FM / A | POS SYSTEM |
| 11/18/2013 | FM / A | PRINTERS |

| | | |
|---|---|---|
| 11/18/2013 | FM / A | PRINTERS |
| 11/18/2013 | FM / A | PROFESSIONAL FEES |
| 11/18/2013 | FM / A | PROFESSIONAL SERV ZONING |
| 11/18/2013 | FM / A | PROFESSIONAL SERV-AZ CORP COMM |
| 11/18/2013 | FM / A | SCHEMATIC DESIGN |
| 11/18/2013 | FM / A | SCHEMATIC DESIGN |
| 11/18/2013 | FM / A | SCHEMATIC DESIGN |
| 11/18/2013 | FM / A | SCHEMATIC DESIGN |
| 11/18/2013 | FM / A | SCHEMATIC DESIGN |
| 11/18/2013 | FM / A | STORE SUPPLIES |
| 11/18/2013 | FM / A | TAPESTRY FRAME |
| 11/18/2013 | FM / A | TEQUILA FLIGHT HOLDERS |
| 11/18/2013 | FM / A | TRAFFIC ANALYSIS |
| 2/3/2014 | FM / A | INSTALLATION ALOHA SET UP |

Totals 164000  ( 73 assets )

Totals 301  ( 213 assets )

Store : 901 -
Asset A/C# : 162000 - Leasehold Improvements

| | | |
|---|---|---|
| 7/1/2008 | FM / A | FY08 PAJE ADJ- |
| 7/11/2009 | FM / A | PA SYSTEM-BBA MANAGEMEN-. |
| 9/10/2012 | FM / A | REDRAFT LANDLORD LEASE |
| 4/8/2013 | FM / A | HILLTOP SCOTT-NEW COUNTERTOP |

Totals 162000  ( 4 assets )

Store : 901 -
Asset A/C# : 163000 - Restaurant Equipment

| | | |
|---|---|---|
| 4/8/2007 | FM / A | FIREPROOF CABINET 4 DRAWER- |
| 4/8/2007 | FM / A | FOOD TRAK- |
| 4/8/2007 | FM / A | FOOD TRAK- |
| 4/8/2007 | FM / A | FOOD TRAK- |
| 7/5/2007 | FM / A | CREDIT- |
| 7/1/2008 | FM / A | FY08 PAJE ADJ- |
| 11/1/2012 | FM / A | AMERICAN EXPR-SWITCH CONSIGNME-GYRO MACHINE GRILL |
| 4/1/2013 | FM / A | DELL BUSINESS-.-LAPTOP |
| 4/8/2013 | FM / A | DELL BUSINESS-.-LAPTOP |
| 8/8/2013 | FM / A | SOFTWARE- |
| 1/1/2014 | FM / A | KITCHEN EQUIPMENT |
| 12/1/2014 | FM / A | COZOG Group Heater Proofer Cabinet |

Totals 163000  ( 12 assets )

Store : 901 -
Asset A/C# : 164000 - Furniture & Fixtures

| | | |
|---|---|---|
| 3/6/2008 | FM / A | APPLE CINEMA 20- |
| 3/6/2008 | FM / A | APPLE COMPUTER- |
| 3/6/2008 | FM / A | APPLE DESIGN PREM- |
| 7/1/2008 | FM / A | FY08 PAJE ADJ- |
| 5/18/2009 | FM / A | PHONE SYSETM - NEW CORP OFFICE- |
| 6/10/2009 | FM / A | MERESTONE - ART WORK- |
| 6/29/2009 | FM / A | PHONE SYSTEM-NEW HORIZONS -. |
| 10/13/2009 | FM / A | 8 CONFERENCE CHAIRS-THE MODULAR &-. |
| 10/14/2009 | FM / A | DELL SERVER-MTOWER CONSUL-. |
| 10/14/2009 | FM / A | MICROSOFT UPDATE-MTOWER CONSUL-. |
| 10/16/2009 | FM / A | 2 EXEC CHAIRS-THE MODULAR &-EXECUTIVE CHAIRS |
| 10/16/2009 | FM / A | FRAMING-JEANNE BROCK -. |
| 10/18/2009 | FM / A | OFFICE FURNITURE-TRADE CORP OFF FURN INSTALL 04 |
| 11/14/2009 | FM / A | SQL UPDATE-MTOWER CONSUL-. |
| 11/15/2009 | FM / A | OFFICE 2007-MTOWER CONSUL-. |
| 11/24/2009 | FM / A | FOOD-TRAK INSTALL-SYSTEM CONCEP-. |
| 12/10/2009 | FM / A | FOOD-TRAK INSTALL-SYSTEM CONCEP-. |

| Date | Type | Description |
|---|---|---|
| 12/14/2009 | FM / A | ALOHA UPGRADE-F&B MANAGEMEN-. |
| 12/14/2009 | FM / A | ALOHA UPGRADE-F&B MANAGEMEN-. |
| 1/1/2010 | FM / A | ALOHA UPGRADE-F&B MANAGEMEN-. |
| 3/16/2010 | FM / A | NOTEBOOK COMPUTER-MTOWER CONSUL-. |
| 6/14/2010 | FM / A | DELL VOSTRO-MTOWER CONSUL-. |
| 7/6/2010 | FM / A | LAPTOP-MTOWER CONSUL-. |
| 9/26/2010 | FM / A | COMPUTERS-ALLOC MGR WRKSTN 0311 |
| 11/3/2010 | FM / A | FOODTRAK UPGRADE-SYSTEM CONCEP-. |
| 4/3/2011 | FM / A | LAPTOP-MTOWER CONSUL-. |
| 4/19/2011 | FM / A | COMPUTER-MTOWER CONSUL-. |
| 4/22/2011 | FM / A | CABLE SPLIT-NEW HORIZONS -. |
| 4/28/2011 | FM / A | COMPUTER EQUIPMENT-F&B MANAGEMEN-. |
| 5/17/2011 | FM / A | DELL VOSTRO COMPUTER-MTOWER CONSUL-. |
| 5/17/2011 | FM / A | FORTINET FORTIWIFI FIREWALL-MTOWER CONSUL-. |
| 5/23/2011 | FM / A | FORTINET FORTIWIFI FIREWALL-MTOWER CONSUL-. |
| 6/4/2011 | FM / A | LENOVO LAPTOP-MTOWER CONSUL-. |
| 6/15/2011 | FM / A | CORPERATE WEBSITE-SPARK DESIGN -. |
| 7/3/2011 | FM / A | CORPORATE WEBSITE DESIGN-RCLS SPARK DESIGN 13359 1311 |
| 7/3/2011 | FM / A | CORPORATE WEBSITE DESIGN-RCLS SPARK WEBSITE 1311 |
| 7/21/2011 | FM / A | APC SMART-UPS-INSIGHT DIREC-. |
| 7/22/2011 | FM / A | EMPLOYEE TRAINING AND FEEDBACK-INSIGHT DIREC-. |
| 1/15/2012 | FM / A | MTOWER CONSUL-.-COMPUTER EQUIPMENT |
| 3/19/2012 | FM / A | MTOWER CONSUL-.-IT MANAGER DESKTOP |
| 4/2/2012 | FM / A | INSIGHT DIREC-.-OFFICE 2010 IT MANAGER COMPUTE |
| 7/1/2012 | FM / A | AMERICAN EXPR-.-SOFTWARE - ADOBE SYSTEMS |
| 7/1/2012 | FM / A | F&B MANAGEMEN-.-ALOHA SERVER |
| 7/1/2012 | FM / A | THE JAMES AGE-.-WEBSITE |
| 9/26/2012 | FM / A | MICRO MARK  -.-SERVER RACK - CORP OFFICE |
| 9/26/2012 | FM / A | NEW HORIZONS -.-NETWORKING DATA CABLE RUNS - C |
| 10/6/2012 | FM / A | MARKETS WEST -.-14X4 CONFERENCE TABLE & 10 CHA |
| 10/6/2012 | FM / A | MARKETS WEST -.-14X4 CONFERENCE TABLE & 10 CHA |
| 10/30/2012 | FM / A | NEW HORIZONS -.-NETWORKING |
| 10/31/2012 | FM / A | MTOWER CONSUL-.-FORTIGATE 60C WIRELESS ROUTER |
| 11/1/2012 | FM / A | AMERICAN EXPR-PAYPAL - HOLY LA-CONFERENCE ROOM CONSOLE |
| 11/27/2012 | FM / A | COMPEAT RESTA-.-COMPEAT SOFTWARE |
| 2/1/2013 | FM / A | AMERICAN EXPR-SHAHRABANI & ASS-FILESHARE SERVER |
| 6/2/2013 | FM / A | CDW DIRECT VERNON HI VERNON HI-FORTINET WIFI 60C |
| 6/19/2013 | FM / A | COMPUTER QSR ONYX  2 UNITS |
| 8/7/2013 | FM / A | COMPUTERS |
| 8/7/2013 | FM / A | COMPUTERS |
| 9/22/2013 | FM / A | AMAZON |
| 11/8/2013 | FM / A | ALOHA SERVERS 4 LOCATIONS |
| 11/8/2013 | FM / A | COMPUTERS |
| 11/8/2013 | FM / A | COMPUTERS |
| 11/8/2013 | FM / A | COMPUTERS |
| 11/8/2013 | FM / A | COMPUTERS |
| 11/15/2013 | FM / A | DELL LAPTOP |
| 11/15/2013 | FM / A | EXCHANGE SERVER |
| 1/15/2014 | FM / A | FILESERVER HARD DRIVES |
| 1/15/2014 | FM / A | WORKSTATION CORP ADMIN |
| 1/22/2014 | FM / A | COMPUTER - KRISTY TODD |
| 4/4/2014 | FM / A | COMPUTER QSR ONYX |
| 4/8/2014 | FM / A | SOFTWARE LICENSE SA-MS OFFICE-REMOTE DESKTOP |
| 8/1/2014 | FM / A | GROUP EVENT SOFTWARE |
| 8/1/2014 | FM / A | Group Event Software |
| 8/1/2014 | FM / A | Group Event Software |

Totals 164000 ( 73 assets )

Totals 901  ( 89 assets )

Net-Totals for all accounts ( 2,602 assets )

| Mark | Country | App. /Reg. No. | Filing/ Reg. Date | Goods/Services | Status/ Next Action Due |
|---|---|---|---|---|---|
|  | U.S. | 76/242,170 2,517,339 | 04/12/2001 12/11/2001 | Class 42: restaurant services. | Registered. Renewal due 12/11/2021. |
| VOO DOO TUNA | U.S. | 76/413,380 2,711,156 | 05/29/2002 04/29/2003 | Class 29: Tuna for consumption on or off the premises. | Registered. Renewal due 04/29/2023. |
| Z' TEJAS SOUTHWESTERN GRILL | U.S. | 76/336,006 2,731,350 | 11/09/2001 07/01/2003 | Class 43: restaurant services. | Registered. Renewal due 07/01/2023. |
| Z' TEJAS GRILL | U.S. | 76/336,096 2,755,202 | 11/09/2001 08/26/2003 | Class 43: restaurant services. | Registered. Renewal due 08/26/2023. |
|  | U.S. | 74/220,375 1,722,784 | 11/12/1991 10/06/1992 | Class 42: restaurant services. | Registered. Renewal due 10/06/2022. |
|  | U.S. | 76/336,521 2,645,640 | 11/09/2001 11/05/2002 | Class 43: restaurant services. | Registered. Renewal due 11/05/2022. |
| TACO GUILD | U.S. | 85/668,418 4,526,382 | 07/03/2012 05/06/2014 | Class 43: Restaurant and bar services. | Registered. Affidavit of Use/Incontestability (8 & 15) due between 05/06/2019 and 05/06/2020. |
|  | U.S. | 85/679,600 | 07/03/2012 | Class 43: Restaurant and bar services. | Abandoned. |
|  Fresh. Flavorful. Innovative. | U.S. | 85/732,262 4,292,482 | 09/18/2012 02/19/2013 | Class 42: Restaurant and bar services. | Registered. Affidavit of Use/Incontestability (8 & 15) due between 02/19/2018 and 02/19/2019. |
|  | U.S. | 86/035,023 | 08/12/2013 | Class 43: Restaurant and bar services. | Registered. Awaiting registration certificate from USPTO. |

## Schedule 1.1(g) Contracts

| DEBTOR | VENDOR CONTRACTS AND ADDRESS | DESCRIPTION | CURE COST | DESIGNATED |
|---|---|---|---|---|
| Z Tejas Inc | Opentable<br>1 Montgomery Street, Suite 700<br>San Francisco, CA 94104 | Client Agreement | 5,957.97 | |
| Z Tejas Inc | Canon Financial<br>14904 Collections Center Drive<br>Chicago, IL 60693 | Software Licenses & Services Agreement | 3,575.54 | |
| Z Tejas Inc | Ecolab Institutional<br>Po Box 70343<br>Chicago, IL 60673 | Master Distribution Agreement | 7,237.74 | |
| Z Tejas Inc | Fresh Concepts<br>25109 Jefferson Ave , # 305<br>Murrieta, CA 92562 | Produce Purchasing Agreement | 0.00 | |
| Z Tejas Inc | Garda<br>3209 Momentum Place<br>Lockbox #233209<br>Chicago, IL 60689 | Armoured Car Services Agreement | 4,224.46 | |
| Z Tejas Inc | Andy Sundell & Associates<br>5535 E Thunder Hawk Road<br>Cave Creek, AZ 85331 | Client Agreement | 0.00 | |
| Z Tejas Inc | Muzak/Mood<br>1703 W 5th Street, Suite 600<br>Austin, TX 78703 | Services And License Agreement | 1,165.78 | |
| Z Tejas Inc | Mtower IT Solutions<br>10235 S 51ST ST STE 165<br>PHOENIX, AZ 85044 | Client Agreement | 4,340.83 | |
| Z Tejas 6th St | Austin Valet<br>2509 Glen Springs Way<br>Austin, TX 78741 | Valet Services Contract | 4,022.12 | |
| Z Tejas Inc | American Valet<br>8902 N Central<br>Phoenix, AZ 85020 | Valet Services Contract | 8,700.00 | |
| Z'Tejas Arboretum | Brothers Valet LLC<br>11505 Oak Knoll Dr.<br>Austin, TX 78759 | Valet Services Contract | 0.00 | |
| Taco Guild Osborn | Humm<br>7000 N Mo Pac Expressway, Suite 190<br>Austin, TX 78731 | Product And Services Agreement | 0.00 | |

DOCS_SF:88484.2 98003-002

# Schedule 1.1(g) Contracts

| DEBTOR | VENDOR CONTRACTS AND ADDRESS | DESCRIPTION | CURE COST | DESIGNATED |
|---|---|---|---|---|
| Z Tejas Inc | Wells Fargo Merchant Services<br>Attn: Corporate Trust Services<br>MAC C7301-024<br>1740 Broadway<br>Denver, CO 80274 | Merchant Services Agreement | 0.00 | |
| Z Tejas Inc | Corvirtus<br>1011 N Weber Street<br>Colorado Springs, CO 80903 | Services And License Agreement | 2,354.81 | |
| Z Tejas 6th St | Dyezz<br>2113 Wells Branch Pkwy, Suite 6700<br>Austin, TX 78728 | Security System #101 6th Street | 650.58 | |
| Z Tejas Inc | Inmoment<br>310 East 4500 South, Ste. 450<br>Salt Lake City, UT 84107 | Guest Survey/Feedback | 595.00 | |
| Z Tejas Inc | Andysundell & Associates<br>5535 E Thunder Hawk Road<br>Cave Creek, AZ 85331 | Purchasing Consultant | 0.00 | |
| Z Tejas Inc | James Agency<br>8100 E Indian School Rd, Suite 201<br>Scottsdale, Az 85251 | PR Firm - Marketing | 0.00 | |
| Z Tejas Inc | XO Communications<br>File 50550<br>Los Angeles, CA 90074 | Internet/VOIP All Restaurants | 120.11 | |
| Z Tejas Inc | Directv<br>PO Box 60036<br>Los Angeles, CA 90060 | All Locations Except #102 Scottsdale | 3,126.76 | |
| Z Tejas Inc | Cox Communications<br>PO BOX 53249<br>Phoenix, AZ 85072 | Cable TV #102 Scottsdale/Corporate Internet | 684.26 | |

## Schedule 1.1(g) Contracts

| DEBTOR | STORE # | LEASES AGREEMENTS AND EFFECTIVE DATE | LANDLORD AND ADDRESS | CURE COSTS | DESIGNATED |
|---|---|---|---|---|---|
| Z Tejas 6th St | 101 | 6th Street, 1110 W. 6th Street (main building) Lease Agreement - December 2, 1993 | 1110 W 6th Street Property c/o Guy & Larry Restaurants 14850 N Scottsdale Rd., Ste 265 Scottsdale, AZ 85254 | 29,359.79 | YES |
| Z Tejas 6th St | 101 | 6th Street, 1110 W. 6th Street (annex) Ogden Restaurant Lease - July 5, 1995 | Robert L & Mary D. Ogden, L.P. 2302 W. 10th Street Austin, TX 78703 | 0.00 | YES |
| Z Tejas 6th St | 101 | 6th Street, 1110 W. 6th Street (parking lot) | Murphy Family Trust 3501 Dime Circle, Suite 101 Austin, TX 78744 | 1,105.00 | YES |
| Z'Tejas Scottsdale | 102 | Scottsdale, 7014 E. Camelback Road Lease Agreement - 2009 | Scottsdale Fashion Square LLC Po Box 31001-2156 Pasadena, CA 91110 | As agreed to in the Assumption and Assignment Agreement | YES |
| Z'Tejas Arboretum | 104 | Arboretum, 9400 A. Arboretum Blvd. Lease Agreement - November 10, 1994 | Gf Daycare Ltd. c/o Live Oak Gottesman 4330 Gaines Ranch Rd., Ste 100 Austin, TX 78735 | 0.00 | YES |
| Z'Tejas Gateway | 105 | Gateway, 10625 N. Tatum Blvd. Fundamental Lease Provisions - December 19, 2004 | Shea and Tatum Associates Dept 105748 20309 8764 PO Box 73001 Cleveland, OH 44193 | 46,319.07 | YES |
| Z'Tejas Tempe | 108 | Tempe, 20 W. 6th Street Centerpoint Retail Lease - April 30, 1999 | Hamilton Chase-Tempe LLC 828 Ballard Canyon Rd. Solvang, CA 93463 | 1,080.19 | YES |

## Schedule 1.1(g) Contracts

| DEBTOR | STORE # | LEASES AGREEMENTS AND EFFECTIVE DATE | LANDLORD AND ADDRESS | CURE COSTS | DESIGNATED |
|---|---|---|---|---|---|
| Z'Tejas Avery Ranch | 120 | Avery Ranch, 10525 W. Parmer Lane<br>Lease Agreement - February 5, 2008 | ARC CAFEUSA001 LLC<br>ID 082230 - Dept 880044<br>2338 W Royal Palm Rd, Ste. J<br>Phoenix, AZ 85021 | 20,634.10 | YES |
| Z'Tejas Bethany Home | 122 | Bethany Home, 1525 E. Bethany Home Rd #6<br>Lease Agreement - September 26, 2011 | 16 Bethany Station, LLC<br>2021 East Camelback Rd., Ste. A38<br>Phoenix, AZ 85016 | 0.00 | YES |
| Taco Guild Osborn | 301 | Taco Guild Osborn, 546 E Osborn Road<br>Lease Agreement - April 10, 2013 | Old School Properties LLC<br>9340 W Pico Blvd., Ste. 2<br>Los Angeles, CA 90035 | 0.00 | YES |
| Z'Tejas Chandler | 109 | Chandler, 7221 West Ray Road<br>Lease Agreement - December 28, 1999 | Pavillion Holdings<br>3131 E. Camelback Road, Ste 310<br>Phoenix, AZ 85016 | Attorneys' fee portion of the cure claim to be determined among the parties or resolved by the Court; otherwise no cure claim. | YES |
| Z Tejas Inc | Corporate | Corporate Office, 6909 E. Greenway Parkway, Suite 195<br>Office Building Lease - July 2, 2012 | Hilltop-Scottsdale LLC<br>c/o Furst Properties<br>14648 N Scottsdale, Ste. 140<br>Scottsdale, AZ 85254 | 0.00 | YES |

| Location | Store # | License | License No. | City | State | Expiration |
|---|---|---|---|---|---|---|
| Z'Tejas 6th Street | 101 | Liquor License | MB631168 | Austin | TX | 6/19/2015 |
| Z'Tejas Scottsdale | 102 | Liquor License | 12077083 | Scottsdale | AZ | 3/31/2016 |
| Z'Tejas Gateway | 105 | Liquor License | 12073424 | Phoenix | AZ | 3/31/2016 |
| Z'Tejas Tempe | 108 | Liquor License | 12074328 | Tempe | AZ | 3/31/2016 |
| Z'Tejas Chandler | 109 | Liquor License | 12077081 | Chandler | AZ | 3/31/2016 |
| Z'Tejas Avery Ranch | 120 | Liquor License | MB676171 | Austin | TX | 11/6/2015 |
| Z'Tejas Bethany Home | 122 | Liquor License | 12079171 | Phoenix | AZ | 3/31/2016 |
| Taco Guild Osborn | 301 | Liquor License | 12079651 | Phoenix | AZ | 3/31/2016 |

| Location | Store # | License / Permit | License / Permit No. | City | State | Expiration |
|---|---|---|---|---|---|---|
| Z'Tejas 6th Street | 101 | ASCAP | 500661920 | Austin | TX | 6/30/2015 |
| Z'Tejas 6th Street | 101 | BMI - Music License Fee | 1163054 | Austin | TX | 10/31/2015 |
| Z'Tejas 6th Street | 101 | Austin City Fire | 2.01501E+11 | Austin | TX | 12/31/2015 |
| Z'Tejas 6th Street | 101 | Austin City Industrial Waste Discharge | 703AUS0000746 | Austin | TX | 12/31/2015 |
| Z'Tejas 6th Street | 101 | Austin City Industrial Waste Discharge- Annex | 703AUS0000749 | Austin | TX | 12/31/2015 |
| Z'Tejas 6th Street | 101 | SESAC Performance License | 07-42-04109 | Austin | TX | 12/31/2015 |
| Z'Tejas 6th Street | 101 | Austin-Travis County Health | 2006 000916 FP | Austin | TX | 2/10/2016 |
| Z'Tejas 6th Street | 101 | Austin-Travis County Health - Annex | 2006 005624 FP | Austin | TX | 2/10/2016 |
| Z'Tejas 6th Street | 101 | Austin City Alarm | 16989 | Austin | TX | 3/24/2016 |
| Z'Tejas 6th Street | 101 | Austin City MB/CB/FB/LB/PE | MB631168 | Austin | TX | 4/3/2016 |
| Z'Tejas 6th Street | 101 | Austin City Sidewalk Agreement | VC0000102637 | Austin | TX | 5/31/2016 |
| Z'Tejas 6th Street | 101 | Texas MB/CB/FB/LB/PE | MB631168 | Austin | TX | 6/19/2016 |
| Z'Tejas 6th Street | 101 | Travis County MB/CB/FB/LB/PE | MB631168 | Austin | TX | 6/19/2016 |
| Z'Tejas 6th Street | 101 | Austin City Fire - Haz Mat | 1150197 | Austin | TX | 12/19/2017 |
| Z'Tejas 6th Street | 101 | Austin City Alarm late fee | 16989 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 927873 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 16989 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 16989 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 16989 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 16989 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 16989 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 80870444 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 81150471 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 81310629 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 81310325 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 81750369 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 82170201 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Austin City False Alarm | 16989 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Fed Tax Stamp | 74-2540057 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Texas State Sales and Use Tax Permit | 1-74-2540057-3 | Austin | TX | N/A |
| Z'Tejas 6th Street | 101 | Occupant Load Card | N / A | Austin | TX | N/A |
| Z'Tejas Scottsdale | 102 | Maricopa County Health | FD-14759 | Scottsdale | AZ | 6/30/2015 |
| Z'Tejas Scottsdale | 102 | AZ Transaction Sales Tax | 07-420292-K | Scottsdale | AZ | 12/31/2015 |
| Z'Tejas Scottsdale | 102 | Scottsdale City BWL | 1023132 | Scottsdale | AZ | 12/31/2015 |
| Z'Tejas Scottsdale | 102 | Scottsdale City Occupational | 1023131 | Scottsdale | AZ | 12/31/2015 |
| Z'Tejas Scottsdale | 102 | AZ State BWL | 12077083 | Scottsdale | AZ | 3/31/2016 |
| Z'Tejas Scottsdale | 102 | Fed Tax Stamp | 86-0685893 | Scottsdale | AZ | N/A |
| Z'Tejas Scottsdale | 102 | Notice of Employer Withholding Identification No. | 07-409757-J | Scottsdale | AZ | N/A |
| Z'Tejas Scottsdale | 102 | Scottsdale City Alarm | N/A | Scottsdale | AZ | N/A |
| Z'Tejas Scottsdale | 102 | Environmentally Hazardous Products License | 07-420292-K-001 | Scottsdale | AZ | N/A |
| Z'Tejas Gateway | 105 | Phoenix City Alarm | 56842 | Phoenix | AZ | 8/2/2015 |
| Z'Tejas Gateway | 105 | AZ Transaction  Sales Tax | N / A | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Gateway | 105 | Phoenix City Priviledge (Bus) | 96008359 | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Gateway | 105 | SESAC Performance License | 07-02-01529 | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Gateway | 105 | Transaction Privilege Tax (AZ Dept. of Revenue) | 07-535331-0 | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Gateway | 105 | ASCAP | 500750385 | Phoenix | AZ | 1/31/2016 |
| Z'Tejas Gateway | 105 | Maricopa County Health Catering | FD-41801 | Phoenix | AZ | 1/31/2016 |
| Z'Tejas Gateway | 105 | Maricopa County Health | FD-03240 | Phoenix | AZ | 2/28/2016 |
| Z'Tejas Gateway | 105 | AZ State BWL | 12073424 | Phoenix | AZ | 3/31/2016 |
| Z'Tejas Gateway | 105 | BMI - Music License Fee | 3101418 | Phoenix | AZ | 3/31/2016 |
| Z'Tejas Gateway | 105 | Fed Tax Stamp | 86-0841247 | Phoenix | AZ | N/A |
| Z'Tejas Gateway | 105 | Phoenix City False Alarm | 1327039 | Phoenix | AZ | N/A |
| Z'Tejas Gateway | 105 | Phoenix City False Alarm | 1326748 | Phoenix | AZ | N/A |
| Z'Tejas Gateway | 105 | Phoenix City False Alarm | 1326463 | Phoenix | AZ | N/A |
| Z'Tejas Gateway | 105 | Phoenix City False Alarm | 1184776 | Phoenix | AZ | N/A |
| Z'Tejas Gateway | 105 | Phoenix City False Alarm | 1202632 | Phoenix | AZ | N/A |
| Z'Tejas Gateway | 105 | Phoenix City False Alarm | 1216061 | Phoenix | AZ | N/A |
| Z'Tejas Gateway | 105 | Withholding Tax Report (AZ Dept of Revenue) | 07-507020-E | Phoenix | AZ | N/A |
| Z'Tejas Tempe | 108 | Maricopa County Food Catering | FD-05771 | Tempe | AZ | 8/30/2015 |
| Z'Tejas Tempe | 108 | AZ Transaction  Sales Tax | 7596404 | Tempe | AZ | 12/31/2015 |
| Z'Tejas Tempe | 108 | Tempe City Privilege | 59933-PLT | Tempe | AZ | 12/31/2015 |
| Z'Tejas Tempe | 108 | Maricopa County Health | FD04722 | Tempe | AZ | 1/31/2016 |
| Z'Tejas Tempe | 108 | Tempe City Alarm Permit | 14232 | Tempe | AZ | 2/28/2016 |
| Z'Tejas Tempe | 108 | AZ State BWL | 12074328 | Tempe | AZ | 3/31/2016 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Z'Tejas Tempe | 108 | Fed Tax Stamp | 86-0945552 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 354610 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 351044 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 350983 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 336934 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 336876 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 334138 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 334123 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 329153 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 315710 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 309454 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 307107 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | 270073 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | TE12000021927 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | TE12000021927 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | TE11000171971 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | TE11000162028 | Tempe | AZ | N/A |
| Z'Tejas Tempe | 108 | Tempe City False Alarm | TE11000155446 | Tempe | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm | 116585 | Chandler | AZ | 7/31/2015 |
| Z'Tejas Chandler | 109 | AZ Transaction Sales Tax | 07-621185-X | Chandler | AZ | 12/31/2015 |
| Z'Tejas Chandler | 109 | Chandler City Privilege and Use Tax | 115023 | Chandler | AZ | 12/31/2015 |
| Z'Tejas Chandler | 109 | Maricopa County Health | FD-05344 | Chandler | AZ | 12/31/2015 |
| Z'Tejas Chandler | 109 | Maricopa County Health Catering | FD-41535 | Chandler | AZ | 12/31/2015 |
| Z'Tejas Chandler | 109 | AZ State BWL | 12077081 | Chandler | AZ | 3/31/2016 |
| Z'Tejas Chandler | 109 | Certificate of Occupancy | CM00-00416 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | 607221 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | 592707 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | 592705 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | 577732 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | 568261 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | 567283 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | 567096 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | CHI4000058915/566924 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | CHI4000054640/566058 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | 116585 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Chandler City Alarm - False | 5047867 | Chandler | AZ | N/A |
| Z'Tejas Chandler | 109 | Fed Tax Stamp | 75-2879058 | Chandler | AZ | N/A |
| Z'Tejas Avery Ranch | 120 | Austin City Alarm | T62319 | Austin | TX | 8/30/2015 |
| Z'Tejas Avery Ranch | 120 | Austin-Travis County Health | 2007 163774 FP | Austin | TX | 9/30/2015 |
| Z'Tejas Avery Ranch | 120 | Austin City MB/CB/FB/LB/PE | MB676171 | Austin | TX | 11/6/2015 |
| Z'Tejas Avery Ranch | 120 | Texas MB/CB/FB/LB/PE | MB676171 | Austin | TX | 11/6/2015 |
| Z'Tejas Avery Ranch | 120 | Williamson County MB/CB/FB/LB/PE | MB676171 | Austin | TX | 11/6/2015 |
| Z'Tejas Avery Ranch | 120 | Austin City Industrial Wastewater | 717AUS0002536 | Austin | TX | 12/31/2015 |
| Z'Tejas Avery Ranch | 120 | Austin City Fire Hazardous Materials | 2421207 | Austin | TX | 2/3/2016 |
| Z'Tejas Avery Ranch | 120 | Austin City Fire | 201403000203 | Austin | TX | 3/31/2016 |
| Z'Tejas Avery Ranch | 120 | Austin City False Alarm | 937754 | Austin | TX | N/A |
| Z'Tejas Avery Ranch | 120 | Austin City False Alarm | 927865 | Austin | TX | N/A |
| Z'Tejas Avery Ranch | 120 | Austin City False Alarm | 914983 | Austin | TX | N/A |
| Z'Tejas Avery Ranch | 120 | Austin City False Alarm | 862430/865326 | Austin | TX | N/A |
| Z'Tejas Avery Ranch | 120 | Austin City False Alarm | 867190 | Austin | TX | N/A |
| Z'Tejas Avery Ranch | 120 | Austin City False Alarm | 813007 | Austin | TX | N/A |
| Z'Tejas Avery Ranch | 120 | Austin City False Alarm | 858475 | Austin | TX | N/A |
| Z'Tejas Avery Ranch | 120 | Austin City False Alarm | 745754 | Austin | TX | N/A |
| Z'Tejas Bethany Home | 122 | AZ Transaction Sales Tax | N/A | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Bethany Home | 122 | Phoenix City Priviledge (Bus) | 10044725 | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Bethany Home | 122 | Phoenix City Priviledge (Bus) | 10044727 | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Bethany Home | 122 | ASCAP | 500762247 | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Bethany Home | 122 | AZ State BWL | 12079171 | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Bethany Home | 122 | Maricopa County Health | FD-26928 | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Bethany Home | 122 | BMI - Music License Fee | 2669663 | Phoenix | AZ | 12/31/2015 |
| Z'Tejas Bethany Home | 122 | Phoenix City False Alarm | 1346474 | Phoenix | AZ | N/A |
| Taco Guild Osborn | 301 | Maricopa County Health | FD-32774 | Phoenix | AZ | 11/30/2015 |
| Taco Guild Osborn | 301 | Phoenix City Burglar Alarm | 67531 | Phoenix | AZ | 12/31/2015 |
| Taco Guild Osborn | 301 | Phoenix City Fire Alarm | 54969 | Phoenix | AZ | 12/31/2015 |
| Taco Guild Osborn | 301 | Phoenix City Priviledge (Bus) | 10061417 | Phoenix | AZ | 12/31/2015 |
| Taco Guild Osborn | 301 | AZ State BWL | 12079651 | Phoenix | AZ | 3/31/2016 |

All costs, fees, or any other expenses arising from the transfer of the licenses and permits on this schedule
shall be the responsibility of the Purchaser and not included in the Cash Purchase Price.

# Schedule 1.3(b) Contract Cure Costs

| 11DEBTOR | VENDOR CONTRACTS AND ADDRESS | DESCRIPTION | CURE COST | DESIGNATED |
|---|---|---|---|---|
| Z Tejas Inc | Opentable<br>1 Montgomery Street, Suite 700<br>San Francisco, CA 94104 | Client Agreement | 5,957.97 | |
| Z Tejas Inc | Canon Financial<br>14904 Collections Center Drive<br>Chicago, IL 60693 | Software Licenses & Services Agreement | 3,575.54 | |
| Z Tejas Inc | Ecolab Institutional<br>Po Box 70343<br>Chicago, IL 60673 | Master Distribution Agreement | 7,237.74 | |
| Z Tejas Inc | Fresh Concepts<br>25109 Jefferson Ave , # 305<br>Murrieta, CA 92562 | Produce Purchasing Agreement | 0.00 | |
| Z Tejas Inc | Garda<br>3209 Momentum Place<br>Lockbox #233209<br>Chicago, IL 60689 | Armoured Car Services Agreement | 4,224.46 | |
| Z Tejas Inc | Andy Sundell & Associates<br>5535 E Thunder Hawk Road<br>Cave Creek, AZ 85331 | Client Agreement | 0.00 | |
| Z Tejas Inc | Muzak/Mood<br>1703 W 5th Street, Suite 600<br>Austin, TX 78703 | Services And License Agreement | 1,165.78 | |
| Z Tejas Inc | Mtower IT Solutions<br>10235 S 51ST ST STE 165<br>PHOENIX, AZ 85044 | Client Agreement | 4,340.83 | |
| Z Tejas 6th St | Austin Valet<br>2509 Glen Springs Way<br>Austin, TX 78741 | Valet Services Contract | 4,022.12 | |
| Z Tejas Inc | American Valet<br>8902 N Central<br>Phoenix, AZ 85020 | Valet Services Contract | 8,700.00 | |
| Z'Tejas Arboretum | Brothers Valet LLC<br>11505 Oak Knoll Dr.<br>Austin, TX 78759 | Valet Services Contract | 0.00 | |
| Taco Guild Osborn | Humm<br>7000 N Mo Pac Expressway, Suite 190<br>Austin, TX 78731 | Product And Services Agreement | 0.00 | |

## Schedule 1.3(b) Contract Cure Costs

| 11DEBTOR | VENDOR CONTRACTS AND ADDRESS | DESCRIPTION | CURE COST | DESIGNATED |
|---|---|---|---|---|
| Z Tejas Inc | Wells Fargo Merchant Services<br>Attn: Corporate Trust Services<br>MAC C7301-024<br>1740 Broadway<br>Denver, CO 80274 | Merchant Services Agreement | 0.00 | |
| Z Tejas Inc | Corvirtus<br>1011 N Weber Street<br>Colorado Springs, CO 80903 | Services And License Agreement | 2,354.81 | |
| Z Tejas 6th St | Dyezz<br>2113 Wells Branch Pkwy, Suite 6700<br>Austin, TX 78728 | Security System #101 6th Street | 650.58 | |
| Z Tejas Inc | Inmoment<br>310 East 4500 South, Ste. 450<br>Salt Lake City, UT 84107 | Guest Survey/Feedback | 595.00 | |
| Z Tejas Inc | Andysundell & Associates<br>5535 E Thunder Hawk Road<br>Cave Creek, AZ 85331 | Purchasing Consultant | 0.00 | |
| Z Tejas Inc | James Agency<br>8100 E Indian School Rd, Suite 201<br>Scottsdale, Az 85251 | PR Firm - Marketing | 0.00 | |
| Z Tejas Inc | XO Communications<br>File 50550<br>Los Angeles, CA 90074 | Internet/VOIP All Restaurants | 120.11 | |
| Z Tejas Inc | Directv<br>PO Box 60036<br>Los Angeles, CA 90060 | All Locations Except #102 Scottsdale | 3,126.76 | |
| Z Tejas Inc | Cox Communications<br>PO BOX 53249<br>Phoenix, AZ 85072 | Cable TV #102 Scottsdale/Corporate Internet | 684.26 | |

## Schedule 1.3(b) Contract Cure Costs

| DEBTOR | STORE # | LEASES AGREEMENTS AND EFFECTIVE DATE | LANDLORD AND ADDRESS | CURE COSTS | DESIGNATED |
|---|---|---|---|---|---|
| Z Tejas 6th St | 101 | 6th Street, 1110 W. 6th Street (main building) Lease Agreement - December 2, 1993 | 1110 W 6th Street Property c/o Guy & Larry Restaurants 14850 N Scottsdale Rd., Ste 265 Scottsdale, AZ 85254 | 29,359.79 | YES |
| Z Tejas 6th St | 101 | 6th Street, 1110 W. 6th Street (annex) Ogden Restaurant Lease - July 5, 1995 | Robert L & Mary D. Ogden, L.P. 2302 W. 10th Street Austin, TX 78703 | 0.00 | YES |
| Z Tejas 6th St | 101 | 6th Street, 1110 W. 6th Street (parking lot) | Murphy Family Trust 3501 Dime Circle, Suite 101 Austin, TX 78744 | 1,105.00 | YES |
| Z'Tejas Scottsdale | 102 | Scottsdale, 7014 E. Camelback Road Lease Agreement - 2009 | Scottsdale Fashion Square LLC Po Box 31001-2156 Pasadena, CA 91110 | As agreed to in the Assumption and Assignment Agreement | YES |
| Z'Tejas Arboretum | 104 | Arboretum, 9400 A. Arboretum Blvd. Lease Agreement - November 10, 1994 | Gf Daycare Ltd. c/o Live Oak Gottesman 4330 Gaines Ranch Rd., Ste 100 Austin, TX 78735 | 0.00 | YES |
| Z'Tejas Gateway | 105 | Gateway, 10625 N. Tatum Blvd. Fundamental Lease Provisions - December 19, 2004 | Shea and Tatum Associates Dept 105748 20309 8764 PO Box 73001 Cleveland, OH 44193 | 46,319.07 | YES |
| Z'Tejas Tempe | 108 | Tempe, 20 W. 6th Street Centerpoint Retail Lease - April 30, 1999 | Hamilton Chase-Tempe LLC 828 Ballard Canyon Rd. Solvang, CA 93463 | 1,080.19 | YES |

## Schedule 1.3(b) Contract Cure Costs

| DEBTOR | STORE # | LEASES AGREEMENTS AND EFFECTIVE DATE | LANDLORD AND ADDRESS | CURE COSTS | DESIGNATED |
|--------|---------|--------------------------------------|----------------------|------------|------------|
| Z'Tejas Avery Ranch | 120 | Avery Ranch, 10525 W. Parmer Lane<br>Lease Agreement - February 5, 2008 | ARC CAFEUSA001 LLC<br>ID 082230 - Dept 880044<br>2338 W Royal Palm Rd, Ste. J<br>Phoenix, AZ 85021 | 20,634.10 | YES |
| Z'Tejas Bethany Home | 122 | Bethany Home, 1525 E. Bethany Home Rd #6<br>Lease Agreement - September 26, 2011 | 16 Bethany Station, LLC<br>2021 East Camelback Rd., Ste. A38<br>Phoenix, AZ 85016 | 0.00 | YES |
| Taco Guild Osborn | 301 | Taco Guild Osborn, 546 E Osborn Road<br>Lease Agreement - April 10, 2013 | Old School Properties LLC<br>9340 W Pico Blvd., Ste. 2<br>Los Angeles, CA 90035 | 0.00 | YES |
| Z'Tejas Chandler | 109 | Chandler, 7221 West Ray Road<br>Lease Agreement - December 28, 1999 | Pavillion Holdings<br>3131 E. Camelback Road, Ste 310<br>Phoenix, AZ 85016 | Attorneys' fee portion of the cure claim to be determined among the parties or resolved by the Court; otherwise no cure claim. | YES |
| Z Tejas Inc | Corporate | Corporate Office, 6909 E. Greenway Parkway, Suite 195<br>Office Building Lease - July 2, 2012 | Hilltop-Scottsdale LLC<br>c/o Furst Properties<br>14648 N Scottsdale, Ste. 140<br>Scottsdale, AZ 85254 | 0.00 | YES |

**Z'Tejas: APA Schedule**

**2.3(d) - Gift Card Liabilities**

**9/25/2015**

| Location | Store # | Total Issued And Not Redeemed | Estimated General Ledger Balance |
|---|---|---|---|
| Z'Tejas 6th Street | 101 | $82,210 | $16,637 |
| Z'Tejas Scottsdale | 102 | 39,758 | 8,168 |
| Z'Tejas Gateway | 105 | 80,150 | 27,543 |
| Z'Tejas Tempe | 108 | 24,518 | 4,308 |
| Z'Tejas Chandler | 109 | 91,149 | 21,699 |
| Z'Tejas Avery Ranch | 120 | 75,226 | 34,091 |
| Z'Tejas Bethany Home | 122 | 20,899 | 20,587 |
| Taco Guild Osborn | 301 | 9,926 | 9,926 |
| Corporate | Corporate | 116,772 | 16,094 |
| Z'Tejas Marketing | N/A | 65,683 | 10,929 |
| Incomm Store | N/A | 267,113 | 252,494 |
| Web Site | N/A | 15,018 | 13,155 |
| ZTejas Web Card Sales | N/A | 8,317 | 8,249 |
| Z'Tejas Summerlin (closed) | 107 | 20,519 | 27 |
| Z'Tejas Bellevue (closed) | 110 | 10,135 | 38 |
| Z'Tejas Salt Lake City (closed) | 114 | 38,929 | 2,729 |
| Z'Tejas La Cantera (closed) | 121 | 13,992 | 5,093 |
| **Total** | | **980,314** | **451,768** |

The variance between total issued and not redeemed vs. estimated general ledger balance represents gift card liabilities older than 24 months (i.e., $651,044)

Generated:9/17/2015 2:53:54 PM

| Co ID | De pt | Area | Employee Name | S/H | Job Code | Hire Date | Sen date | Acc Code | Accrual Option | Avail Hours | Last Accrued Date | Last Accr Rate | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HOURLY VACATION balances: | | | | | | | | | | | | | 32 FOH:serv/host/wpa/food runners | | |
| | | | | | | | | | | | | | 1-7 EE's per location | | |
| 01 | 01 | 101 | PRUITT, JAMES P. | H | SRV | 8/15/2013 | 8/15/2013 | VACAT | VACA01 | 32.42 | 08/16/15 | 32.42 | $ 7.25 | FOH | $ 235.01 |
| 01 | 01 | 101 | GUZMAN, KARLA A. | H | SRV | 9/5/2014 | 9/5/2014 | VACAT | VACA01 | 40.00 | 09/13/15 | 40.00 | $ 7.25 | FOH | $ 290.00 |
| 01 | 01 | 101 | FREY, HANNAH L. | H | HH | 7/4/2013 | 7/4/2013 | VACAT | VACA01 | 31.00 | 07/05/15 | 31.00 | $ 8.50 | FOH | $ 263.47 |
| 01 | 01 | 101 | FOYLE, TYLER | H | RUN | 7/17/2014 | 7/17/2014 | VACAT | VACA01 | 40.00 | 07/19/15 | 40.00 | $ 7.25 | FOH | $ 290.00 |
| 01 | 01 | 101 | GOMEZ, GILBERTO R. | H | WPA | 8/2/2014 | 8/2/2014 | VACAT | VACA01 | 36.45 | 08/02/15 | 36.45 | $ 8.75 | FOH | $ 318.92 |
| 02 | 01 | 102 | ARMSTRONG, JOE | H | SRV | 3/28/2012 | 3/28/2012 | VACAT | VACA01 | 4.42 | 03/29/15 | 36.42 | $ 8.05 | FOH | $ 35.61 |
| 02 | 01 | 102 | SNEED, LAUREN N. | H | SRV | 7/9/2014 | 7/9/2014 | VACAT | VACA01 | 30.01 | 07/19/15 | 30.01 | $ 8.05 | FOH | $ 241.55 |
| 02 | 01 | 102 | CAVALLARO, SAM A. | H | RUN | 9/1/2009 | 9/1/2009 | VACAT | VACA01 | 31.56 | 09/14/14 | 31.56 | $ 8.05 | FOH | $ 254.07 |
| 02 | 01 | 102 | HUMPHRIES, JOANNA L. | H | BAR | 3/4/2014 | 3/4/2014 | VACAT | VACA01 | 33.81 | 03/15/15 | 33.81 | $ 8.05 | FOH | $ 272.13 |
| 02 | 01 | 102 | MARTINEZ, MARCELINO | H | RUN | 7/7/1997 | 7/7/1997 | VACAT | VACA01 | 119.08 | 07/19/15 | 119.08 | $ 8.05 | FOH | $ 958.63 |
| 04 | 01 | 104 | VANDERBERG, MARC C. | H | SRV | 10/11/2013 | 10/11/2013 | VACAT | VACA01 | 31.75 | 10/12/14 | 31.75 | $ 7.25 | FOH | $ 230.17 |
| 04 | 01 | 104 | LUCIO, FRANK | H | SRV | 12/13/2013 | 12/13/2013 | VACAT | VACA01 | 31.96 | 12/21/14 | 31.96 | $ 7.25 | FOH | $ 231.71 |
| 05 | 01 | 105 | MCQUAID, STEPHANIE M. | H | SRV | 5/5/2007 | 5/5/2007 | VACAT | VACA01 | 26.33 | 05/10/15 | 66.33 | $ 8.05 | FOH | $ 211.95 |
| 05 | 01 | 105 | MONTENEGRO, AMPARO | H | HH | 8/29/2011 | 8/29/2011 | VACAT | VACA01 | 30.10 | 08/30/15 | 30.10 | $ 8.05 | FOH | $ 242.32 |
| 05 | 01 | 105 | CATALANO, GREGORY W. | H | SRV | 9/13/2013 | 9/13/2013 | VACAT | VACA01 | 31.05 | 09/13/15 | 31.05 | $ 8.05 | FOH | $ 249.92 |
| 05 | 01 | 105 | CARRILLO, LUIS | H | WPA | 11/17/2012 | 11/17/2012 | VACAT | VACA01 | 33.61 | 11/23/14 | 33.61 | $ 8.05 | FOH | $ 270.59 |
| 09 | 01 | 109 | CONNICK, THOMAS D. | H | SRV | 9/29/2008 | 9/29/2008 | VACAT | VACA01 | 29.11 | 10/12/14 | 69.11 | $ 8.05 | FOH | $ 234.36 |
| 09 | 01 | 109 | LOPEZ, ALAN E. | H | WPA | 2/4/2014 | 2/4/2014 | VACAT | VACA01 | 32.88 | 02/15/15 | 32.88 | $ 8.05 | FOH | $ 264.68 |
| 09 | 01 | 109 | NAGY, AARON R. | H | SRV | 5/4/2009 | 5/4/2009 | VACAT | VACA01 | 62.31 | 05/10/15 | 62.31 | $ 8.05 | FOH | $ 501.61 |
| 09 | 01 | 109 | THOMPSON, KEEGAN M. | H | SRV | 5/29/2007 | 5/29/2007 | VACAT | VACA01 | 66.61 | 06/07/15 | 66.61 | $ 8.05 | FOH | $ 536.24 |
| 09 | 01 | 109 | GRAZIANO, MICHAEL T. | H | RUN | 12/18/2013 | 12/18/2013 | VACAT | VACA01 | 32.81 | 12/21/14 | 32.81 | $ 8.05 | FOH | $ 264.08 |
| 09 | 01 | 109 | PACQUALE, JOSEPH E. | H | WPA | 5/28/2012 | 5/28/2012 | VACAT | VACA01 | 31.37 | 06/07/15 | 31.37 | $ 8.05 | FOH | $ 252.55 |
| 09 | 01 | 109 | VALDEZ, JUPITER | H | WPA | 12/27/2002 | 12/27/2002 | VACAT | VACA01 | 98.34 | 01/04/15 | 98.34 | $ 8.05 | FOH | $ 791.64 |
| 20 | 01 | 120 | WIEHE, CLAY R. | H | SRV | 3/28/2014 | 3/28/2014 | VACAT | VACA01 | 34.87 | 03/29/15 | 34.87 | $ 7.25 | FOH | $ 252.82 |
| 22 | 01 | 122 | HALL, JONATHAN A. | H | SRV | 3/21/2013 | 3/21/2013 | VACAT | VACA01 | 13.19 | 03/29/15 | 37.19 | $ 8.05 | FOH | $ 106.17 |
| 22 | 01 | 122 | JOHNS, JOSHUA D. | H | SRV | 1/11/2014 | 1/11/2014 | VACAT | VACA01 | 23.62 | 01/18/15 | 39.62 | $ 8.05 | FOH | $ 190.10 |
| 22 | 01 | 122 | CRAFT, TANIA K. | H | SRV | 5/24/2008 | 5/24/2008 | VACAT | xfer | 23.77 | | | $ 8.05 | FOH | $ 191.36 |
| 22 | 01 | 122 | ARMENTA, ELENA M. | H | SRV | 3/11/2013 | 3/11/2013 | VACAT | VACA01 | 33.11 | 03/15/15 | 33.11 | $ 8.05 | FOH | $ 266.50 |
| 22 | 01 | 122 | DANKO, BRYAN J. | H | RUN | 8/2/2013 | 8/2/2013 | VACAT | VACA01 | 30.92 | 08/02/15 | 30.92 | $ 8.05 | FOH | $ 248.90 |
| 01 | 03 | 301 | KOGEL, MICHAEL A. | H | SRV | 10/30/2013 | 10/30/2013 | VACAT | VACA01 | 34.58 | 11/09/14 | 34.58 | $ 8.05 | FOH | $ 278.35 |
| 01 | 03 | 301 | TEENSTRA, MILES P. | H | SRV | 2/20/2014 | 2/20/2014 | VACAT | VACA01 | 34.95 | 03/01/15 | 34.95 | $ 8.05 | FOH | $ 281.38 |
| 01 | 03 | 301 | POTENCANO, ERIC A. | H | SRV | 10/17/2013 | 10/17/2013 | VACAT | VACA01 | 36.82 | 10/26/14 | 36.82 | $ 8.05 | FOH | $ 296.39 |
| | | | | | | | | | | | | | | | $ 9,553.19 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | **43 BOH** | | |
| | | | | | | | | | | **1-7 EE's per location** | | |
| 01 | 01 | 101 | KITKOSKI, RUSSELL | H | COK | 12/16/1991 | 12/16/1991 | VACAT | VACA01 | 23.52 12/21/14 | 103.52 | $ 14.00 | $ 329.28 |
| 01 | 01 | 101 | JAIMES, JOSE-LUIS | H | COK | 4/15/2009 | 4/15/2009 | VACAT | VACA01 | 38.79 04/26/15 | 78.79 | $ 12.00 | $ 465.53 |
| 01 | 01 | 101 | LEON, ARACELI | H | PAN | 7/11/2014 | 7/11/2014 | VACAT | VACA01 | 40.00 07/19/15 | 40.00 | $ 12.00 | $ 480.00 |
| 01 | 01 | 101 | ALVAREZ, GUADALUPE J. | H | PRP | 9/10/2012 | 9/10/2012 | VACAT | VACA01 | 38.89 09/13/15 | 38.89 | $ 12.50 | $ 486.18 |
| 01 | 01 | 101 | DELGADO JR, JESUS | H | COK | 8/23/2010 | 8/23/2010 | VACAT | VACA01 | 39.84 08/30/15 | 39.84 | $ 13.00 | $ 517.94 |
| 01 | 01 | 101 | GARCIA, ISABEL M. | H | WPA | 9/4/2008 | 9/4/2008 | VACAT | VACA01 | 79.26 09/13/15 | 79.26 | $ 11.50 | $ 911.49 |
| 01 | 01 | 101 | VENCES, SANTOS | H | DSH | 9/8/2005 | 9/8/2005 | VACAT | VACA01 | 80.00 09/13/15 | 80.00 | $ 11.50 | $ 920.00 |
| 01 | 01 | 101 | JONES, DEBORAH G. | H | COK | 11/16/2005 | 11/16/2005 | VACAT | VACA01 | 63.99 11/23/14 | 63.99 | $ 15.75 | $1,007.87 |
| 01 | 01 | 101 | CASTELAN, NOE R. | H | COK | 7/5/2001 | 7/5/2001 | VACAT | VACA01 | 73.39 07/05/15 | 113.39 | $ 15.50 | $1,137.52 |
| 01 | 01 | 101 | CASTELAN, ISAAC R. | H | PRP | 1/23/2001 | 1/23/2001 | VACAT | VACA01 | 74.62 02/01/15 | 111.62 | $ 15.25 | $1,137.96 |
| 01 | 01 | 101 | LOPEZ, SERGIO | H | JAN | 11/2/2003 | 11/2/2003 | VACAT | VACA01 | 78.10 11/09/14 | 118.10 | $ 15.50 | $1,210.54 |
| 01 | 01 | 101 | PEREZ, MIGUEL | H | PRP | 8/17/2006 | 8/17/2006 | VACAT | VACA01 | 80.00 08/30/15 | 80.00 | $ 15.25 | $1,220.00 |
| 01 | 01 | 101 | JAIMES, LEONCIO | H | COK | 5/8/1997 | 5/8/1997 | VACAT | VACA01 | 120.00 05/10/15 | 120.00 | $ 15.75 | $1,890.00 | $ 11,714.31 |
| 02 | 01 | 102 | CABAZOS, EDDI | H | DSH | 6/13/2010 | 6/13/2010 | VACAT | VACA01 | 18.45 06/21/15 | 35.14 | $ 11.00 | $ 202.90 |
| 02 | 01 | 102 | ABORCA, RICARDO | H | DSH | 8/23/2013 | 8/23/2013 | VACAT | VACA01 | 33.08 08/30/15 | 33.08 | $ 10.00 | $ 330.76 |
| 02 | 01 | 102 | SAVAGE, JOSETH | H | DSH | 7/2/2015 | 7/2/2015 | VACAT | VACA01 | 35.76 03/29/15 | 35.76 | $ 11.00 | $ 393.36 |
| 02 | 01 | 102 | REYES, REYNALDO | H | WPA | 10/27/1997 | 10/27/1997 | VACAT | VACA01 | 80.00 11/09/14 | 120.00 | $ 9.50 | $ 760.00 |
| 02 | 01 | 102 | OLMOS, JORGE | H | PRP | 5/20/2009 | 5/20/2009 | VACAT | VACA01 | 64.45 05/24/15 | 64.45 | $ 13.50 | $ 870.09 |
| 02 | 01 | 102 | YANEZ, MARCELO | H | COK | 1/4/2002 | 1/4/2002 | VACAT | VACA01 | 97.91 01/04/15 | 97.91 | $ 12.00 | $1,174.91 |
| 02 | 01 | 102 | ROJAS, SALVADOR | H | COK | 3/17/1993 | 3/17/1993 | VACAT | VACA01 | 112.53 03/29/15 | 112.53 | $ 14.50 | $1,631.69 |
| 04 | 01 | 104 | GUEVARA, ESTEBAN | H | DSH | 6/18/2014 | 6/18/2014 | VACAT | VACA01 | 40.00 06/21/15 | 40.00 | $ 10.00 | $ 400.00 |
| 04 | 01 | 104 | VENCES, DIONICIO | H | WPA | 3/2/1996 | 3/2/1996 | VACAT | VACA01 | 120.00 03/15/15 | 120.00 | $ 14.00 | $1,680.00 |
| 05 | 01 | 105 | ALCAZAR, SALVADOR | H | COK | 1/20/2012 | 1/20/2012 | VACAT | VACA01 | 31.60 02/01/15 | 31.60 | $ 12.50 | $ 395.04 |
| 05 | 01 | 105 | ALONZO REYES, JAIME | H | COK | 6/26/2014 | 6/26/2014 | VACAT | VACA01 | 34.52 07/05/15 | 34.52 | $ 12.00 | $ 414.29 |
| 05 | 01 | 105 | ORIOL, NOE | H | COK | 4/12/2001 | 4/12/2001 | VACAT | VACA01 | 110.00 04/12/15 | 120.00 | $ 15.00 | $1,650.00 |
| 08 | 01 | 108 | BIBIANO, LORENA | H | PAN | 2/25/2011 | 2/25/2011 | VACAT | VACA01 | 33.84 03/01/15 | 33.84 | $ 12.00 | $ 406.12 |
| 08 | 01 | 108 | HERNANDEZ, RAUL | H | COK | 12/22/2011 | 12/22/2011 | VACAT | VACA01 | 37.96 01/04/15 | 37.96 | $ 14.50 | $ 550.42 |
| 08 | 01 | 108 | RODRIGUEZ, FRANCISCO A. | H | COK | 8/11/2003 | 8/11/2003 | VACAT | VACA01 | 42.30 08/16/15 | 120.00 | $ 14.00 | $ 592.20 |
| 08 | 01 | 108 | GARCIA PEREZ, CARLOS | H | COK | 2/2/2000 | 2/2/2000 | VACAT | VACA01 | 48.00 02/15/15 | 120.00 | $ 15.00 | $ 720.00 |
| 08 | 01 | 108 | JALATE, ESTER | H | PAN | 2/2/2000 | 2/2/2000 | VACAT | VACA01 | 66.97 02/15/15 | 106.97 | $ 12.00 | $ 803.59 |
| 09 | 01 | 109 | HARVILLE, OSHAE M. | H | DSH | 2/6/2014 | 2/6/2014 | VACAT | VACA01 | 6.58 02/15/15 | 30.58 | $ 10.25 | $ 67.44 |
| 09 | 01 | 109 | OLMOS, AURORA | H | PAN | 7/25/2011 | 7/25/2011 | VACAT | VACA01 | 31.06 08/02/15 | 31.06 | $ 11.75 | $ 364.91 |
| 09 | 01 | 109 | SANTIAGO, MANUEL | H | DSH | 5/9/2013 | 5/9/2013 | VACAT | VACA01 | 36.49 05/10/15 | 36.49 | $ 11.00 | $ 401.36 |
| 09 | 01 | 109 | FRANCO, JUAN C. | H | COK | 10/26/2012 | 10/26/2012 | VACAT | VACA01 | 37.61 10/26/14 | 37.61 | $ 12.00 | $ 451.33 |
| 09 | 01 | 109 | MACINTOSH, ROBERT J. | H | PAN | 4/22/2006 | 4/22/2006 | VACAT | VACA01 | 40.00 04/26/15 | 80.00 | $ 13.25 | $ 530.00 |
| 09 | 01 | 109 | JUAREZ, RICARDO E. | H | COK | 12/2/1996 | 12/2/1996 | VACAT | VACA01 | 40.00 12/07/14 | 120.00 | $ 14.50 | $ 580.00 |
| 09 | 01 | 109 | PEREZ, JOSE M. | H | COK | 8/16/2001 | 8/16/2001 | VACAT | VACA01 | 100.86 08/16/15 | 100.86 | $ 15.25 | $1,538.08 |
| 20 | 01 | 120 | GONZALEZ, RICARDO | H | COK | 3/10/2009 | 3/10/2009 | VACAT | VACA01 | 21.47 03/15/15 | 61.47 | $ 14.00 | $ 300.51 |
| 20 | 01 | 120 | URQUIZA, HILARIO | H | COK | 8/1/2009 | 8/1/2009 | VACAT | VACA01 | 80.00 08/02/15 | 80.00 | $ 13.00 | $1,040.00 |
| 20 | 01 | 120 | GONZALEZ, JOSE L. | H | WPA | 9/2/1999 | 9/2/1999 | VACAT | VACA01 | 119.99 09/13/15 | 120.00 | $ 12.00 | $1,439.92 |
| 22 | 01 | 122 | ARGANDONA, PATRICIO | H | DSH | 10/5/2013 | 10/5/2013 | VACAT | VACA01 | 30.57 10/12/14 | 30.57 | $ 10.50 | $ 320.94 |
| 01 | 03 | 301 | PAYNE, CHRISTINA | H | DSH | 7/14/2014 | 7/14/2014 | VACAT | VACA01 | 30.96 07/19/15 | 30.96 | $ 10.00 | $ 309.61 |
| 01 | 03 | 301 | POBLETE, CARLOS I. | H | PRP | 1/13/2014 | 1/13/2014 | VACAT | VACA01 | 35.27 01/18/15 | 35.27 | $ 10.50 | $ 370.31 |
| | | | | | | | | | | | | | $ 32,404.09 |

| | | | Name | | Pos | Date1 | Date2 | | | Hrs | Date | Rate | $ | | $ | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 01 | 101 | JARAMILLO, JUAN | S | CHFE | 7/30/2013 | 7/30/2013 | VACAT | VACA02 | 89.24 | 09/13/15 | 3.08 | $ | 33.65 | $ | 3,003.10 |
| 01 | 01 | 101 | SKARPHEDINSSON, HEIMIR S. | S | AMGR | 10/17/2014 | 10/17/2014 | VACAT | VACA02 | 24.62 | 09/13/15 | 3.08 | $ | 21.63 | $ | 532.56 |
| 01 | 01 | 101 | HAZLEWOOD, NICHOLAS S. | S | AMGR | 6/29/2015 | 6/29/2015 | VACAT | VACA02 | 3.08 | 09/13/15 | 3.08 | $ | 21.63 | $ | 66.57 |
| 01 | 01 | 101 | MCCLAIN, DANIEL | S | MGR | 7/20/2015 | 7/20/2015 | VACAT | VACA02 | 9.23 | 09/13/15 | 3.08 | $ | 33.65 | $ | 310.66 |
| 01 | 01 | 101 | BARNETT, KENNETH S. | S | AMGR | 1/22/2002 | 1/22/2002 | VACAT | VACA02 | -3.07 | 09/13/15 | 6.15 | $ | 31.25 | $ | (95.94) |
| 01 | 01 | 101 | CASTELAN, HERMINIO R. | S | CHFS | 1/1/2001 | 1/1/2001 | VACAT | VACA02 | 28.93 | 09/13/15 | 6.15 | $ | 22.28 | $ | 644.53 |
| 01 | 01 | 101 | PRUITT, TRINA | S | EVNT | 8/4/2007 | 8/4/2007 | VACAT | VACA02 | 79.72 | 09/13/15 | 4.62 | $ | 19.23 | $ | 1,533.08 |
| 02 | 01 | 102 | KNAPP, DARRELL W. | S | AMGR | 7/6/2015 | 9/3/2014 | VACAT | VACA02 | 12.31 | 09/13/15 | 3.08 | $ | 21.63 | $ | 266.28 |
| 02 | 01 | 102 | MILLER, JEREMEY D. | S | AMGR | 1/26/2009 | 3/25/2013 | VACAT | VACA02 | 30.70 | 09/13/15 | 3.08 | $ | 22.84 | $ | 701.15 |
| 04 | 01 | 104 | TORRES, LUIS | S | CHFS | 3/8/2014 | 3/8/2014 | VACAT | VACA02 | 18.46 | 09/13/15 | 3.08 | $ | 21.63 | $ | 399.42 |
| 04 | 01 | 104 | STUMP, MICHAEL H. | S | AMGR | 6/29/2014 | 7/20/2013 | VACAT | VACA02 | 44.93 | 09/13/15 | 3.08 | $ | 22.84 | $ | 1,025.93 |
| 04 | 01 | 104 | VERGARA, TRAVIS | S | MGR | 5/26/2015 | 5/26/2015 | VACAT | VACA02 | 24.62 | 09/13/15 | 3.08 | $ | 33.65 | $ | 828.42 |
| 04 | 01 | 104 | FLEMING, STEPHEN | S | AMGR | 6/15/2015 | 6/15/2015 | VACAT | VACA02 | -5.54 | 09/13/15 | 3.08 | $ | 24.04 | $ | (133.13) |
| 04 | 01 | 104 | ROBLEDO, RUBEN | S | CHFE | 7/15/2013 | 7/15/2013 | VACAT | VACA02 | 95.39 | 09/13/15 | 3.08 | $ | 26.44 | $ | 2,522.20 |
| 05 | 01 | 105 | BAHENA, MARIA | S | AMGR | 1/13/2014 | 1/13/2014 | VACAT | VACA02 | 78.78 | 09/13/15 | 3.08 | $ | 21.63 | $ | 1,704.29 |
| 05 | 01 | 105 | TORRES, FELIX | S | CHFS | 12/26/2011 | 7/16/1997 | VACAT | VACA02 | 116.93 | 09/13/15 | 6.15 | $ | 19.23 | $ | 2,248.67 |
| 05 | 01 | 105 | CASTORENA, AGUSTIN | S | CHFE | 9/1/1997 | 9/1/1997 | VACAT | VACA02 | 84.93 | 09/13/15 | 6.15 | $ | 37.74 | $ | 3,205.29 |
| 05 | 01 | 105 | SKUBISZ, MICHAEL | S | MGR | 9/26/2011 | 9/26/2011 | VACAT | VACA02 | 114.47 | 09/13/15 | 3.08 | $ | 34.86 | $ | 3,989.77 |
| 05 | 01 | 105 | CASILLO, AMEDEO | S | AMGR | 5/10/2010 | 5/10/2010 | VACAT | VACA02 | 90.16 | 09/13/15 | 4.62 | $ | 25.00 | $ | 2,254.03 |
| 08 | 01 | 108 | KLINE, JASON M. | S | AMGR | 11/26/2001 | 11/26/2001 | VACAT | VACA02 | 99.70 | 09/13/15 | 6.15 | $ | 23.08 | $ | 2,300.68 |
| 08 | 01 | 108 | BRUENGER, ALEX | S | CHFE | 4/22/2013 | 4/22/2013 | VACAT | VACA02 | 75.70 | 09/13/15 | 3.08 | $ | 26.44 | $ | 2,001.60 |
| 08 | 01 | 108 | DIAZ, JOEL J. | S | MGR | 4/9/2006 | 4/9/2006 | VACAT | VACA02 | 103.72 | 09/13/15 | 4.62 | $ | 29.09 | $ | 3,016.86 |
| 08 | 01 | 108 | KAMINSKY, GABRIEL | S | AMGR | 6/3/2013 | 6/3/2013 | VACAT | VACA02 | 61.54 | 09/13/15 | 3.08 | $ | 22.12 | $ | 1,361.05 |
| 09 | 01 | 109 | WORTMANN, RUSS | S | MGR | 11/4/2013 | 1/14/2003 | VACAT | VACA02 | 124.93 | 09/13/15 | 6.15 | $ | 39.13 | $ | 4,889.09 |
| 09 | 01 | 109 | DILLARD, JENNIFER L. | S | AMGR | 11/8/2003 | 11/8/2003 | VACAT | VACA02 | 70.16 | 09/13/15 | 6.15 | $ | 22.50 | $ | 1,578.56 |
| 09 | 01 | 109 | MIJARES, HUGO | S | CHFS | 9/1/2014 | 9/1/2014 | VACAT | VACA02 | 43.08 | 09/13/15 | 3.08 | $ | 22.60 | $ | 973.42 |
| 09 | 01 | 109 | WELLS, PATRICK | S | AMGR | 11/11/2014 | 11/11/2014 | VACAT | VACA02 | 40.62 | 09/13/15 | 3.08 | $ | 22.84 | $ | 927.55 |
| 09 | 01 | 109 | NEANOVER, DARREN | S | CHFE | 4/29/2013 | 2/11/2013 | VACAT | VACA02 | 54.16 | 09/13/15 | 3.08 | $ | 29.57 | $ | 1,601.23 |
| 20 | 01 | 120 | ZAMARRIPA, MICHAEL E. | S | AMGR | 3/1/2013 | 3/1/2013 | VACAT | VACA02 | 52.93 | 09/13/15 | 3.08 | $ | 22.84 | $ | 1,208.65 |
| 20 | 01 | 120 | LOPEZ, GALDINO | S | CHFE | 6/6/2012 | 4/15/2013 | VACAT | VACA02 | 120.00 | xfer | max | $ | 28.85 | $ | 3,461.54 |
| 20 | 01 | 120 | SANDERS, ROYCE E. | S | AMGR | 1/14/2012 | 3/31/2014 | VACAT | VACA02 | 74.16 | 09/13/15 | 3.08 | $ | 22.84 | $ | 1,693.47 |
| 22 | 01 | 122 | CHAVEZ, RICHARD S. | S | CHFE | 8/20/2012 | 8/20/2012 | VACAT | VACA02 | 49.85 | 09/13/15 | 3.08 | $ | 31.25 | $ | 1,557.88 |
| 22 | 01 | 122 | LONG-KREEGER, TANA J. | S | AMGR | 8/4/2014 | 8/4/2014 | VACAT | VACA02 | 30.77 | 09/13/15 | 3.08 | $ | 21.15 | $ | 650.90 |
| 22 | 01 | 122 | WITTIE, STEVE | S | AMGR | 5/22/2002 | 5/22/2002 | VACAT | VACA02 | 164.93 | 09/13/15 | 6.15 | $ | 24.04 | $ | 3,964.66 |
| 22 | 01 | 122 | WINTON, CHRISTIAN J. | S | MGR | 8/29/2011 | 4/21/2014 | VACAT | VACA02 | 102.77 | 09/13/15 | 3.08 | $ | 30.05 | $ | 3,088.10 |
| 01 | 03 | 301 | MADSEN, JUSTIN | S | MGR | 7/1/2013 | 7/1/2013 | VACAT | VACA02 | 113.23 | 09/13/15 | 3.08 | $ | 28.85 | $ | 3,266.28 |
| 01 | 03 | 301 | SIEBEN, GARTH | S | AMGR | 6/15/2015 | 6/15/2015 | VACAT | VACA02 | 18.46 | 09/13/15 | 3.08 | $ | 21.63 | $ | 399.42 |
| 01 | 03 | 301 | NAVA, LUIS | S | CHFH | 8/11/2014 | 8/11/2014 | VACAT | VACA02 | 86.16 | 09/13/15 | 3.08 | $ | 23.08 | $ | 1,988.22 |
| 01 | 03 | 301 | VILLARREAL, ANITA R. | S | AMGR | 10/10/2013 | 10/10/2013 | VACAT | VACA02 | 68.93 | 09/13/15 | 3.08 | $ | 21.15 | $ | 1,458.05 |
| | | | | | | | | | | | | | | | $ | 66,394.05 |
| JS | 07 | 701 | TODD, KRISTY D. | S | MHR | 1/1/2001 | 1/1/2001 | VACAT | VACA02 | 128.93 | 09/13/15 | 6.15 | $ | 46.97 | $ | 6,056.48 |
| JS | 07 | 701 | MARKIDES, DIMITRI L. | S | RMGR | 1/29/2001 | 1/29/2001 | VACAT | VACA02 | 52.93 | 09/13/15 | 6.15 | $ | 45.67 | $ | 2,417.48 |
| JS | 07 | 701 | MCCLURE, MICHELE | S | GDES | 5/23/2011 | 5/23/2011 | VACAT | VACA02 | 52.67 | 09/13/15 | 3.08 | $ | 27.25 | $ | 1,435.18 |
| JS | 07 | 701 | KUBASAK, TIMOTHY J. | S | CNTL | 2/19/2007 | 2/19/2007 | VACAT | VACA02 | 111.72 | 09/13/15 | 4.62 | $ | 47.66 | $ | 5,324.18 |
| JS | 07 | 701 | REED, JOHN L. | S | DOPS | 6/20/2011 | 6/20/2011 | VACAT | VACA02 | 50.47 | 09/13/15 | 3.08 | $ | 63.61 | $ | 3,210.18 |
| JS | 07 | 701 | PAULY, ATHENA | S | EVNT | 8/5/2013 | 8/5/2013 | VACAT | VACA02 | 22.16 | 09/13/15 | 3.08 | $ | 24.04 | $ | 532.64 |
| JS | 07 | 701 | HILL, AMY | H | ADM | 6/27/2011 | 6/27/2011 | VACAT | VACX01 | 8.49 | 09/13/15 | 1.30 | $ | 15.00 | $ | 127.31 |
| | | | | | | | | | | | | | | | $ | 19,103.46 |

**Z'Tejas: APA Schedule**

**3.2(a) - Secured Claims**

**9/25/2015**

| Secured Lender | Claim Amount | Estimated Recovery | Comments |
|---|---|---|---|
| KR Purchased NBAZ Loan | 1,250,000 | > $1,250,000 | |
| Maricopa County - | 9,215 | > $9,214.88 | |

**Z'Tejas: APA Schedule**
**Pending Litigation**
**9/25/2015**

| Vendor Name | Per Z'Tejas Total | Status | Collection Agency/Attorney | Last Communication Date | Per Notices | |
|---|---|---|---|---|---|---|
| State of Texas (Franchise Taxes) | $39,774 | On Hold | | 05/22/15 | $41,763 | A |
| CorVirtus Inc. | 37,500 | On Hold | | | 37,500 | B |
| IMG College, LLC | 18,500 | Collections | Transworld Systems | 03/21/15 | 19,878 | C |
| Albert Uresti/Bexar County | 12,845 | Collections | Linebarger Goggan Blair & Sampson, LLP | 05/14/15 | 16,840 | D |
| Standard Parking | 7,810 | Collections | JNR Adjustment | 05/26/15 | 7,810 | E |
| Arsenal Advertising | 6,500 | On Hold | | | 6,500 | F |
| CPS Energy | 5,250 | Collections | Credit Systems International, Inc. | 05/27/15 | 5,250 | B |
| Cardylytics, Inc. | 4,027 | Collections | Greenberg, Grant & Richards, Inc. | 12/02/14 | 4,027 | G |
| Rocky Mountain Power | 324 | Collections | Express Recovery Services, Inc. | 05/20/15 | 1,485 | I |
| Classic Party Rentals | 0 | On Hold | | 04/30/15 | 1,457 | J |
| **Total** | **132,530** | | | | **142,508** | |

A = Fiscal 2014 franchise taxes for Texas have not yet been paid.
B = The vendor currently supplies the company's hiring tool which is being paid according to terms. The vendor
    is avoiding collection efforts based on the expectation that the balance will be paid upon the sale of the company.
C = These balances relate to former marketing vendors that are no longer used. Balances were placed on hold
D = pending the sale of the company.
    This balance is for 2014 personal property taxes for the closed Z'Tejas La Cantera location.
E = This vendor relates to valet parking charges at the closed Z'Tejas Salt Lake City location. The vendor has
    been on hold pending the potential sale of the company.
    This former marketing partner that was placed on hold. They have been holding off on official collection
F = efforts in hope of earning future business from the company post-sale. We have made an installment
    payment over the last month to encourage them to avoid taking collection actions.
G = Electricity supplier for our closed Z'Tejas La Cantera location. We have made intermittent installment
    payments to avoid legal action from the collection agency.
I = Electricity supplier for our closed Z'Tejas Salt Lake City location. We have made intermittent installment
    payments to avoid legal action from the collection agency.
J = The vendor claims that our Z'Tejas South Coast location did not return rental equipment. We have disputed
    this issue and they have threatened to seek legal recourse.

There are two current issues being handled through the Company's insurance.
i. A slip and fall incident at Bethany Home (#122) on the landlord's property
ii. A guest who injured their finger on a dining room chair at Avery Ranch (#120)

**Z'Tejas: APA Schedule**
**13.1 Excluded Employees**
**9/25/2015**

Steven Michelletti

**Exhibit "A"**

## ASSIGNMENT AND ASSUMPTION OF RESTAURANT LEASE

This Assignment and Assumption of Restaurant Lease (this "***Assignment***") made and entered into as of _____, 2015 by and between [*Insert name of applicable Seller*], each of the foregoing being a Chapter 11 Debtor and Debtor in Possession under Case No. [_____] in the Bankruptcy Court (the "***Assignor***") and _____, a _____ (the "***Assignee***").

Assignors and Assignee acknowledge that:

A.    Assignor is the tenant(s) of certain real property premises located at _____ (the "***Restaurant***") under that certain real property lease dated _____ between such Assignor, as lessee, and _____, as lessor (the "***Landlord***"), as amended _____ (as so amended, the "***Lease***").

C.    Assignor and various Affiliates of Assignor, as Sellers, and Assignee, as Purchaser, have heretofore entered into that certain Asset Purchase Agreement dated May ___, 2015 (the "***Purchase Agreement***").  Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Purchase Agreement.

D.    Concurrently with the mutual execution and delivery of this Assignment, Assignors and Assignee are consummating the Contemplated Transactions.  Assignor and Assignee are executing and delivering this Assignment in satisfaction of certain obligations of Assignor and Purchaser pursuant to Sections 3.2 and 3.3 of the Purchase Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which Assignor and Assignee hereby acknowledge, and intending to be legally bound hereby, Assignors and Assignee hereby agree as follows:

**Assignment**.  Assignor hereby sells, assigns and transfers to Assignee, all interest of Assignors, as tenant(s), in and to the Restaurant and the Lease, a copy of which Lease is attached hereto as ***Exhibit "A."***  Assignor makes no representations and warranties of any kind whatsoever with respect to the Lease.

**Assumption**.  Assignee hereby accepts the foregoing assignment of the Lease, and does hereby assume the duties and obligations of tenant under the Lease, thereunder accruing from and after the Effective Date, and does hereby agree to be bound by and to perform or cause to be performed, as a direct obligation to Landlord, each and all of the terms, conditions, covenants and provisions to be done, kept and performed under such Lease accruing from and after the Effective Date, to the same extent as if Assignee had been an original party thereto.

**Assignee's Indemnification**.  Assignee shall indemnify, defend (with counsel reasonably satisfactory to Assignors) and hold Assignors free, clear and harmless from and against any and

2

all claims, demands, suits, causes of actions, penalties, liabilities, costs, fees and expenses of any kind or nature whatsoever, including, without limitation, reasonable attorneys' fees and costs for the performance or nonperformance of Assignee's obligations under the Lease, which accrued from and after the Effective Date.

**Attorneys' Fees.** In the event that either party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Assignment, the prevailing party in that action or proceeding shall be entitled to have and recover from the non-prevailing party therein all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees through all levels of appeal) as the prevailing party may suffer or incur in the pursuit or defense of such action or proceeding.

**Amendments.** This Assignment may only be amended by a writing signed by both Assignor and Assignee.

**Delivery Pursuant to Purchase Agreement.** Notwithstanding anything to the contrary herein, Assignor and Assignee are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement (including, without limitation, the exclusions set forth in Section 1.2 of the Purchase Agreement, and the acknowledgement and disclaimer set forth in Section 7 thereof).

**Governing Law.** This Assignment shall be governed by and construed and enforced in accordance with the laws of [_____], without giving effect to the conflicts of laws provisions thereof.

**Counterparts**. This Assignment may be executed in separate counterparts, each of which shall be deemed to be an original, but both of which, taken together, shall be deemed one original document.

**Execution in Counterparts.** This Assignment may be executed in counterparts and delivered by the delivery of facsimile signatures; provided, however, that if the parties exchange facsimile signatures, each of them agrees to provide the other with a copy of this Assignment bearing their original signature as soon thereafter as possible.

3

**IN WITNESS WHEREOF**, the parties have executed this Assignment as of the date first written above.

**ASSIGNOR:**

_____, a
_____,
Chapter 11 Debtor and Debtor in
Possession


By:      _____
Name:  _____
Its:      _____

**ASSIGNEE:**

_____,
a _____


By:      _____
Name:  _____
Its:      _____

4

Exhibit "C"


## ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS


This Assignment and Assumption of Leases and Contracts (this "***Assignment***") is entered into as of _____, 2015, by and among _____, a _____ and _____, a _____, each of the foregoing being a Chapter 11 Debtor and Debtor in Possession under Case No. [_____] in the Bankruptcy Court (collectively, the "***Assignors***"), and _____, a _____ (the "***Assignee***").

Assignors and Assignee acknowledge that:

A.      Assignors, as Sellers, and Assignee, as Purchaser, have heretofore entered into that certain Asset Purchase Agreement dated as of May ____, 2015 (the "***Purchase Agreement***").  Except for terms specifically defined herein, the capitalized terms used in this Assignment shall have the same meanings as capitalized terms used in the Purchase Agreement.

B.      Concurrently with the mutual execution and delivery of this Assignment, Assignors and Assignee are consummating the Contemplated Transactions.  Assignors and Assignee are executing and delivering this Assignment in satisfaction of certain obligations pursuant to Sections 3.2 and 3.3 of the Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which Assignors and Assignee hereby acknowledge, Assignors and Assignee hereby agree as follows:

1.      Assignment.  Effective as of the Closing Date, each of the Assignors hereby assigns to Assignee all of its respective right, title and interest in and to the those of the Purchased Contracts described on **Schedule 1** attached hereto and incorporated herein by this reference (collectively, the "***Assigned Contracts***").

2.      Assumption.  Effective as of the Closing Date, Assignee hereby accepts the foregoing assignment and assumes and agrees to be bound by the terms and provisions of the Assigned Contracts and to perform all of Assignors' obligations thereunder to be performed from and after the Closing Date as though Assignee had been the original contracting party thereunder.

3.      Amendments.  This Assignment may only be amended by a writing signed by both Assignors and Assignee.

4.      Execution in Counterparts.  This Assignment may be executed in counterparts and delivered by the delivery of facsimile signatures; *provided, however*, that if the Parties exchange

5

facsimile or electronic pdf signatures, each of them agrees to provide the other with a copy of this Assignment bearing their original signature promptly thereafter.

       5.    <u>Delivery Pursuant to Purchase Agreement</u>.  Notwithstanding anything to the contrary herein, Assignors and Assignee are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement (including, without limitation, the acknowledgement and disclaimer set forth in Section 7 of the Purchase Agreement).

       6.    <u>Governing Law</u>.  This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of [_____].

6

IN WITNESS WHEREOF, Assignors and Assignee have executed this Assignment as of the day and year first set forth above.

**ASSIGNORS:**

_____, a
_____ and
Debtor and Debtor in Possession


By: _____
Name: _____
Its: _____


_____, a
_____ and
Debtor and Debtor in Possession


By: _____
Name: _____
Its: _____


**[INSERT SIGNATURE BLOCKS FOR ALL APPLICABLE ASSIGNORS]**


**ASSIGNEE:**

_____,
a _____

By: _____
Name: _____
Its: _____

**Exhibit "D"**

## BILL OF SALE AND ASSIGNMENT

Reference is hereby made to that certain Asset Purchase Agreement, dated May ___, 2015 (the "***Purchase Agreement***"), by and among _____, a _____ and _____, a _____, each of the foregoing being a Chapter 11 Debtor and Debtor in Possession under Case No. [_____] in the Bankruptcy Court (collectively, the "***Sellers***") and _____, a _____ (the "***Purchaser***"). Except for terms specifically defined in this Bill of Sale and Assignment, all capitalized terms used in herein shall have the same meanings as such terms have when utilized in the Purchase Agreement.

For good and valuable consideration, the receipt and sufficiency of which Sellers hereby expressly acknowledge, each of the Sellers hereby sells, transfers, assigns and delivers to Purchaser all of its respective right, title and interest in and to the Purchased Assets.

Notwithstanding anything to the contrary herein, Sellers are executing and delivering this Bill of Sale and Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement (including, without limitation, the acknowledgement and disclaimer set forth in Section 7 of the Purchase Agreement).

**IN WITNESS WHEREOF**, Sellers have caused this Bill of Sale and Assignment to be executed as of the _____ day of _____, 2015.

**SELLERS:**

_____, a
_____ and
Debtor and Debtor in Possession

By:     _____
Name: _____
Its:     _____

_____, a
_____ and
Debtor and Debtor in Possession

By:     _____
Name: _____
Its:     _____

**[INSERT SIGNATURE BLOCKS FOR ALL APPLICABLE ASSIGNORS]**

**Exhibit "E"**

## ASSIGNMENT OF INTANGIBLE PROPERTY

_____, a _____ and _____ _____, a _____, each of the foregoing being a Chapter 11 Debtor and Debtor in Possession under Case No. [_____] in the Bankruptcy Court (collectively, the "***Assignors***") are executing this Assignment of Intangible Property Assets (this "***Assignment***") in favor of _____ (the "***Assignee***"), with respect to the following facts and circumstances:

(A)     Assignors and Assignee have heretofore entered into that certain Asset Purchase Agreement dated as of May ___, 2015 (the "***Purchase Agreement***").   Except for terms specifically defined in this Assignment, the capitalized terms used in this Assignment shall have the same meanings as such terms when used in the Purchase Agreement.

(B)     Concurrently with the execution and delivery of this Assignment, Assignors and Assignee are consummating the transactions contemplated by the Purchase Agreement.  Pursuant to the Purchase Agreement, Assignors are required to execute and deliver this Assignment at the Closing.

**NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION**, the receipt and sufficiency of which Assignors hereby expressly acknowledge, each of the Assignors hereby assigns, conveys, transfers and sets over unto Assignee, all of its respective right, title and interest, if any, in and to all Intangible Property Assets.  This Assignment shall inure to the benefit of, and be binding upon, the successors, executors, administrators, legal representatives and assigns of Assignors and Assignee.

Notwithstanding anything to the contrary herein, Assignors are executing and delivering this Assignment in accordance with and subject to all of the terms and provisions of the Purchase Agreement (including, without limitation, the acknowledgement and disclaimer set forth in Section 7 of the Purchase Agreement).

This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of [_____].

**IN WITNESS WHEREOF**, Assignors and Assignee have executed this Assignment as of the ___ day of _____, 2015.

**ASSIGNORS:**

_____, a
_____ and
Debtor and Debtor in Possession

By: _____
Name: _____
Its: _____

_____, a
_____ and
Debtor and Debtor in Possession

By: _____
Name: _____
Its: _____

**[INSERT SIGNATURE BLOCKS FOR ALL APPLICABLE ASSIGNORS]**

**ASSIGNEE:**

_____,
a _____

By: _____
Name: _____
Its: _____

*[SIGNATURE PAGE TO ASSIGNMENT OF INTANGIBLE PROPERTY]*

**Exhibit "F"**

## ASSUMPTION AGREEMENT

This Assumption Agreement (this "***Assumption***") is entered into as of this _____ day of May, 2015, by _____, a _____ (the "***Purchaser***") in favor of _____, a _____ and _____, a _____, each of the foregoing (other than Purchaser) being a Chapter 11 Debtor and Debtor in Possession under Case No. [_____] in the Bankruptcy Court (the "***Sellers***").  This Assumption is entered into with respect to the following facts and circumstances:

A.     Sellers and Purchaser have heretofore entered into that certain Asset Purchase Agreement dated May ____, 2015 (the "***Purchase Agreement***").  Except for terms specifically defined herein, the capitalized terms used in this Assumption shall have the same meanings as capitalized terms used in the Purchase Agreement.

B.     Concurrently with the execution and delivery of this Assumption, Purchaser and Sellers are consummating the transactions contemplated by the Purchase Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which Purchaser hereby acknowledges, Purchaser hereby agrees as follows:

1.     <u>Assumption</u>.  Effective as of the Closing Date, Purchaser hereby assumes and agrees to perform all of the Assumed Liabilities in accordance with their terms as expressed in the Purchase Agreement.

2.     <u>Amendments</u>.  This Assumption may only be amended by a writing signed by both Purchaser and Sellers.

3.     <u>Governing Law</u>.  This Assumption shall be governed by and construed and enforced in accordance with the laws of the State of [_____].

4.     <u>Execution in Counterparts</u>.  This Assumption may be executed in counterparts and delivered by the delivery of facsimile signatures; *provided, however*, that if the Parties exchange facsimile or electronic pdf signatures, each of them agrees to provide the other with a copy of this Assumption bearing their original signature  promptly thereafter.

IN WITNESS WHEREOF, Purchaser has executed this Assumption as of the day and year first set forth above.

**PURCHASER:**

_____,
a _____

By: _____
Name: _____
Its: _____

**Exhibit "G"**

<u>**MANAGEMENT AGREEMENT**</u>

**U.S. BANKRUPTCY COURT APPROVED**
# MASTER INTERIM MANAGEMENT AGREEMENT

BETWEEN

## [NAME]

AND

### Z'Tejas Holdings,Inc.
**AND EACH AFFILIATE THEREOF LISTED BELOW**

Pursuant to that certain *Order: [NAME OF SALE ORDER]* **[Docket No. #]**, dated **[DATE]**, 2015, and issued by the United States Bankruptcy Court for the District of Arizona (the "***Bankruptcy Court***") in Case No. **[#]** (the "***Sale Order***"), this Master Interim Management Agreement (this "***Agreement***") is entered into by and between **[NAME]** ("***Manager***"), Z'Tejas Holdings, Inc. and its undersigned affiliates (collectively, "***Debtors***" or "***Concessionaires***"), effective as of the closing date of the transactions contemplated by the Asset Purchase Agreement (as defined below) (the "***Effective Date***").

     **WHEREAS**, Debtors and **[NAME]** ("***Buyer***") have executed that certain Asset Purchase Agreement, dated as of **[DATE]**, 2015; a true and correct copy of the Asset Purchase Agreement without Schedules or Exhibits is attached to this Agreement as <u>Exhibit A</u> (the "***Asset Purchase Agreement***").[a] Pursuant to the Assignment and Assumption Agreement dated **[DATE]**, Buyer assigned all of its rights and obligations under the Asset Purchase Agreement to Manager. As a consequence, pursuant to the Sale Order, on the Effective Date, Manager has either (i) purchased from Debtors out of bankruptcy, and now owns, substantially all the assets at each restaurant listed on Schedule 1 to this Agreement (each a "***Restaurant***" and collectively the "***Restaurants***") or (ii) designated as Designation Rights Assets (as defined in the Asset Purchase Agreement) substantially all the assets at each Restaurant.

     **WHEREAS**, each Restaurant is a casual-dining restaurant including the (i) on-premise sale and consumption of beer, wine, and/or distilled spirits under the respective Liquor Licenses in the name of a Debtor listed on Schedule 2 to this Agreement (each a "***Liquor License***" and collectively the "***Liquor Licenses***") and/or (ii) sale of food under the respective permits in the name of a Debtor listed on Schedule 3 hereto (each a "***Permit***" and collectively the "***Permits***").

     **WHEREAS**, both Debtors and Manager desire the operation of each of the Restaurants to continue without interruption until (i) Manager, with respect to each Restaurant listed on Schedule 4 attached hereto and incorporated herein by this reference, where substantially all of the assets were purchased by Manager under the Asset Purchase Agreement (each a "***Purchased Restaurant***" and collectively the "***Purchased Restaurants***"), obtains from the relevant state and/or local government regulatory authorities the Liquor License Approvals and/or Permits, as applicable, at such Purchased Restaurant in its name either through transfer or initial application or (ii) Manager, with respect to each Restaurant listed on Schedule 5 attached hereto and incorporated herein by this reference, where substantially all of the assets were designated by Manager as Designation Rights Assets under the Asset Purchase Agreement (each a "***Designation Rights Restaurant***" and collectively the "***Designation Rights Restaurants***"), designates the Designation Rights Assets at such Designation Rights Restaurant as Excluded Assets in accordance with Section 2.7(c)(iv) of the Asset Purchase Agreement.

     **WHEREAS** the Bankruptcy Court has directed through the Sale Order that:

---

[a] Capitalized terms not otherwise defined in this Agreement have the meanings ascribed to them in the Asset Purchase Agreement.

1

Specifically, with regard to the sale of alcohol beverages and food at any of the restaurant business properties encompassed by the Purchased Assets (including any Designation Rights Asset that is deemed a Purchased Asset pursuant to Section 2.7(c) of the Asset Purchase Agreement), the Court hereby orders that the Debtors and all other parties in interest shall cooperate with and support the Manager in executing such applications and furnishing such documents as are necessary for the Manager to obtain, in its name, any such temporary new alcohol beverage license, Liquor License Approvals, transferred Liquor License, and/or other licenses, registrations, qualifications, and permits necessary to continue operation of the Business without interruption. Moreover, except for good cause based on any alleged violations of Law (other than alleged violations based on the transfer of ownership of the Business occurring pursuant to the Asset Purchase Agreement and this Sale Order) each of the state or municipal government agencies regulating restaurants and the sale of food and alcoholic beverages at restaurants shall not interrupt the Business conducted at any of the restaurant business properties listed on Schedule [#], including the sale of alcoholic beverages and food by the Manager either on its own behalf, or on behalf of one or more of the Debtors pursuant to a duly executed Management Agreement, without first obtaining relief from this Court. The Manager may continue to operate at each of the restaurant business properties identified on Schedule [#] under existing Liquor Licenses, state food service licenses, local occupational licenses, and any other licenses, registrations, qualifications or permits needed to operate at any of those restaurant business properties, with no interruption of the business conducted at any such premises, until the Liquor License Approvals have been secured and other licenses, registrations, qualifications and permits have been transferred to the Manager, or new alcohol beverage licenses and other licenses and permits have been issued to the Manager.

**NOW, THEREFORE**, for and in consideration of the sum of Ten Dollars ($10.00) paid in hand, and other good and valuable consideration as provided herein and in the Asset Purchase Agreement, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do agree as follows:

1. The "Term" shall commence on the Effective Date and shall terminate, (i) for each Purchased Restaurant, upon the earliest of: (a) Manager's receipt via transfer from the Debtors or through initial application for license issuance from the pertinent state and/or local regulatory authority(ies) of each Liquor License Approval and Permit for said Restaurant, (b) the date and time that Debtors receive written notice of termination from Manager, or (c) one (1) year from the Effective Date (unless this Agreement is otherwise terminated prior to the earliest of such dates pursuant to the terms hereof or by mutual agreement of the parties), and (ii) for each Designation Rights Restaurant, when the Designation Rights Assets at such Designation Rights Restaurant become Excluded Assets in accordance with Section 2.7(c) of the Asset Purchase Agreement.

2. During the Term, Manager hereby grants to Debtors the continued right of occupancy for providing food and alcohol beverage service and related operations pursuant to each Liquor License and Permit at its respective Restaurant, including legal access to and full use of each licensed premises associated with each such Liquor License and Permit, in accordance with the provisions set forth below (the "*Concession*"). Pursuant to the Concession, Debtors acting pursuant to the Concession shall remain the licensed retailers of alcohol beverages and/or food for the Restaurants, as applicable, and in such capacity shall, at no cost, expense or Liability (as defined below) to Debtors, manage, control, and operate the Restaurants in a manner similar to the manner in which it operated the Restaurants prior to the Effective Date. For the duration of the Concession, each Concessionaire hereby appoints Manager to assist with operation of the Restaurants pursuant to the Concession. Pursuant to its appointment and subject to the following sentence concerning revenues derived from the sale of alcohol beverages, Manager shall be entitled to collect and to retain all revenues generated by the Restaurants during the Term (the "*Revenues*") for the purpose of paying all costs, expenses, liabilities, and obligations pursuant to this Agreement and in accordance with the Asset Purchase Agreement (individually a "*Liability*" and collectively the "*Liabilities*") arising out of, related to, or associated with the Restaurants during the Term; provided that Concessionaire shall use commercially reasonable efforts to minimize such Liabilities. Notwithstanding the foregoing, during the Term, Concessionaires shall collect and retain pursuant to the Concession all Revenues related to the sale of alcohol beverages at the Restaurants set forth on Schedule 6 (the "*Specified Restaurants*"), and shall be responsible for and obligated to pay all costs, expenses, liabilities, and obligations with respect to the sale of alcohol beverages at the Specified Restaurants, provided, however, if such Revenues are not enough to pay for such costs, expenses, liabilities, and obligations, Manager shall, immediately upon written request from Concessionaires, advance for the benefit of Concessionaires an amount equal to the difference of the sum of such costs, expenses, liabilities and obligations less such Revenues, which shall in turn be offset from future Revenues collected during the Term. The Revenues (less the costs, expenses, liabilities and obligations set forth in the preceding sentence) from the sale of

alcohol beverages at each Specified Restaurant, if any, shall be deposited by Concessionaire, either directly or through its Manager, into an escrow account to be established as promptly as practicable after the date of this Agreement on terms reasonably acceptable to Manager and Concessionaire, which escrow account shall provide that such net Revenues shall be released at the expiration of the Term for such Specified Restaurant to (i) Manager if Manager has received all requisite Liquor License Approvals for such Specified Restaurant and (ii) Concessionaires in all other circumstances. Notwithstanding anything contained herein to the contrary, all employees of the Restaurants shall be retained by and be employees of the Manager.

3. For valuable consideration received, and in order to induce Concessionaires to enter into this Agreement, Concessionaires and Manager covenant, agree, warrant, and represent that the following are now true and shall remain true throughout the Term, which covenants, agreements, representations, and warranties shall survive the termination of this Agreement:

(a) Concessionaires shall have no duties or responsibilities under the Concession or this Agreement other than those specified herein and no implied obligations whatsoever (other than to act in good faith) shall be read into this Agreement and nothing herein shall at any time obligate any Concessionaire to take any action whatsoever which such Concessionaire may in good faith, after consultation with outside counsel, believe would constitute a violation of any applicable law or regulation.

(b) Neither Concessionaires, nor any of their Affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, direct or indirect equity-holders, successors, predecessors and assigns, will be liable to Manager for, and Manager releases and forever discharges Concessionaires and their Affiliates, employees, officers, directors, managers, members, partners, independent contractors, representatives, agents, attorneys, direct or indirect equity-holders, successors, predecessors and assigns from, any and all claims, liabilities, actions, suits, judgments, losses, injuries, damages, costs and expenses arising out of or connected with any act or omission of Concessionaires, or their Affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, direct or indirect equity-holders, successors, predecessors and assigns pursuant to this Agreement or with respect to the performance of Concessionaires' obligations under this Agreement, except for claims arising out of such Person's gross negligence, fraud, willful misconduct or intentional breach hereof;

(c) Other than with respect to the gross negligence, fraud, willful misconduct or intentional breach of this Agreement of the Concessionaire Indemnified Parties (as defined below), Manager agrees to indemnify, defend and hold harmless and discharges Concessionaires and their Affiliates, employees, officers, directors, managers, members, partners, independent contractors, representatives, agents, attorneys, direct or indirect equity-holders, successors, predecessors and assigns (collectively, the "*Concessionaire Indemnified Parties*") from and against any and all claims, actions, demands, judgments, losses, costs, expenses, damages and liabilities (including attorneys' fees and other expenses of litigation) arising out of or resulting from (i) any escrow arrangement entered into by Concessionaires pursuant to Section 2 hereof and/or (ii) such Concessionaire Indemnified Parties' performance under or activities in connection with this Agreement;

(d) During the Term, all purchases and services rendered with respect to Concessionaires' operation of the Restaurants pursuant to the Concession shall be in the name of the Manager (or Debtors with respect to Designation Rights Assets as provided in the Asset Purchase Agreement), including, without limitation, all utility service and all accounts for the purchase of inventory. The foregoing notwithstanding, purchases of alcohol beverage inventory for the Restaurant made during the Concession shall be made by Concessionaires on behalf of Manager and in the name of Concessionaires as provided below, such purchases to be paid for in full from the Revenues (or Manager to the extent that the Revenues are insufficient to pay for such purchases); and

(e) Nothing in this Agreement or the Asset Purchase Agreement shall be deemed to be a transfer of any Liquor Licenses and Permits unless and until such transfer is duly approved by all applicable Governmental Bodies having applicable licensing authority, and each Liquor License and Permit is issued in the name of Manager or its designee. Notwithstanding the foregoing, Manager agrees to, during the entire Term: (i) pay for all applicable annual license fees and/or license renewal fees due to the licensing

authorities as of and after the Effective Date in connection with the maintenance of each Liquor License and Permit; and (ii) provide all funds necessary to maintain each Liquor License and Permit in full force and effect (including the providing of letters of credit and/or bonds as required by the various Governmental Bodies). If prior to the issuance of all Liquor License Approvals and Permit, one or more of the Liquor Licenses or Permits are required to be renewed or otherwise require action by the licensee or permittee of record to fulfill any administrative or legal responsibility associated with said Liquor License(s) or Permit(s), subject to Manager funding all costs and Liabilities in connection therewith, Concessionaires agree to cooperate, in all commercially reasonable respects, with and use commercially reasonable efforts to facilitate the filing of state and/or local license renewal applications of any such Liquor License or Permit so as to secure the continued ability to sell and serve alcohol beverages and food at the Restaurants to the extent allowed by applicable Law, provided, however, that Manager shall pay any license fees and expenses required to be paid as part of such renewals or actions (including the providing of letters of credit and/or bonds as required by the various Governmental Bodies).

4.    Concessionaires agree that all equipment, facilities and personal property necessary for operating the Restaurants including, without limitation, glassware, dishwashing equipment, dispensing equipment, barware, pouring devices, storage areas and facilities, and cash registers shall be owned and maintained by Manager (or Debtors with respect to Designation Rights Assets as provided in the Asset Purchase Agreement), and shall be insured during the term of this Agreement for the benefit of Manager in accordance with this Agreement and the Asset Purchase Agreement (all such costs with respect to such insurance (including any premiums) to be paid for by Manager, except to the extent that net Revenues for the Specified Restaurants are sufficient to pay for such costs with respect to the Specified Restaurants).

5.    All alcohol beverages to be served at the Restaurants shall be purchased by Concessionaires (or Debtors with respect to Designation Rights Assets as provided in the Asset Purchase Agreement) and in the name of Concessionaires as the holders of the Liquor Licenses for the Restaurants. Without limiting any other term of this Agreement, Revenues will be used to pay for all alcohol beverages sold and served at the Restaurants, as well as for Manager's costs and expenses in operating the Restaurants (excluding the Specified Restaurants) under Concessionaires' supervision pursuant to this Agreement, provided, however, if such Revenues are not sufficient to pay for such costs, expenses, liabilities, and obligations with respect to the alcohol beverages sold and served at the Restaurants, Manager shall, promptly following the written request by Concessionaire, advance to Concessionaires an amount equal to the difference of the sum of such costs, expenses, liabilities and obligations less such Revenues, which advance shall be offset from future Revenues collected during the Term. All alcohol beverage purchases shall be made in customary fashion, and, to the extent required by local law, Concessionaires shall maintain a checking account in the name of the holder of the Liquor License and/or Permit, as applicable. Notwithstanding anything to the contrary in this Agreement, Manager hereby acknowledges that Concessionaires give no assurance whatsoever that the arrangements set forth in this Agreement will cause the operations of the Restaurants during the Term to comply with applicable laws.

6.    During the full Term hereof, Manager shall keep in full force and effect: (a) commercial general liability insurance (issued by an insurer reasonably satisfactory to Concessionaires) with limits of at least $1,000,000.00 per occurrence for personal injury and death and property damage, which shall, among other risks, include coverage against all claims arising out of alleged liquor law or dram shop liability, and such commercial general liability policy shall name Concessionaires as additional insureds for so long as Concessionaires hold the Liquor Licenses and Permits; (b) any bonds or financial instruments required by any Liquor License or governing authority responsible for issuing such Liquor License; and (c) worker's compensation insurance as required by law. During the full Term hereof, Concessionaires shall use commercially reasonable efforts (but at no cost or expense to any Concessionaire) to: (i) keep each Liquor License and Permit in full force and effect; and (ii) to the extent that Concessionaires' obligations under this Agreement are insurable, maintain commercial general liability insurance for the benefit of Manager insuring Concessionaires' obligations under this Agreement, in accordance with Concessionaires' standard corporate insurance policies, processes and procedures (all such costs with respect to such insurance (including any premiums) to be paid for by Manager, except to the extent that net Revenues for the Specified Restaurants are sufficient to pay for such costs with respect to the Specified Restaurants).

7.    In the event that either party violates:  (a) any condition of this Agreement other than those related to Legal Requirements (as defined below) and such violation remains uncured for five (5) business days after notice

thereof to the violating party or (b) any Legal Requirement (i) after issuance of a final decision is either not appealed or is upheld on appeal, or (ii) upon the issuance of a second citation alleging a violation of any Legal Requirement prior to a finding as per (i) hereof, where there is a finding of the applicable authority adverse to Concessionaires or Manager, the non-violating party shall have the right to terminate this Agreement immediately after five (5) business days' written notice to the violating party, provided that, if a violation of subparagraph (b)(i) or (b)(ii) above would not constitute a crime under applicable law and can be cured by payment of a fine or otherwise, the non-violating party may not terminate this Agreement if the violating party cures such violation within the earlier to occur of (i) the time required by law or set forth in the citation, or (ii) ten (10) business days after such decision is upheld on appeal, or if no appeal is filed, the last day permitted for filing an appeal.  Upon the issuance to Manager of the required transferred or newly-issued Liquor License Approvals or Permits for a Purchased Restaurant, Concessionaires shall (i) deliver promptly the original Liquor Licenses or Permits, as the case may be, for such Purchased Restaurant to Manager or to the pertinent Governmental Body, (ii) notify the pertinent Governmental Body that it is surrendering the original Liquor License(s) or Permit(s), as the case may be, and desires that they be canceled, and/or (iii) take such other action with respect to the pertinent Governmental Body as it may desire to effect and confirm the cancellation of the original Liquor License(s) or Permit(s), as the case may be and as if it had actually surrendered the original Liquor License(s) or Permit(s); provided that, the foregoing notwithstanding, (i) Manager shall retain to the fullest extent allowed by applicable Laws the right to sell and transfer to a legally qualified purchaser any Liquor License once Manager secures the appropriate Liquor License Approval pursuant to applicable Legal Requirements, and (ii) upon Manager's written request, Concessionaires shall use commercially reasonable efforts (but at no cost or expense to any Concessionaire)  to cooperate with Manager sell and transfer such Liquor License(s) designated by Manager and held by Concessionaires to one or more third parties identified by Manager to the extent that such sale and transfer is permitted by applicable Legal Requirements, and the proceeds of any such sale and transfer shall inure to Manager.  "Legal Requirements" shall mean and include all those Laws applicable to maintaining each relevant Liquor License and obtaining its respective Liquor License Approval.

8.  Time is of the essence in this Agreement.  Manager agrees to work diligently to secure the Liquor License Approvals at the Purchased Restaurants and all necessary authorizations, consents and approvals to transfer the Permits at the Purchased Restaurants in its name, and Concessionaires agree to cooperate in reasonable respects with Manager at Manager's sole cost and as reasonably may be necessary.

9.  This Agreement shall be construed and interpreted in accordance with the laws of the State of California.

10.  This writing contains the entire agreement between the parties hereto with respect to the subject matter of this Agreement, and all negotiations or prior understandings are merged herein. No modification or amendments to this Agreement shall be effective unless in writing and signed by each party hereto.

11.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their successors, assigns, transferees, personal representatives, executors, and heirs, provided that no party may assign any of its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld.

12.  Nothing contained herein shall be construed as to constitute the relationship hereby created as an employment, an agency, partnership, or a joint venture, Concessionaires having no authority to make any binding agreement or commitment on behalf of Manager.

13.  Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court; provided, however, that if the Bankruptcy Cases have closed or the Bankruptcy Court refuses to exercise jurisdiction, the parties hereto agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the District of Arizona and any appellate court thereof, for the resolution of any such claim or dispute.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute

brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

6

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the dates set forth below to be effective as of the latest date set forth below (previously defined as the "Effective Date").

<u>DEBTORS/CONCESSIONAIRES:</u>

Z'TEJAS HOLDINGS, INC.

By: _____
    Name:
    Title:
    Date: _____

Z'TEJAS, INC.

By: _____
    Name:
    Title:
    Date: _____

Z'TEJAS GP, LLC

By: _____
    Name:
    Title:
    Date: _____

Z'TEJAS LP, LLC

By: _____
    Name:
    Title:
    Date: _____

Z'TEJAS RESTAURANT HOLDINGS, LP

By: _____
    Name:
    Title:
    Date: _____

Z'TEJAS 6TH STREET, LLC

By: _____
    Name:
    Title:
    Date: _____

Z'TEJAS SCOTTSDALE, LLC

By: _____
    Name:
    Title:
    Date: _____

*[SIGNATURE PAGE TO MASTER INTERIM MANAGEMENT AGREEMENT]*

DOCS_SF:87693.1 98003/001

**Z'TEJAS OF ARBORETUM, LLC**

By: _____
      Name:
      Title:
      Date: _____

**Z'TEJAS GRILL GATEWAY, LLC**

By: _____
      Name:
      Title:
      Date: _____

**Z'TEJAS SUMMERLIN, LLC**

By: _____
      Name:
      Title:
      Date: _____

**Z'TEJAS TEMPLE, LLC**

By: _____
      Name:
      Title:
      Date: _____

**Z'TEJAS CHANDLER, LLC**

By: _____
      Name:
      Title:
      Date: _____

**Z'TEJAS BELLVUE, LLC**

By: _____
      Name:
      Title:
      Date: _____

**Z'TEJAS COSTA MESA, LLC**

By: _____
      Name:
      Title:
      Date: _____

**Z'TEJAS SALT LAKE CITY, LLC**

By: _____
      Name:
      Title:
      Date: _____

*[SIGNATURE PAGE TO MASTER INTERIM MANAGEMENT AGREEMENT]*

DOCS_SF:87693.1 98003/001

Z'TEJAS AVERY RANCH, LLC

By: _____
      Name:
      Title:
      Date: _____

Z'TEJAS LA CANTERA, LLC

By: _____
      Name:
      Title:
      Date: _____

Z'TEJAS, BETHANY HOME, LLC

By: _____
      Name:
      Title:
      Date: _____

TACO GUILD OSBORN LLC

By: _____
      Name:
      Title:
      Date: _____

*[SIGNATURE PAGE TO MASTER INTERIM MANAGEMENT AGREEMENT]*

DOCS_SF:87693.1 98003/001

MANAGER:

**[NAME]**


By:      _____
        Name:
        Title:
        Date: _____

*[SIGNATURE PAGE TO MASTER INTERIM MANAGEMENT AGREEMENT]*
Case 2:15-bk-09178-PS    Doc 175    Filed 09/29/15    Entered 09/29/15 11:40:15    Desc
DOCS_SF:87693.1 98003/001      Main Document     Page 119 of 127

## SCHEDULE 1

**Restaurants**

**SCHEDULE 2**

**Liquor Licenses**

**SCHEDULE 3**

**Permits**

## SCHEDULE 4

## Purchased Restaurants

None.

**SCHEDULE 5**

**Designation Rights Restaurants**

**SCHEDULE 6**

**Specified Restaurants**

None.

**EXHIBIT A**

**Asset Purchase Agreement**

[Attached.]

Exhibit "H"

Form of Sale Order

[To Be Attached]

Exhibit "I"

Form of Procedures Order

[To Be Attached]