8. **CONSTRUCTION.**

      8.1.    <u>Architectural Document Submission</u>. Within sixty (60) days of the Lease Date (in regard to the initial construction of improvements by Tenant), and in all events, at least sixty (60) days prior to commencing construction and at least sixty (60) days prior to making any alterations, additions or modifications to the Premises, Tenant shall submit to Landlord the Architectural Documents. The Architectural Documents are subject to the approval of Landlord which approval will not unreasonably be withheld or delayed. If disapproved, Landlord shall notify Tenant in writing within twenty-one (21) days from Landlord's receipt specifying in what respects the Architectural Documents were not acceptable. If Landlord does not notify Tenant of Landlord's disapproval within the aforementioned twenty-one (21) day period, then Tenant may send a "Wakeup Notice" to Landlord and if, within seven (7) days after the date the "Wakeup Notice" is received, Landlord still does not give written notice of disapproval, such Architectural Documents shall be deemed approved. If Landlord does notify Tenant of Landlord's disapproval, then Tenant may modify the Architectural Documents as required by Landlord and resubmit the same. Upon resubmission of such modified Architectural Documents, if Landlord does not give written notice of disapproval to Tenant within fourteen (14) days after receipt thereof by Landlord and, thereafter, Tenant sends a "Wakeup Notice" to Landlord and if, within seven (7) days after the date the "Wakeup Notice" is received, Landlord still does not give written notice of disapproval, such modified Architectural Documents shall be deemed approved. If Tenant is unwilling to modify the Architectural Documents as required by Landlord, the parties shall meet and attempt to resolve the disputed items, and if they are unable so to do, this Lease is subject to termination by either Landlord or Tenant by written notice to the other.

      8.2.    <u>Plans and Specifications</u>. Once the Architectural Documents have been approved by Landlord, Tenant shall, as soon as reasonably possible, with all commercially reasonable diligence, cause plans and specifications to be prepared in accordance with the approved Architectural Documents. Once the plans and specifications have been prepared, Tenant shall promptly submit the same to the City, use reasonable efforts to obtain the City's approval thereof and to commence construction as soon as reasonably possible (but in no event more than thirty (30) days) after the plans and specifications have been approved by the City.

      8.3.    <u>Construction</u>. Once commenced, construction shall be completed with reasonable diligence subject to extension by reason of the occurrence of an Excusable Delay. "Completion" shall be deemed to have occurred upon the issuance of Certificate of Occupancy or similar certificate or permit by the City. All work shall be performed at Tenant's sole cost and expense and in a good and workmanlike manner, in substantial accordance with the Architectural Documents and the final plans and specifications and shall comply with all applicable governmental permits, laws, ordinances and regulations. As soon as reasonably possible following completion, Tenant shall provide Landlord with a complete set of as-built plans and an as-built survey.

      8.4.    <u>Ownership Improvements</u>. All improvements constructed upon the Premises shall be owned by Tenant until expiration or sooner termination of this Lease. Upon the expiration or sooner termination of this Lease, all improvements shall be deemed to be conveyed by Tenant to Landlord and shall become Landlord's property without compensation or other payment and Tenant shall not later than the expiration or sooner termination of this Lease

cause such improvements to be free and clear of any mortgages or other claims and/or liens of any kind or nature whatsoever.

8.5. **Landlord's Non-Responsibility.** Tenant acknowledges that Landlord has no obligation, duty or responsibility of any kind or nature with respect to any construction of improvements of any kind or nature on the Premises and Tenant shall permit Landlord to post notices of non-responsibility on the Premises at any time and from time to time. In addition, Tenant shall insert in its construction contract with its general contractor a provision pursuant to which such general contractor acknowledges for and on its own behalf and on behalf of all of its subcontractors, suppliers and others who might otherwise be entitled to assert a lien on the Premises that no such lien rights exist and such contractor on its own behalf and on behalf of others who might otherwise be entitled to subject the Premises to a lien acknowledge that they must look solely and exclusively to Tenant and/or to Tenant's interest in the Premises for payment of any and all costs of any kind or nature directly or indirectly related to the Premises and/or to the work performed on the Premises.

8.6. **Signage.** Subject to the approval of the City, signage for the Premises shall be in accordance with the signage plan submitted to and approved by Landlord and there may be no further signage placed upon the Premises or upon the project by Tenant.

9. **REPAIR AND MAINTENANCE.**

9.1. **Tenant's Repairs.** Tenant shall at its own expense make any and all repairs and replacements which may be necessary or required so that the Premises are at all times in good order, condition, and repair, ordinary wear and tear excepted.

9.2. **Conformity with Law.** Tenant shall at Tenant's cost promptly and properly observe and comply with all present and future ordinances, rules, directions, regulations, laws and ordinances which relate in any way to the Premises.

10. **MECHANIC'S LIENS.** Tenant shall pay all costs and charges for any and all work done by or for it or by persons claiming under it on the Premises or in connection with Tenant's occupancy thereof, and Tenant shall keep the Premises free and clear of all mechanics' liens and other liens on account of work done for Tenant or persons claiming under it. Tenant agrees to and shall indemnify, defend with counsel reasonably acceptable to Landlord and hold Landlord and any Mortgagee harmless against liability, loss, damages, costs, and all other expenses, including reasonable attorneys' fees, on account of such claims of lien. Tenant shall immediately upon such lien being filed, pay the same or procure a bond pursuant to A.R.S. §33-1004 so as to cause the lien to be removed from the Premises to the extent that the statute, as such statute may be amended, restated or replaced, so provides for such removal.

11. **UTILITIES.** Tenant shall pay when due all charges for water, gas, sewage, electricity, telephone and other utility service supplied to and used by Tenant and/or by persons claiming by, through or under Tenant on the Premises.

12. **HAZARDOUS SUBSTANCES.**

12.1. **Release.** Tenant shall not use or allow the Premises to be used for the release, storage, use, treatment, disposal, or other handling of any Hazardous Substance, without the prior written consent of Landlord. The term "Release" shall have the same meaning

as is ascribed to in the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. §9601 et seq., as amended ("CERCLA"). The term "Hazardous Substance" means (i) any substance defined as a "hazardous substance" under CERCLA, (ii) petroleum, petroleum products, natural gas, natural gas liquids, liquefied natural gas, and synthetic gas, and (iii) any other substance or material deemed to be hazardous, dangerous, toxic, or a pollutant under any federal, state or local law, code, ordinance or regulation, existing now or in the future ("HazMat Laws"). Notwithstanding anything set forth herein to the contrary, Tenant shall be permitted to stock in such quantities as are customary for Tenant at the Premises and use normal household, and janitorial cleaning materials which may contain hazardous materials, provided such stocking and usage is in accordance with HazMat Laws.

12.2. <u>Compliance</u>. Tenant shall: (a) give prior written notice to Landlord of any activity or operation to be conducted by Tenant at the Premises which involves the Release, use, handling, generation, treatment, storage, or disposal of any Hazardous Substance ("Tenant's Hazardous Substance Activity"), (b) comply with all federal, state, and local laws, codes, ordinances, regulations, permits and licensing conditions governing the Release, discharge, emission, or disposal of any Hazardous Substance and prescribing methods for or other limitations on storing, handling, or otherwise managing Hazardous Substances, (c) at its own expense, promptly contain and remediate any Release of Hazardous Substances arising from or related to Tenant's Hazardous Substance Activity in the Premises, the Project, or the environment, and remediate and pay for any resultant damage to property, persons, and/or the environment, (d) give prompt notice to Landlord, and all appropriate governmental authorities, of any Hazardous Substance in the Premises, the Project, or the environment arising from or related to Release and/or to Tenant's Hazardous Substance Activity, which Release is not made pursuant to and in conformance with the terms of any permit or license duly issued by appropriate governmental authorities, any such notice to include a description of measures taken or proposed to be taken by Tenant to contain and remediate the Release and any resultant damage to property, persons, or the environment, (e) at Landlord's request, which shall not be more frequent than once within any twenty-four (24) consecutive month period, retain an independent engineer or other qualified consultant or expert acceptable to Landlord, to conduct, at Tenant's expense, an environmental audit of the Premises and immediate surrounding areas, and the scope of work to be performed by such engineer, consultant, or expert shall be approved in advance by Landlord, and all of the engineer's, consultant's, or expert's work product shall be made available to Landlord, (f) at Landlord's request from time to time, execute affidavits, representations, and the like concerning Tenant's best knowledge and belief regarding the presence of Hazardous Substances in the Premises, as a result of Tenant's Hazardous Substance Activity, and to Tenant's actual knowledge and belief regarding the presence of Hazardous Substances in the Premises as a result of any other source, (g) reimburse to Landlord, upon demand, the reasonable cost of any testing for the purpose of ascertaining if there has been any Release of Hazardous Substances in the Premises, if such testing is required by any governmental agency or Mortgagee, and (h) upon expiration or termination of this Lease, surrender the Premises to Landlord free from the presence and contamination of any Hazardous Substance.

13. <u>**INDEMNITY AND INSURANCE.**</u>

13.1. <u>Indemnity</u>. Tenant shall and does hereby indemnify, defend with counsel reasonably acceptable to Landlord and hold Landlord and any Mortgagee harmless from and against any and all loss, liabilities, damage, costs and expenses (including reasonable attorneys' fees), incurred by Landlord in connection with (i) loss of life, personal injury and/or

damage to property suffered by third parties (ii) the occupancy or use by Tenant, its agents, employees, independent contractors, or invitees of the Premises or any part thereof; or (iii) the use by Tenant, its agents, employees, independent contractors, or invitees of the Project or any part thereof; provided, however that the indemnity set forth above shall not apply to any loss, liability, damage, cost or expense which arises out of the gross negligence or willful neglect of Landlord, its agents, employees or independent contractors. Landlord shall and does hereby indemnify, defend with counsel reasonably acceptable to Tenant and hold Tenant harmless from and against any and all loss, liability, damage, cost and expense (including reasonable attorneys' fees) incurred by Tenant solely as a result of the gross negligence or willful neglect of Landlord, its agents, employees or independent contractors.

13.2.    <u>Landlord Not Responsible for Acts of Others</u>.  Landlord shall not be responsible or liable to Tenant, or to those claiming by, through, or under Tenant, for any loss, liability, damage, cost or expense which may be occasioned by or through the acts or omissions of persons occupying space within the Project and their respective agents, employees, or independent contractors, nor shall Landlord be liable for any loss or damage resulting to Tenant or those claiming by, through or under Tenant, or their property, from the breaking, bursting, stoppage, or leaking of electrical cables and wires, or water, gas, sewer or any pressure vessels. Tenant agrees to use and occupy the Premises, and to use such other portions of the Project as Tenant is given the right to use, at Tenant's own risk.

13.3.    <u>Tenant's Insurance</u>.  At all times after the Lease Commencement Date, Tenant will carry and maintain, at its expense:

13.3.1.    a commercial (comprehensive) liability insurance policy, including (but not limited to) insurance against assumed or contractual liability under this Lease, with respect to liability arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto, to afford protection with respect to personal injury, death or property damage of not less than Two Million Dollars ($2,000,000) per occurrence combined with single limit/Four Million Dollars ($4,000,000) general aggregate (but not less than, $2,000,000 per location aggregate);

13.3.2.    all risks property and casualty insurance policy, including theft coverage, written at replacement cost value and with replacement cost, and business interruption (for not less than twelve (12) months) endorsements, covering the Premises and covering all of Tenant's personal property in the Premises (including, without limitation, inventory, trade fixtures, floor coverings, furniture and other property removable by Tenant under the provisions of this Lease);

13.3.3.    if and to the extent required by law, worker's compensation insurance policy, or similar insurance in form and amounts required by law; and

13.3.4.    such other insurance as Landlord or any Mortgagee reasonably deems necessary as long as such other insurance is both reasonable in scope and cost, and also normally and customarily being maintained by other lessees or owners of similar projects.

13.3.5.    As a condition to the entry upon the Premises before the Lease Commencement Date by Tenant, its agents or its contractors, Tenant shall first procure and maintain the insurance coverage required by <u>Article 13.3.1</u>.

13.4. <u>Policy Requirements</u>. The company or companies writing any insurance which Tenant is required to carry and maintain or cause to be carried or maintained pursuant to <u>Article 13.3</u>, shall at all times have a rating in Bests Insurance Guide at least A-IX and any such company or companies shall be licensed to do business in the State of Arizona. Comprehensive commercial liability and all-risks property and casualty insurance policies evidencing such insurance shall, with respect to comprehensive commercial liability policies, name Landlord and/or its designee(s) as an additional insured and, with respect to all-risks property and casualty insurance policies, name Landlord, any Mortgagee and Tenant as loss payees, as their respective interests may appear, shall be primary and noncontributory with any insurance carried by Landlord, and shall also contain a provision by which the insurer agrees that such policy shall not be cancelled, materially changed, or not renewed without at least thirty (30) days' advance notice to Landlord and any Mortgagee, by certified mail, return receipt requested, or to such other party or address as may be designated by Landlord or its designee. A certificate thereof, shall be deposited with Landlord by Tenant promptly upon commencement of Tenant's Obligations to procure the same. If Tenant shall fail to perform any of its obligations under <u>Articles 13.3</u>, <u>13.4</u>, or <u>13.5</u>, Landlord may perform the same and the cost of same shall be deemed Additional Rental and shall be payable to Landlord upon Landlord's demand.

13.5. <u>Waiver of Right of Recovery</u>. Neither Landlord nor Tenant shall be liable to any insurance company (by way of subrogation or otherwise) insuring the other party for any loss or damage to any building, structure or other tangible property, or any resulting loss of income, or losses under worker's compensation laws and benefits, even though such loss or damage might have been occasioned by the negligence of such party, its agents or employees.

## 14. **DAMAGE**.

14.1. <u>Tenant's Obligations</u>. If the Premises, whether in the course of construction or otherwise, be damaged or destroyed during the Term by any casualty, Tenant shall without cost to Landlord arrange for the repair, restoration and reconstruction of same to substantially the condition in which the same existed immediately prior to such damage or destruction. Tenant shall commence the restoration or rebuilding as soon as possible after the date of the damage or destruction but in no event later than three (3) months after the date of such damage or destruction and will complete the same using all reasonable diligence and in all events not more than six (6) months after commencement; provided, however, that the foregoing time periods shall be subject to extension for Excusable Delay. There shall be no abatement of the monthly installments of Annual Basic Rent, the Annual Percentage Rent (if Tenant remains open) or Additional Rental.

14.2. <u>Tenant's Option</u>. If, at any time during the last thirty-six (36) calendar months of the Term (including any Option Term then in effect), the Premises are damaged or destroyed to the extent of thirty-five percent (35%) or more of the full replacement value, by fire or other casualty then insured against, Tenant may elect, by written notice given to Landlord within sixty (60) days after the occurrence of such damage or destruction, to terminate this Lease provided:

14.2.1. Tenant gives Landlord written notice of known facts with respect to the damage or destruction promptly but not later than thirty (30) days after the event, detailing the facts that qualify the casualty under this Article;

Case 2:15-bk-09178-PS    Doc 177-1    Filed 09/29/15    Entered 09/29/15 13:19:32    Desc
Page 5 of 40

14.2.2.    Tenant is not in default under any provision or condition of this Lease unless Tenant cures any such default within the cure periods provided under Article 17.1 hereof;

14.2.3.    Tenant pays in full, or has paid in full, any outstanding indebtedness incurred by Tenant and secured by an encumbrance on the Premises or any part thereof;

14.2.4.    Tenant delivers possession of the Premises to Landlord and quitclaims all right, title and interest in the Premises promptly after ceasing to do business on the Premises;

14.2.5.    At Landlord's option exercisable by written notice to Tenant to be delivered within thirty (30) days of receipt of Tenant's notice of termination, Tenant shall remove all debris from the Premises and/or place the Premises substantially in the condition existing immediately prior to the date of execution of this Lease; and

14.2.6.    Landlord shall have received all insurance proceeds from policies required to be maintained by Tenant under Article 13.3.

14.3.    Termination of Lease.  At such time as the above conditions precedent have occurred, this Lease shall be terminated without further liability of either party subject to the terms of Article 23.16.  In such event Landlord and Tenant shall thereupon be released of any further obligations to each other under this Lease except for items theretofore accrued, unpaid or unperformed.  If Tenant shall not make the election hereinabove provided for, then Tenant's Obligations shall be as provided in Article 14.1 above.

15.    **TRADE FIXTURES AND PERSONAL PROPERTY.**  Any trade fixtures and other personal property (including, without limitation, kitchen and specialty restaurant equipment, but specifically excluding any vented hood exhaust system, walk-in refrigerator or freezer or similar appliance or fixture which is incorporated into the permanent structural improvements on the Premises) installed or located in or on the Premises by Tenant shall remain its property, and Landlord agrees that Tenant shall have the right, provided it is not then in default hereunder (or at Landlord's election, the obligation) to remove the same provided that any damage resulting from such removal shall be repaired by Tenant within a reasonable time after such removal.

16.    **ASSIGNMENT AND SUBLETTING.**

16.1.    Consent of Landlord.  Tenant may assign this Lease or sublet all or any part or parts of the Premises only with the prior written consent of the Landlord, which shall not unreasonably be withheld or delayed.  Notwithstanding the foregoing, Landlord shall promptly consent to any assignment proposed to an entity under common control with Tenant, or to an "affiliate" (as that term is defined in the Securities Exchange Act of 1934, as amended) of Tenant, provided such assignment is in conjunction with an assignment to the same assignee of substantially all Tenant's leases and assets in Maricopa County, Arizona.

16.2.    Information to be Furnished.  If Tenant desires at any time to enter into an assignment or a sublease of all or any part of the Premises, Tenant shall request in writing, at least thirty (30) days prior to the effective date of the assignment or sublease, Landlord's consent to the assignment or sublease, and provide the following:

16.2.1. the name of the proposed assignee or subtenant;

16.2.2. the terms and provisions of the proposed assignment or sublease;

16.2.3. a current signed financial statement prepared in accordance with generally accepted accounting principles consistently applied;

16.2.4. experience information concerning the proposed assignee or subtenant; and

16.2.5. such other information which Landlord shall reasonably request following its receipt of Tenant's request for consent.

16.3. <u>Conditions to Landlord's Consent</u>. In addition to the requirement that Tenant must obtain Landlord's prior written consent, Tenant's ability to assign all or any part of Tenant's interest in said Premises is conditioned upon the following:

16.3.1. that at the date of such assignment Tenant shall not then be in default in any of the covenants and agreements herein contained to be kept, observed and performed by Tenant, and shall have paid all monthly installments of Annual Basic Rent, any Annual Percentage Rent due and payable, and Additional Rents which shall have accrued under this Lease at the date of any such assignment; and

16.3.2. the assignee shall assume in writing all the obligations of assignor under this Lease.

16.4. <u>Additional Restrictions</u>. Tenant specifically acknowledges and agrees that the use of the Premises is restricted, in addition to the provisions of this Lease, to the restrictions set forth in the Maintenance Agreement and the Declaration. Landlord reserves the right, in its sole and absolute discretion, to refuse to approve any assignment and/or subleasing to the extent that it is, or in Landlord's reasonable opinion, may be a violation of either the Maintenance Agreement or the Declaration or any exclusives granted by Landlord.

16.5. <u>Change in Control</u>. If Tenant is a corporation, or is an unincorporated association, a partnership, a limited liability company, or other similar or dissimilar business entity, the transfer, assignment, or hypothecation of any stock or interest in such corporation, association, partnership, limited liability company or other business entity so as to result in a change in the present control by the person or persons now having control of same shall be deemed an assignment, and as a result subject to the approval of the provisions heretofore set forth. Notwithstanding the foregoing, Landlord shall approve a change in control (i) of up to fifty percent (50%) of the equity ownership of Tenant, or (ii) resulting from a public offering of securities in the equity ownership of Tenant, provided in either case, all assets and businesses of Tenant in Maricopa County, Arizona are similarly involved in the same change of control to the same resulting entity, and accordingly are thereupon transferred, as Tenant's business and assets of the Premises.

16.6. <u>No Waiver</u>. Any consent given by Landlord shall not be construed as consent to any other assignment and/or subletting or waiver of Landlord's right to object to or declare void any assignment or sublease to which Landlord's consent in writing has not been obtained if required. Any assignment or subletting of Tenant's interest, permitted or consented

Case 2:15-bk-09178-PS    Doc 177-1    Filed 09/29/15    Entered 09/29/15 13:19:32    Desc
Page 7 of 40

to by Landlord shall not in any way release Tenant from any liability or obligation under the terms of this Lease.

17.  **DEFAULT**.

17.1.  "Event of Default" Defined.  Any one or more of the following events shall constitute an "Event of Default":

17.1.1.  the involuntary attachment or assignment of Tenant's interest in the Premises;

17.1.2.  the commencement of a case under any chapter of the Federal Bankruptcy Code by or against Tenant or the filing of a voluntary or involuntary petition proposing the adjudication of Tenant as a bankrupt or insolvent, or the reorganization of Tenant unless the petition is filed or case commenced by a party other than Tenant and is withdrawn or dismissed within thirty (30) days after the date of its filing;

17.1.3.  the admission in writing by Tenant of its inability to pay its debts when due;

17.1.4.  the appointment of a receiver or trustee for the business or property of Tenant;

17.1.5.  the making by Tenant of an assignment for the benefit of its creditors, or if in any other manner Tenant's interest in this Lease shall pass to another by operation of law;

17.1.6.  the failure of Tenant to pay when due any monthly installment of Annual Basic Rent, Annual Percentage Rent and/or the Additional Rental or other sum of money;

17.1.7.  default by Tenant in the performance or observance of any covenant or agreement of this Lease (other than a default involving the payment of money);

17.1.8.  the vacation or abandonment of the Premises by Tenant at any time following delivery of possession of the Premises to Tenant; and

17.1.9.  the occurrence of any other event described as constituting an "Event of Default" elsewhere in this Lease.

17.2.  Cure.  Tenant shall have a period of ten (10) days after Landlord has given written notice to Tenant within which to cure the Event of Default set forth in Article 17.1.6.  Tenant shall have a period of 30 days after Landlord has given written notice to Tenant with respect to those defaults set forth in Article 17.1.7 hereof unless such default is of such nature that it cannot be cured within such 30 day period in which case such cure period is extended so long as Tenant has commenced the curing of the default within such 30 day period and is thereafter diligently prosecuting the curing of same, and in fact cures such default within ninety (90) days after its occurrence.

17.3.    Remedies.  Upon the occurrence of an Event of Default, Landlord, without notice to Tenant in any instance (except where expressly provided for in Article 17.2, above or by applicable law) may do any one or more of the following:

17.3.1.    with or without judicial process, terminate Tenant's right of possession, and enter the Premises and take possession thereof and of any and all goods, inventory, fixtures and all other personal property of Tenant, which is or may be put into the Premises during the Term, whether exempt or not from sale under execution or attachment (it being agreed that said property shall at all times be bound with a lien in favor of Landlord and shall be chargeable for all rental and for the fulfillment of the other covenants and agreements herein contained), and Landlord may sell all or any part thereof at public or private sale.  Tenant agrees that ten (10) days' prior written notice of any public or private sale shall constitute reasonable notice.  The proceeds of any such sale shall be applied first, to the payment of all costs and expenses of conducting the sale or caring for or storing said property (including reasonable attorneys' fees), second, toward the payment of any indebtedness for rental, which may be or may become due from Tenant to Landlord, and third, to hold any surplus and to apply the same toward the payments heretofore set forth as and when the same become due and payable;

17.3.2.    perform, on behalf and at the expense of Tenant, any obligation of Tenant under this Lease which Tenant has failed to perform and of which Landlord shall have given Tenant notice, the cost of which performance by Landlord, together with interest thereon at the Default Rate from the date of such expenditure, shall be deemed Additional Rental and shall be payable by Tenant to Landlord upon demand.  Notwithstanding the provisions of this clause and regardless of whether an Event of Default shall have occurred, Landlord may exercise the remedy described in this clause without any notice to Tenant if Landlord, in its good faith judgment, believes it would be materially injured by failure to take rapid action or if the unperformed obligation of Tenant constitutes an emergency;

17.3.3.    terminate this Lease and the tenancy created hereby by giving notice of such election to Tenant, and re-enter the Premises, without the necessity of legal proceedings, and remove Tenant and all other persons and property from the Premises, and may store such property in a public warehouse or elsewhere at the cost of and for the account of Tenant without resort to legal process and without Landlord being deemed guilty of trespass or becoming liable for any loss or damage occasioned thereby; or

17.3.4.    exercise any other legal or equitable right or remedy which may exist at law or in equity.

17.4.    Damages.  In the event Landlord shall elect to terminate this Lease, then Landlord shall be entitled to recover from Tenant all damages incurred by Landlord by reason of Tenant's default, including:

17.4.1.    The equivalent of the amount of the rent and Additional Rental described in Article 5.1, above (collectively "Rent") which would be payable under this Lease by Tenant if this Lease were still in effect; less

17.4.2.    The net proceeds of any reletting of the Premises by Landlord after deducting all of Landlord's reason-able expenses in connection with such reletting, including, without limitation, all repossession costs, brokerage com-missions, legal expenses,

Case 2:15-bk-09178-PS    Doc 177-1    Filed 09/29/15    Entered 09/29/15 13:19:32    Desc
Page 9 of 40

reasonable attorneys' fees, alteration costs, and expenses of preparation of the Premises, or any portion thereof, for such reletting.

17.5. <u>Deficiency</u>. Tenant shall pay such current damages in the amount determined in accordance with the terms of this <u>Article 17.4</u> as set forth in a written statement thereof from Landlord to Tenant (hereinafter called the "Deficiency"), to Landlord in monthly installments on the days on which the Rent would have been payable under this Lease if this Lease were still in effect, and Landlord shall be en-titled to recover from Tenant each monthly installment of the Deficiency as the same shall arise.

17.6. <u>Present Worth</u>. At any time after an Event of Default but only after Landlord has relet substantially all of the Premises with one or more leases with third-party tenants, whether or not Landlord shall have collected any monthly Deficiency as set forth in this <u>Article 17</u>, Landlord shall be entitled to recover from Tenant, and Tenant shall pay to Landlord, on demand, as and for final damages for Tenant's default, an amount equal to the then present worth of the aggregate of the Rent and any other charges to be paid by Tenant hereunder for the unexpired portion of the Term of this Lease (assuming this Lease had not been so terminated). In the computation of present worth, a discount at the rate of 8% per annum shall be employed, and the present value of the amount of rent received upon such reletting (for the balance of the term of this Lease), but net of the costs of reletting described in <u>Article 17.4.2</u>, shall be offset against any monies claimed pursuant to this subsection. Nothing herein contained or contained in this <u>Article 17</u> shall limit or prejudice the right of Landlord to prove for and obtain, as damages, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to or less than the amount of the difference referred to above.

17.7. <u>Mitigation</u>. Landlord agrees to use commercially diligent efforts to mitigate damages which result from Tenant's breach or default of any covenant under this Lease.

18. **NOTICES.**

18.1. <u>Sending of Notices</u>. Any approval, disapproval, demand, document or other notice ("Notice") which either party may desire to give to the other must be in writing and may be given by personal delivery, by registered or certified mail, return receipt requested or by commercial carrier to the party or its successors or assigns to whom the Notice is intended at ~24 the address set forth in <u>Article 1.1.12</u> if to Landlord, or at the address set forth in <u>Article 1.1.22</u> if to Tenant. If mailed, Notice shall be deemed to have been given and received if by certified or registered mail on the second business day after being deposited in the United States mail, if by the use of a nationally known commercial courier service (such as Federal Express) on the second business day after delivery to the courier, provided that the Notice is delivered to the service prior to its cutoff for next-day delivery, and if personally delivered on the day of such personal delivery.

18.2. <u>Change of Address</u>. Change of address by a party shall be given by Notice as provided in this Article. "Business Day" herein mentioned shall mean all calendar days except Saturdays, Sundays and holidays recognized by the federal government of the United States of America.

19.    **EMINENT DOMAIN.**

19.1.    <u>Total Take</u>.    In the event the whole of the Premises shall be permanently taken or permanently condemned for a public or quasi-public use or purposes by any competent authority, then, and in such event, this Lease shall terminate on the date when possession of the Premises shall be required for such use or purpose.

19.2.    <u>Partial Taking</u>.    In the event a substantial portion of the actual land area of the Premises shall be permanently taken or permanently condemned for a public or quasi-public use or purposes by any competent authority, then, in such event, Tenant may, at its option, terminate this Lease provided that:

19.2.1.    Tenant reasonably determines that the remaining portion of the Premises cannot be utilized in a commercially feasible manner by Tenant;

19.2.2.    Tenant is not then in default in any manner;

19.2.3.    such option to terminate is exercised by Tenant by Notice in writing given to Landlord not less than sixty (60) days after the date on which the final award is made, unless possession be taken before the award is made, in which event such Notice shall be given within sixty (60) days after such taking of possession; and

19.2.4.    upon the date specified in such Notice subject to the provisions hereinabove set forth, the term of this Lease and all rights, title, and interest of Tenant hereunder shall cease and terminate.

As used in this <u>Article 19.2</u>, "substantial portion of the actual land area of the Premises" means any portion which, as a result of the taking, substantially and adversely impairs the utility of the Premises for the Permitted Use.

19.3.    <u>Division of Award</u>.    With respect to any award, compensation or damages (hereinafter sometimes called the "Award"), Landlord shall first be entitled out of the Award to the then fair market value of the land taken.    With respect to the balance of the Award, the same shall be divided between Landlord and Tenant in accordance with the then applicable principles of jurisprudence or as the Landlord and Tenant may otherwise agree. Notwithstanding the foregoing, provided no reduction results in the value of Landlord's award for the fair market value of the land, Tenant shall have all rights permitted under the laws of the state of Arizona to appear, claim, prove and receive or recover in proceedings relative to such Award (i) the value of any non-structural leasehold improvements paid for by Tenant, fixtures, furnishings and other personal property which are taken but which under the terms of this Lease, Tenant is permitted to remove at the end of the Term; (ii) relocation and moving expenses; and (iii) the loss of Tenant's business opportunity, if any.

19.4.    <u>Voluntary Sale</u>.    If there is a voluntary sale or transfer in lieu of condemnation, such sale or transfer shall be deemed a taking by eminent domain for the purposes of this <u>Article 19</u>, provided, however, anything herein contained to the contrary notwithstanding, no voluntary sale or transfer in lieu of condemnation may occur without the express written approval of Landlord, Tenant and any Mortgagee first had and obtained thereto.

20.    **QUIET POSSESSION.**    Landlord agrees that Tenant, upon paying the rent and performing the covenants and conditions of this Lease, shall quietly have, hold and enjoy the

Premises during the term hereof or any extension thereof, free of any claims or demands from third parties claiming under Landlord. Tenant accepts title to its leasehold of the Premises subject to the Maintenance Agreement, the Declaration and all other matters of record.

21. **RECORDATION OF MEMORANDUM OF LEASE.** This Lease shall not be recorded. The parties may execute a Memorandum of Lease, which may be recorded in the office of the Maricopa County Recorder by either Landlord or Tenant at any time after the Lease Commencement Date.

22. **EXPIRATION, TERMINATION AND HOLDING OVER.**

22.1. <u>Surrender of Possession</u>. At the expiration of the Lease Term or earlier termination of this Lease, Tenant shall surrender to Landlord the possession of the Premises and all improvements thereon. Tenant shall leave the surrendered Premises and all improvements in good and broom-clean condition, except as provided to the contrary in this Lease. Tenant shall remove any personal property, fixtures and permanent improvements as Landlord may designate in writing in a notice given to Tenant no later than thirty (30) days after expiration of the Lease Term or earlier termination of this Lease. Notwithstanding the foregoing, Tenant shall not be required to remove the permanent improvements unless the value of the Premises with the permanent improvements, is less than the value of the Premises without said permanent improvements, as reasonably determined and demonstrated by Landlord.

22.2. <u>Failure to Surrender</u>. If Tenant fails to surrender the Premises at the expiration of the Lease Term or the sooner termination of this Lease, Tenant shall indemnify Landlord from all liability, loss, damage, cost and expense, including attorneys' fees, resulting from Tenant's failure to surrender the Premises and monthly installment of Annual Basic Rent and the Annual Percentage Rent Rate shall be increased by a factor of 150%.

22.3. <u>Termination of Lease</u>. This Lease shall terminate without further notice at the expiration of the Lease Term. Any holding over by Tenant after expiration shall not constitute a renewal or extension or give Tenant any right in or to the Premises, except as otherwise expressly provided in this Lease.

22.4. <u>Non-disturbance, Subordination</u>. Landlord shall obtain from any holder of a mortgage, deed of trust or similar security agreement which encumbers Landlord's interest in the Premises as of the date hereof, a written non-disturbance covenant (defined below) for the benefit of Tenant in a form reasonably satisfactory to Tenant, Landlord and their respective secured lenders. After the date hereof, Landlord shall have the right to subject and subordinate this Lease and the leasehold estate herein created to the lien of any mortgage or mortgages, deed of trust or deeds of trust heretofore or hereafter placed upon the Landlord's interest in the Premises; provided, however, that each such mortgagee(s) or beneficiary(ies) shall, as a condition precedent to, and simultaneously with, such subordination, recognize the validity and continuance of this Lease and Tenant's rights hereunder in the event of foreclosure of Landlord's interest, trustee's sale or otherwise in form and substance reasonably acceptable to Tenant (the foregoing recognition obligation, herein, a "non-disturbance covenant"). Tenant agrees to execute such subordination and attornment documents as may be reasonably requested by Landlord, from time to time.

Case 2:15-bk-09178-PS    Doc 177-1    Filed 09/29/15    Entered 09/29/15 13:19:32    Desc
                         Page 12 of 40

23. **MISCELLANEOUS.**

23.1.    Estoppel Certificates.  At any time and from time to time, within ten (10) days after Landlord or Tenant shall request the same, Tenant or Landlord will execute, acknowledge and deliver to the other or to another a certificate in a reasonably acceptable form with respect to the matters required by such party and such other matters relating to this Lease or the status of performance of obligations of the parties hereunder as may be reasonably requested by Landlord; provided, however, that with respect to the existence or nonexistence of defaults, the certificate shall be based upon the then actual knowledge of the party executing the certificate.

23.2.    Remedies Cumulative.  No reference to any specific right or remedy shall preclude Landlord from exercising any other right or from having any other remedy or from maintaining any action to which it may otherwise be entitled at law or in equity.  No failure by Landlord to insist upon the strict performance of any agreement, term, covenant, or condition hereof, or to exercise any right or remedy consequent upon a breach thereof, and no acceptance of full or partial rent during the continuance of any such breach, shall constitute a waiver of any such breach, agreement, term, covenant or condition.  No waiver by Landlord of any breach by Tenant under this Lease or of any breach by any other tenant under any other lease of any portion of the Project shall affect or alter this Lease in any way whatsoever.  Time is of the essence of this Lease.

23.3.    Successors and Assigns.   This Lease and the covenants and conditions herein contained shall inure to the benefit of and be binding upon Landlord, its successors and assigns, and shall be binding upon Tenant, its successors and assigns and shall inure to the benefit of Tenant and only such assigns and subtenants of Tenant to whom the assignment of this Lease or subletting of the Premises by Tenant has been consented to by Landlord as provided in this Lease.  Upon any sale or other transfer by Landlord of its interest in the Premises and in this Lease, and the assumption by Landlord's transferee of the obligations of Landlord hereunder, Landlord shall be relieved of any obligations under this Lease accruing thereafter.

23.4.    Compliance with Laws and Regulations.  Tenant, at its sole cost and expense, shall comply and shall cause the Premises to comply with all federal, state, regional, county, municipal, and other governmental statutes, laws, rules, orders, regulations, and ordinances affecting any part of the Premises or the use thereof.

23.5.    Captions and Headings.  The table of contents and the Article and section captions and headings are for convenience of reference only and in no way shall be used to construe or modify the provisions set forth in this Lease.

23.6.    Joint and Several Liability.  If two or more individuals, corporations, partnerships or other business associations (or any combination of two or more thereof) shall sign this Lease as Tenant, the liability of each such individual, corporation, partnership or other business association to pay rent and perform all other obligations hereunder shall be deemed to be joint and several and all notices, payments, and agreements given or made by, with, or to any one of such individuals, corporations, partnerships, or other business associations shall be deemed to have been given or made by, with, or to all of them.  In like manner, if Tenant shall be a partnership or other business association, the members of which are, by virtue of statute

Case 2:15-bk-09178-PS    Doc 177-1    Filed 09/29/15    Entered 09/29/15 13:19:32    Desc
Page 13 of 40

or federal law, subject to personal liability, the liability of each such member shall be joint and several.

23.7. Broker's Commission. Except for the Broker designated in Article 1.1.4 hereof, if any, each of the parties represents and warrants that there are no claims for brokerage commissions or finders' fees in connection with the execution of this Lease, and agrees to indemnify the other against and hold it harmless from all liability arising from any such claim, including, without limitation, the cost of counsel fees in connection therewith. The obligation to pay the Broker designated in Article 1.1.4 is that of Landlord, although the Total compensation to be paid by Landlord shall be limited to five percent (5%) of the Annual Basic Rent for the first twelve (12) calendar months after the Rent Commencement Date, multiplied by ten (10). One half (½) of said commission will be paid upon commencement of construction by Tenant of the permanent improvements for its Permitted Use, and the other one-half (½) shall be paid upon Tenant's opening for business to the public, fully stocked and staffed.

23.8. No Joint Venture. Any intention to create a joint venture or partnership relation between the parties hereto is hereby expressly disclaimed. The provisions of this Lease in regard to the payment by Tenant and the acceptance by Landlord of a percentage of Gross Sales of Tenant and others is a reservation for rent for the use of the Premises.

23.9. No Option. The submission of this Lease for examination does not constitute a reservation of or option for the Premises, and this Lease shall become effective only upon execution and delivery thereof by both parties.

23.10. No Modification. This writing is intended by the parties as a final expression of their agreement and as a complete and exclusive statement of the terms thereof, all negotiations, considerations, and representations between the parties having been incorporated herein. No course of prior dealings between the parties or their officers, employees, agents, or affiliates shall be relevant or admissible to supplement, explain, or vary any of the terms of this Lease. Acceptance of or acquiescence in a course of performance rendered under this or any prior agreement between the parties or their affiliates shall not be relevant or admissible to determine the meaning of any of the terms of this Lease. No representations, understandings, or agreements have been made or relied upon in the making of this Lease other than those specifically set forth herein. This Lease can be modified only by a writing signed by the party against whom the modification is enforceable.

23.11. Severability. If any portion of any term or provision of this Lease, or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid of unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

23.12. Third Party Beneficiary. Nothing contained in this Lease shall be construed so as to confer upon any other party the rights of a third-party beneficiary except rights contained herein for the benefit of a Mortgagee.

23.13. Corporate Covenants and Representations. If Tenant is a corporation, the persons executing this Lease on behalf of Tenant hereby covenant and warrant that (a) Tenant is a duly constituted corporation qualified to do business in the state in which the

Project is located; (b) all Tenant's franchises and corporate taxes have been paid to date; (c) all future forms, reports, fees, and other documents necessary for Tenant to comply with applicable laws will be filed by Tenant when due; and (d) such persons are duly authorized by the board of directors of such corporation to execute and deliver this Lease on behalf of the corporation.

        23.14.   <u>Applicable Law</u>. This Lease and the rights and obligations of the parties hereunder shall be construed in accordance with the laws of the State of Arizona.

        23.15.   <u>Limitation on Right of Recovery Against Landlord</u>.

        23.15.1.   Tenant acknowledges and agrees that the liability of Landlord under this Lease shall be limited to its interest in the Premises and any judgments rendered against Landlord shall be satisfied solely out of the proceeds of sale of its interest in the Premises. No personal judgment shall lie against Landlord upon extinguishment of its rights in the Premises and any judgment so rendered shall not give rise to any right of execution or levy against Landlord's assets. The provisions hereof shall inure to Landlord's successors and assigns including any Mortgagee. The foregoing provisions are not intended to relieve Landlord from the performance of any of Landlord's obligations under this Lease, but only to limit the personal liability of Landlord in case of recovery of a judgment against Landlord, nor shall the foregoing be deemed to limit Tenant's rights to obtain injunctive relief or specific performance or to avail itself of any other right or remedy which may be awarded Tenant by law or under this Lease.

        23.15.2.   If Tenant claims or asserts that Landlord has violated or failed to perform a covenant of Landlord not to unreasonably withhold or delay Landlord's consent or approval, except as provided in <u>Article 23.15.4</u> below, Tenant's sole remedy shall be an action for specific performance, declaratory judgment, or injunction and in no event shall Tenant be entitled to any monetary damages for a breach of such covenant and in no event shall Tenant claim or assert any claim for any monetary damages in any action or by way of set-off, defense, or counterclaim, and Tenant specifically waives the right to any monetary damages or other remedies.

        23.15.3.   Landlord and any Mortgagee shall have a period of thirty (30) days after Tenant has given notice to Landlord and any Mortgagee with respect to a breach or default of any covenant of Landlord in this Lease, in which to cure such breach or default, unless such breach or default is of a nature that despite Landlord's diligent efforts, it cannot be cured within such thirty (30) day period in which case such cure period is extended so long as Landlord has commenced the curing of the breach or default within such thirty (30) day period and is thereafter diligently prosecuting the curing of same.

        23.15.4.   If Landlord fails to cure a breach of its covenant within thirty (30) days after written notice is received from Tenant (or such longer period as is reasonably necessary, provided Landlord commences, within said thirty (30) day period commercially reasonable and diligent efforts, and thereafter, continuously pursues completion of said cure), then thereafter, Tenant may send a second notice citing such breach and Tenant's intent to cure the breach. If thereafter, Landlord fails to commence and thereafter pursue cure efforts (as described above) within fifteen (15) days of said second notice, Tenant may expend reasonable sums to cure said breach. If Landlord fails to reimburse Tenant for the reasonable expenditures, within ten (10) days of demand, then Tenant may thereafter offset not more than

twenty-five percent (25%) of each month's installment of Annual Basic Rent until the entire expenditure has been recovered by offset.

23.16.    Survival.  All representations, warranties, covenants, conditions, and agreements contained herein which either are expressed as surviving the expiration or termination of this Lease or, by their nature, are to be performed or observed, in whole or in part, after the termination or expiration of this Lease shall survive the term of this Lease.

23.17.    Excusable Delay. In the event that either party to this Lease shall be delayed or hindered in or prevented from the performance required hereunder by an Excusable Delay, such party shall be excused for the period of time equivalent to the delay caused by such Excusable Delay, but not to exceed sixty (60) days, except where expressly set forth in this Lease. In no event shall the covenant or obligation to pay any amount of money be deemed a performance subject to the provisions of this Article. Notwithstanding the foregoing, any extension of time for an Excusable Delay shall be conditioned upon the party seeking an extension of time by delivering written notice of such Excusable Delay to the other party within thirty (30) days of the event causing the Excusable Delay.

23.18.    Attorneys' Fees.  The costs, including reasonable attorneys' fees, of any action brought to enforce any of the terms and provisions of this Lease shall be borne by the party adjudged by the court to be the non-prevailing party. In addition, Tenant shall pay Landlord's reasonable attorneys' fees incurred in connection with Tenant's request for Landlord's consent in connection with any act which Tenant proposed to do and which requires Landlord's consent.

23.19.    Conditions to Tenant's Obligations.  If Landlord has not received written notice from Tenant of termination by reason of the failure to occur of any one or more of the Tenant's conditions by the dates set forth in **Exhibit "C"** hereto, it shall be conclusively presumed that the Tenant's conditions have been satisfied or waived by Tenant and Tenant shall have no further rights of termination with respect thereto. However, Tenant reserves the right to terminate should any one or more of the Conditions to Tenant's Obligations not occur and/or Tenant is not willing to waive the same provided that Tenant gives and Landlord has received written notice of termination not later than the dates specified in **Exhibit "C"** hereto.

23.20.    Financial Statements.  Tenant and each assignee, sublessee and guarantor (each such entity, an "Obligor") shall provide to Landlord, upon request received from time to time during the Term and any applicable Option Terms (but no more currently than annually), current financial statements (including without limitation, balance sheet, statement of profit and loss and cash flow statement) of each Obligor, dated no later than the close of the last calendar or fiscal quarter of each Obligor, each prepared in accordance with generally accepted accounting principles and certified by the chief financial officer of the respective Obligor or a certified public accountant, as being true and correct in all material respects. Each Obligor shall also provide to Landlord, upon availability and without a request from Landlord, a copy of such Obligor's most current audited financial statements (if any), prepared for any reason, during the Term, and any Option Term.

23.21.    Tenant Financing. Tenant shall have the absolute right from time to time during the Term of this Lease and without Landlord's further approval, written or otherwise, to grant and assign a mortgage or other security interest in Tenant's interest in this Lease and all of Tenant's property located on the Premises to Tenant's lenders in connection with Tenant's

financing arrangements. Landlord agrees to execute such confirmation, certificates and other documents (except amendments to this Lease unless Landlord hereafter consents) as Tenant's lenders may reasonably request in connection with any such financing. Landlord may require, as a condition to the execution of such documents, that such lender agree (i) to be subject to all provisions of this Lease if it elects to foreclose or otherwise acquire the Tenant's leasehold interest and to cure all defaults of Tenant then existing, or alternatively, (ii) to remove all removable equipment and personal property of Tenant and repair and restore any damage within thirty (30) days notice from Landlord that it has terminated Tenant's right of possession or leasehold interest.

      23.22.    <u>Subordination of Landlord's Lien</u>. Upon request, from time to time received by Landlord from Tenant, Landlord will subordinate its landlord lien rights in and to the personal property of the Tenant, to the interest of a secured lender of Tenant. Landlord will execute such documents, as may be reasonably requested by Tenant (and on terms and conditions reasonably acceptable to Landlord) to effect such subordination, which documents shall provide, at a minimum, that such secured lender (i) will remove its collateral within thirty (30) days of demand of Landlord; (ii) will repair and restore any damage to the Premises arising as a result of said removal; (iii) will indemnify and hold Landlord harmless for any losses, claims, liabilities or damages arising from such secured lender's entry onto the Premises for any purpose; and (iv) waives any claim against, and releases Landlord from any damage to such personal property.

      23.23.    <u>Guarantee</u>. Tenant acknowledges that Landlord would not lease the Premises to Tenant without the Lease being guaranteed by Z'Tejas, Inc., a Delaware corporation. Tenant agrees to cause said entity to execute and deliver to Landlord, simultaneously with execution and delivery of this Lease, the guarantee in the form of Exhibit D attached hereto and by this reference incorporated herein.

      IN WITNESS WHEREOF, this Ground Lease Agreement has been executed as of the day and year first above written.

**[signatures appear on next page]**

**LANDLORD:**

PAVILION HOLDINGS, L.L.C.
an Arizona limited liability company

By: _Tom Tait_____
Tom Tait, Member/Manager

**TENANT:**

Z'TEJAS CHANDLER, INC.,
an Arizona corporation

By: _____
Its: _PRESIDENT & CEO_____

**EXHIBIT "A"**

**LEGAL DESCRIPTION OF PREMISES**

Lot 5, CHANDLER PAVILIONS, UNIT 4, according to Book 492 of Maps, Page 07, as recorded in Document No. 99-0087342, in the official records of the Maricopa County Recorder, Maricopa County, Arizona.

781420.05/11589-0005

**EXHIBIT "A-1"**

**GRAPHIC DEPICTION OF PREMISES**

Exhibit "A-1"

781420.05/11589-0005

# EXHIBIT "A-1"

## GRAPHIC DEPICTION OF PREMISES



C A S A   P A L O M A
SPECIALTY RETAIL PLAZA
S.W.C. 56TH STREET & RAY ROAD
CHANDLER, ARIZONA

DATE: 1/21/99

JOB: 97085
97085-ST54

Butler Design Group
Architects & Planners

**EXHIBIT "B"**

**LEGAL DESCRIPTION OF PROJECT**

Lots 1 through 6, inclusive, of CHANDLER PAVILIONS, UNIT 4, according to Book 492 of Maps, Page 07, as recorded in Document No. 99-0087342, in the official records of the Maricopa County Recorder, Maricopa County, Arizona.

**EXHIBIT "B-1"**

**GRAPHIC DEPICTION OF PROJECT**

Exhibit "B-1"

781420.05/11589-0005

EXHIBIT "B-1"

GRAPHIC DEPICTION OF PROJECT



# CASA PALOMA

SPECIALTY RETAIL PLAZA

S.W.C. 56TH STREET & RAY ROAD

CHANDLER, ARIZONA

DATE: 1/21/99

JOB: 97065

Butler Design Group
Architects & Planners

EXHIBIT "C"

CONDITIONS PRECEDENT TO TENANT'S OBLIGATIONS

The following conditions precedent must be satisfied or waived by Tenant within the number of days from the Lease Date, as indicated. If Tenant has not delivered to Landlord written notice of such satisfaction or waiver within such time period, then this Lease shall become null and void and of no force and effect.

I.  Thirty (30) days from the Lease Date:

(a)  Title. Tenant's determination that title to the fee interest in the Premises is acceptable, including all matters of record including the applicable subdivision plat, the Declaration and the Maintenance Agreement.

(b)  Zoning, Variance, Special Use Permits. Tenant's determination that the Premises are zoned to permit the Permitted Use, and no rezoning, variance or special use permit is required.

(c)  Utilities. Tenant's determination that electricity, water, sanitary sewer and gas with capacities acceptable to Tenant.

(d)  Parking. Tenant shall be satisfied that sufficient parking is available for Tenant's use.

(e)  Land Conditions. Tenant may order a survey at Tenant's expense, prepared by a licensed surveyor in accordance with Tenant's survey specifications. In addition, Tenant, at its own expense, shall have the right at any time after the Effective Date to enter upon the Premises and make soil tests, borings and other engineering studies to ascertain whether the Premises are suitable for Tenant's Use. Such survey, tests, borings, and/or studies must reveal land conditions consistent with Tenant's requirements and with costs for further development including, but not limited to, impact fees satisfactory to Tenant.

Tenant will repair the Premises to substantially its former condition after performing any soil tests, borings or other engineering studies. Tenant, at its sole cost and expense, shall indemnify and hold Landlord harmless from and against any claims, losses or damages and expenses, including reasonable attorneys' fees, incurred as a result of the actions of Tenant, its agents, contractors or employees on the Premises in furtherance of this section. This indemnification shall survive the termination or cancellation of this Lease.

II.  Ninety (90) days from the Lease Date:

(a)  Approvals. Tenant will use commercially reasonable and diligent efforts to promptly obtain the necessary approvals including, but not limited to, licenses (including liquor licenses), permits and other authorizations to utilize the Premises for its Permitted Use, and signage as mutually agreed to and shown on the approved plans and specifications. Landlord agrees to cooperate, at no cost to Landlord, with Tenant and with all state, county or municipal authorities to assist Tenant in obtaining such

Exhibit "C"
Page 1 of 2

permits and will execute any documents reasonably necessary, which documents are subject to Landlord's approval, which will not unreasonably be withheld, provided no liability to Landlord, actual or potential, shall accrue thereby. In the event that Tenant shall be obligated to incur costs and expenses to any governmental authority or third party as a condition to or in order to acquire any license, permit or other authorization for Tenant's Use, then such cost and/or expense shall be subject to Tenant's approval as additional conditions precedent. Tenant shall submit a complete application with all necessary plans and other submittals to the City, with a copy to Landlord and the requisite persons pursuant to the Declaration and the Maintenance Agreement, no later than ninety (90) days after the Lease Date.

        (b)    <u>Site Plan Approval</u>. Tenant shall have obtained, or Tenant shall be satisfied that it will be able to obtain, approval by the City of Chandler of Tenant's Site Plan.

    III.    <u>One Hundred Twenty (120) days from the Lease Date</u>:

        (a)    <u>Building Permit</u>. Tenant shall be satisfied that it shall be able to obtain a building permit. The 120 day time period for this Condition to Tenant's Obligation, as well as the Permit Date (as defined in <u>Article 1.1.17</u> and used in <u>Article 1.1.21</u>) may be extended by Tenant up to two (2) consecutive thirty (30) day periods, provided that on or before the date of expiration of such 120 day time period (or 150 day time period, if the first thirty (30) day extension has been elected previously), Tenant gives notice of Tenant's election and tenders payment of Five Thousand and No/100 Dollars ($5,000.00) to Landlord, for each such extension, as an extension fee which shall be nonrefundable to Tenant in all events, and not applicable against any rent or other sum due from Tenant under this Lease. Tenant agrees to process all applications, submittals, permits and requests with the City with commercially reasonable diligence, and to respond or resubmit plans no later than fifteen (15) days after receipt of comments from the City.

781420.05/11589-0005

# EXHIBIT "D"

## GUARANTEE

This is a guarantee of a lease dated as of _____, 1999 (the "Lease"), by and between PAVILION HOLDINGS, L.L.C., an Arizona limited liability company, hereinafter called "Landlord", and Z'TEJAS, CHANDLER, INC., an Arizona corporation, hereinafter called "Tenant", concerning that certain premises located near the southwest corner of Interstate 10 and Ray Roads, Chandler, Arizona.

FOR VALUE RECEIVED, and in consideration for, and as an inducement to Landlord to enter into the foregoing Lease, the undersigned hereby guarantees to Landlord and its successors and assigns the payment of all rentals specified thereunder and all other payments to be made by Tenant under the Lease, and the full performance and observance by Tenant of all the terms, covenants, conditions and agreements therein provided to be performed and observed by Tenant for which each of the undersigned shall be jointly and severally liable with Tenant, without requiring any notice of nonpayment, nonperformance or nonobservance, or proof of notice or demand, whereby to charge the undersigned, all of which each of the undersigned does hereby expressly waive, and each of the undersigned expressly agrees that the Landlord and its successors and assigns may proceed against the undersigned separately or jointly, before, after or simultaneously with the proceedings against Tenant for default, and that this Guarantee shall not be terminated, affected or impaired in any way or manner whatsoever by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease, or by reason of summary or other proceedings against Tenant, or by the omission of Landlord to enforce any of its rights against Tenant or by reason of any extensions of time or indulgences granted by Landlord to Tenant. Each of the undersigned further covenants and agrees (i) that the undersigned will be bound by all of the provisions, terms, conditions, restrictions and limitations contained in the Lease, the same as though the undersigned was named therein as Tenant; and (ii) that this Guarantee shall be absolute and unconditional and shall remain and continue in full force and effect as to any renewal, extension, amendment, addition, assignment, sublease, transfer or other modification of the Lease, whether or not the undersigned shall have any knowledge or have been notified of or agreed or consented to any such renewal, extension, amendment, addition, assignment, sublease, transfer or other modification of the Lease, and each of the undersigned agrees to be bound by any and all modifications to the Lease. If Landlord at any time is compelled to take any action or proceeding in court or otherwise to enforce or compel compliance with the terms of this Guarantee, each of the undersigned shall, in addition to any other rights and remedies to which the Landlord may be entitled hereunder or as a matter of law or in equity, be obligated to pay all costs, including reasonable attorneys' fees, incurred or expended by Landlord in connection therewith. Further, the undersigned hereby covenants and agrees to assume the Lease and to perform all of the terms and conditions thereunder for the balance of the original term should the Lease be disaffirmed by any Trustee in Bankruptcy for Tenant, or at the option of Landlord, each of the undersigned shall, in the event of Tenant's bankruptcy, make and enter into a new lease which shall be in form and substance identical to the Lease. All obligations and liabilities of the undersigned pursuant to this Guarantee shall be binding upon the heirs, legal representatives, successors and assigns of each of the undersigned, and each of the undersigned and its heirs, legal representatives, successors and assigns shall remain fully liable under the Lease and this Guarantee regardless of any merger, corporate reorganization or restructuring involving Tenant

781420.05/11589-0005

regardless of the resulting organization, structure or ownership of Tenant. This Guarantee shall be governed by and construed in accordance with the laws of the State of Arizona.

In the event of any action arising out of Landlord's collection or enforcement of this Guarantee against the undersigned Guarantor, the prevailing party shall be entitled to recover its costs, expenses and reasonable attorneys' fees incurred in connection therewith from the other party or parties.

The undersigned hereby unconditionally consents and agrees that any legal action brought under this Guarantee may be brought in any State Court of the State of Arizona or in a Federal United States Court in Arizona and each of the undersigned hereby unconditionally consents to the jurisdiction of such courts in connection with any cause of action brought by or against Tenant and/or Guarantor(s) in any way directly or indirectly related to the Lease or this Guarantee. Further, each Guarantor hereby irrevocably and unconditionally appoints Z'Tejas Chandler, Inc., an Arizona corporation (Tenant), and the Tenant under the Lease if another party shall be the Tenant under the Lease, as its duly authorized agents for the service of process in connection with any such cause of action, either of which may be considered a fully authorized agent for service of process. Nothing herein shall prevent Landlord from serving process in any other manner permitted by law.

The liability of the undersigned shall not be affected or impaired by any full or partial release of, settlement with, or agreement not to sue, Tenant or any other guarantor or other person liable in respect of the Lease, which Landlord is expressly authorized to do, omit or suffer from time to time, without notice to or approval by any of the undersigned. The singular herein shall include the plural and the plural shall include the singular when referring to the undersigned.

The undersigned hereby waives the applicability and the benefits of Arizona Revised Statutes § 12-1641 and § 12-1642 and Arizona Rules of Civil Procedure 17(f).

At any time that Tenant is required to furnish a certificate pursuant to the Lease, the undersigned, by guarantying the terms and conditions of the Lease, agree that such Guarantor, upon twenty (20) days prior written request to Tenant, shall certify (by written instrument, duly executed, acknowledged and delivered to Landlord and to any third person designated by Landlord in such request) that such person concurs with the statements set forth in said certificate by Tenant and that the guarantee of such person remains in full force and effect as to all obligations of Tenant under the Lease. If the undersigned fails to deliver the certificate, then Landlord shall provide a notice to the undersigned of such failure, with a specific reference to the next sentence. Failure to deliver such certificate to Landlord (and any such designated third party) within ten (10) days of receipt of the Landlord's notice shall constitute automatic approval of the requested certificate as through such certificate had been fully executed and delivered by such Guarantor to Landlord and such designated third party.

Notwithstanding anything in this Guarantee to the contrary, this Guarantee and the obligations of the undersigned shall terminate and be of no further force or effect upon the completion by Tenant of the permanent improvements upon the Premises necessary to accommodate the Permitted Use described in the Lease, the commencement of the use and occupancy thereof (as required by the Lease), and the occurrence of the Rental Commencement Date and the payment of the rent due at such time, by Tenant,

IN WITNESS WHEREOF, the undersigned have set their hands as of the _____ day of _____, 1999.

Z'TEJAS, INC., a Delaware corporation


By____ NOT FOR SIGNATURE – EXHIBIT ONLY
Its_____


Initials:
    Landlord_____
    Tenant_____

781420.05/11589-0005

## ADDENDUM A

## MEMORANDUM OF LEASE

This Memorandum of Lease (this "Memorandum") is dated the _____ day of _____, 1999, and is by and between PAVILION HOLDINGS, L.L.C., an Arizona limited liability company ("Landlord") and Z'TEJAS CHANDLER, INC., an Arizona limited liability company ("Tenant").

## WITNESSETH

WHEREAS, on the _____ day of _____, 19___, Landlord and Tenant entered into a Net Ground Lease (the "Lease") for certain premises situated in the City of Chandler, County of Maricopa, and State of Arizona, as more particularly set forth in the Lease and described on Exhibit "A" attached hereto and made a part hereof as if fully rewritten herein (the "Premises"); and

WHEREAS, the parties are desirous of placing their interests therein as a matter of record.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and the parties intending to be legally bound thereby, the parties hereto hereby agree as follows:

1.    The term of the Lease shall be fifteen (15) years commencing on the _____ day of _____, 19___, and terminating on the _____ day of _____, 20___.

2.    Tenant has the right and option to renew the Lease for two (2) additional period(s) of five (5) years, and one (1) additional period of four (4) years, upon the terms, covenants and conditions set forth therein.

IN WITNESS WHEREOF, the parties have executed this Memorandum the day and year first above written.

LANDLORD:

PAVILION HOLDINGS, L.L.C.,
an Arizona limited liability company

By:      _____
         Tom Tait, Member/Manager

Date:    _____, 1999

Addendum A
Page 1 of 2

781420.05/11589-0005

TENANT:

Z'TEJAS CHANDLER, INC.,
an Arizona corporation

By: _____
Name: _____
Title: _____

Date: _____, 1999

STATE OF ARIZONA    )
                        )ss.
COUNTY OF MARICOPA  )

    BEFORE ME personally appeared Tom Tait, as Member/Manager of PAVILION HOLDINGS, L.L.C., an Arizona limited liability company, to me well known and known to me to be the person described therein and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

    WITNESS my hand and official seal, this _____ day of _____, 1999.

_____
Notary Public, State of Arizona

_____
Commission Expiration and Seal

STATE OF _____  )
                            )ss.
COUNTY OF _____  )

    BEFORE ME personally appeared _____, as _____ of Z'TEJAS CHANDLER, INC., an Arizona corporation, to me well known and known to me to be the person described therein and who executed the foregoing instrument, and acknowledged to and before me that he executed said instrument for the purposes therein expressed.

    WITNESS my hand and official seal, this _____ day of _____, 1999.

_____
Notary Public, State of _____

_____
Commission Expiration and Seal

Addendum A
Page 2 of 2

**ADDENDUM B**

**LANDLORD'S WORK AND TENANT'S WORK AND TIMING OF TENANT'S WORK**

1.  **Description of Landlord's Work**. The following is a general description of the work to be performed by Landlord at the Landlord's cost and expense:

      1.1.  Utilities. Water, sewer, electricity and gas lines to be installed by Landlord to a point on the exterior boundary of the Premises;

      1.2.  Grading. Preliminary grading of the Premises;

      1.3.  Installation of Streetscape. As required per the plans therefor as approved by the City of Chandler. In such connection there is reserved unto Landlord and unto Landlord's agents, employees, independent contractors and designees an easement over that portion of the Premises upon which the streetscape will be installed and upon that portion of the Premises which is reasonably necessary to maintain, repair and/or replace the streetscape;

      1.4.  Entryway Monument. To be located within the vicinity of the northwest corner of the Premises. There may also be an Entryway Monument located at the southwest corner of the Premises. In such connection there is reserved unto Landlord and unto Landlord's agents, employees and independent contractors and designees an easement over that portion of the Premises which is reasonably necessary to install and to maintain the entryway monuments in the immediate vicinity of the northeast and southeast corners of the Premises.

Landlord shall use reasonable efforts to complete the installation of the aforementioned utilities, the preliminary grading and the installation of landscaping within the streetscape tracts not later than six (6) months after the date of this Lease. As of the Lease Date, the Landlord's Work set forth in this paragraph 1 is substantially complete, has been certified by DEI Professional Services, L.L.C., an Arizona limited liability company (formerly known as DEI Professional Services, Inc., an Arizona Corporation, herein "DEI"), to be substantially complete, and has been approved by the City of Chandler.

2.  **Description of Landlord's Work for Which Tenant is Obligated to Contribute a Pro Rata Cost Thereof**. The following is a description of work to be performed by Landlord on Lots 1 through 6, inclusive, as set forth in the final recorded plat for Chandler Pavilions Unit 4 (according to Book 492 of Maps, Page 7, as recorded in Document No. 99-0087342, Official Records of Maricopa County), a pro rata portion (based upon the relative areas of the Lots) of the cost is to be borne by Tenant subject to the limitations hereinafter set forth:

      2.1.  Landlord shall have constructed certain improvements, including without limitation, the paving, lighting, and landscaping on all or a portion of the common areas of Lots 1 through 6, inclusive, in accordance with the plans and specifications therefor including those plans prepared by DEI and Laskin & Associates ("Laskin");

      2.2.  Landlord shall be responsible to extend utility lines from the point at which they are located to within five (5) feet of the building pad in accordance with the DEI Plans;

Addendum B
Page 1 of 2

The Landlord shall use reasonable efforts to complete the Landlord's Work described in this Section 2 at such time and in such manner so as to not unreasonably interfere with the Tenant's work.

3. **Payment by Tenant for Its Share of the Cost of Landlord's Work**. Tenant shall be required to reimburse Landlord for Tenant's pro rata share of the cost of the work to be performed by Landlord, as set forth in paragraph 2 above. The term "cost" shall include all costs and expenses of every kind or nature incurred by Landlord or for which Landlord is responsible to pay in connection with the Landlord's Work set forth in paragraph 2 hereof, including by way of illustration but not of limitation, architectural fees, engineering fees, bond premiums, insurance costs and other costs incurred per the terms of the general conditions to the construction contract, if any, together with all costs of labor and material. Tenant's pro rata share shall be fractional, the numerator of which is the square feet of land area of the Premises, and the denominator of which is the square feet of land area of Lots 1 through 6 of Chandler Pavilions. Tenant's share shall be paid at such time as the work has been substantially completed and certified to as having been substantially completed by DEI; provided, however, that Landlord may perform Landlord's Work on less than all of the lots. Therefore, if Landlord does not perform Landlord's Work on Lots 1 through 6, inclusive, the cost of the work performed by Landlord shall be fairly and equitably allocated among the lots on which the Landlord's Work is actually performed.

As of the Lease Date, the Landlord's Work described in paragraph 2, above (for which, pursuant to this paragraph 3, Tenant is to pay to Landlord a pro rata share of the cost) is substantially complete, has been certified by DEI to be substantially complete and has been approved by the City of Chandler. Although the total construction costs have not been finally compiled and calculated, as of the Lease Date, the estimated amount for Tenant's pro rata share is $318,165.00.

4. **Description of Tenant's Work**. The work to be done by Landlord in satisfying Landlord's obligations shall be limited to that described in the foregoing paragraphs. All other work not expressly provided to be done by Landlord shall be done by Tenant at Tenant's sole cost and expense, and is sometimes referred to as "Tenant's Work." Tenant's Work shall include, by way of illustration but not of limitation, all costs to construct the building on the Premises in accordance with the Architectural Documents approved by Landlord. Tenant shall commence construction of its building not later than one hundred fifty (150) days from the date of this Lease, shall complete construction of its building within one hundred fifty (150) days from commencement, and shall open for business to the public within thirty (30) days from the date of completion of its building.

Addendum B
Page 2 of 2

781420.05/11589-0005

# EXHIBIT B

to

# Assignment and Assumption of Ground Lease with Consent of Landlord

'

# GUARANTY OF GROUND LEASE

<u>DATE</u>: September 25, 2015

<u>RECITALS</u>:

     1.1     On or about December 28, 1999, Pavilion Holdings, LLC, an Arizona limited liability company, as lessor ("Lessor"), and Z'Tejas Chandler, Inc., as original lessee, entered into a ground lease ("the Lease") of certain real property commonly known as the Z'Tejas restaurant premises situated in the Casa Paloma shopping center ("Shopping Center") near the southeast corner of Ray Road and 54th Street in Chandler, Arizona ("the Leased Premises"). A true and correct copy of the Lease is attached hereto as Exhibit "A."

     1.2     ZTC became a party to the Declaration of Covenants, Conditions and Restrictions ("Declaration") and Maintenance Agreement for the Shopping Center, as such Declaration and Maintenance Agreement, as amended from time to time (hereafter collectively "Declaration and Agreement") pursuant to paragraph 7 of the Lease.

     1.3     Z'Tejas Chandler, LLC ("ZTC") and its parent company, Z'Tejas Inc., a Delaware corporation ("ZTI") became tenant and guarantor of the Lease, respectively, as a result of a reorganization and name change that occurred during 2002.

     1.4     On July 22, 2015, ZTC, ZTI and approximately sixteen of its affiliates (collectively "Z'Tejas") filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the District of Arizona. The cases are being administered under the case name of "Z'Tejas Scottsdale, LLC"(the "Bankruptcy Case")

     1.5     ZTC desires to assign its interest in the Lease ("the Assignment") to Cornbread Ventures, LP ("Cornbread") in accordance with  ZTC's Motion for Order: (1) Approving Asset Purchase Agreement Among the Debtors and the Buyer, (2) Approving Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f) and (m), (3) Approving Assumption, Assignment and Sale of Certain Executory Contracts and Unexpired Leases Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 363 And 365, and (4) Determining the Amounts Necessary to Cure Such Executory Contracts and Unexpired Leases, and Granting Related Relief ("Sale Motion") on file in the Bankruptcy Case at docket entry ("DE") 13.

     1.6     Cornbread desires to accept the Assignment and assume all obligations of ZTC under the Lease.

     1.7     Lessor will not consent to the Assignment unless and until certain conditions ("Conditions") are satisfied, as described in PH's Objection (DE 161) to the Sale Motion. One of those Conditions is execution of personal guaranties of the Lease by the following partners in Cornbread and their spouses, if any: Gary Gerard Manley and Pamela Marie Manley, husband and wife, Michael Jeffery Pottorff, an unmarried man, and Michael Patrick Stone and Kristen Anne Stone, husband and wife.

<u>OPERATIVE PROVISIONS</u>

1

2.1     The foregoing recitals are hereby incorporated into these operative provisions as though fully set forth herein.

2.2     For and in consideration of Lessor's consent to the Assignment, and as material inducement for Lessor to consent to the Assignment, Gary Gerard Manley and Pamela Marie Manley, husband and wife, Michael Jeffery Pottorff, an unmarried man, and Michael Patrick Stone and Kristen Anne Stone, husband and wife, and each of them (hereafter collectively "Guarantor") hereby jointly, severally, unconditionally and irrevocably guaranty the prompt payment by Cornbread, as successor lessee (hereafter "Lessee") of all rentals and all other sums payable by Lessee under the Lease and the faithful and prompt performance by Lessee of each and every one of the terms, conditions and covenants of the Lease to be kept and performed by Lessee, subject only to the limitation set forth in paragraph 2.3, *infra*.

2.3     The liability of Guarantor for monthly rental that becomes due and payable under the Lease shall be limited to an amount equal to one-year of base rent, utilizing the base rent amount that is in effect during the twelve month period following Lessee's default.

2.4     It is expressly agreed and understood that the liability of Guarantor for any and all other obligations of Lessee shall not be subject to the limitation in paragraph 2.3, *supra*. Such other obligations include, but are not necessarily limited to (a) maintenance and repair of all leasehold improvements (including restaurant building) situated on the Leased Premises, (b) obligations under the Declaration and Agreement, (c) non-removal of the vented hood exhaust system, walk-in refrigeration or freezer and similar appliances or fixtures incorporated into the permanent structural improvements on the Leased Premises, (d) conveyance of the Chandler restaurant building and improvements to PH free and clear of any mortgages or other claims or liens of any kind, upon expiration or sooner termination of the Lease.

2.5     Notwithstanding the provisions of paragraphs 2.2 through 2.4 herein, Lessee may elect ("Election") to substitute Cornbread as Guarantor hereunder, replacing and releasing all individuals constituting Guarantor, provided that Lessee is not in default when the Election is exercised. The Election may only be exercised by Lessee providing PH with (a) written notice of Lessee's exercise of the Election via certified mail, return receipt requested, and (b) audited financial statements evidencing that Cornbread has a net worth of one million dollars ($1,000,000.00) or more, excluding goodwill. If the Lessee is Cornbread at the time the Election validly and properly exercised, the Election will have the effect of terminating this Guaranty.

2.6     It is specifically agreed and understood that the terms of the foregoing Lease may be altered, affected, modified, or changed by agreement between Lessor and Lessee, or by a course of conduct, and the Lease may be assigned by Lessor or any assignee of Lessor without consent or notice to Guarantor and that this Guaranty shall thereupon and thereafter guaranty the performance of the Lease as so changed, modified, altered or assigned consistent with the limitations and extent of the guaranties given herein.

2.7     This Guaranty shall not be released, modified or affected by failure or delay on the part of Lessor to enforce any of the rights or remedies of Lessor under the Lease, whether pursuant to the terms thereof or at law or in equity.

2.8     No notice of default need be given to Guarantor, it being specifically agreed and understood that the guaranty of the undersigned is a continuing guaranty under which Lessor may proceed forthwith and immediately against Lessee or against Guarantor following any

breach or default by Lessee or for the enforcement of any rights which Lessor may have as against Lessee pursuant to or under the terms of the Lease or at law or in equity.

2.9     This Guaranty shall be a continuing Guaranty, and the liability of Guarantor hereunder shall in no way be affected, modified, or diminished by reason of any dealings or transactions or matter or thing occurring between Lessor and Lessee, including, without limitation, any adjustments, compromises, settlements, accord and satisfactions, or releases.

2.10    Lessor shall have the right to proceed against Guarantor hereunder following any breach or default by Lessee without first proceeding against Lessee and without previous notice to or demand upon either Lessee or Guarantor.

2.11    Guarantor hereby waives (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations as to or relating to this Guaranty and the Lease, (d) any right to require Lessor to proceed against the Lessee or any other Guarantor or any other person or entity liable to Lessor, (e) any right to require Lessor to apply to any default any security deposit or other security it may hold under the Lease, (f) any right to require Lessor to proceed under any other remedy Lessor may have before proceeding against Guarantor, and (g) any right of subrogation.

2.12    Guarantor does hereby subrogate all existing or future indebtedness of Lessee to Guarantor to the obligations owed to Lessor under the Lease and this Guaranty.

2.13    The term "Lessor" whenever hereinabove used refers to and means the Lessor and any assignee of Lessor, whether by outright assignment or by assignment for security, and also any successor to the interest of Lessor or of any assignee in such Lease or any part thereof, whether by assignment or otherwise.  So long as Lessor's interest in or to the leased premises or the rents, issues and profits therefrom, or in, to or under the Lease, are subject to any mortgage or deed of trust or assignment for security, no acquisition by Guarantor of Lessor's interest in the leased premises or under the Lease shall affect the continuing obligation of Guarantor under this Guaranty which shall nevertheless continue in full force and effect for the benefit of the mortgagee, beneficiary, trustee or assignee under such mortgage, deed of trust or assignment, of any purchase at sale by judicial foreclosure or under private power of sale, and of the successors and assigns of any such mortgagee, beneficiary, trustee, assignee or purchaser.

2.14    The term "Lessee" whenever hereinabove used refers to and means the Lessee and any assignee or sublessee of the Lease and also any successor to the interests of Lessee, assignee or sublessee of such Lease or any part thereof, whether by assignment, sublease or otherwise.

2.15    In addition to the amounts guaranteed under this Guaranty, Guarantor agrees to pay (a) all of Lessor's costs, and (b) interest (including postpetition interest to the extent a petition is filed by or against Lessee under the Bankruptcy Code) at ten per cent per annum (10%) on any obligations under this Guaranty that are not paid when due.  All moneys available to Lessor for application in payment or reduction of the liabilities of Lessee under the Lease may be applied by Lessor to the payment or reduction of such liabilities of Lessee, in such manner, in such amounts and at such time or times as Lessor may elect.

2.16    This Guaranty is delivered in the State of Arizona, and it is the intent of Guarantor and Lessor that this Guaranty shall be deemed to be a contract made under and

governed by the internal laws of the State of Arizona, without regard to its principles of conflicts of law. Any action or proceeding involving this Guaranty shall be filed exclusively in the state or federal courts situated in Maricopa County, Arizona. For purposes of any such action or proceeding, Guarantor submits to the jurisdiction of all federal and state courts located in the State of Arizona and consents that Guarantor may be served with any process or paper by registered mail or by personal service within or without the State of Arizona in accordance with applicable law. Guarantor waives and agrees not to assert in any such action, suit or proceeding that Guarantor is not personally subject to the jurisdiction of such courts, that the action, suit or proceeding is brought in an inconvenient forum or that venue of the action, suit or proceeding is improper.

2.17    If any provision of this Guaranty is unenforceable, the enforceability of the other provisions shall not be affected and they shall remain in full force and effect. Guarantor agrees to take such action and to sign such other documents as may be appropriate to carry out the intent of this Guaranty. This Guaranty may be executed in one or more counterparts, each of which shall be deemed an original.

2.18    WAIVER OF JURY TRIAL. LESSOR, BY ACCEPTING THIS GUARANTY, AND GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY AND ALL ISSUES PRESENTED IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT BY LESSOR OR GUARANTOR AGAINST ANY PARTY OR THEIR SUCCESSORS WITH RESPECT TO ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY, THE RELATIONSHIP OF LESSOR, LESSEE AND/OR GUARANTOR, LESSEE'S USE OR OCCUPANCY OF THE LEASED PREMISES, AND/OR ANY CLAIM FOR INJURY OR DAMAGE, OR ANY EMERGENCY OR STATUTORY REMEDY. THIS WAIVER BY LESSOR AND GUARANTOR OF ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY HAS BEEN NEGOTIATED AND IS A MATERIAL INDUCEMENT FOR LESSOR ACCEPTING THIS GUARANTY. FURTHERMORE, GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES FROM LESSOR OR ANY OF LESSOR'S AFFILIATES, OFFICERS, DIRECTORS, MANAGERS, MEMBERS OR EMPLOYEES OR ANY OF THEIR SUCCESSORS WITH RESPECT TO ANY AND ALL ISSUES PRESENTED IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BROUGHT WITH RESPECT TO ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY OR ANY DOCUMENTS CONTEMPLATED HEREIN OR RELATED HERETO. THE WAIVER BY GUARANTOR OF ANY RIGHT IT MAY HAVE TO SEEK PUNITIVE, CONSEQUENTIAL, SPECIAL AND INDIRECT DAMAGES HAS BEEN NEGOTIATED BY THE PARTIES AND IS AN ESSENTIAL ASPECT OF THEIR BARGAIN.

2.19    In the event any action be brought by Lessor against Guarantor hereunder to enforce the obligation of Guarantor hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee which shall be fixed by the court.

DATED this _____ day of September, 2015.

GUARANTORS:

_____  _____
Gary Gerard Manley       Pamela Marie Manley
a married man         a married woman

Address:           Address:

8500 Blazyk Drive       8500 Blazyk Drive
Austin, TX 78737       Austin, TX 78737


GUARANTOR:


_____
Michael Jeffery Pottorff
an unmarried man

Address:

806 Crestone Stream Drive
Lakeway, TX 78738


GUARANTORS:


_____  _____
Michael Patrick Stone       Kristen Anne Stone
a married man         a married woman

Address:           Address:

11108 Cusseta Lane       11108 Cusseta Lane
Austin, TX 78739       Austin, TX 78739

# EXHIBIT "A"

[Intentionally Omitted from Exhibit to Order
Approving Asset Sale and for other relief]